# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  18-CV-24100-COOKE/
GOODMAN

DIGNA VINAS,

      Plaintiff,

vs.

THE INDEPENDENT ORDER OF
FORESTERS,

      Defendant.

_____/

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff, Digna Vinas ("Vinas"), by and through her undersigned

counsel, and hereby sues the Defendant, The Independent Order of Foresters ("Foresters"),

and states:

1.     The jurisdiction of this Court is predicated on 28 U.S.C. §1332 in that, at all

times material hereto, the amount in controversy exceeds the sum of Seventy-Five Thousand

and 00/100 Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees and is

between a citizen of the State of Florida, a citizen of a foreign state, a Canadian insurance

company with its place of incorporation and principal place of business in Toronto, Ontario,

Canada.  This Court has original jurisdiction of all civil actions between "citizens of a state

and citizens or subjects of a foreign state" under §1332(a)(2).

2.     At all times material hereto, the Plaintiff, Vinas, was a citizen of the State of

Florida and resident of Miami-Dade County, Florida, and was in all respects, sui juris.

3.     At all times material hereto, the Defendant, Foresters, was a Canadian corporation with its citizenship in Canada, and its principal place of business in Toronto, Ontario, Canada that was authorized to issue life insurance policies/Certificates within the State of Florida.

4.     At all times material hereto, and more specifically on January 26, 2015, Foresters issued a SMART Universal Life Insurance Policy/Certificate to Rigoberto Vinas, bearing Certificate No. 83556627 ("Policy").  A copy of the Policy/Certificate is attached hereto as Exhibit "A".

5.     At all times material hereto, Digna Vinas, was the wife of Rigoberto Vinas and was the sole beneficiary under the Policy and is therefore a direct and intended third party beneficiary of the Policy between Rigoberto Vinas and Foresters.

6.     At all times material hereto, the Policy provided a life insurance death benefit in the amount of Ninety-two Thousand and 00/100 Dollars ($92,000.00) in the event of the death of Rigoberto Vinas.

7.     At all times material hereto the Policy was in full force and effect.

8.     At all times material hereto, Rigoberto Vinas died while the Policy was in full force and effect.

9.     At all times material hereto, Vinas has performed all conditions precedent to the filing of this action including filing a Death Benefit Claim, providing satisfactory proof of Rigoberto Vinas' death or said conditions have been waived or excused.

10.     At all times material hereto, Foresters denied Vinas' claim on April 5, 2017 and since that time has failed to make payment under the Policy.

2

## COUNT I – BREACH OF CONTRACT

Plaintiff readopts and realleges paragraphs 1 through 10 above as though fully set forth herein.

11.    At all times material hereto, the Policy included the following terms:

**Death Benefit**
**Payment of Death Benefit**

Subject to the terms and conditions of the entire contract, we will pay the Death Benefit if we receive satisfactory proof of the insured's death.  That death must occur while the certificate is in effect.

Interest will be paid on the death benefit calculated from the date of death to the date of payment.  The interest rate will be the legal rate required by the insurance laws of the state governing this certificate [Florida].

. . .

The amount payable under this provision will be paid as described in the *Payment to Beneficiary* provision.

12.    At all times material hereto, in addition, the Policy stated:

**Amount of Death Benefit**

The death benefit at any time is the greater of:
- the amount based on the death benefit option in effect at that time; and
- the minimum death benefit as described in the *Minimum Death Benefit* provision.

13.    At all times material hereto, the amount of the Death Benefit under the Policy was Ninety-two Thousand and 00/100 Dollars ($92,000.00).

14.    On January 11, 2017, Rigoberto Vinas died.  Thereafter, and in compliance with the terms of the Policy, Vinas filed a claim with Foresters complete with supporting

documentation indicating that Rigoberto Vinas had died and requesting payment under the Policy.

15.     At all times material hereto, and more specifically, on April 5, 2017, Foresters sent a letter to Vinas denying Vinas' claim and has continuously failed to make payment pursuant to the Policy thereby materially breaching the agreement.

16.     As a direct and proximate result of Forester's breach of the Policy and failure to fulfill its obligations under the Policy, Vinas has sustained damages in the amount of Ninety-two Thousand and 00/100 Dollars ($92,000.00) from January 11, 2017 to the present.

17.     As a direct and proximate result of Foresters' breach of the policy and its failure to pay Vinas the $92,000 death benefit, Vinas has sustained consequential damages, including but not limited to Vinas' inability to pay necessary monthly expenses.

18.     As a direct and proximate result of Foresters' failure to timely pay the death benefit to Vinas, Vinas is being sued in state court for a collection action in the amount of $11,810.37 with interest continuing to accrue.

19.     As a direct and proximate result of Foresters' failure to timely pay the death benefit to Vinas, Vinas is suffering consequential damages of unpaid debts, accruing interest, and defense costs in defense of the county court collection action and other expenses.

20.     At all times material hereto, Vinas has been required to retain the services of undersigned counsel to prosecute this action on her behalf and has agreed to pay counsel a reasonable fee for services rendered.

## COUNT II – DECLARATORY RELIEF

Plaintiff readopts and realleges paragraphs 1 through 10 above as though fully set forth herein.

4

21.      At all times material hereto, Foresters denied Vinas' claim as more fully set forth in Count I above by attempting to rescind the Policy/Certificate and declaring the Policy/Certificate as void <u>ab</u> <u>initio</u> and without legal effect.

22.      At all times material hereto, Foresters based its attempted rescission on Rigoberto Vinas' response to questions in the Application and Supplemental Diabetes Questionnaire, to which Foresters claimed Rigoberto Vinas provided inaccurate answers.

23.      At all times material hereto, both the Application and Diabetes Questionnaire required Rigoberto Vinas to answer the questions posed by providing information which was "true and a complete disclosure of all information requested … to the best of [his] knowledge and belief."

24.      At all times material hereto, Foresters' attempted rescission of the Policy was incorrect for one or more of the following reasons:

a.      The answers provided by Rigoberto Vinas were accurate, and therefore, there was no "misrepresentation" as required under Florida Statute § 627.409.

b.      The information which Foresters claims was omitted was not "material" to Foresters' determination of the risk, and Foresters would have issued the identical Policy.

c.      Foresters improperly interpreted Florida law as applied to the facts of this case to require a higher threshold of accuracy than it requested in the original Application for insurance and the Diabetes Questionnaire.

d.      Foresters undertook an independent investigation of Rigoberto Vinas' insurability prior to issuing the Policy and is therefore charged with the knowledge of the very medical information upon which it now seeks to rescind the Policy.

25.     As a result of Foresters' failure to abide by its own contractual language as contained within the insurance application (which became part of the Policy), Vinas has been injured by Foresters' declaration that the Policy is rescinded and VOID and its failure to acknowledge the Policy was in full force and effect.

26.     An actual controversy exists between the parties as to whether the Policy in question is valid and in full force and effect.

27.     Vinas is in need of a judicial declaration setting forth the respective rights of the parties under the Policy as well as a true interpretation of the application questions as applied to the facts declaring the Policy is in full force and effect.

28.     Vinas has no adequate remedy at law as to a Declaration that the Policy is and was in full force and effect.

29.     Vinas been required to retain the services of the undersigned counsel and to prosecute this action on her behalf and has agreed to pay counsel a reasonable fee for services rendered.

## COUNT III – FRAUD IN THE INDUCEMENT

Plaintiff readopts and realleges paragraphs 1 through 10 above as though fully set forth herein and further states:

30.     At all times material hereto, the policy issued by Foresters to Rigoberto Vinas provided coverage to Mr. Vinas' beneficiary in the event of Rigoberto Vinas' death, in exchange for the payment of premiums charged.

31.     At all times material hereto, Rigoberto Vinas purchased the Policy to protect his beneficiary from incurring expenses and to provide financial security in the event of his death.

6

32.     At all times material hereto, all the Policy provisions constituted specific representations to o by Foresters in the form of contractual promises and/or statements of present intention.  The Policy was executed and attested to on behalf of Foresters by its Executive Secretary, K. Routhiaike.

33.     At all times material hereto, the Application which became part of the Policy under Florida law, required Rigoberto Vinas to provide answers that were "full, complete, and true to the best of [his] knowledge and belief."

34.     At all times material hereto, in issuing the Policy, Foresters knew that the Application for Insurance completed by Mr. Vinas had to be answered to his "best knowledge and belief."

35.     At all times material hereto, Foresters knew that if Rigoberto Vinas died within the first two years following the issuance of the Policy, the Policy would be contestable under Florida law.  That is, Foresters knew that it would have the opportunity to review the Application questions and determine whether the information provided was answered to Rigoberto Vinas' "best knowledge and belief."

36.     At all times material hereto, Foresters falsely and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief.

37.     At all times material hereto, this representation by Foresters was false and Foresters knew it to be false when it was made to Rigoberto Vinas in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters.  The representation was made to

7

induce Rigoberto Vinas to pay premiums for the policy despite the fact that Foresters knew it had no intention to ever pay benefits if Rigoberto Vinas were to die during the first two years following issuance of the Policy even if Application answers were provided to Mr. Vinas' best knowledge and belief. This statement was a false statement of material fact by Foresters to Rigoberto Vinas contained within the Policy language and incorporated Florida law.

38.     At all times material hereto, Foresters knew or should have known this promise was false when made as Foresters intended, at the time of sale of the policy, to improperly ignore Mr. Vinas' "best knowledge and belief" in the Application and instead deny a claim based upon Foresters' interpretation of the medical accuracy of information without regard to Rigoberto Vinas' best knowledge and belief.

39.     At all times material hereto, the direct and circumstantial evidence of the falsity of Foresters' statement and promise to pay a claim within the first two years as long as Rigoberto Vinas answered Application questions to his best knowledge and belief included the fact that, upon presentation of the Mr. Vinas claim to Foresters, Foresters never even made inquiry into Rigoberto Vinas' best knowledge and belief.

40.     At all times material hereto, the direct and circumstantial evidence of the falsity of Foresters' representation also included the fact that Foresters expressly ignored evidence in its own claim file which directly provided Rigoberto Vinas' best knowledge and belief was that he did not have diabetes, instead relying on unconfirmed and contradictory medical records which provided no indication of Mr. Vinas' best knowledge and belief regarding his medical condition.

