UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

      Plaintiff,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

      Defendant.
_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

### I.    Introduction

On March 16, 2020, Plaintiff filed a Motion for Leave to File a Second Amended Complaint (Doc. 55-1; the "Second Am. Compl.") seeking to add a futile claim that Foresters fraudulently induced her now deceased husband, Rigoberto Vinas ("Mr. Vinas"), to purchase a life insurance certificate. The deadline to amend pleadings, however, was January 3, 2020. See Order Setting Civil Trial Date and Pretrial Deadlines (Doc. 21; "Scheduling Order") at p. 2. This Court should deny Plaintiff's Motion for several reasons. First, the Motion is too late, and Plaintiff has not established good cause to permit an untimely amendment as required under Federal Rule of Civil Procedure 16(b). Indeed, Plaintiff was fully aware of the facts which underly her Motion prior to the amendment deadline. Further, even if good cause existed, which it does not, leave should not be granted under Rule 15 because Foresters would be unduly prejudiced by granting Plaintiff her requested relief at this late juncture. Finally, this Court should deny the Motion on the grounds of futility because Plaintiff's claim cannot survive a motion to dismiss as it fails as a matter of law, is precluded by the economic loss rule, and

Foresters already agreed to pay Plaintiff's claim under the Certificate, interest, taxable costs and reasonable attorney's fees.

## II.     Background

### A. Procurement of the Certificate

On January 12, 2015, Mr. Vinas completed an Application for Individual Life Insurance (Doc. 34-2; the "Application"). Mr. Vinas named Plaintiff as the sole beneficiary. The Application contained several questions aimed at ascertaining medical information that was material to Foresters' consideration of the risk to insure Mr. Vinas. Id. at 3-5.[1] On the Application Mr. Vinas represented that he had not been diagnosed with, or received treatment for, diabetes within the past 10 years. Id. at 5. *Id.* Mr. Vinas declared and agreed that his Application answers, statements, and representations were "full, complete and true, to the best of [his] knowledge and belief." Id. at 7.

Shortly thereafter, Foresters received an MIB alert that Mr. Vinas might have diabetes. Foresters asked Mr. Vinas to review his MIB Consumer File for accuracy and complete a Diabetes Questionnaire (Doc. 34-3). Mr. Vinas completed the Diabetes Questionnaire on January 15, 2017 and indicated that he did not have diabetes or any complication from diabetes such as any kidney or sensory problems secondary to diabetes. See Diabetes Questionnaire at 2. Mr. Vinas represented:

> Proposed insured had a medical exam done for an insurance policy in 2012. The medical examiner told him that he had Diabetes. After following up with his **primary doctor and doing additional testing he concluded that the proposed** insured did not have Diabetes. He's never taken medication or had treatment for this condition."

---

[1] For ease of the reference, we refer to the ECF page numbers.

*Id.* Once again, Mr. Vinas declared that his statements were true and complete "to the best of [his] knowledge and belief." Id.

Additionally, on January 22, 2015, Mr. Vinas' agent, Jazmin Lightbourn, submitted a letter from Dr. Kenneth Hersman (Mr. Vinas's treating physician), which stated:

> Please be advised that the above mentioned patient has been under my medical care for 15 years. **This patient is in good health and is not taking any medication for diabetes or on a diabetic diet**. He has been advised to diet and exercise on a regular basis.

A copy of the January 22, 2015 Letter is attached as **Exhibit 1** (emphasis added).

Relying on Mr. Vinas's material representations in the Application and Diabetes Questionnaire, Foresters issued SMART Universal Life Insurance Certificate No. 8356627 (Doc. 34-1; the "Certificate"), effective date of January 26, 2015, which provides a base death benefit of $92,000.00. The Certificate's incontestability clause provides that Foresters would not "contest the validity of this certificate after it ha[d] been in effect during the lifetime of the insured **for two years** except for non-payment of premiums." Id. at 14 (emphasis added). The Certificate also contains a merger clause stating that the "entire contract" between Foresters and Mr. Vinas consisted of the Certificate and application materials, in pertinent part. Id. at 10.

