UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:18-cv-24100-MGC

DIGNA VINAS,

     Plaintiff,

vs.

THE INDEPENDENT ORDER OF
FORESTERS,

     Defendant.

_____/

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Plaintiff, Digna Vinas ("Vinas"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 7 and S.D. Fla. L.R. 7.1(c)(1), hereby files her Reply to Defendant's Response to Plaintiff's Motion for Leave to File Second Amended Complaint (D.E. 72) and states:

**Good Cause Exists Under Rule 16(b)(4) to Allow Plaintiff
to Amend Her Complaint to Add a Cause of Action
For Fraud In the Inducement**

Despite Defendant's unsupported argument to the contrary, the first evidence Plaintiff had that Foresters fraudulently induced Mr. Vinas into purchasing the Policy was revealed during the depositions of Foresters' Corporate Representative, David Sullivan, and claims adjuster, Lisa Buckland, on March 4 and 5, 2020.  It was during those depositions that Plaintiff first learned of Foresters' fraud, and despite its promise to the contrary, it never intended to pay a claim if Mr. Vinas died during the first two years of the policy, even if Mr. Vinas answered Application questions to his best knowledge and belief.   It was during these depositions that Plaintiff learned for the first time that it didn't matter to Foresters what Mr. Vinas' best knowledge and belief was when the application was taken, because it never asked

about, nor did it ever determine, Mr. Vinas' best knowledge and belief when it denied the

claim.  The claim adjuster responsible for denying the claim admitted:

> Q:  …[D]o you make your inquiries trying to determine what the proposed insured's best knowledge and belief was at the time they filled out the application, or do you make your inquiry to determine if the insured left out, for example, a diagnosis that he may or may not have known about?
>
> …
>
> A:  I look to see if there was anything that was not disclosed on the application.
>
> Q.  So your focus is not whether the insured knew about the thing that was not disclosed, your inquiry is to determine whether or not there was a diagnosis, or a test, or something like that that was not disclosed?
>
> A.  I want to see if there was any medical information that was not disclosed on the application.

See, Lisa Buckland deposition, attached hereto as Exhibit "A", p. 14, l. 10 – p. 15, l. 5

(Emphasis supplied).  That was not all.  Incredibly, Ms. Buckland acknowledged Foresters'

determination of the insured's best knowledge and belief is not relevant, as she will "do up a

rescission letter" anyway.

> Q.  Your way doesn't tell you the actual answer [what the insured's best knowledge and belief is]; does it?
>
> A.  No.
>
> •    •    •
>
> Q.  Do you rescind the policy, even though you have not made a determination whether the insured knew of the condition?
>
> A.  At that point I would do up a rescission letter and send it to management for review.

Id., p. 23, l. 7-9, p. 19, l. 23 – p. 21, l. 4.  All this testimony and information was revealed for

the first time during the two Foresters' depositions on March 4th and 5th.  Plaintiff timely filed

her Motion to Amend to include a cause of action for fraudulent inducement 12 days later.

Moreover, this information could not, as argued by Foresters, be gleaned from a review of Foresters' denial letter. (DE 72, p. 7). Nowhere in the denial letter or other discovery did Foresters admit that it never intended to pay Vinas' claim <u>even if the insured answered the application questions to his best knowledge and belief</u>.   This was information revealed for the first time in these depositions.  Accordingly, and pursuant to Rule 16(b)(4), good cause exists for permitting this amendment because the facts supporting fraudulent inducement claim were learned at the depositions taken on March 4 and 5, 2020. <u>See</u> <u>Blount v. Credit Protection Ass., LP</u>, 2016 WL 3034066 at * 2 (M.D. Fla., May 25, 2016) (good cause existed under Rule 16(b)(4) because plaintiff established that new information regarding the extent of CPA's allegedly unlawful practices was found through recently-produced discovery); <u>Hess v. Coca-Cola Refreshments USA, Inc.</u>, 2014 WL 5080258 (M.D. Fla, Sept.  29, 2014) (during the deposition of plaintiff, Coca-Cola obtained new information relating to the liability of third-party defendant, therefore, good cause existed to allow amendment of the third-party complaint after the scheduling deadline).

Additionally, Plaintiff was diligent in both taking discovery and moving to amend. More specifically, Plaintiff timely requested the deposition of Foresters' corporate representative, which was originally set for September 11, 2019, in Toronto, Canada. Prior to the deposition taking place, Plaintiff was informed that a person identified by Foresters as having firsthand knowledge of these issues, and who was scheduled to be deposed, had left their employment.  Thus, Plaintiff had to wait weeks and involve the Court just to obtain the witness's last known address.

