UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

        Plaintiff/Counter Defendant,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

        Defendant/Counter Plaintiff.

_____/

## THE INDEPENDENT ORDER OF FORESTERS' MOTION
## TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

        Defendant, The Independent Order of Foresters ("Foresters") moves to dismiss Plaintiff Digna Vinas's Second Amended Complaint (Doc. 94; "Second Am. Compl.") pursuant to Article III of the United States Constitution and Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rule(s)").  In support, Foresters states:

### I.      Introduction

        This is an action that should have ended on April 3, 2020, when Foresters paid Plaintiff the full $92,000 death benefit (the "Death Benefit") under a life insurance certificate naming Plaintiff as the beneficiary, plus accrued interest to compensate Plaintiff for the delay in receiving the funds, and agreed to pay reasonable attorney's fees and recoverable costs.  At that point, Foresters fulfilled all of its contractual obligations under the life insurance policy, and made Plaintiff whole.  Foresters requested counsel's time records in order to resolve the remaining issue regarding the amount of reasonable attorney's fees and recoverable costs, but he refused to provide the requested information.  Instead, Plaintiff filed a Second Amended Complaint seeking extra-

contractual consequential and punitive damages for the alleged delay in receiving the Death Benefit, previous denial of the claim, and alleged fraudulent misrepresentations in the Certificate, despite the fact that Foresters honored the contract and paid the benefits due once it received proof that Mr. Vinas was not aware of the medical conditions that were not disclosed in the application.

By way of brief background after Rigoberto Vinas ("Mr. Vinas") passed away and Plaintiff filed her claim, Foresters conducted a contestability investigation, as permitted by Florida law and the Certificate, and discovered that Mr. Vinas misrepresented his medical history in his life insurance application, which rendered the Certificate void. After Plaintiff initiated this action on October 4, 2018, Foresters, through discovery, sought to obtain Mr. Vinas's medical records to among other things, ascertain  Mr. Vinas's knowledge of the medical conditions that he did not disclose in his application.  However, Foresters was stonewalled at every turn.  Plaintiff served meritless objections and imposed frivolous roadblocks, which required Foresters to schedule a discovery hearing, and prompted the Court to order the parties to brief the issues.[1]  On March 26, 2020, after months of wasting judicial resources, Plaintiff finally provided Foresters with evidence establishing her entitlement to the Death Benefit. As soon as Plaintiff provided this evidence, Foresters approved her claim, and paid the full Death Benefit and accrued interest to compensate Plaintiff for the delay in receiving the funds, and agreed to pay reasonable attorney's fees and costs.[2]  On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which

---

[1] See Defendant's Motion to Overrule Plaintiff's Subpoena Objections and Responses to Defendant's Written Discovery (Doc. 61); Plaintiff's Response (Doc. 62); Paperless Order (Doc. 66) (directing Foresters to provide a declaration in support of its motion); Defendant's Affidavit (Doc. 67);  Paperless Order (Doc. 68) (ordering the parties to provide additional briefing).

[2] Once the Court became aware of the parties' settlement, after having wasted time analyzing the parties' numerous filings, the Court suspended the briefing schedule.  See Paperless Order (Doc. 71).

included the $92,000.00 Death Benefit and $26,220.74 in interest.  <u>See</u> Settlement Check (**Exhibit 1**).  In doing so, Foresters fulfilled all of its contractual obligations.

Nevertheless, despite the fact that Plaintiff has been fully compensated, she filed the Second Amended Complaint and attempts to assert three causes of action against Foresters in order to recover extra-contractual damages, which she is not entitled to as a matter of law.  In Count I, Plaintiff asserts a breach of contract claim based on Foresters' alleged untimely payment of the Death Benefit.  However, the Court should dismiss this  claim because:  (1) it has been rendered moot, as Foresters tendered the full Death Benefit, plus interest, which made Plaintiff whole and compensated her for any delay in receipt of the funds; and (2) Plaintiff has failed to state a claim for breach of contract because she has failed to plead that Foresters breached the Certificate, or that she experienced recoverable damages.  In Count II, Plaintiff seeks a declaration that the Certificate was valid and in force at the time of the insured's death.  Count II should be dismissed because there is no case or controversy for the Court to resolve, as Foresters has already acknowledged the Certificate's validity.  Finally, in Count III, Plaintiff attempts to assert a fraudulent inducement claim against Foresters.  However, this Court should dismiss Count III because: (1) Plaintiff lacks standing to assert a fraudulent inducement claim against Foresters; (2) Plaintiff fails to allege the requisite elements of fraud with the specificity required by Rule 9(b); and (3) Plaintiff does not allege that Foresters committed any wrongdoing separate and apart from its alleged breach of contract, for which she has already been made whole.  Plaintiff should not be given any additional opportunities to amend her pleading because the Second Amended Complaint is Plaintiff's third attempt to state her claims against Foresters.  Therefore, for the reasons stated herein, the Second Amended Complaint should be dismissed with prejudice.