41.     At all times material hereto, Foresters intended and made promises to Rigoberto Vinas to induce his reliance on them so it could collect premiums without any

8

liability for actually paying a life insurance claim in the event Mr. Vinas were to die during the first two years following issuance of the Policy, using its willful blindness to the information available to it as a false defense.

42.     At all times material hereto, Foresters' false promise with no intention to pay Mr. Vinas during the first two years following issuance of the Policy, furthered an apparent institutional position of not investigating insureds' best knowledge and belief when investigating contestable claims (life insurance claims made within the first two years after death).

43.     At all times material hereto, Rigoberto Vinas justifiably relied upon the false representations made by Foresters to his detriment by entering into the Policy of Insurance, paying premiums and believing that his beneficiary was covered in the event of his death.

44.     At all times material hereto, Foresters committed intentional misconduct, i.e., Foresters knew that its actions in denying the Policy were wrongful and knew or should have known of the high probability that Vinas would be damaged by not receiving the monies that the Policy had promised, but still refused to honor the Policy; or, in the alternative, Foresters' committed gross negligence, i.e., its conduct was so reckless or wanting in care that it amounted to a conscience indifference to Vinas' rights.

45.     At all times material hereto, as a result of Rigoberto Vinas' justifiable reliance on Foresters' fraudulent inducement to enter into the Insurance Contract and his payment of premiums based on false promises, Vinas has been damaged and Foresters is estopped to deny coverage for the full payment of benefits under the Policy as well as all damages actually and consequentially flowing from Foresters actions and inactions.

WHEREFORE, Plaintiff, Digna Vinas, seeks the following:

9

a)      Payment of the full amount of life insurance benefits due under the Policy and all consequential damages.

b)      A Declaration that Rigoberto Vinas' Policy was in full force and effect and is valid and enforceable.

c)      A Declaratory Decree by the Court interpreting those portions of the Policy in which the parties have an actual dispute.

d)      Attorney's fees, costs and other such relief as this Court deems just and proper under Fla. Stat. §627.428 or other Florida Statute providing for attorney's fees.

e)      Pre and Post-judgment interest on the total damages including consequential damages, the Insurance Policy benefits and attorney's fees at the present statutory rate from the date Rigoberto Vinas died through the date this Court enters Judgment.

f)      Punitive damages.

## DEMAND FOR JURY TRIAL

Vinas demands a trial by jury of all issues so triable as a matter of right.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 16, 2020, the foregoing document was served via the CM/ECF system to Kristina B. Pett, Esq., Danielle E. Shure, Esq., McDowell Hetherington LLP, Attorneys for Defendant, 2101 N.W. Corporate Blvd. Suite 316, Boca Raton, FL 33431, kristina.pett@mhllp.com, Danielle.shure@mhllp.com.

                                    KRAMER, GREEN, ZUCKERMAN,
                                    GREENE & BUCHSBAUM, P.A.
                                    Co-Counsel for Plaintiff
                                    4000 Hollywood Blvd., Suite 485-S
                                    Hollywood, FL  33021

(954) 966-2112 – phone
(954) 981-1605 – fax

By: _____/s/ Craig M. Greene_____
     Craig M. Greene, Esq.
     Fla. Bar No. 618421
     cgreene@kramergreen.com

and

Adrian Neiman Arkin, Esq.
MINTZ, TRUPPMAN, P.A.
Co-Counsel for Plaintiff
1700 Sans Souci Boulevard
North Miami, FL  33181
(305) 893-5506 – phone
adrian@mintztruppman.com

## The Independent Order Of Foresters ('Foresters')

Head Office: 789 Don Mills Road, Toronto, Ontario, Canada M3C 1T9
U.S. Mailing Address: P.O. Box 179, Buffalo, New York 14201-0179
1-800-828-1540

| | | | |
|---|---|---|---|
| Insured | Rigoberto Vinas | Certificate Number | 8356627 |
| Owner | Rigoberto Vinas | Branch Number | 4012 |
| Issue Date | January 26, 2015 | | |
| State Governing | Florida | | |

Florida Department of Insurance telephone number  (877) 693-5236

# Foresters SMART Universal Life

## This is a FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE CERTIFICATE.

**It has an ADJUSTABLE DEATH BENEFIT.** The Independent Order Of Foresters (referred to as we, our, Foresters or us) will, subject to the provisions of this certificate, pay the death benefit upon our receipt of proof of the insured's death. That death must occur while this certificate is in effect.

**CASH VALUE payable at surrender.** Cash Values are flexible and based, in part, on the amount and frequency of premiums paid, and the amount of interest credited. Benefits, values, periods of coverage, premiums and the rate of interest credited are on an indeterminate basis and may increase or decrease subject to the terms of the entire contract.

**PREMIUM PAYMENTS** are flexible and payable to the insured's age 100.

**PARTICIPATING,** eligible to receive dividends.

In this certificate, you and your mean the owner, as shown above. The owner may change after the issue date as described in this certificate.

This certificate is executed at our head office on the issue date.

### PLEASE READ THIS CERTIFICATE CAREFULLY.

**Right to Examine** – If you are not satisfied with this certificate, you may return it to us within 14 days of first receiving it. You can do this by mailing it to our U.S. mailing address, shown above, or by returning it to one of our authorized representatives.

If this certificate is returned to us during this time period, the insurance contract will be deemed to be void from the issue date. Within 10 days after we receive it, we will refund premiums you have paid to us for this certificate.

**EXECUTIVE SECRETARY**

**INTERNATIONAL FRATERNAL PRESIDENT**

UL-SMART-FL01-2009

EXHIBIT "A"

# Foresters SMART Universal Life

This certificate is part of a legal insurance contract between the owner and Foresters. The insurance contract sets forth, in detail, the rights and obligations for both you and us. Only the actual insurance contract provisions will control. It is important that you read your insurance contract carefully.

The benefit provided under each rider, if any, is described in that rider.

If you have questions about this certificate or a rider, your understanding of them or about information that you have heard, seen or read relating to them, please call us. Our toll free number is 1-800-828-1540.

This certificate has no maturity date. We suggest that you consult your tax advisor before continuing this certificate beyond the insured's age 100. Under current federal tax law, this certificate may not qualify as life insurance after that age and may then be subject to adverse tax consequences.

## Table of Contents

Table of Contents ........................................................................................................................ 2
Certificate Data Pages ................................................................................................................. 2
Definitions ................................................................................................................................... 4
Consideration .............................................................................................................................. 8
Entire Contract .......................................................................................................................... 10
When this Certificate is in Effect ............................................................................................. 10
Control of Certificate ................................................................................................................ 10
Assignment ................................................................................................................................ 11
Beneficiaries ............................................................................................................................. 11
Payment to Beneficiary ............................................................................................................. 11
Death Benefit ............................................................................................................................ 12
    Payment of Death Benefit ..................................................................................................... 12
    Amount of Death Benefit ...................................................................................................... 12
    Death Benefit Options ........................................................................................................... 12
    Death Benefit Option Changes .............................................................................................. 13
    Minimum Death Benefit ........................................................................................................ 13
    Qualification as Life Insurance ............................................................................................. 13
Incontestability ......................................................................................................................... 14
Suicide ....................................................................................................................................... 14
Premiums ................................................................................................................................... 14
    Net Premiums ........................................................................................................................ 15
Monthly Deductions .................................................................................................................. 15
    Cost of Insurance Deduction ................................................................................................. 15
    Cost of Insurance Rates ........................................................................................................ 15
    Face Amount Deduction ........................................................................................................ 16
    Monthly Administration Deduction ....................................................................................... 16
Account Value ........................................................................................................................... 17
    Interest on the Account Value ............................................................................................... 17
Lapse ......................................................................................................................................... 17
Grace Period .............................................................................................................................. 18
Continuation of Insurance ......................................................................................................... 18
    Minimum Premium No-Lapse Guarantee .............................................................................. 18
Reinstatement ............................................................................................................................ 18
Nonforfeiture Provisions ........................................................................................................... 19
    Cash Value ............................................................................................................................ 19
    Surrender ............................................................................................................................... 19
                                                                                                                                      20

Surrender Charge ......................................................................................................20
Withdrawal ...............................................................................................................20
Loans ...........................................................................................................................21
Payments by Us ...........................................................................................................21
Misstatement of Age or Sex .........................................................................................21
Changes to the Certificate or Riders ...........................................................................22
Change Fee ..............................................................................................................22
Limitation of Action .....................................................................................................22
Law Applicable ............................................................................................................22
Limiting Effect of our Constitution ..............................................................................23
Suspension or Expulsion ..............................................................................................23
Maintenance of Reserves ..............................................................................................23
Basis of Computation of Reserves ...............................................................................23
Dividends ....................................................................................................................23
Illustrations .................................................................................................................23
Notification .................................................................................................................24
Changes .......................................................................................................................24
Annual Statement ........................................................................................................25

# Certificate Data Pages

| | | | |
|---|---|---|---|
| Insured | Rigoberto Viñas | Issue Age and Sex of Insured | 73   Male |
| Owner | Rigoberto Viñas | Certificate Number | 8356627 |
| Issue Date | January 26, 2015 | Currency | United States |
| Face Amount | $92,000 | Branch Number | 4012 |
| Insurance Class | Non Tobacco | Rating Class | Standard |

Death Benefit Option                       Level
Life Insurance Qualification Test       Guideline Premium Test

## Foresters SMART Universal Life
## Flexible Premium Adjustable Life Insurance

Provides life insurance as long as the cash value, on a monthly anniversary, is more than the monthly deduction for that monthly anniversary, subject to the *Grace Period* and *Minimum Premium No-Lapse Guarantee* provisions. This certificate describes how the cash value is calculated. The face amount is adjustable subject to the provisions of this certificate.   This certificate is eligible to participate in our divisible surplus, however dividends are not guaranteed and are not expected or anticipated to be paid by us under this certificate.

Each beneficiary is designated in the application.  A beneficiary designation may change as described in the *Beneficiaries* provision.