**B. Plaintiff's Claim for Benefits Under the Certificate.**

After Mr. Vinas died on January 11, 2017, Plaintiff filed a claim for benefits under the Certificate. Because Mr. Vinas died within the first two years of the Certificate's issuance, Foresters instituted a contestability investigation. On February 1, 2017, Plaintiff submitted Dr. Hershman's medical records.[2] These medical records demonstrate that during the time periods

---

[2] These records appear to be incomplete, as discussed more fully in Foresters' pending Motion to Compel (Doc. 61) at p. 4, n.5. Additionally, contrary to Plaintiff's assertion in the Motion, Foresters did not issue the Certificate based on the medical records which Plaintiff provided during its contestability review. See Motion at 4. Under Florida law, Foresters was

3

asked about in the Application and Diabetes Questionnaire, Dr. Hershman diagnosed Mr. Vinas with diabetes, and attendant kidney and sensory problems. Foresters' underwriter determined that had Mr. Vinas accurately represented his medical history during the application process, Foresters would not have issued the Certificate. By letter dated April 5, 2017, Foresters notified Plaintiff of its determination to rescind the Certificate expressly reserving "all claims and defen[s]es that it may have or further discover." See Rescission Letter (Doc. 61-6).

### C. Procedural History of This Action.

Plaintiff initiated this action on October 4, 2018, asserting claims for breach of contract and declaratory relief against Foresters, and seeking the death benefits under the Certificate and a declaration that Foresters improperly rescinded the Certificate. See Compl. (Doc. 1). In response, Foresters asserted a counterclaim for declaratory judgment of rescission. See Answer, Defenses and Counterclaim (Doc. 16).

Thereafter, the Court entered the Scheduling Order, setting the following deadlines:

- January 3, 2020: deadline to file amended pleadings.
- April 3, 2020: fact discovery deadline.
- April 10, 2020: dispositive and pretrial motion deadline.
- May 15, 2020: expert discovery deadline
- September 14, 2020: two-week trial period

In late August, Plaintiff asked Foresters whether it would object to the filing of an Amended Complaint to seek consequential damages based on her claim that Foresters' denial of her claim resulted in a lawsuit against her in a collection action. Foresters noted that Plaintiff

---

entitled to rely upon Mr. Vinas' statements in the Application and Diabetes Questionnaire. See Fla. Stat. § 627.404; Certain Underwriters at Lloyd's London v. Jimenez, 197 So. 3d 597, 601 (Fla. 3d DCA 2016)

was not entitled to consequential damages under Florida law because Mr. Vinas and Foresters did not contemplate such damages when Foresters issued the Certificate. However, because requests for leave to amend are freely granted before the amendment deadline passes, Foresters did not oppose the amended pleading. After seeking leave from the Court, Plaintiff filed her Amended Complaint on September 9, 2019. See Am. Compl. (Doc. 33). Foresters filed its Answer to Plaintiff's Amended Complaint and re-asserted its counterclaim for a declaratory judgment of rescission. See Answer to Am. Compl. and Counterclaim (Doc. 34).

On March 16, 2020—three and a half months after the deadline to amend—Plaintiff filed the instant Motion seeking leave to assert a claim for fraudulent inducement. See Motion. Plaintiff claims that she did not become aware of the facts supporting her new claim until she deposed Foresters' corporate representative on March 4 and 5. Id. at 1 n.1.

Despite Foresters' numerous requests to take Dr. Hershman's deposition and for Dr. Hershman's medical records, which began when Plaintiff filed her claim at the administrative level, Plaintiff waited until March 26, 2020, to provide a letter from Dr. Hershman stating that he did not diagnose Mr. Vinas with diabetes or any complications from diabetes, and that he did not tell Mr. Vinas that he had diabetes or any diabetic complications. Based on this new information, Foresters agreed to pay Plaintiff's claim for the death benefit in the amount of $92,000.00, plus interest, and reasonable attorney's fees and taxable costs. Foresters also agreed to drop its rescission counter-claim. However, Plaintiff insists, without any legal basis, that she is entitled to consequential damages, and that she is entitled to pursue a fraud claim despite the fact that Foresters' agreed to pay the claim which renders Plaintiff's breach of contract claim moot.

### III.   Standard of Review

After the amendment deadline set forth in a scheduling order has passed, a party must establish good cause to amend its pleading. See Rule 16(b); see also Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1988). To establish good cause, the party must show that the scheduling deadlines could not have been met despite its diligence as to the matter that is the subject of the motion to amend. Sosa, 133 F.3d at 1418.

Thereafter, the Court must consider whether the amendment is appropriate under Rule 15. Ordinarily, leave is granted in the absence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. See Rule 15(a)(2); Garfield v. NDC Health Corp., 456 F.3d 1255, 1270 (11th Cir. 2006) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); United Nat'l Ins. Co. v. Owl's Nest of Pensacola Beach, Inc., No. 3:05CV374MCRMD, 2006 WL 1653380, at *2 n.4 (N.D. Fla. June 8, 2006).