Once the address was provided by the Defendant, with some help from Magistrate Judge Goodman,[1] the depositions were originally rescheduled to take place in January 2020, however, Foresters' counsel was called into trial and the depositions had to be rescheduled for March 4th and 5th 2020.  During these depositions is when Plaintiff learned for first time that Foresters had deceived Mr. Vinas, and that it had no intention of ever paying on this policy during the first two years of the policy regardless of the insured's "best knowledge and belief."  Plaintiff's Motion to Amend was filed 12 days later.  Plaintiff's Motion for Leave to Amend should be granted.

## Foresters Will Not Suffer Any Suffer Prejudice by the Granting of the Present Motion to Amend

Foresters has claimed it would be unduly prejudiced by the timing of the present Motion.  This argument is not only unsupported, it is belied by Foresters' own actions. Specifically, Foresters recently requested an additional 120 or 240 days to conduct discovery. [D.E. 76].  That Motion was and remains unopposed by the Plaintiff.  Certainly, during this additional time for discovery, Foresters will be able to fully depose the Plaintiff on whatever issues it wants, including fraudulent inducement.  In turn, Plaintiff will be able to depose Foresters' representatives on this new issue as well.  Further, it is ultimately hypocritical for

---

[1]  The Court wrote:

> If Plaintiff's motion is correct, then Defendant is refusing to provide the last known contact information for two former employees. In the absence of any additional factors generating a logical rationale for this defense discovery position, the Undersigned's initial assessment (which is subject to change upon receiving the "other side of the story") is that this "we're not-providing-last-known-contact-information" position is untenable.
> …

See D.E. 38.

4

Foresters to claim prejudice on this issue since, despite the case being filed in October 2018, Defendant never even requested to take Mrs. Vinas' deposition until February 2020.

While not particularly relevant to the disposition of this Motion, in its Response, Foresters argues that it allegedly made "repeated requests" [D.E. 72, p.8] for Dr. Hershman's medical records, and that it was not until receipt of a March 26, 2020 letter from Dr. Hershman, that Foresters conceded its denial was wrong and agreed to pay the policy benefit. First, what has this argument got to do with whether Foresters is prejudiced by the amendment? Nothing! Second, the statement of "repeated requests" is absolutely false. The record is clear that Foresters never even subpoenaed Dr. Hershman's medical records until February 18, 2020. [D.E.61-3]. That's right. Foresters waited until 45 days before the end of discovery (in a 2018 case) to first try to obtain records from the single treating doctor whose records provided the entire basis for Foresters' denial. This fact was confirmed during the deposition of Foresters' corporate representative, wherein Foresters testified that:

Q. Okay. So then, the entire basis for your denial of the claim was the content of Dr. Hershman's medical records?

A. Correct.

See, David Sullivan deposition, attached hereto as Exhibit "B", p. 132, l.19 – p. 133, l. 7.

In fact, in addition to subpoena power, Foresters also had available to it, a medical records authorization form to obtain Mr. Vinas' medical records which it could have used anytime to obtain all Dr. Hershman's records. See, Ex. B, Sullivan depo, p. 37, l. 24 – p. 38, l.22. It never did! Indeed, according to Foresters' own testimony, Foresters knew as early as January 2015, before the Policy was even issued, that Mr. Vinas went to see Dr. Hershman

regarding the very question about diabetes and was <u>expressly told</u> that he did <u>not</u> suffer from diabetes.

> Q:      … Mr. Vinas went to see the doctor [Dr. Hershman] and was advised that he does not suffer from diabetes.  <u>All of that was in the system [Foresters' system]; correct?</u>
>
> A.      <u>Yes</u>.

<u>See</u>, Ex. A, Buckland depo, p. 54, l. 18 – 24 (emphasis supplied), DE 72-1.).  The fact is there were no "repeated requests" that went unheeded - just Foresters getting caught wrongfully denying a claim based on evidence it had available to it for over three years!  Perhaps this explains why Foresters failed to attach any of the supposed "repeated requests" for Dr. Hershman's records to its Response. For Foresters to now suggest that a March 2020 letter from Dr. Hershman <u>again</u> advising that Mr. Vinas did not have diabetes was somehow newly discovered information is a complete fabrication that fails to support any claim of supposed prejudice.  Plaintiff's Motion to Amend should be granted.