## II.        Factual Allegations in the Second Amended Complaint

On January 26, 2015, Foresters issued the Certificate to Mr. Vinas, insuring Mr. Vinas's life in the amount of $92,000.  See Second Am. Compl. ¶¶4, 6; Certificate (Doc. 94-1).  Mr. Vinas named Plaintiff, his wife, as the sole beneficiary.  See Second Am. Compl. ¶5.

After Mr. Vinas died on January 11, 2017, Plaintiff filed a claim for the Death Benefit.  Id. ¶¶9, 14.  Because Mr. Vinas died within the Certificate's two year contestability period, Foresters conducted a contestability investigation, as permitted under Florida law.  See id. ¶35; Certificate at 14; Fla Stat. 627.455 ("Every insurance contract shall provide that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue.").  On Mr. Vinas's application for the Certificate and accompanying Diabetes Questionnaire, Mr. Vinas declared that "the statements, answers, and representations contained . . . [we]re full, complete, and true to the best of [his] knowledge and belief."  See Second Am. Compl. ¶¶23, 33.  However, during Foresters' contestability investigation, Foresters came to believe that Mr. Vinas's application answers were not true to the best of his knowledge and belief. Id. ¶22.  Accordingly, by letter dated April 5, 2017, Foresters notified Mrs. Vinas of its decision to rescind the Certificate.  Id. ¶10.

On October 4, 2018, Plaintiff initiated this action and sought Death Benefit under the Certificate.  See Compl. (Doc. 1).  On September 9, 209, Plaintiff amended her complaint to seek consequential damages in addition to the Death Benefit.  See Am. Compl. (Doc. 33).

Throughout the discovery process, Foresters attempted to obtain additional information about Mr. Vinas's medical history and his knowledge of his conditions.  However, Plaintiff repeatedly impeded Foresters' efforts by making unwarranted objections, which required Foresters to schedule a discovery hearing and file a motion to overrule Plaintiff's objections.  See Notice of

Hrg. (Doc. 52); Motion to Overrule (Doc. 61). Plaintiff did not provide any evidence suggesting that Mr. Vinas believed that his application answers were accurate until March 26, 2020. Once Foresters received this information, the parties reached a partial settlement, in which Foresters agreed to pay Plaintiff the Death Benefit under the Certificate, plus interest, as well as reasonable attorney's fees and taxable costs. See Notice of Partial Settlement (Doc. 73). On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest. See Settlement Check.

Nevertheless, on August 4, 2020, Plaintiff filed the Second Amended Complaint. In Count I, Plaintiff re-asserts her claim for breach of contract and seeks to recover consequential damages as a result of "Foresters' failure to timely pay the death benefit." See Second Am. Compl. ¶19. In Count II, Plaintiff seeks a declaration that the Certificate was "valid and in full force and effect" at the time of Mr. Vinas's death. Id. ¶26. Finally, in Count III, Plaintiff asserts a claim for fraud in the inducement based on Foresters' alleged breach of the terms of the Certificate. Id. ¶¶30-45. Specifically, Plaintiff claims that "Foresters falsely and fraudulently represented, **through language in the Policy** and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief" "in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy." Id.¶¶36-37 (emphasis added). **II.**

**III. Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. A complaint must state sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is plausible only where "the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. This standard requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Iqbal, 556 U.S. at 678 (stating that under this standard, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While factual allegations are accepted as true, the court is not required to accept mere conclusory allegations or conclusions of law. Iqbal, 556 U.S. at 678; Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453 (2006); see also Warren Tech., Inc. v. UL LLC, 962 F.3d 1324, 1328 (11th Cir. 2020) ("[A] court is not required to credit 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts.'") (citation omitted).

IV. **Discussion**

    a. **Plaintiff's claim for breach of contract should be dismissed because Plaintiff has not sustained any recoverable damages.**

In Count I of the Complaint, Plaintiff asserts a claim for breach of contract based on "Foresters' failure to timely pay the death benefit to Vinas." See Second Am. Compl. ¶18. In order to state a claim for breach of contract under Florida law, a plaintiff must plead: (1) that a contract existed; (2) that there was a breach of contract; and (3) that damages occurred. See Bland v. Freightliner LLC, 206 F. Supp.2d 1202, 1210 (M.D. Fla. 2002). Although Foresters initially denied Plaintiff's claim, it has since paid Plaintiff the full Death Benefit, plus interest. Plaintiff has been made whole, and this claim is now moot, as there is no longer a case or controversy for

6

the Court to resolve.[3]   Additionally, Plaintiff has failed to state a claim for breach of contract because:  (1) she fails to allege that Foresters breached the Certificate; and (2) she fails to allege that she has experienced any recoverable damages.