Planned Premium                                        Monthly
Minimum Premium                                      Monthly

Minimum Premium Payment Period:          First 10 certificate years

Premium Expense Charge:   6.00% of each premium received prior to the 20th certificate anniversary and 0.00% of each premium received thereafter.

Based upon the guaranteed interest rate, guaranteed maximum cost of insurance rates, maximum expense charges and payment of the planned premium shown, this certificate will not lapse prior to January 26, 2025, provided: (1) each planned premium is paid on time based upon the payment frequency shown; (2) no changes are made to the coverage provided by the certificate and/or riders; and (3) no withdrawals are taken.

This certificate may lapse or terminate even if the planned premium, shown above, is paid due to the fact that current cost of insurance and interest rates are not guaranteed, loans and withdrawals may be taken and changes to the face amount or a rider benefit amount may be requested.

## Interest Rates

Guaranteed Minimum Interest Rate:     3.00% per year.
Loan Interest Rate:                              5.00% per year for the first 7 certificate years and 3.00% thereafter.
Loan Collateral Account Interest Rate: 3.00% per year.

## Monthly Deductions

See the *Monthly Deductions* provision for details on how to calculate the monthly deductions using the information and tables shown in these *Certificate Data Pages*.

Face Amount Factor: 0.4200
Monthly Administration Deduction: $12.00

UL-SMART-FL01-2009                                                      **Page 4  of 26**

## Table of Monthly Maximum
## Cost of Insurance Rates per $1,000

| Age | Rate | Age | Rate | Age | Rate | Age | Rate |
|-----|------|-----|------|-----|------|-----|------|
| 73 | 2.73583 | 80 | 5.65583 | 87 | 11.64500 | 94 | 20.75417 |
| 74 | 3.02250 | 81 | 6.32000 | 88 | 12.84167 | 95 | 22.26583 |
| 75 | 3.33583 | 82 | 7.01167 | 89 | 14.10417 | 96 | 23.64917 |
| 76 | 3.67750 | 83 | 7.75750 | 90 | 15.42167 | 97 | 25.12417 |
| 77 | 4.07417 | 84 | 8.58333 | 91 | 16.66083 | 98 | 26.69833 |
| 78 | 4.53750 | 85 | 9.50583 | 92 | 17.95250 | 99 | 28.37833 |
| 79 | 5.07250 | 86 | 10.52833 | 93 | 19.31500 | | |

The maximum cost of insurance rates do not exceed the cost of insurance rates based upon the 2001 CSO ultimate, age nearest birthday, sex distinct, smoker distinct mortality table for the insured's rating class (composite rates used for issue ages 0-15).

## Surrender Charges

| Certificate Year | Surrender Factor | Certificate Year | Surrender Factor |
|---|---|---|---|
| 1 | 54.33 | 9 | 26.30 |
| 2 | 51.90 | 10 | 22.57 |
| 3 | 48.72 | 11 | 18.83 |
| 4 | 44.98 | 12 | 15.09 |
| 5 | 41.25 | 13 | 11.36 |
| 6 | 37.51 | 14 | 7.62 |
| 7 | 33.78 | 15 | 3.89 |
| 8 | 30.04 | | |

## Table of Minimum Death Benefit Percentages

| Age | Percentage (%) | Age | Percentage (%) | Age | Percentage (%) | Age | Percentage (%) |
|---|---|---|---|---|---|---|---|
| 0 | 250 | 26 | 250 | 52 | 171 | 78 | 105 |
| 1 | 250 | 27 | 250 | 53 | 164 | 79 | 105 |
| 2 | 250 | 28 | 250 | 54 | 157 | 80 | 105 |
| 3 | 250 | 29 | 250 | 55 | 150 | 81 | 105 |
| 4 | 250 | 30 | 250 | 56 | 146 | 82 | 105 |
| 5 | 250 | 31 | 250 | 57 | 142 | 83 | 105 |
| 6 | 250 | 32 | 250 | 58 | 138 | 84 | 105 |
| 7 | 250 | 33 | 250 | 59 | 134 | 85 | 105 |
| 8 | 250 | 34 | 250 | 60 | 130 | 86 | 105 |
| 9 | 250 | 35 | 250 | 61 | 128 | 87 | 105 |
| 10 | 250 | 36 | 250 | 62 | 126 | 88 | 105 |
| 11 | 250 | 37 | 250 | 63 | 124 | 89 | 105 |
| 12 | 250 | 38 | 250 | 64 | 122 | 90 | 105 |
| 13 | 250 | 39 | 250 | 65 | 120 | 91 | 105 |
| 14 | 250 | 40 | 250 | 66 | 119 | 92 | 105 |
| 15 | 250 | 41 | 243 | 67 | 118 | 93 | 105 |
| 16 | 250 | 42 | 236 | 68 | 117 | 94 | 105 |
| 17 | 250 | 43 | 229 | 69 | 116 | 95 | 105 |
| 18 | 250 | 44 | 222 | 70 | 115 | 96 | 105 |
| 19 | 250 | 45 | 215 | 71 | 113 | 97 | 105 |
| 20 | 250 | 46 | 209 | 72 | 111 | 98 | 105 |
| 21 | 250 | 47 | 203 | 73 | 109 | 99 | 105 |
| 22 | 250 | 48 | 197 | 74 | 107 | 100+ | 105 |
| 23 | 250 | 49 | 191 | 75 | 105 | | |
| 24 | 250 | 50 | 185 | 76 | 105 | | |
| 25 | 250 | 51 | 178 | 77 | 105 | | |

# Rider Information

See the *Monthly Rider Deductions* provision in each rider for details on how to calculate the monthly rider deductions using the information shown in these *Certificate Data Pages*.

## Accelerated Death Benefit Rider (for Chronic, Critical and Terminal Illness)

Minimum Acceleration Amount – $4,500
Maximum Lifetime Acceleration Amount – $500,000
Maximum Administrative Fee – $100
Residual Face Amount – $10,000

## Common Carrier Accidental Death Rider

Benefit Amount: $184,000.00
Maximum Accidental Death Amount: $300,000.00
Expiry Date: January 26, 2027

## Family Health Benefit Rider

Maximum Family Benefit Amount: $5,000.00
Expiry Date: January 26, 2027

The specific benefit amounts are:
    Ambulance Transportation: $50.00
    Hospital Emergency Room Examination: $100.00
    Hospital Stay: $100.00

UL-SMART-FL01-2009

# Definitions

The following terms have specific meanings for the purposes of your certificate. Where the same term appears in a rider, if any, it also has that same meaning unless there is another definition for that same term in that rider.

**Account value** – The amount calculated as described in the *Account Value* provision.

**Age** - The issue age shown in the *Certificate Data Pages* plus the number of completed certificate years.

**Application** - The application that was completed and signed for this certificate and each attached rider. The application was attached to this certificate at the time it was delivered to you.

**Assignee** - A person or entity indicated in an assignment as the recipient of the assigned interest.

**Attached rider(s)** - Each rider, if any, shown in the *Certificate Data Pages* and attached to this certificate when it was delivered to you.

**Cash value** – The amount equal to the account value minus the loan amount and minus the applicable surrender charge.

**Certificate** - The cover page and each numbered page that follows it, starting with page number 2 and ending with the page that states, "This is the last page of this certificate". The cover page contains the signatures of our Executive Secretary and International Fraternal President.

**Certificate anniversary** – The same month and day as the issue date for each calendar year following the issue date, while this certificate is in effect.

**Certificate Data Pages** – The pages marked as the *Certificate Data Pages* within this certificate at the time that it was delivered to you.

**Certificate month** - The first day of the first certificate month is the issue date and the last day is the day before the first monthly anniversary. For every other certificate month, the first day of a certificate month is a monthly anniversary and the last day is the day before the next monthly anniversary.

**Certificate year** – The first day of the first certificate year is the issue date and the last day is the day before the first certificate anniversary. For every other certificate year, the first day of a certificate year is a certificate anniversary and the last day is the day before the next certificate anniversary.

**Change fee** - The charge for making a change as described in the *Change Fee* provision.

**Contingent owner** - The contingent owner named, if at all, in the application, unless changed as shown in our records.

**Date we delivered** – The effective date of delivery being either the day of delivery if hand delivered to the owner or the owner's address, the fifth day after mailing if sent by mail to the owner's address or the day shown in our records as successfully transmitted if sent electronically to a number or address shown for the owner in our records.

**Death benefit** - The amount payable as described in the *Death Benefit* provision.

**Death benefit option** – The option shown in the *Certificate Data Pages*, unless changed as shown in our records.

**Debt** – The amount owed to us under the *Maintenance of Reserves, Grace Period and Loan* provisions.

**Deduction Date** - The issue date and each monthly anniversary.

**Evidence of insurability** - Information we obtain to decide insurability and, if so, on what terms.

**Face amount** - The amount shown in the *Certificate Data Pages* as the face amount, unless changed as shown in our records.

**Grace period** - The period of time within which to pay an overdue monthly deduction as described in the *Grace Period* provision.

**Guaranteed minimum interest rate** - The rate shown as the minimum interest rate in the *Certificate Data Pages*.

**Insurance contract** - This certificate and each rider in effect, if any.

**Lapse** - The termination of this certificate for non-payment of overdue monthly deductions during the grace period.

**Minimum premium** - The amount shown as the minimum premium in the *Certificate Data Pages*, unless changed as shown in our records.

**Minimum premium payment period** - The period of time shown as the minimum premium payment period in the *Certificate Data Pages*.

**Monthly administration deduction** - A monthly charge for administration of this certificate, in the amount shown in the *Certificate Data Pages*.

**Monthly anniversary** - Occurs each month after the issue date, on the same date of each month as the date shown as the issue date.

**Monthly deduction** - The sum of the monthly charges for a certificate month. It is equal to the sum of the monthly administration deduction, the face amount deduction, the cost of insurance deduction and the monthly rider deduction(s), if any, as described in the *Monthly Deductions* provision.

**Monthly rider deduction** - The monthly charge(s) for each rider, that is in effect on a monthly anniversary, as described in the *Monthly Rider Deductions* provision of that rider.