However, the Court may deny leave to amend a complaint when leave would be futile such that "the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

### IV.   Argument

**A. Plaintiff Does Not Establish Good Cause for Failing to Satisfy the Deadline.**

This Court should deny the Motion because Plaintiff has not established good cause for her failure to comply with the Court's Scheduling Order. This Court has recognized that the absence of good cause "would render scheduling orders meaningless." Sanchez v. H&R Maintenance, L.C., 294 F.R.D. 677, 679 (S.D. Fla. 2013) (Cooke, J.). The "good cause standard

precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." Sosa, 133 F.3d at 1418.  Good cause is lacking when a plaintiff "has full knowledge of the information with which it seeks to amend its complaint before the deadline passes," and when a plaintiff fails "to seek the information it needs to determine whether an amendment is in order." S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 n.3 (11th Cir. 2009).

Here, Plaintiff claims that she has good cause to amend her pleading after the Court's deadline because she did not know the specific details of Foresters' investigation prior to rescinding the Certificate until she deposed Foresters' corporate representative on March 4 and 5, 2020.  However, Plaintiff has been fully aware of the basis of Foresters' decision to rescind the Certificate since receiving the Rescission Letter in April 2017. See Alexander v. AOL Time Warner, Inc., 132 F. App'x 267 (11th Cir. 2005) (finding no good cause to amend because the amendment was based on facts that "have been known to the [movant] all along.")  In the letter, Foresters fully set forth the basis of its decision.  Specifically, Foresters stated that the "medical information [it] received during [its] claim investigation indicate[d] that Mr. Vinas had a history of Diabetic Nephropathy and Neuropathy," which "were present during the time period stated in the question," and "should have been disclosed" during the application process. See Rescission Letter at 2.  Foresters noted in the Rescission Letter Mr. Vinas's responses in the Application and Diabetes Questionnaire, and his declaration that such responses were accurate to the best of his knowledge and were material to its decision to issue the Certificate. Id.  Foresters rescinded the Certificate because had Mr. Vinas accurately disclosed his medical conditions, Foresters would not have issued the Certificate. Id.  Additionally, Foresters produced its claim and underwriting file on June 28, 2020, initial written discovery responses in July 2019, amended written

7

discovery responses in August 2019, and underwriting guidelines in September 2020. Although Foresters supplemented its production in March 2020, Plaintiff does not, and indeed, cannot rely on these documents to support her Motion, as they do not shed any light on the issues raised in the Motion.

Therefore, to the extent Plaintiff bases the proposed amendment on Foresters' contestability investigation, she had all the information needed to do so well before the January 3, 2020, amendment deadline. "[W]ith some investigation, [Plaintiff] could have discovered its possible" fraudulent inducement claim, assuming it were not futile. Millennium Partners, L.P. v. Colmar Storage, LLC, 494 F.3d 1293, 1299 (11th Cir. 2007). That is, "[n]othing in [Plaintiff]'s Motion establishes that [Plaintiff] actually diligently sought the subsequently 'revealed' information [she] needed in order to determine whether an amendment was necessary." Wilshire Ins. Co. v. Casablanca on the Bay, No. 15-21644-Civ-Scola, 2016 WL 11499454 (S.D. Fla. July 15, 2016) (Cooke, J.). "The fact that [Plaintiff] failed to conduct such investigation does not equate to 'good cause' for leave to amend under Rule 17." Millennium Partners, 494 F.3d at 1299. Plaintiff does not explain what is "new" about the information, or why she could not have, with a diligent investigation, discovered it earlier. Accordingly, Plaintiff has failed to establish good cause and the Motion is due to be denied.

### B. Foresters Would be Unduly Prejudiced by the Proposed Second Amended Complaint.

Further, even if Plaintiff established good cause, which she has not, the Motion should be denied because Foresters would be prejudiced by permitting Plaintiff to assert a new claim at this late stage of the proceedings. Despite Foresters' repeated requests for Dr. Hershman's records since Plaintiff filed her claim for death benefits, Plaintiff waited until March 26, 2020, to provide Foresters with a letter from Dr. Hershman stating that he did not diagnose Mr. Vinas with