### <u>Plaintiff's Proposed Amendment is not Futile and Plaintiff Has Alleged Every Element Necessary to State a Cause of Action for Fraud in the Inducement</u>

#### <u>The Economic Loss Rule Does Not Apply to Preclude Plaintiff's Amendment</u>

Foresters first alleges that the amended complaint is futile because the fraudulent inducement claim is precluded by Florida's Economic Loss Rule ("ELR").  To support this argument, Foresters cites to a number of cases from 2001 to 2008.  Significantly, <u>none</u> of the cases cited post-date 2013.  That is because, in 2013, the Florida Supreme Court decided <u>Tiara Condominium Ass., Inc. v. Marsh & McLennan Co., Inc.</u>, 110 So. 3d 399, 407 (Fla. 2013), which expressly held Florida's ELR does not preclude fraud in the inducement causes of action and <u>only</u> applies to product liability cases.

Having reviewed the origin and original purpose of the economic loss rule, and what has been described as the unprincipled extension of the rule, we now take this final step and <u>hold that the economic loss rule applies only in the products liability context. We thus recede from our prior rulings to the extent that they have applied the economic loss rule to cases other than products liability</u>.

<u>Id</u>. at 407. (Emphasis supplied). <u>See also</u>, <u>Seminole Masonry, LLC v. Hodges</u>, 2018 WL 3489554 at *1 FN1 (S.D. Fla., July 19, 2018) (same).  As such, Foresters' entire argument based upon its attempted application of the ELR is legally wrong.

Next, to the extent Foresters argues there are no allegations separate and apart from the breach of contract claim which support the fraud claim, Foresters is factually wrong. Plaintiff's proposed Second Amended Complaint has specifically alleged that Foresters' fraud occurred prior to entering into the policy, because Foresters never intended to pay Vinas' claim even if the insured answered the application questions to his best knowledge and belief. [D.E. 55-1 at ¶¶ 37-42.] Thus, the fraud occurred when Foresters induced Mr. Vinas to enter into the policy and not during the performance of it.

The Florida Supreme Court has expressly held that a cause of action for fraudulently inducing one to enter into a contract is not inconsistent with a cause of action for a subsequent breach of that contract, and that the two may co-exist:

[O]ne who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud. When this happens and the defrauding party also refuses to perform the contract as it stands, he commits a second wrong, and a separate and distinct cause of action arises for the breach of contract. <u>The same basic transaction gives rise to distinct and independent causes of action which may be consecutively pursued to satisfaction. "Thus, an action on a contract induced by fraud is not inconsistent with an action for damages for the deceit;</u> ...." 18 Am. Jur. 139, El. of Rem. § 14 (1st ed. 1938). "A right of action on a contract and for fraud in inducing plaintiff to enter into such contract may exist at the same time, and a recovery on one of the causes will not bar a subsequent action on the other." 50 C.J.S. Judgments § 676, p. 121 (1st ed. 1947). The courts of many states have recognized the rule that a

suit on a contract and a suit for fraud in inducing the contract are two different causes of action with separate and consistent remedies.

HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239-1240 (Fla. 1996). See also, Cafaro v. Zois, 2015 WL 3821752 at *16-17 (S.D. Fla., June 1, 2015) (relying on the reasoning in HTP in not dismissing a fraudulent inducement claim). In this case, the fraud occurred at the time of contracting when Foresters fraudulently induced Mr. Vinas into purchasing a policy, because Foresters never intended to pay during the first two years of the policy even if Mr. Vinas answered application questions to his best knowledge and belief.[2]

The facts giving rise to Foresters' breach, on the other hand, occurred two years later when Foresters wrongfully denied the Plaintiff's life insurance claim. These are two different causes of action, representing different wrongs, with different elements, and different remedies. The Florida Supreme Court recognized the distinction when it gave an example and explained: "whether [a] defendant was truthful during the formation of the contract is unrelated to the events giving rise to the breach of the contract." HTP at 1239. Indeed, while the issue of Foresters' truthfulness at the time of sale is relevant to the fraud case, it wasn't a necessary element for Plaintiff to have succeeded in her breach of contract action. Additionally, just because Foresters decided to pay a portion of the breach of contract claim,

---

[2] Further, Mr. Vinas detrimentally relied on Foresters' representation that such a claim would be paid by affirmatively cancelling another life insurance policy he had for several years where the contestability period had already expired! The remaining allegations of this cause of action are contained in the proposed Second Amended Complaint. [D.E. 55-1 at ¶¶ 37-43].

does not preclude the present fraudulent inducement claim from going forward.   Foresters has cited nothing to suggest otherwise.[3]

Further, the suggestion that the misrepresentation being part of the contract itself should dissuade the Court from granting this Motion has also been consistently rejected.  In <u>Harbaugh v. Greslin</u>, 2004 WL 5589736 (S.D. Fla., Dec. 14, 2004), Judge Cohn, citing to several Florida appellate Court decisions, addressed this very issue and reaffirmed "the notion that a knowing fraud perpetrated to induce someone to enter into a contract can be extinguished by the simple expedience of including the fraudulent representation in the contract makes no sense."  <u>Id</u>. at 4-5 [4] Accordingly, Plaintiff's amendment is not futile and is recognized as a viable cause of action under Florida law.