First, Plaintiff's breach of contract claim should be dismissed as moot.   Article III of the United States Constitution requires courts to decide only cases or controversies.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992).   However, a "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Al Najjar v. Ashcroft, 273 F.3d 1330, 1335-36 (11th Cir. 2001).   "Plainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004). Here, there is no longer a "live" issue as to whether Foresters breached the Certificate, and whether Plaintiff has experienced any damages.  On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $$118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest. See Settlement Check.[4]  The interest payment compensated Plaintiff for any damages she may have experienced between her loss and the date Foresters issued the check.  See Ins. Co. of N. Am. v. Lexow, 937 F.2d 569 (11th Cir. 1991) ("After determination of the amount of damages

---

[3] The only remaining issue for the Court to resolve is the amount of reasonable attorney's fees and taxable costs to which Plaintiff is entitled.  Foresters asks the Court to retain jurisdiction as to this limited issue.

[4] The Court may consider the Settlement Check in resolving this Motion without converting it into one for summary judgment because the authenticity of the check is undisputed, and the issue of whether, and when, Foresters paid Plaintiff the Death Benefit, plus interest, is central to Plaintiff's breach of contract claim.  See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Additionally, because the Settlement Check directly contradicts Plaintiff's assertion that Foresters has not paid the Death Benefit, the Settlement Check governs and the Court must disregard Plaintiff's allegation.  See Eiras v. Florida, 239 F. Supp.3d 1331, 1342 (M.D. Fla. 2017) ("[W]hen the Court considers exhibits attached to a motion to dismiss, and those exhibits directly contradict the allegations in the pleading, the exhibits govern.").

and defendant's liability, the plaintiff is to be made whole by an award of prejudgment interest from the date of the loss."); see also Gross v. Silverg, No. 11-80210-CIV-MIDDLEBROOKS/VITUNAC, 2012 WL 13129923, at *3 (S.D. Fla. Mar. 16, 2012) (same); Norsul Oil & Min. Co., Ltd. v. Texaco, Inc., 703 F. Supp. 1520 (S.D. Fla. 1988) ("The purpose of awarding interest on damages incurred is to make whole the party owed those damages by compensating him for the loss of the use of h[er] money for the period involved."). Therefore, because Foresters already paid the entire Death Benefit, plus interest, it could not have breached the Certificate, Plaintiff has not been damaged, and there is no longer a case or controversy for the Court to resolve. See Stewart v. Chesapeake Life Ins. Co., No. 5:17-cv-380-Oc-30PRL, 2017 WL 4410097, at *2 (M.D. Fla. Oct. 4, 2017) (dismissing a breach of contract claim brought against a life insurance company because the insurance company "paid the entire death benefit," and therefore "could not have breached the policy.").

Additionally, Plaintiff's breach of contract claim should be dismissed because she has failed to state the requisite elements for breach of contract. As discussed, Foresters paid the Death Benefit, plus interest, and therefore did not breach the Certificate as a matter of law. See Stewart, 2017 WL 4410097 at *2. Further, Plaintiff has failed to allege that she has experienced any recoverable damages. There is no dispute that Plaintiff received the full Death Benefit, plus interest, and therefore has not experienced any direct contractual damages.

Here, Plaintiff has also failed to sufficiently allege that she is entitled to consequential damages. "Consequential damages are '[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act.'" See Kingship Hospitality, Inc. v. Am. Economy Ins. Co., No. 5:18-cv-520-Oc-30PRL, 2018 WL 6427681, at *2 (M.D. Fla. Dec. 5, 2018) (citing Black's Law Dictionary (10th ed. 2014)); see also Keystone Airpark Auth. v. Pipeline

8

Contractors, Inc., 266 So.3d 1219, 1222-23 (Fla. 1st DCA 2019) ("Consequential damages . . . stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting.").  A plaintiff may only recover consequential, or special, damages, if she can "prove the damages were within the contemplation of the parties when the contract was formed."  Trident Hospitality Fla., Inv. v. Am. Economy Ins. Co., No. 6:08-cv-289-Orl-22GJK, 2008 WL 11334515, at *2 (M.D. Fla. May 30, 2008) (citation omitted); DiDomenico v. N.Y. Life Ins. Co., 837 F. Supp. 1203, 1206 (M.D. Fla. 1993) (recognizing that consequential damages are unavailable to an insured who "proved that Defendant merely breached the insurance policy provisions without violating the [bad faith] statute or if [the insured] cannot prove that such damages were contemplated by the parties at the time they executed the policy.").  Rule 9(g) provides that "[i]f an item of special damage is claimed, it must be specifically stated."  See Rule 9(g).