**Our records** - The records at our head office.

**Planned premium** - The amount of premium you have selected to pay on a regular basis as shown in the *Certificate Data Pages*. The premium frequency, also shown, indicates how often you plan to pay that amount.

**State governing** - The state shown as the state governing on the cover page, which will be the state where the application was signed by the owner.

**Rider** - Each attached rider, if any, and each rider added as an attachment, if any, to this certificate after the issue date, as shown in our records.

**We, our, us and Foresters** - The Independent Order of Foresters.

**You, your** - The owner of this certificate as shown in the *Certificate Data Pages* subject to change as described in this certificate.

When we refer in this certificate to a provision, unless specifically stated to be a provision in a rider, we mean the provision in this certificate with that title. When we refer in a rider to a provision, unless specifically stated to be a provision in the certificate, we mean the provision in that rider with that title.

# Certificate Provisions

## Consideration

We issue this certificate and attached rider(s) based on the application signed by the owner and the payment of premiums as described in this certificate.

## Entire Contract

The entire contract consists of each of the following:

1. The insurance contract, including attached agreements and endorsements.
2. The application attached to this certificate upon delivery.
3. Additional applications or written requests from you, if any, received and approved by us after the issue date of this certificate, as shown in our records.
4. Notifications we send to you confirming changes made, after the issue date, to your certificate or a rider.
5. Our Instrument of Incorporation, Constitution, and the respective amendments.

All statements in the application shall be deemed to be representations, not warranties.

No one, including the producer who provided you with this certificate, can make a promise or representation about the entire contract other than what is described in the entire contract.

## When this Certificate is in Effect

This certificate comes into effect on the issue date, if both of the following conditions are met:
- At least the first minimum premium was paid on or before the date we delivered this certificate to you.
- The insurability of the insured did not change between the date the application was signed by the insured and the issue date.

Once in effect, this certificate will remain in effect until the earliest of the following dates:
- The date of death of the insured.
- The day we receive, as shown in our records, your written, signed request to end this certificate.
- The day this certificate lapses, as described in the *Lapse* provision.
- The day this certificate terminates, as described in the *Loan* provision.

When this certificate ends it is no longer in effect. This means our liability ends and no death benefit would be paid.

## Control of Certificate

The owner of this certificate and rider(s) may exercise the options or rights provided to you under them, unless limited by statute or by the rights of an assignee or irrevocable beneficiary. If the insured is younger than 16 years old on the issue date, these rights will transfer to the insured upon their 16th birthday. Upon this transfer, the insured will become the owner of this certificate and rider(s), regardless of a prior assignment.

You may request a change of owner, while the insured is alive and this certificate is in effect. The request is subject to our receipt of satisfactory proof that the change is not prohibited by law. Unless otherwise specified by you, the change of owner will be effective as of the date the request is signed and is subject to payment(s) made or action(s) taken by us prior to our receipt of this request.

If the insured is not the owner and if the owner dies or ceases to exist, while this certificate is in effect, the contingent owner becomes the owner of this certificate and rider(s) as of the date that the owner died or ceased to exist. If there is no surviving contingent owner, the owner's estate (if the owner is a natural person) or the owner's successor in interest (if the owner is a non-natural person) will become the owner.

## Assignment

You may assign this certificate and rider(s) subject to our receipt of satisfactory proof that the assignment is not prohibited by law. Unless otherwise specified by you, the assignment will be effective as of the date the notice of assignment is signed and is subject to payment(s) made or action(s) taken by us prior to our receipt of this notice. Under an absolute assignment the assignee becomes the owner of this certificate and rider(s). We are not bound by an assignment unless it is in writing and shown in our records. We are not responsible for the validity or effect of an assignment. Despite the assignment, the insured retains Foresters membership rights and privileges according to our Constitution.

## Beneficiaries

There may be designated one or more than one primary or contingent beneficiary. Each primary and contingent beneficiary, if any, is shown in the application unless changed as shown in our records.

You may request a change of beneficiary, while the insured is alive and this certificate is in effect. If a beneficiary is designated "irrevocable", then that beneficiary must also sign a request that changes that beneficiary's designation or the percentage or amount to be received by that beneficiary. The change of beneficiary will be effective as of the date the request is signed and is subject to payment(s) made or action(s) taken by us prior to our receipt of this request.

## Payment to Beneficiary

The death benefit payable will be paid as described in this provision. If no beneficiary survives the insured or if no beneficiary is designated, this payment will be made to you or your estate.

Primary Beneficiary: Each surviving primary beneficiary will be paid their share of the death benefit. That share is shown in the application unless changed, as shown in our records. If a primary beneficiary predeceases the insured, that beneficiary's share will be split among the surviving primary beneficiaries. That split will be based on the ratio of the specified percentages for those surviving beneficiaries to the total percentage for those survivors. If no percentages are specified, then the death benefit will be split equally among the surviving primary beneficiaries.

Contingent Beneficiary: If no primary beneficiary survives the insured, each contingent beneficiary, if designated, surviving the insured, will be paid their share of the death benefit, in the same manner as described above for the primary beneficiary.

## Death Benefit

### Payment of Death Benefit

Subject to the terms and conditions of the entire contract, we will pay the death benefit if we receive satisfactory proof of the insured's death. That death must occur while this certificate is in effect.

Interest will be paid on the death benefit, calculated from the date of death to the date of payment. The interest rate will be the legal rate required by the insurance laws of the state governing this certificate.

The amount of the debt, if any, will be deducted from the death benefit payable.

The amount payable under this provision will be paid as described in the *Payment to Beneficiary* provision.

From the date we receive notification of the death of the insured, no premium will be accepted and no request will be processed.

### Amount of Death Benefit

The death benefit at any time is the greater of:
- the amount based on the death benefit option in effect at that time; and
- the minimum death benefit as described in the *Minimum Death Benefit* provision.

**Death Benefit Options**

The death benefit option in effect on the issue date is shown in the *Certificate Data Pages*. The death benefit options available under this certificate are:

- Level - the amount based on this option, at any time, is equal to the face amount in effect at that time.
- Increasing - the amount based on this option, at any time, is equal to the face amount in effect at that time plus the account value at that time.

The death benefit option in effect will affect the amount of the monthly deductions.

**Death Benefit Option Changes**

Subject to the requirements described in this provision and after the first certificate anniversary, you may request a change in the death benefit option.

If the applicable death benefit option is increasing you may request a change to level. If the request is approved the face amount will be revised as of the effective date of the change. The revised face amount will be equal to the amount of the death benefit as of the close of business the day before the effective date of the change.

If the applicable death benefit option is level you may request a change to increasing. If the request is approved the face amount will be revised as of the effective date of the change. The revised face amount will be equal to the amount of the death benefit as of the close of business the day before the effective date of the change minus the account value as of the close of business on the effective date of the change. Surrender charges may apply. Requests to change from level to increasing will be subject to satisfactory evidence of insurability of the insured.

The effective date of a requested change that we approve will be as of the close of business on the first monthly anniversary after our approval, as shown in our records. The *Change Fee* provision will apply.

**Minimum Death Benefit**

The amount of the minimum death benefit at any time will be the account value, at that time, multiplied by the applicable minimum death benefit percentage. There is a *Table of Minimum Death Benefit Percentages* shown in the *Certificate Data Pages*. The applicable minimum death benefit percentage will be the percentage shown for the insured's age on the date of calculation.

## Qualification as Life Insurance

In order for this certificate to qualify as life insurance under the Internal Revenue Code either the guideline premium test or the cash value accumulation test, as described within that code, will apply. The life insurance qualification test, elected on the application, which applies to this certificate, is shown in the *Certificate Data Pages* and cannot be changed.

We will take the necessary steps to ensure your certificate continues to qualify as life insurance under the Internal Revenue Code, as amended, to the insured's age 100. If we receive a premium that endangers the status of this certificate we may refund all or part of it. You may contact us at our office for information on the maximum allowable premium.

## Incontestability

We will not contest the validity of this certificate after it has been in effect during the lifetime of the insured for two years except for non-payment of premiums.

Similarly, statements made after the issue date, in an application for an increase in the face amount or a rider benefit amount, the addition of a rider, reinstatement or in a declaration for a change in insurance class will be incontestable two years after the effective date as shown in our records of such increase, addition, reinstatement or change. Our right to contest based on statements made in an application for an increase or addition, will apply only to the additional coverage provided by that increase or addition.

This provision shall not apply to a rider providing a benefit in the event of:

1. the total disability of the insured, or
2. death of the insured by accident or accidental means.

## Suicide

If death of the insured is by suicide or intentionally self-inflicted injury, while sane or insane, and within two years from the issue date, our liability is limited to the sum of the premiums paid minus the amount of the debt and minus the total of all withdrawals, and no death benefit will be paid.

If death of the insured is by suicide or intentionally self-inflicted injury, while sane or insane, and within two years from the effective date of an increase in the face amount, if any, our liability with respect to that increase is limited to the sum of the increases in monthly deductions taken due to that increase in face amount. This does not apply to increases in face amount done, without evidence of insurability, under a rider.

## Premiums

Premiums are the amounts that are paid to us under this certificate. The first premium is due on the issue date. The first premium must be at least equal to the minimum premium shown in the *Certificate Data Pages*. Each premium payment after the first must be at least $25. Upon request, we will inform you of the maximum allowable premium that may be paid, as of the date of your request.

If the amount of a premium payment is such that it would result in an increase to the net amount at risk, we reserve the right to:
- require satisfactory evidence of insurability; or
- refund all or part of that premium payment.

No premium will be accepted on or after the insured's age 100, except premium necessary to prevent this certificate from lapsing as described in the *Lapse* provision.

Premiums may be paid to us by mail to our U.S. mailing address, at our office, or to our Executive Secretary. If requested, we will provide a receipt for the premium, signed by our Executive Secretary.

### Net Premiums

Net premiums are premiums minus the premium expense charge shown in the *Certificate Data Pages*.