diabetes or any complications from diabetes, and that he did not tell Mr. Vinas that he had diabetes or any diabetic complications. Based on this new information, Foresters agreed to pay Plaintiff's claim for the death benefit in the amount of $92,000.00, plus interest, and reasonable attorney's fees and taxable costs. Foresters also agreed to drop its counterclaim for rescission. The only remaining issue is Plaintiff's unfounded claim that she is entitled to consequential damages. Fact discovery closed on April 3, 2020 and dispositive motions are due on April 10. Courts in the Eleventh Circuit recognize that "[p]rejudice and undue delay are inherent in an amendment asserted **after the close of discovery** and after the dispositive motions have been filed, briefed, and decided." Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999) (emphasis added); see also Columbia Ins. Grp. V. HLJ Enters., Inc., No. CV 311-088, 2012 WL 13005402 (S.D. Ga. Nov. 13, 2012) ("An amendment at this stage of the litigation will most certainly present undue prejudice to the Freeman Defendants who would have been dismissed from the case but for the Court's direction to the Clerk to delay the entry of judgment until, such time as counsel for the Garners were satisfied that the Order of June 19, 2012 protected its interests."). Because fact discovery has closed, dispositive motions are due in four days, and the only remaining issue is Plaintiff's entitlement to consequential damages, it would unduly prejudicial to permit Plaintiff to assert a new claim at this stage of the proceedings.[3]

---

[3] Notably, Foresters was unable to depose Plaintiff prior to the close of discovery due to the outbreak of the COVID-19 pandemic. As an elderly woman, Plaintiff is at higher risk of having a severely negative reaction to COVID-19. In accordance with the advice of the CDC and government officials, Plaintiff is staying inside her home at this time. Therefore, Foresters may file a motion to extend the dispositive motion deadline in order to take Plaintiff's deposition regarding her claim for consequential damages, and file a motion for summary judgment on this limited issue.

### C. Plaintiff's Proposed Second Amended Complaint is Futile.

Finally, even if Plaintiff established good cause, which she has not, and Foresters would not be prejudiced by granting Plaintiff leave to amend, which it would, the Motion should be denied on the ground of futility. In this Circuit, "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999). Here, this Court should deny Plaintiff's Motion because Plaintiff's Proposed Second Amended Complaint is futile. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Cockrell, 510 F.3d at 1310. In the Second Amended Complaint, Plaintiff fails to allege new facts from which the district court could conclude that she has successfully stated a claim for relief, her new claim fails as a matter of law because it is precluded by the economic loss rule, and Foresters has already agreed to pay the benefits due under the Certificate plus interest on Plaintiff's duplicative breach of contract claim. See Vanderberg v. Donaldson, 259 F.3d 1321, 1327 (11th Cir. 2001).

Under Florida law, a fraudulent inducement claim requires proof of: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent **injury by the party acting in reliance on the representation**." Johnson Enters. of Jacksonville, Inc. v. FPL Grp., 162 F.3d 1290, 1315 (11th Cir. 1998) (emphasis added). In addition to the usual notice pleading standard under Rule 8, Rule 9(b) requires that, in order to survive a motion to dismiss, a plaintiff must allege facts supporting a fraud claim with particularity. Medimport S.R.L. v. Cabreja, 929 F. Supp.2d 1302, 1318 (S.D. Fla. Mar. 12, 2013) ("Where a complaint contains averments of fraud or mistake . . . [Rule 9(b)] imposes a

10

heightened pleading standard, requiring that the circumstances constituting fraud be state with particularity.").

Here, Plaintiff's claim is futile because she lacks standing to assert that Foresters fraudulent induced *Mr. Vinas* to enter into a contract. Plaintiff does not, and cannot, allege that she is a party to the Certificate. There is no dispute that Foresters issued the Certificate to Mr. Vinas. Accordingly, because Plaintiff is not a party to the Certificate, she lacks standing to assert that Foresters fraudulently induced Mr. Vinas to purchase the Certificate. Medimport S.R.L. v. Cabreja, 929 F. Supp.2d 1302, 1316 (S.D. Fla. Mar. 12, 2013) ("Medimport is not a party to the Distribution Agreement. Therefore, Medimport lacks standing to assert a claim for fraudulent inducement to enter into that agreement.")

Additionally, even assuming *arguendo* that Plaintiff has standing, and her factual allegations are true, she does not state a claim for fraudulent inducement. The fourth element of a fraudulent inducement claim requires the plaintiff to show that the party who acted in reliance on the representation sustained an injury. Plaintiff alleges that Foresters fraudulently induced *Mr. Vinas* to purchase the Certificate. Plaintiff does not allege that Foresters fraudulently *induced her* to enter into an agreement. Accordingly, Plaintiff's Proposed Second Amended Complaint is futile, and the Motion should be denied.