<u>Digna Vinas Has Standing to Bring This Cause of Action</u>

Foresters' suggestion that Mrs. Vinas does not have standing to bring a fraudulent inducement claim is completely unsupported and nonsensical.  The only case Foresters cites to for this proposition is <u>Medimport S.R.L. v. Cabreja</u>, 929 F. Supp. 2d 1302, 1315 (S.D. FL. 2013).  This case, however, is totally distinguishable.  This Court will note that Foresters did not cite to the <u>Medimport</u> Court's reasoning or analysis and only quoted one sentence from the Order.   That sentence was "Because Medimport is not a party to the Distribution Agreement, it lacks standing to assert a claim for breach of that agreement." <u>Id</u>. at 1315. The <u>reason</u> for the Court's decision, however, is found in the sentence immediately preceding the

---

[3] In terms of damages, Foresters has only agreed to pay the face amount of the policy plus appropriate interest. Foresters has not agreed to pay the additional damages sustained as a result of its breach. [D.E. 73].

[4] Because Foresters' Rule 9 argument relies upon the same erroneous reading and application of Florida law, Foresters' Rule 9 argument fails as well.

9

one quoted by Foresters; a sentence omitted from Foresters memo.  Specifically, the Court used the same reason for dismissing the fraud count as it did the breach of contract count and stated "Medimport has failed to allege any basis upon which it may otherwise invoke the benefits of a contract to which it is not a party." Id. (Emphasis supplied).

Foresters has completely ignored the facts of this case and the allegations in Vinas' proposed Second Amended Complaint that Mrs. Vinas was a direct beneficiary under Mr. Vinas' life insurance policy. [D.E.55-1 at ¶ 5, 30, 31]. Thus, applying the Medimport standard, Mrs. Vinas was directly injured by Foresters' fraudulent conduct when inducing her husband to enter into the Policy. Accordingly, Mrs. Vinas has alleged a "basis upon which … [she] may … invoke the benefits of a contract to which [she] is not a party" Id.  The holding in Medimport is inapplicable and the reasoning actually supports Vinas' Motion.

In addition, Foresters' argument should be denied for its lack of practical applicability. Specifically, to accept Foresters' standing argument would be to eliminate from jurisprudence any claim for fraud with respect to all life insurance policies, as the named insured in the majority of such policies is usually deceased. Thus, according to Foresters, no beneficiary would ever be able to sue for breach of contract or fraud.  Perhaps this is why Foresters could not find a single case to cite even suggesting that a beneficiary of a life insurance policy does not have standing to sue for fraud in the inducement.

Accordingly, Plaintiff's amendment is not futile and alleges a cognizable action for fraudulent inducement against Foresters.

WHEREFORE, Plaintiff, Digna Vinas, respectfully requests leave of this Court to file a Second Amended Complaint.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing has been electronically

filed with the Court and a copy has been served on April 17, 2020 on:  Kristina B. Pett, Esq.

Kristina.pett@mhllp.com and Danielle Shure, Esq., Danielle.shure@mhllp.com, McDowell,

Hetherington, LLP, 2101 N.W. Corporate Blvd., Suite 316, Boca Raton, FL  33431.

> KRAMER, GREEN, ZUCKERMAN,
> GREENE & BUCHSBAUM, P.A.
> Co-Counsel for Plaintiff
> 4000 Hollywood Blvd., Suite 485-S
> Hollywood, FL  33021
> (954) 966-2112 – phone
> (954) 981-1605 - fax
>
> By:      /s/ Craig M. Greene
> Craig M. Greene, Esq.
> Fla. Bar No. 618421
> cgreene@kramergreen.com
>
> and
>
> Adrian Neiman Arkin, Esq.
> MINTZ, TRUPPMAN, P.A.
> Co-Counsel for Plaintiff
> 1700 Sans Souci Boulevard
> North Miami, FL  33181
> (305) 893-5506 – phone
> adrianarkin@mintztruppman.com

11