Plaintiff alleges that as a result of Foresters' alleged breach, she sustained consequential damages, "including but not limited to" her "inability to pay necessary monthly expenses," "unpaid debts, accruing interest and defense costs in defense of the county court collection action," in which Plaintiff is being sued in the amount of $11,810.87, "and other expenses."  See Second Am. Compl. ¶18.  These allegations are insufficient to state a claim for consequential damages. Plaintiff's Complaint is devoid of any allegations suggesting that when Foresters issued the Certificate to Mr. Vinas on January 26, 2015, Foresters contemplated paying Plaintiff's monthly living expenses, unpaid debts, and a potential judgment in a collection action, plus interest.  Any suggestion that Foresters assumed these risks is belied by the Certificate's merger clause, which provides that the Certificate and application materials, inter alia, constitute the parties' "entire

contract," which could not be modified by anyone.  <u>See</u> Certificate at 10.  The merger clause expressly limits the scope of the parties' agreement to the subjects mentioned in the enumerated documents.  Noticeably absent from the Certificate is any mention of Plaintiff's "monthly expenses," "debts," or judgments in collection actions.

Notably, the Florida Supreme Court recognizes that "[t]he very purpose of life insurance is to provide a sanctuary from the rigors and uncertainties of age, unemployment, and other disabilities that eventually incumber all flesh, and to provide some assurance that those dependent on the insured will at least have bread when he is gone."  <u>N.Y. Life Ins. Co. v. Kincaid</u>, 122 Fla. 283, 298 (Fla. 1935); <u>see also</u> <u>Sciaretta v. Lincoln Nat'l Life Ins. Co.</u>, No. 9:11-cv-80427-DM, 2013 WL 11317858, at *1 n.1 (S.D. Fla. May 6, 2013) ("The fundamental purpose of life insurance is to provide financial protection to the living in the end of death.").  Accordingly, to achieve these ends, Mr. Vinas purchased the Certificate with a $92,000.00 Death Benefit, which Foresters agreed to pay.  Plaintiff seems to believe that regardless of the face value of a life insurance policy, a beneficiary should be able to recover an amount sufficient to cover all debts when the insured dies.  Plaintiff has not, and cannot, provide any support for her contention that she is entitled to damages beyond the face value of the Certificate.

Plaintiff's allegations are also insufficient to satisfy the pleading requirements of Rule 9(g).  "The primary purpose of Rule 9(g) is one of notice, both to 'inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint.'"  <u>Landsman v. City of Vero Beach</u>, No. 13-14375-CIV-GRAHAM/LYNCH, 2015 WL 10960951 (S.D. Fla. Oct. 21, 2015)(citation omitted).  To the extent that Plaintiff seeks to recover her "necessary monthly expenses," "unpaid debts," and all "other expenses," Plaintiff has not provided Foresters and the Court with sufficient notice of the damages she seeks.

Plaintiff's conclusory demand for "all expenses," including but not limited to all monthly expenses and all unpaid debts is insufficient to inform Foresters and the Court of the specific nature of the damages Plaintiff seeks.  Id. (striking the plaintiff's claims for special damages because they "failed to give Defendants sufficient notice.").

Additionally, to the extent that Plaintiff seeks to recover the $11,810.87 for which she is being sued for in a county court collection action, Plaintiff's claim is not ripe.  As of the date of this filing, no judgment has been entered against Plaintiff.  Therefore, any future liability Plaintiff might face in the collection action is purely speculative and non-recoverable under Florida law.  See Casey v. Bank of Am., N.A., No. 13-60983-CIV-DIMITROULEAS, 2014 WL 12580515, at *2 (S.D. Fla. March 12, 2014) ("Under Florida law, speculative damages are not recoverable for a breach of contract.").

Notably, Plaintiff's failure to plead her entitlement to extra-contractual consequential damages underscores that there is no Article III case of controversy for the Court to resolve, as Plaintiff has been fully compensated.  Ultimately, Plaintiff's claim for breach of contract is due to be dismissed because it is moot.

**b. Plaintiff's claim for declaratory relief should be dismissed because there is no live controversy for the Court to resolve.**

In Count II of Plaintiff's Second Amended Complaint, she seeks a declaration that the Certificate was "valid and in full force and effect" at the time of Mr. Vinas's death.  See Second Am. Compl. ¶¶26-27.

> An essential element of every declaratory judgment action is the existence of an "actual controversy" between the parties.  An actual controversy exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Ordinarily, a controversy is not sufficiently immediate or real where the parties' dispute is only hypothetical and not yet ripe, has been rendered moot, or where the court's resolution of the matter would be purely academic.