## Monthly Deductions

On each deduction date, a monthly deduction for the following certificate month will be taken from the account value. The amount of the monthly deduction on a deduction date is equal to:

|      | The cost of insurance deduction for that deduction date, |
|------|----------------------------------------------------------|
| plus | the face amount deduction for that deduction date, |
| plus | the monthly administration deduction, |
| plus | the total of the monthly rider deductions for the riders in effect on that deduction date. The monthly rider deduction for each rider is determined as described in the *Monthly Rider Deductions* provision for that rider. |

The monthly deduction will be waived on each monthly anniversary on and after the insured's age 100.

### Cost of Insurance Deduction

The cost of insurance deduction on a deduction date is equal to:

|               | The amount at risk on that deduction date, |
|---------------|--------------------------------------------|
| divided by    | $1,000, |
| multiplied by | the applicable cost of insurance rate as described in the *Cost of Insurance Rate* provision. |

The amount at risk on a deduction date will equal:

|  | The death benefit on that deduction date, |
|---|---|
| divided by | 1.00246627, |
| minus the total of the following: | The account value on that deduction date prior to deducting the cost of insurance deduction. |
| minus | the face amount deduction on that deduction date, |
| minus | the monthly administration deduction, |
| minus | the monthly rider deductions for all riders in effect on that deduction date, |
| plus | the monthly rider deduction for a waiver rider, if any, in effect on that deduction date. |

## Cost of Insurance Rates

The cost of insurance rates for the face amount in effect on the issue date are based on the insured's age as well as the sex and insurance class shown in the *Certificate Data Pages*. The cost of insurance rates for an increase in the face amount are based on the age, sex and insurance class of the insured on the effective date of that increase.

We will determine the cost of insurance rates at our sole discretion, but they will not be greater than those in the *Table of Monthly Maximum Cost of Insurance Rates* shown in the *Certificate Data Pages*.

The cost of insurance rates will be determined by us based on our future expectations of such factors as mortality, expenses, interest, persistency and taxes. If we make a change in the rates, it will be on a uniform basis that does not discriminate unfairly within a class of lives insured.

The cost of insurance rates for certificates issued to juveniles (issue age less than 16) are based upon a composite of the smoker and non-smoker rates. These composite rates apply until the certificate anniversary on which the insured is age 18 at which time smoker rates will automatically apply, unless you apply for, and we approve, a re-classification of the insured to non-smoker. We will notify you 60 days in advance of this date of the opportunity to apply for non-smoker rates.

## Face Amount Deduction

The face amount deduction on a deduction date is equal to:

|  | The face amount on that deduction date, |
|---|---|
| divided by | $1,000, |
| multiplied by | the applicable face amount factor(s). |

The face amount factor applicable to the face amount in effect on the issue date is shown in the *Certificate Data Pages*. The face amount factor applicable to each increase in the face amount, if any, is shown in the notification sent to you confirming that increase.

The face amount deduction will apply during the first 10 certificate years. If the face amount is increased, the face amount deduction for that increase will apply for the first 10 certificate years after the effective date of that increase.

## Monthly Administration Deduction

The monthly administration deduction is shown in the *Certificate Data Pages*.

# Account Value

On the issue date, the account value is equal to the first net premium paid minus the monthly deduction for the first certificate month. At anytime after the issue date until the insured's age 100, the account value equals:

|  | The account value on the last deduction date, |
|---|---|
| plus | net premium received after the last deduction date, |
| plus | interest accrued after the last deduction date, |
| minus | on a deduction date, the monthly deduction for the next certificate month, |
| minus | the total of all withdrawals made after the last deduction date. |

At anytime after the insured's age 100, the account value equals:

|  | The account value on the last monthly anniversary, |
|---|---|
| plus | interest accrued after the last monthly anniversary, |
| minus | the total of all withdrawals made after the last monthly anniversary. |

## Interest on the Account Value

Interest will be calculated daily on the balance of the account value, after subtracting the loan collateral account, as of the close of business on that day. Interest calculated will be credited to the account value at the next monthly anniversary after the calculation. The rate of interest will be the guaranteed minimum interest rate unless we apply, in our sole discretion, a higher rate. The application of a rate of interest higher than the guaranteed minimum interest rate does not obligate us to apply a rate of interest higher than the guaranteed minimum interest rate at any other time. Interest on the loan collateral account will be credited as described in the *Loans* provision.

## Lapse

Subject to the *Minimum Premium No-Lapse Guarantee* provision, this certificate will lapse without cash value as of the end of the 61st day of the grace period if premium, such that the net premium is at least equal to the overdue monthly deduction, is not received in our office before that day. We will notify you, any secondary addressee of record and any assignee of this certificate, of the upcoming lapse at least 31 days before the end of the grace period. Upon the lapse of this certificate, it will be of no further effect, our liability will end and no death benefit will be paid.

## Grace Period

If the cash value on a monthly anniversary is less than the amount of the monthly deduction for that monthly anniversary, you have a grace period of 61 days from that monthly anniversary to pay this amount. If premium, such that the net premium is at least equal to this monthly deduction, is received in our office during the grace period, it will be applied to the overdue monthly deduction(s), starting with the earliest. Payments received after, if sent by U.S. mail and postmarked during, the grace period will be accepted. If the insured dies during the grace period, the death benefit otherwise payable will be reduced by the amount of the overdue monthly deduction(s).

## Continuation of Insurance

We do not guarantee that this certificate will continue to the date of death of the insured if premiums paid are not sufficient. This certificate will stay in effect only as long as the cash value is at least equal to the monthly deduction on each monthly anniversary. If not, this certificate will lapse as described in the *Lapse* provision, subject to the *Minimum Premium No-Lapse Guarantee* provision.

### Minimum Premium No-Lapse Guarantee

This certificate will not lapse during the minimum premium payment period if, on each monthly anniversary during that period, the sum of the premiums paid is at least equal to:

|      |                                                                                                                                                       |
| ---- | ----------------------------------------------------------------------------------------------------------------------------------------------------- |
|      | The sum of the minimum premium on the issue date plus the minimum premium on each monthly anniversary from the issue date, including the current monthly anniversary, |
| plus | the total of all withdrawals as of the current monthly anniversary.                                                                                  |

Changes to the face amount, insurance class, rating class, rider benefit amount(s) or the addition or deletion of a rider will change the minimum premium. We will notify you of a change in minimum premium.

A loan may terminate this certificate as described in the *Loan* provision, notwithstanding the payment of premium described in this *Minimum Premium No-Lapse Guarantee* provision.

At the end of the minimum premium payment period, payment of an amount more than the minimum premium may be required to keep this certificate from lapsing.

## Reinstatement

If this certificate should lapse, you may be eligible to reinstate it within three years from the effective date of the lapse as shown in our records. To reinstate we will require:

1. payment in the amount of:
   a. the premium that would have been required to keep the insurance contract in effect during the grace period, without interest; plus,
   b. the premium required to keep the insurance contract from entering a grace period for three certificate months after the reinstatement effective date.
2. evidence of insurability, which meets our standards, of the insured.

The effective date of a reinstatement is the day that we approve your application for reinstatement, as shown in our records.

On the effective date of the reinstatement the account value of the certificate equals:

|  | The account value on the first day of the grace period prior to the most recent lapse, |
|---|---|
| plus | the net premium required to keep the certificate in effect during that grace period, |
| minus | the monthly deductions due during that grace period, |
| plus | the net premium required to keep the certificate from entering a grace period for the next three certificate months, |
| minus | on a deduction date, the monthly deduction for the next certificate month. |

If a loan is in effect when the certificate lapses then, for purposes of the above calculation, the account value on the first day of the grace period will be reduced by the outstanding loan amount, as of the first day of the grace period. The loan will not be reinstated.

Upon reinstatement, the schedule of surrender factors, shown in the *Certificate Data Pages*, which was in effect prior to the lapse of this certificate, is restored and continues to be applicable to the reinstated certificate as if the certificate had never lapsed.

## Nonforfeiture Provisions

### Cash Value

The cash value is equal to the account value minus the loan amount and minus the applicable surrender charge.

The cash value will not be less than the minimum value required by the insurance laws of the state governing this certificate. The minimum cash value is based on the 2001 CSO ultimate, age nearest birthday, sex distinct, smoker distinct mortality table for the insured's rating class (composite rates used for issue ages 0-15), and the guaranteed minimum interest rate. A detailed statement of the method of computation of cash value has been filed as required with the insurance department for the state governing this certificate.

UL-SMART-FL01-2009

**Surrender**

Subject to an assignment shown in our records, you may request a surrender of this certificate for its cash value. The cash value will be calculated as of the close of business on the date the request is received in our office and will result in the surrender of this certificate as of that date. Once surrendered, this certificate is of no further effect, our liability under this certificate ends and no death benefit will be paid.

**Surrender Charge**

A surrender charge will be charged upon surrender of this certificate. A portion of the surrender charge will be charged on each withdrawal, if the death benefit option is level on the effective date of the withdrawal, and on each decrease in the face amount. The surrender charge is equal to:

|  | The surrender factor applicable for the certificate year of the surrender, decrease or withdrawal, as shown in the *Certificate Data Pages*, |
|---|---|
| multiplied by | the face amount if a surrender, the decrease in the face amount if a decrease or the amount of the withdrawal if a withdrawal, |
| divided by | $1,000. |

The surrender factors shown in the *Certificate Data Pages* are applicable for the first 15 certificate years:
- after the issue date to the face amount on the issue date.
- after a face amount increase to the amount of that increase.

**Withdrawal**

You may request a withdrawal from the cash value at any time after the first certificate anniversary. The minimum amount of each withdrawal is $500. The maximum amount of a withdrawal will be:

|  | The cash value, |
|---|---|
| minus | The most recent monthly deduction taken prior to our receipt of your withdrawal request, multiplied by 3. |

The withdrawal will be effective on the date we process it. If the death benefit option is level on that date then the face amount will be decreased by the amount of the withdrawal and will be subject to the *Surrender Charge* provision. Withdrawals are subject to the *Change Fee* provision.

## Loans

You may obtain a loan from us, with this certificate as the security for the loan. We will require that you sign our then current loan agreement, available from our office. The loan is effective when we receive the loan agreement that you have signed. The loan amount is the amount you have borrowed from us, plus unpaid accrued interest. Interest is charged each day on the loan amount as of the end of that day.