Further, Plaintiff's claim is barred by the economic loss rule. This Court holds that "statements or misrepresentations made to induce an individual to enter a contract, if later contained within the terms of the actual contract, cannot constitute a basis on which to bring the fraud claim." Ben-Yishay v. Mastercraft Dev., LLC, 553 F. Supp.2d 1360, 1370 (S.D. Fla. 2008). Such claims are barred by the economic loss rule, which prohibits tort claims, such as fraud in the inducement, when alleged damages are contractual in nature. Excess Risk

11

Underwriters, Inc. v. Lafayette Life Ins. Co., 208 F. Supp.2d 1310, 1318-19 (S.D. Fla. 2002). Here, Plaintiff does not allege that Foresters made any representations separate and apart from the statements contained in the Certificate. (Second Am. Compl. ¶¶ 32, 36). Plaintiff "has not pled a claim for fraud that is separate and distinct from the alleged breach of contract." Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co., 208 F. Supp.2d 1310, 1319 (S.D. Fla.2002). Essentially, Plaintiff alleges that Foresters induced Mr. Vinas to purchase the Certificate because Foresters did not intend to abide by the terms of the Certificate. "These allegations constitute the heart" of Plaintiff's breach of contract claim. Id. That is, Plaintiff does not allege that Foresters made any fraudulent representations other than the terms of the Certificate. Therefore, Plaintiff's proposed claim for fraudulent inducement is futile. Ben-Yishay, 553 F. Supp.2d at 1370 (dismissing a fraudulent inducement claim because "[e]ach of the allegedly fraudulent misrepresentations on which [p]laintiffs allegedly relied [we]re the same obligations memorialized in the agreement.")

Relatedly, Foresters has already agreed to pay Plaintiff the benefits due under the Certificate plus interest. As discussed above, where, as here, "the fraud complained of is related to the performance of the contract, the economic loss rule will limit the parties to their contractual remedies." Hugh v, Greslin, No. 03-61674-CIV, 2004 WL 5589736, at *5 (S.D. Fla. Dec. 14, 2004). Because Foresters has already agreed to pay Plaintiff her remedy under the contract, Plaintiff's fraudulent inducement claim is moot.

To the extent that Plaintiff intends to base her fraudulent inducement claim on a representation other than the terms of the Certificate, she has failed to plead any facts to support her claim and has certainly not done so with enough specificity to satisfy Rule 9. Rule 9 provides that "a party must state with particularity the circumstances constituting fraud." See

12

Rule 9(b). To properly plead a fraud claim, a plaintiff must allege the "who, when, when, where, and how of the allegedly false statements and then allege generally that those statements were made the required intent." BICZ v. Colliers Int'l, No. 8:17-cv-1840-T-17CPT, 2019 WL 4714373 (M.D. Fla. Sept. 10, 2019) (quoting Mizzaro v. Home Depot, 544 F.3d 1230, 1237 (11th Cir. 2008)). Plaintiff's proposed amended pleading does not contain identify any alleged misrepresentation, other than the terms of the Certificate. Therefore, to the extent Plaintiff attempts to avoid the economic loss rule, she fails to satisfy Rule 9's pleading requirements.

## V. Conclusion

For the reasons stated above, this Court should deny Plaintiff's Motion.

Dated: April 6, 2020

    MCDOWELL HETHERINGTON LLP
    Attorneys for Defendant/Counter Plaintiff
    2385 N.W. Executive Center Drive, Suite 400
    Boca Raton, FL 33431
    (561) 994-4311
    (561) 982-8985 fax

    By: ___s/Kristina B. Pett
        KRISTINA B. PETT
        Fla. Bar No. 0973688
        kristina.pett@mhllp.com
        DANIELLE E. SHURE
        Fla Bar No. 118911
        danielle.shure@mhllp.com

## **CERTIFICATE OF SERVICE**

I certify that on April 6, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Craig M. Greene, Esq.
>Kramer Green Zuckerman Greene & Buchsbaum, P.A.
>4000 Hollywood Blvd.
>Suite 485-S
>Hollywood, FL 33021
>cgreene@kramergreen.com
>*Counsel for Plaintiff/Counter Defendant*
>
>Adrian Neiman Arkin, Esq.
>Mintz Truppman, P.A.
>1700 Sans Souci Blvd.
>North Miami, FL 33181
>adrian@mintztruppman.com
>*Co-Counsel for Plaintiff/Counter Defendant*
>
>>s/Kristina B. Pett
>>Kristina B. Pett