11

Mt. Hawley Ins. Co. v. Tactic Security Enforcement, Inc., 252 F. Supp.3d 1307 (M.D. Fla. 2017) (internal citations omitted).  Here, Plaintiff has failed to state a sufficient claim for declaratory relief because she has not alleged the existence of an actual controversy between the parties.  As discussed in Section IV.a supra, Foresters acknowledged that the Certificate was "valid and in full force and effect" at the time of Mr. Vinas's death, and paid Plaintiff the Death Benefits, plus interest.  Thus, any issue regarding the validity of the Certificate is now moot.  See 200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp., 965 F. Supp.2d 1405, 1408 (S.D. Fla. 2013) (finding that a claim for declaratory judgment was moot because the parties agreed that the property damage in dispute was covered under the insurance policy).  Therefore, Count II of Plaintiff's Second Amended Complaint for declaratory judgment should be dismissed.

> **c. Plaintiff's claim for fraud in the inducement should be dismissed because Plaintiff lacks standing and failed to allege that Foresters committed any wrongdoing other than breach its contractual obligations.**

In Count III of Plaintiff's Second Amended Complaint, she  attempts to assert a claim for fraud in the inducement.  Specifically, Plaintiff states, in a conclusory fashion, that "Foresters falsely and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief" "in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy."  See Second Am. Compl. ¶¶36-37.  Plaintiff's claim should be dismissed because

she lacks standing, and has failed to state a claim for  fraudulent inducement with the specificity required by Rule 9(b). [5]

As a threshold matter, Plaintiff's claim should be dismissed because she lacks standing. To establish standing for a fraudulent inducement claim based on a misrepresentation, "Plaintiff must demonstrate either (1) that the Defendant['s misrepresentation was directly made to [her] and Plaintiff relied on the misrepresentation to [her] detriment; or (2) that Plaintiff was properly assigned the rights to pursue this claim by the original party to whom the misrepresentation was made and detrimentally relied upon." Branch Banking & Trust Co. v. Appraisalfirst, Inc., No. 10-21141-CIV-GOLD/MCALILEY, 2010 WL 11596299, at *4 (S.D. Fla July 7, 2010)(citing

---

[5] Additionally, on February 5, 2020, Plaintiff filed a Civil Remedy Notice ("CRN") pursuant to Fla. Stat. § 624.155 ("Section 624.155"), alleging that Foresters engaged in bad faith conduct based on the same allegations in the fraudulent inducement claim. See CRN (attached as **Exhibit 2**).  Although Foresters repeatedly attempted to obtain information about Mr. Vinas's medical history and his knowledge of his medical conditions throughout the discovery process, Plaintiff impeded Foresters' efforts with unwarranted objections.  Despite Foresters' repeated requests, including seeking a discovery hearing with the Court and filing a motion to compel, Plaintiff failed to provide any evidence suggesting that Mr. Vinas's representations were accurate until March 26, 2020—leaving Foresters only 10 days to potentially "cure" any alleged violation. See Section 624.155(5)(c) ("No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.").  Immediately thereafter, on April 3, 2020, Foresters agreed to pay the full Death Benefit, plus interest and reasonable attorney's fees and costs, and thereby cured any harm caused by Plaintiff's alleged violations.  See Foresters' CRN Response (attached as **Exhibit 3**) and Foresters' CRN Letter (attached as **Exhibit 4**).  Because Foresters corrected the alleged violations within 60 days after Plaintiff filed the CRN, Section 624.155 precludes Plaintiff from seeking bad faith damages against Foresters.  See Section 624.155(5)(c).  Notably, "it is not necessary that extra-contractual damages be paid by an insurer to avoid bad faith litigation." Franklin v. Minnesota Mut. Life Ins. Co., 97 F. Supp.2d 1324, 1329 (S.D. Fla. 2000) (citing Talat Enterprises, Inc. v. Aetna Casualty & Surety Co., 753 So.2d 1278, 1283 (Fla. 2000)).  Here, Plaintiff's attempt to assert a fraudulent inducement claim, in which she seeks extra-contractual punitive damages, is a statutorily precluded bad-faith claim in disguise.  This is evident from Plaintiff's written discovery requests, which seek evidence of bad faith.  See Plf.'s Third Request for Production (attached as **Exhibit 5**) and Plaintiff's Second Set of Interrogatories (attached as **Exhibit 6**).  Therefore, Plaintiff's "fraudulent inducement" claim is impermissible as a matter of law.  See Franklin, 97 F. Supp.2d at 1329 (dismissing a bad faith claim because the insurance company cured the alleged violation within 60 days); see also Galante v. USAA Cas. Ins. Co., 895 So.2d 1189 (Fla. 4th DCA 2005) (same).

Connecticut v. Health Net, Inc., 383 F.3d 1258, 1261 (11th Cir. 2004)).  Plaintiff lacks standing under the first prong because she does not allege that Foresters fraudulently induced her to purchase the Certificate.  Instead, she claims that Foresters made fraudulent statements to Mr. Vinas in order to induce him to purchase the Certificate.  Additionally, Plaintiff lacks standing under the second prong because she fails to allege that Mr. Vinas assigned his right to Plaintiff to pursue a fraudulent inducement claim.