During the first 7 certificate years, the interest rate that will apply to the loan will be 5% per year. Beginning on the 7th certificate anniversary, the interest rate that will apply to the loan will be 3% per year.

On the effective date of the loan and anytime after that, a portion of the account value is allocated to a loan collateral account. The amount allocated will be such that the loan collateral account is always equal to the loan amount. We pay interest on the daily balance in the loan collateral account at a rate of 3% per year.

The amount of loan available at any time will equal:

|       | The cash value, |
|-------|-----------------|
| minus | the most recent monthly deduction taken prior to our receipt of the signed loan agreement, multiplied by 3. |

All or part of a loan may be repaid at any time that this certificate is in effect. Repayments will reduce the loan amount. Each repayment will be effective the date it is processed by us. All amounts paid to us will be applied as premium unless designated, in writing, that an amount paid is a repayment towards the loan amount.

When the loan balance exceeds the account value minus the applicable surrender charge this certificate will terminate. We will send you, and any assignee of this certificate, notification of termination. Termination will be effective 31 days after the date, as shown in our records, notification is sent. Upon the termination of this certificate, it will be of no further effect, our liability will end and no death benefit will be paid.

## Payments by Us

We may defer payment of the cash value or a withdrawal for up to six months from the date we receive the request for that payment. We may defer payment of a loan for up to six months from the date we receive the request for that payment, unless it is used to pay premiums due to us. If payment of the cash value or a withdrawal is delayed by more than 30 days, we will pay interest as required by the insurance laws of the state governing this certificate.

## Misstatement of Age or Sex

If the age or sex of the insured under this certificate is misstated at issue, the face amount and the rider benefit amount(s), if any, will be adjusted either upward or downward. The revised amounts for the certificate and riders, if any, will be that which the most recent monthly deduction, for that coverage, would have purchased for the correct age and sex. Future monthly deductions, if any, will be based upon the correct age and sex of the insured and the adjusted face amount and rider benefit amount(s). No adjustment will be made to the account value.

## Changes to the Certificate or Riders

Subject to the requirements described in this provision and after the first certificate anniversary, you may request the following changes to your certificate:

- An increase in the face amount.
- A decrease in the face amount.
- The addition of a rider.
- The termination of a rider.
- An increase in a rider benefit amount.
- A decrease in a rider benefit amount.

The effective date of a requested change that we approve will be as of the close of business on the first monthly anniversary after our approval, as shown in our records. The *Change Fee* provision will apply except if the change is an increase in the face amount, an increase in a rider benefit amount or the addition of a rider.

A requested decrease in the face amount or a decrease in a rider benefit amount will be subject to our minimum amount requirements in effect at the effective date of the change. A surrender charge will apply if the face amount is decreased.

An increase in the face amount, the addition of a rider or an increase in a rider benefit amount will be subject to our minimum amount requirements and maximum age restrictions in effect at the effective date of the change. All such requested increases and additions will be subject to satisfactory evidence of insurability of the insured. The monthly deduction for the increased amount or added rider will be at the age of the insured, as of the effective date of the change. The minimum premium will increase. You will be notified of the increased premium amount and of the surrender, face amount and rider benefit amount factors, if applicable, that will apply to the increased amount.

If the face amount or a rider benefit amount has been increased since the issue date, then subsequent decreases to the face amount or rider benefit amount, as applicable, will be applied in the following order:

- First, against the most recent increase.
- Then, against the next most recent increase(s), successively.
- Finally, against the face amount in effect on the issue date.

## Change Fee

The change fee is the amount that we will charge for each change to this certificate except those changes specifically stated in this certificate as excluding this fee. The amount of the fee is $25. This amount may be changed from time to time at our sole discretion, but will not exceed $50.

## Limitation of Action

No action shall be taken on this certificate, or a rider, in a court of law unless the action is filed with a court within five years from the date that the cause of action arose.

## Law Applicable

Your rights or obligations and that of anyone, including the insured or anyone rightfully claiming under this certificate or a rider, will be determined by the laws of the state governing.

## Limiting Effect of our Constitution

The benefits provided under this certificate and each rider will not be reduced, nor will this certificate or rider end, by a provision in our Constitution not stated or referred to in this certificate or rider.

## Suspension or Expulsion

Even if the insured is expelled or suspended from Foresters membership in accordance with our Constitution, this certificate and each rider, subject to its terms, may be kept in effect by continuing to pay the required premiums.

## Maintenance of Reserves

If our reserves become impaired, you may be assessed an equitable proportion of the shortage. You may pay cash or accept a reduction in benefits. If you do neither, your equitable proportion will become an amount owed against this certificate. Interest on this amount will be compounded at a rate determined by us but not more than five percent per year.

## Basis of Computation of Reserves

The reserves are not less than the minimum reserves required by the insurance laws of the state governing this certificate. A detailed statement of the method of computation of reserves has been filed as required with the insurance department for the state governing this certificate.

## Dividends

This certificate is eligible to participate in our divisible surplus. We will determine our divisible surplus each year. After completing two certificate years, you will be entitled to your share, if any, as determined by us, of our divisible surplus. This share is your dividend, which you may receive or use according to the dividend option in effect. Your dividend options are as follows:

1. Have the dividend paid in cash.
2. Leave the dividend with us to accumulate with interest. We will determine the interest rate, but it will not be less than three and one half percent per year.
3. Apply the dividend as a premium under this certificate.

Dividend option (3) will be in effect from the issue date unless changed by you as shown in our records. If changed, the new option applies to future dividends only.

Upon termination of this certificate, if dividends have been credited under dividend option (2), the value of the dividends on deposit will be added to any other benefit payable under the terms of this certificate.

We do not expect to pay dividends under this certificate. If no dividends are paid the dividend options described in this provision do not apply.

**Illustrations**

After the first certificate year, you may request an illustration of this certificate. The illustration will be based on information about this certificate as of the date of the illustration, along with assumptions of future premiums that you would pay and interest rates. The *Change Fee* provision will apply to each such request after the first in each certificate year.

Other than where specifically stated in the illustration, the amounts and values, including the interest rates, shown in an illustration are not guaranteed. Illustrations are not to be relied upon as promises of future premiums required, values, lapse dates, duration of coverage or growth of either the account value or cash value.

## Notification

Notification(s) we send to you about this certificate or a rider will be sent from our head office to your last mailing address shown in our records. You must notify us of a change in address for you or the insured. If premium is being paid under our pre-authorized check plan, you must notify us of a change in banking information.

Every notification, designation and request that you make to us must be in writing, in a form satisfactory to us. You must mail it to our head office or U.S. mailing address for us to act on it. Each will be deemed received by us as of the date shown in our records.

Our head office address is:
The Independent Order Of Foresters, 789 Don Mills Road, Toronto, Ontario, Canada. M3C 1T9. Attn: Certificate Services.

Our U.S. mailing address is: P.O. Box 179 Buffalo, New York. 14201-0179.
Attn: Certificate Services.

These addresses apply unless we notify you in writing of a new address.

## Changes

If a change is made to this certificate or a rider that affects the factors, amounts, rates or premiums shown in the *Certificate Data Pages*, you will be notified and that notification will set out the change and show the new information as applicable. Unless stated otherwise in that notification, information shown in the notification will supersede the comparable information in the *Certificate Data Pages*, and will remain effective until superseded by a subsequent notification sent to you.

## Annual Statement

Each year we will send you an annual statement that includes the following information about this certificate:

- The beginning and end of the period covered by the annual statement.
- The face amount.
- The account value.
- The cash value.
- The loan amount.
- The death benefit.
- Each rider in effect, if any.
- The total premiums paid in the past certificate year.
- Interest credited in the past certificate year.
- The total of the monthly deductions in the past certificate year, including:
  - the total of the monthly administration deductions in the past certificate year,
  - the total of the face amount deductions in the past certificate year,
  - the total of the cost of insurance deductions in the past certificate year, and
  - the total of the monthly rider deductions in the past certificate year.
- The total of all withdrawals during the past certificate year.
- A notice if, on a guaranteed basis, the account value as of the last certificate anniversary would not maintain the certificate in effect until the next certificate anniversary.

# The Independent Order Of Foresters ('Foresters')

A Fraternal Benefit Society Organized 1874
Head Office: 789 Don Mills Road, Toronto, Ontario, M3C 1T9
U.S. Mailing Address: P.O. Box 179, Buffalo, New York 14201-0179
1-800-828-1540

# Foresters SMART Universal Life

Flexible Premium Adjustable Life Insurance Certificate

Adjustable Death Benefit.

Cash Value Payable at Surrender.

Death benefit payable if the insured's death occurs while

the certificate is in effect.

Premiums shown in Certificate Data Pages.

Participating.

This is the last page of this certificate.

# The Independent Order Of Foresters ('Foresters')

## Accelerated Death Benefit Rider
## (for Chronic, Critical and Terminal Illness)

Provides, subject to the provisions of the entire contract, the opportunity for the owner to receive an accelerated death benefit payment(s) if the insured is diagnosed with a chronic illness, critical illness or terminal illness.

**An accelerated death benefit payment will reduce the face amount and the amount, if any, of the account value and loan amount. The minimum premium and monthly deductions due, after the effective date of that payment, will be adjusted based upon the reduced face amount.**

**Receipt of an accelerated death benefit payment under this rider is intended to qualify for favorable tax treatment under the Internal Revenue Code. However, depending on individual circumstances or changes to that code, receipt of an accelerated death benefit may be a taxable event. You should consult a qualified tax advisor in order to assess the tax impact of receiving an accelerated death benefit payment.**

**Receipt of an accelerated death benefit payment may affect your, your spouse's or your family's eligibility for public assistance such as Medicaid, supplemental social security income or other government benefits or entitlements. You should consult each applicable government agency before receiving an accelerated death benefit payment so that you can assess the impact on eligibility for such assistance.**

If this rider was an attachment to a certificate on the certificate issue date, certificate means that certificate. The maximum lifetime acceleration amount, minimum acceleration amount, residual face amount and maximum administrative fee for this rider are shown in the *Certificate Data Pages*.