Notably, Plaintiff's status as a third party beneficiary of the Certificate is insufficient to confer standing to pursue a claim for fraudulent inducement.  Under Florida law, general principles of contract law give an intended third-party beneficiary standing to enforce a contract.  Enterprise Leasing Co. v. Demartino, 15 So.3d 711, 714 (Fla. 2d DCA 2009).  Here, however, Plaintiff does not seek to enforce the Certificate, but instead seeks extra-contractual and punitive damages, to which she is not entitled under Florida law or the terms of the Certificate.  Therefore, Plaintiff's status as a third party beneficiary does not give her standing to pursue this tort claim.  See Branch Banking, 2010 WL 11596299 at **3-5 (analyzing whether plaintiff was a third party beneficiary in order to determine whether she had standing to pursue a breach of contract claim, and analyzing whether the plaintiff was assigned rights under the contract to determine whether she had standing to pursue a fraudulent misrepresentation claim).

Additionally, Plaintiff has also failed to state a sufficient claim for fraudulent inducement with the specificity required by Rule 9(b).  Under Florida law, to state a claim for fraudulent inducement, a plaintiff must allege:  "(1) false statement of material fact or suppression of truth by the defendant; (2) the defendant knew or should have known the statement was false, or made the statement without knowledge as to its truth or falsity; (3) the defendant intended the false statement or omission would induce the plaintiff's reliance; and (4) the plaintiff relied to his detriment."

14

Latell v. Triano, No. 2:13-cv-565-FtM-29CM, 2014 WL 6240001, at *4 (M.D. Fla. Nov. 13, 2014) (citations omitted).  Notably, "[w]here a complaint contains averments of fraud . . . [Rule 9(b)] imposes a heightened pleading standard, requiring that the circumstances constituting fraud be state with particularity."  Medimport S.R.L. v. Cabreja, 929 F. Supp.2d 1302, 1318 (S.D. Fla. Mar. 12, 2013).  Under Rule 9(b), a plaintiff must set forth

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).

Here, Plaintiff does not sufficiently allege any of the elements with the specificity Rule 9(b) requires.  Plaintiff simply states that "Foresters falsely and fraudulently represented, through language in the Policy . . . that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief" "in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy."  Id.¶¶36-37.  Plaintiff does not identify any allegedly fraudulent statements, representations, or omissions, much less the time, place, person responsible, and content of those statements.  Plaintiff's conclusory allegations regarding an unidentified representation, at an unknown time and place, by an unidentified individual, are insufficient, and the Court need not accept these at true in resolving the Motion.  See Warren Tech., 962 F.3d at 1328 ("[A] court is not required to credit 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts.'").  Further, with respect to the third and fourth elements in particular, Plaintiff does not allege that Foresters made any fraudulent statements to

**her** to induce her to purchase the Certificate, or that **she** relied on Foresters' statements to her detriment. Instead, Plaintiff alleges that Foresters made allegedly false representations to Mr. Vinas in order to induce him to purchase the Certificate. <u>See</u> Second Am. Compl. ¶¶36-37. Accordingly, Plaintiff's allegations are insufficient to state a claim for fraudulent inducement, and should be dismissed.

Notably, to the extent that Plaintiff claims that Foresters' fraudulent conduct consisted of failing to adhere to the representations in the Certificate regarding Foresters' right to investigate whether Mr. Vinas answered the questions in his Application to the best of his knowledge and belief within two years of issuing the Certificate, Plaintiff's claim fails as a matter of law because it violates Florida's Independent Tort Rule. Under this doctrine, "a plaintiff may not pursue a tort theory of relief where a contract created the duty to act, performance is measured against the contractual obligations, and the contract provides the remedy for defective performance." <u>Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Protection LP</u>, No. 19-14050-CIV-ROSENBERG/MAYNARD, 2019 WL 3428552, at *2 (S.D. Fla. Apr. 18, 2019). "In practical effect it bars a plaintiff from raising a tort cause of action that restates a breach of contract cause of action. For a tort claim to stand, it must be <u>independent</u> of the breach of contract claim." <u>Id.</u> (emphasis in original). "In assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract." <u>Kaye v. Ingenio, Filale De Loto-Quebec, Inc.</u>, No. 13-61687-CIV, 2014 WL 2215770, at *5 (S.D. Fla. May 29, 2014). Notably, "statements or misrepresentations made to induce an individual to enter a contract, **if later contained within the terms of the actual contract**, cannot constitute a basis on which to bring the fraud claim." <u>Ben-Yishay v. Mastercraft Dev., LLC</u>, 553 F. Supp.2d 1360, 1370 (S.D. Fla. 2008) (emphasis added).