If this rider was not an attachment to a certificate on the certificate issue date, certificate means the certificate with the certificate number referred to in the notification that we sent you with this rider. The maximum lifetime acceleration amount, minimum acceleration amount, residual face amount and maximum administrative fee for this rider, are shown in that notification.

This rider consists of this page and each following page attached up to the page which states "This is the last page of this Accelerated Death Benefit Rider (for Chronic, Critical and Terminal Illness)".

This rider, while in effect, forms part of the insurance contract. Unless amended by this rider, certificate provisions and definitions apply to this rider. This rider does not have cash value or loan value.

## Definitions

For purposes of this rider:

*Acceleration amount* means, for a payment, the portion of the eligible death benefit accelerated under this rider for that payment.

*Accelerated death benefit payment* and *Payment* mean the payment resulting from accelerating, under this rider, a portion of the eligible death benefit.

*Acceleration factor* means, for a payment, the acceleration amount applicable to that payment divided by the eligible death benefit on that payment's effective date.

*Activities of daily living (ADL)* are the following six self-care functions:
- Bathing – The ability to wash oneself by sponge bath, or in either a tub or shower, including the task of getting into and out of the tub or shower.
- Continence – The ability to maintain control of bowel and bladder function, or, when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for a catheter or colostomy bag).
- Dressing – The ability to put on and take off all items of clothing and any necessary braces, fasteners or artificial limbs.
- Eating – The ability to feed oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by a feeding tube or intravenously.
- Toileting – The ability to get to and from the toilet, get on and off the toilet, and perform associated personal hygiene.
- Transferring – The ability to move into or out of a bed, chair or wheelchair.

*Chronic illness* means the insured:
a) Is unable to perform, without substantial assistance from another person, at least two of the activities of daily living for a period of at least 90 days, due to a loss of functional capacity; or
b) Requires substantial supervision by another person to protect the insured from threats to health and safety due to the insured's severe cognitive impairment.
The chronic illness must be diagnosed by a physician as permanent.

*Critical illness* means the insured has one or more of the following:
- Advanced Alzheimer's Disease (before the insured's 75th birthday) - A progressive degenerative disease of the brain supported by medical evidence that the insured exhibits loss of intellectual capacity resulting in impairment in judgment and memory. This impairment must be medically and objectively determined to have resulted in a significant reduction in mental and social functioning such that the insured requires permanent and continuous daily supervision and is unable to independently perform three or more of the activities of daily living. The physician providing the diagnosis of advanced Alzheimer's Disease and the physician making the objective determination must be board certified in the United States as a neurologist. This diagnosis must be made before the insured's 75th birthday. Advanced Alzheimer's Disease does not include any of the following:
  ○ Other dementing organic brain disorders.
  ○ Psychiatric illnesses.

- Amyotrophic Lateral Sclerosis (ALS) - The diagnosis of ALS must be made by a physician who is board certified in the United States as a neurologist.
- End Stage Renal Failure (Kidney Failure) - The chronic irreversible failure of both kidneys' ability to function, which results in the need for regular hemodialysis, peritoneal dialysis or renal transplantation. The diagnosis of kidney failure must be made by a physician who is board certified in the United States in nephrology.
- Life Threatening (Invasive) Cancer - Only a type of cancer clinically confirmed by a malignant tumor that demonstrates uncontrolled growth with the spread of malignant cells and the invasion of tissue. Leukemia and lymphoma are life threatening cancers. Life threatening cancer does not include any of the following, regardless of the location in or on the body:
    - o  A malignant tumor wherein the tumor cells have not invaded neighboring tissue.
    - o  Pre-malignant tumors.
    - o  Lesions (such as but not limited to intraepithelial neoplasia).
    - o  Benign tumors.
    - o  Polyps.
    - o  Early prostate cancer diagnosed as T1N0M0 or equivalent staging.
    - o  Non-invasive cancer.
    - o  Cancer in situ.
    - o  A skin cancer other than invasive malignant melanoma into the dermis or deeper.
    - o  A malignant tumor in the presence of the Human Immunodeficiency Virus (HIV).
- Major Organ Failure - The diagnosis, by a physician, of irreversible failure of the heart, both lungs, liver, both kidneys, pancreas or bone marrow, with transplantation deemed medically necessary, followed by enrollment, in a recognized organ or bone marrow transplant program in the United States, to be the recipient of a heart, lung, liver, kidney, pancreas or bone marrow transplant.
- Myocardial Infarction (Heart Attack) - An acute myocardial infarction resulting in the death of a portion of the heart due to inadequate blood supply to the relevant area resulting from a blockage of one or more coronary arteries requiring an inpatient hospital stay and resulting in a loss of the normal function of the heart lasting at least 60 days after hospital discharge. The diagnosis of an acute myocardial infarction must be made by a physician who is board certified in the United States in cardiology or internal medicine and based on both of the following:
    - o  New electrocardiographic (EKG) changes, which confirms the diagnosis of an acute myocardial infarction.
    - o  Elevation of cardiac (heart) enzymes to a level that confirms a diagnosis of an acute myocardial infarction.
  Myocardial infarction does not include any previously established myocardial infarction.
- Stroke - An acute cerebrovascular accident (death of brain tissue), due to hemorrhage, thrombosis or embolus producing neurological impairment and resulting in paralysis or other medically measurable objective neurological deficits persisting for at least 30 days and the prognosis by a physician, who is board certified in the United States as a neurologist, is that this paralysis or deficit is permanent. A stroke does not include any of the following:
    - o  TIA's (transient ischemic attacks).
    - o  Head injuries.
    - o  Chronic cerebrovascular insufficiency (restricted blood flow to the cerebrum).
    - o  Reversible ischemic neurological deficits.

*Eligible death benefit* means the face amount in effect.

*Hands-on assistance* means the physical assistance of another person without which the insured would be unable to perform the ADL.

*Physician* is a duly licensed medical practitioner while acting within the scope of an active license to practice medicine in the United States. The physician cannot be you, the insured or a relative of either you or the insured, including a brother, sister, parent, spouse or child of either you or the insured or the spouse of such person. The physician cannot be a business associate of you or the insured.

*Severe cognitive impairment* means a loss or deterioration in intellectual capacity that is:
   a) Comparable to, and includes, Alzheimer's Disease and similar forms of irreversible dementia; and
   b) Measured by clinical evidence and standardized tests that reliably measure impairment in: short-term or long-term memory; orientation as to people, places, or time; deductive or abstract reasoning; or judgment as it relates to safety awareness.

*Standby assistance* means the presence of another person within arm's reach of the insured that is necessary to prevent, by physical intervention, injury to the insured while the insured is performing the ADL (such as being ready to catch the insured if the insured falls while getting into or out of the bathtub or shower as part of bathing, or being ready to remove food from the insured's throat if the insured chokes while eating).

*Substantial assistance* means hands-on assistance or standby assistance.

*Substantial supervision* means continual supervision (which may include cuing by verbal prompting, gestures, or other demonstrations) by another person that is necessary to protect the insured from threats to his or her health or safety (such as may result from wandering).

*Terminal illness* means the insured has a non-correctable illness or physical condition which is reasonably expected to result in death within 12 months of diagnosis.

## When This Rider Comes Into Effect

If this rider was an attachment to the certificate on the certificate issue date, this rider comes into effect on the same day as the certificate, if the insurability of the insured, for purposes of this rider, has not changed between the date of the application and that day.

If this rider was not an attachment to the certificate on the certificate issue date, this rider comes into effect on the date that we approve, as shown in our records, the addition of this rider to the certificate, if the insurability of the insured, for purposes of this rider, has not changed between the date of the application for this rider and the date of that approval.

## End of Rider

This rider ends on the earliest of the following dates:
- The day we receive, as shown in our records, your signed request to end this rider.
- The day the certificate is no longer in effect as described in the certificate.
- The day that the total of the acceleration amounts equals the maximum lifetime acceleration amount.
- The effective date of a payment due to the insured being diagnosed with a terminal illness.

When this rider ends, it is no longer in effect.

The ending of this rider will not prejudice a payment payable for a chronic illness, critical illness or terminal illness that occurs while this rider is in effect. That payment will not put the certificate or this rider back into effect.

## Monthly Rider Deductions

There are no monthly rider deductions for this rider.

## Benefit

Subject to the provisions of the entire contract, you may elect to receive an accelerated death benefit payment due to the insured's chronic illness, critical illness or terminal illness that occurs while this rider is in effect.

## Amount of the Benefit

The amount of each payment will be determined by us, as described below.

The payment will be equal to, on that payment's effective date:
- The applicable acceleration amount, minus;
- The applicable actuarial discount amount, minus;
- The applicable administrative fee, minus;
- The sum of the unpaid monthly deductions on that date, minus;
- The loan repayment amount on that date.

Each payment will be at least equal to the certificate's cash value, if any, on the payment's effective date multiplied by the acceleration factor.

For chronic illness and critical illness, the payment will be less, and for terminal illness may be less, than the acceleration amount applicable to that payment.

## Actuarial Discount Amount

For chronic illness and critical illness the actuarial discount amount will be determined by us and:
1. Will be based upon a number of factors such as the insured's age, premium class and sex (if the base certificate was issued on a sex distinct basis).
2. Will be calculated using a mortality table, determined by us, and an interest rate that will not exceed the greater of:
   a. The current yield on 90-day U.S. Treasury Bills; and
   b. The maximum variable loan interest rate allowed under the NAIC Model Policy Loan Interest Rate Bill, as amended or superseded.
3. Will take into account: the account value on the effective date of the payment; anticipated future premiums; and the present value of the net amount at risk and monthly deductions associated with the applicable acceleration amount.

For terminal illness the actuarial discount amount will be $0.00.

## Administrative Fee

For chronic illness and critical illness the administrative fee will be determined by us but will not be more than the maximum administrative fee shown on the *Certificate Data Pages*.

For terminal illness the administrative fee will be $0.00.