Here, Plaintiff does not allege that Foresters committed any wrongdoing independent of its alleged breach of contract.  Plaintiff simply alleges that "the Policy provisions constituted specific representations to o by [sic] Foresters in the form of contractual promises and/or statements of present intention," and Foresters did not intend to perform those provisions.  See Second Am. Compl. ¶32.  Even assuming this allegation is true, which Foresters disputes, Foresters' promise to pay the Death Benefits was embodied in the Certificate, and therefore the appropriate remedy for failure to comply is a breach of contract claim.  See Kaye, 2014 WL 2215770 at *5 (dismissing a fraudulent inducement claim because "[w]hile the initial promise may have been fraudulent, the terms of the purported fraud were memorialized in the License Agreement," and therefore, "any failure to comply with those terms results in an action for breach of contract." ).  That is, Plaintiff does not allege that Foresters made any pre-contractual statements which induced Mr. Vinas to purchase the Certificate, and certainly not with the specificity Rule 9(b) requires.  Instead, she relies on a statement within the contract.  Id. (citing HTP, Ltd. v. Lineas Aras Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla 1996)).  Plaintiff's fraud claim is "inextricably intertwined with Plaintiff's breach of contract claim," because they require proof of the same wrongful conduct. See Perez v. Scottsdale Ins. Co., No. 19-22761-Civ-Scola, 2019 WL 5457746, at *4 (S.D. Fla. Oct. 24, 2019)(dismissing a fraudulent inducement claim because "the misrepresentations alleged [were] in the performance of the contract.").  Therefore, Plaintiff's fraudulent inducement claim should be dismissed.  See Lookout Mountain Wild Animal Park, Inc. v. Stearns Zoological Rescue & Rehab Ctr., Inc., 553 F. App'x 864, 865 (11th Cir. 2014) (affirming the district court's order dismissing various tort claims, including fraudulent inducement, because the "plaintiff ha[d] not identified any tortious acts that [we]re sufficiently independent of the alleged of contract to render the tort claims viable.")

Based on prior briefs in this action, Foresters anticipates that Plaintiff will rely on Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Co., 110 So.3d 399 (Fla 2013) to suggest that she can assert a fraudulent inducement claim which alleges no wrongdoing independent of a breach of contract.  Plaintiff is wrong.  Although the Tiara court limited the applicability of the economic loss doctrine to product liability cases, the Independent Tort Rule is still viable.  Indeed,  in Justice Pariente's concurring opinion, she states that "in order to bring a valid tort claim, a party must still demonstrate that all of the required elements of the cause of action are satisfied, including that the tort is independent of any breach of contract claim." Id. at 408 (Pariente, J., concurring) (emphasis added) (citing Lewis v. Guthartz, 428 So.2d 222, 224 (Fla. 1982) (holding that there must be a tort "distinguishable from or independent of [the] breach of contract" in order for a party to bring a valid claim in tort based on a breach in a contractual relationship)) and Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co., 482 So.2d 518, 519 (Fla. 3d DCA 1986) ("[A] breach of contract, alone, cannot constitute a cause of action in tort . . . it is only when the breach of contract is attended by some additional conduct which amounts to an independent  tort that such breach can constitute negligence.")).

Based on Justice Pariente's concurrence, the Eleventh Circuit recognized that separate and apart from the economic loss rule, Tiara appears to have left intact the additional hurdle that "a party must still demonstrate that . . . the tort is independent of any breach of contract claim." Lamm v. State Street Bank & Trust, 749 F.3d 938, 947 (11th Cir. 2014).  Federal district courts throughout Florida continue to apply the Independent Tort Rule.  See Cafaro v. Zois, No. 15-CIV-80150, 2015 WL 3821752, at *16 (S.D. Fla. June 2, 2015) ("Certainly, though, a tort claim can be stated alongside a claim for breach of contract where the plaintiff has alleged conduct that does not itself constitute breach of contract at issue."); Burdick v. Bank of Am., N.A., 99 F. Supp. 3d 1372, 1378

(S. D. Fla. 2015) (dismissing tort "claims because they should have been brought in contract rather than negligence," as a party asserting a tort claim "must demonstrate that the tort is independent of any breach of contract claim."); Tulepan v. Roberts, No. 14-CV-80574, 2015 WL 235441, at *6 (S.D. Fla. Jan. 16, 2015) (granting summary judgment for the defendant based on the independent tort doctrine); Alhassid v. Bank of Am., N.A., 60 F. Supp.3d 1302, 1318 (S.D. Fla. 2014) (nothing that Tiara did not dismantle the independent tort rule); Freeman v. Sharpe Res. Corp., No. 6:12-CV-1584-ORL-22T, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (acknowledging the viability of the independent tort doctrine); See also Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Protection LP, No. 19-14050-CIV-ROSENBERG/Maynard, 2019 WL 348552 (S.D. Fla. Apr. 18, 2019) ("Following Justice Pariente's concurrence, many federal courts in Florida continue to apply the Independent Tort Doctrine."), adopted, Doc. 25, (S.D. Fla. June 14, 2019).[6]  Specifically, since Tiara, courts have relied on the independent tort rule to preclude fraudulent inducement claims, similar to the one Plaintiff attempts to assert here. Lookout Mountain, 553 F. App'x at 865; Perez, 2019 WL 5457746 at *4; Kaye, 2014 WL 2215770 at *4.