## Acceleration Amount Limits

The acceleration amount for a payment:
- Must be an amount at least equal to the minimum acceleration amount.
- Must be an amount such that the total of the acceleration amounts does not exceed the lesser of 95% of the eligible death benefit on the effective date of the first payment and the maximum lifetime acceleration amount.
- Must be an amount such that the face amount after the effective date of that payment will be at least equal to the residual face amount.
- Is subject to the following:
   o **For Chronic Illness** – The maximum acceleration amount that can be accelerated in any 12 month period, as a result of the insured being diagnosed with a chronic illness, is 24% of the eligible death benefit on the effective date of the first payment due to a chronic illness.
   o **For Critical Illness** – The maximum acceleration amount, that can be accelerated as a result of the insured being diagnosed with a critical illness, is 95% of the eligible death benefit on the effective date of the payment due to that critical illness.
   o **For Terminal Illness** – The maximum acceleration amount, that can be accelerated as a result of the insured being diagnosed with a terminal illness, is 95% of the eligible death benefit on the effective date of the payment due to the terminal illness.

## Claim Provisions

### Notice of Claim

Written notice of claim, for an accelerated death benefit payment, must be received by us, at our designated office, for us to act upon it. The notice should contain enough information to identify the insured.

### Claim Forms

After we receive notice of claim, we will send you the forms that are to be used to file a claim under this rider. If you have not received these forms within 15 days after sending us notice of claim, you shall be deemed to have complied with the requirements as to submission of a claim upon submitting each of the following:

- The type, chronic, critical or terminal, of illness for which a claim is being submitted and the nature of that illness.
- The amount of eligible death benefit that you are requesting be accelerated.
- Written proof, as described in the Proof of Loss provision, that the insured has been diagnosed with a chronic illness, critical illness or terminal illness, as applicable.
- The name, address and phone number of the physician who made the diagnosis and the date of that diagnosis.

### Proof of Loss

We must receive, at our designated office, written due proof, of the insured's chronic illness, critical illness or terminal illness, as applicable, before we will pay an accelerated death benefit payment. That proof must include a certification by the applicable physician of his/her diagnosis of the insured's chronic illness, critical illness or terminal illness.

We may require additional proof including, but not limited to, complete reports, notes and records of the insured's medical history, test results, diagnoses and treatments.

### Physical Examination

We have the right to have the insured medically examined, at our expense, by a physician we appoint, in order to obtain a second medical opinion to confirm the diagnosis and eligibility for the payment.

If that second medical opinion does not confirm the diagnosis and eligibility for the payment, then a third medical opinion, provided by a physician that is mutually acceptable to you and us, will determine eligibility for the payment.

**Claim Approval**

If we approve your claim for a payment, we will send you an offer sheet demonstrating the effect of the payment on the face amount and, as applicable, the minimum premium, account value and loan amount. This offer sheet will also be sent to each assignee and irrevocable beneficiary, if any. The offer sheet will indicate the effective date of the payment and will be valid for a period of 60 days from the date, as shown in our records, we send the offer sheet to you.

You must sign the offer sheet, indicating your election to receive the accelerated death benefit payment, as offered, and return it to us, within the 60 day period, in order for us to process the claim based upon that offer sheet. After the 60 day period a new offer sheet, with updated information and a new effective date, must be requested.

We must also receive the signature(s), on a form we accept, of each assignee and each irrevocable beneficiary, if any, consenting to the payment. We reserve the right to require proof, acceptable to us, of your mental competence on the date you signed the offer sheet.

**Payment**

Payment will be due immediately upon our receipt of due written proof of payment eligibility such as receipt of the proof of loss, signed offer sheet, required consents, if any, and proof of mental competence, if required by us. The payment will be made in a single lump sum.

Payment will be made, while the insured is living, to you or to your estate, unless the payment is otherwise assigned or you designate another recipient.  If the insured dies and we receive notification of that death before a payment has been made, the claim for that payment will be cancelled and the death benefit payable, if any, will be paid as described in the *Death Benefit* provision of the certificate.  Payment(s) made before we receive notification of the death of the insured will reduce the death benefit payable, if any.

## Effect of an Accelerated Death Benefit Payment

An accelerated death benefit payment will not end the certificate, however it will reduce the face amount, and the amount, if any, of the account value and loan amount, on a pro rata basis, based upon the applicable acceleration factor.  The reduction to the face amount for chronic illness and critical illness will be more, and for terminal illness may be more, than the payment. The reduction to the loan amount will be considered a loan repayment amount and will be included in the calculation of the payment.

The minimum premium and monthly deductions due, after the effective date of a payment, will be adjusted based upon the reduced face amount. The adjusted minimum premium and monthly deductions, if any, will be as if the certificate had been issued at the reduced face amount. Subject to the provisions of the entire contract, additional premium may be required, in order to keep the insurance contract in effect after that effective date.

If, on the effective date of the first payment, the certificate's death benefit option is increasing, then it will be changed to level, as of that effective date.

A rider, if any, that only provides coverage for the accidental death of the insured, will not be affected by a payment.

## Reinstatement

This rider may be reinstated if the certificate is reinstated, subject to the same conditions as reinstatement of the certificate, as described in the *Reinstatement* provision of the certificate.

## Incontestability

We will not contest the validity of this rider after it has been in effect, during the lifetime of the insured, for two years, based upon statements made in the application, if this rider is an attached rider, or in the application for this rider, if it was added to the certificate as an attachment after the issue date.

Statements made, after the issue date, in an application for reinstatement will be incontestable two years after the effective date, as shown in our records, of such reinstatement, except as described above in this provision.

## Excluded Risks and Limitations

We will not make a payment for a chronic illness, critical illness or terminal illness that results directly or indirectly from attempted suicide or intentionally self-inflicted injury, while sane or insane.

An accelerated death benefit payment is not meant to allow third parties to cause you to involuntarily reduce the death benefit ultimately payable, under the certificate, to a beneficiary. Therefore, we will not make a payment if we receive notification before payment, as shown in our records, stating that:
- You are required by law to use a payment to meet the claims of creditors, whether in bankruptcy or otherwise; or
- You are required by a government agency to use a payment in order to apply for, obtain, or keep a government benefit or entitlement.

We are not responsible for the effect or validity of such notification.

## The Independent Order Of Foresters ('Foresters')
has issued this rider as an attachment to the certificate.

Head Office: 789 Don Mills Road, Toronto, Ontario M3C 1T9
U.S. Mailing Address: P.O. Box 179, Buffalo, New York 14201-0179
1-800-828-1540

**Executive Secretary**

**International Fraternal President**

This is the last page of this Accelerated Death Benefit Rider (for Chronic, Critical and Terminal Illness).

**Motions**

1:18-cv-24100-MGC Vinas v. The Independent Order of Foresters

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered by Greene, Craig on 9/6/2019 at 4:22 PM EDT and filed on 9/6/2019

**Case Name:**          Vinas v. The Independent Order of Foresters
**Case Number:**       1:18-cv-24100-MGC
**Filer:**                   Digna Vinas
**Document Number:** 31

**Docket Text:**
**Unopposed MOTION to Amend/Correct *Unopposed Motion for Leave to Amend Complaint and Incorporated Memorandum of Law* by Digna Vinas. Responses due by 9/20/2019 (Attachments: # (1) Exhibit A)(Greene, Craig)**

**1:18-cv-24100-MGC Notice has been electronically mailed to:**

Craig Mitchell Greene    CGreene@KramerGreen.com, dbirchall@kramergreen.com, jnapoli@kramergreen.com, mwendler@kramergreen.com, rbuchsbaum@kramergreen.com

Kristina Beth Pett    kristina.pett@mhllp.com, marcia.lamarque@mhllp.com, pfjlaw2101@aol.com

Riley Francis Kennedy    riley.kennedy@mhllp.com, lisa.nurse@mhllp.com

**1:18-cv-24100-MGC Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105629215 [Date=9/6/2019] [FileNumber=19198942-0
] [0fd9c2c32bce9903971439260a62309794ded7c1e0d944e626c89a7dfc54f54b00a
4811ac0cd9a1f38f6245a744b19d6aeeaff4aff4ec70539a774fca850bc8e]]
**Document description:** Exhibit A
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105629215 [Date=9/6/2019] [FileNumber=19198942-1
] [4b1f2d814d5e1372fa7053b15bba2a51e9ef430438c344dffe6c3fd48a3c9890b00
3b4f2fea7d9163bcf8fd5025664073582a440850c75e695e641c96c0a20eb]]

# Complaints and Other Initiating Documents

1:18-cv-24100-MGC Vinas v. The Independent Order of Foresters

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered by Greene, Craig on 9/9/2019 at 12:57 PM EDT and filed on 9/9/2019

**Case Name:**       Vinas v. The Independent Order of Foresters
**Case Number:**     1:18-cv-24100-MGC
**Filer:**           Digna Vinas
**Document Number:** 33

## Docket Text:
**AMENDED COMPLAINT against The Independent Order of Foresters filed in response to Order Granting Motion for Leave, filed by Digna Vinas. (Attachments: # (1) Exhibit A)(Greene, Craig)**

## 1:18-cv-24100-MGC Notice has been electronically mailed to:

Craig Mitchell Greene   CGreene@KramerGreen.com, dbirchall@kramergreen.com, jnapoli@kramergreen.com, shorwick@kramergreen.com

Kristina Beth Pett   kristina.pett@mhllp.com, marcia.lamarque@mhllp.com, pfjlaw2101@aol.com

Riley Francis Kennedy   riley.kennedy@mhllp.com, lisa.nurse@mhllp.com

## 1:18-cv-24100-MGC Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105629215 [Date=9/9/2019] [FileNumber=19202238-0
] [7208fac25f7b984de38577826e2fc0e3b37e323861b3fa38d0972d49133d5971e92
1050e29a68b4e9e73e4efd7337f7ee675c6ec098f65d7e624cc91d528016c]]
**Document description:**Exhibit A
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105629215 [Date=9/9/2019] [FileNumber=19202238-1
] [67df1d778cf491a3a631a59b6cdc29761cd748122129974fb68f04b700cfe3ea730
d400f2f28b51fa578d81208b4b0bee91b828e9ea4be1769212decc87c78c4]]