If, however, the Court declines to dismiss Plaintiff's fraudulent inducement claim, then it should strike Plaintiff's request for attorney's fees under Fla. Stat. § 627.428.  Section 627.428 provides that upon entry of judgment against an insurer and in favor of an insured, the court shall award reasonable attorney's fees in favor of the insured and against the insurer.  However, Section 627.428 applies only to claims for insurance benefits.  The Florida Supreme Court's most recent applicable holding states: "[W]e hold that recovery for attorney's fees under Section 627.428

---

[6] Although a minority of courts have found Justice Pariente's concurrence unpersuasive as merely dicta, this is not the prevailing view.  The overwhelming weight of authority indicates that the independent tort doctrine is viable.

19

requires an <u>incorrect denial of benefits</u> by the insurance company . . . ." <u>Johnson v. Omega Ins. Co.</u>, 200 So.3d 1207, 1219 (Fla. 2016) (emphasis added).[7]

Indeed, "one of the circumstances in which attorney's fees consistently are <u>not</u> authorized under the statute is in actions in which an insured has prevailed against an insurer on a tort claim." <u>Hilson v. Geico Gen. Ins. Co.</u>, No. 8:11-cv-13-MSS-MAP, 2016 WL 3211474, at *6 (M.D. Fla. Mar. 31, 2016) (collecting cases); <u>see also</u> <u>United Gen. Life Ins. Co. v. Koske</u>, 519 So.2d 71, 72 (Fla. 5th DCA 1988) ("Claimants in negligence actions are not entitled to attorney's fees under this statute."). Plaintiffs' fraudulent misrepresentation claim against Foresters is a tort claim, and fees for its successful prosecution are not compensable under Fla. Stat. § 627.428. Therefore, if the Court finds that Plaintiff's allegations survive the Independent Tort Rule, it should strike Plaintiff's request for attorney's fees related to this claim.

### d. All claims should be dismissed with prejudice.

The Second Amended Complaint should be dismissed with prejudice. Dismissal with prejudice is appropriate where, as here, a plaintiff has already had multiple opportunities to state a claim. "Plaintiff here appears essentially to be on a fishing expedition in an attempt to state a cause of action against Defendants." <u>Gellert v. Richardson</u>, No. 95-256-CIV-ORL-19, 1996 WL 107550, at *6 (M.D. Fla. Jan. 26, 1996). It would not be "proper to require Defendant[ ] to continuously spend time and money defending an action while a Plaintiff . . . file[s] in seriatim attempts to state new causes of action based on conclusory allegations." <u>Id.</u> Accordingly, Plaintiff's claims should be dismissed with prejudice.

---

[7] Although Foresters agreed to pay Plaintiff reasonable attorney's fees and taxable costs incurred in pursuing the Death Benefit with respect to Count I, Plaintiff is not entitled to attorney's fees for her remaining claims.

**V. Conclusion**

Accordingly, Foresters requests that this Court enter an Order dismissing the Second Amended Complaint with prejudice.  Foresters also requests that this Court retain jurisdiction to determine the appropriate amount of attorney's fees and taxable costs Plaintiff is entitled to recover with respect to Count I.

Dated: August 18, 2020                    MCDOWELL HETHERINGTON LLP
                                          Attorneys for Defendant/Counter Plaintiff
                                          2385 N.W. Executive Center Drive, Suite 400
                                          Boca Raton, FL 33431
                                          (561) 994-4311
                                          (561) 982-8985 fax


                                          By: ___s/Kristina B. Pett
                                              KRISTINA B. PETT
                                              Fla. Bar No. 0973688
                                              kristina.pett@mhllp.com
                                              DANIELLE E. SHURE
                                              Fla Bar No. 118911
                                              danielle.shure@mhllp.com

**<u>CERTIFICATE OF SERVICE</u>**

      I certify that on August 18, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

             Craig M. Greene, Esq.
             Kramer Green Zuckerman Greene & Buchsbaum, P.A.
             4000 Hollywood Blvd.
             Suite 485-S
             Hollywood, FL 33021
             cgreene@kramergreen.com
             *Counsel for Plaintiff/Counter Defendant*

             Adrian Neiman Arkin, Esq.
             Mintz Truppman, P.A.
             1700 Sans Souci Blvd.
             North Miami, FL 33181
             adrian@mintztruppman.com
             *Co-Counsel for Plaintiff/Counter Defendant*

                   <u>s/Kristina B. Pett</u>
                   Kristina B. Pett