UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

        Plaintiff/Counter Defendant,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

        Defendant/Counter Plaintiff.

_____/

## THE INDEPENDENT ORDER OF FORESTERS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF FORESTERS' MOTION TO DISMISS

Defendant, The Independent Order of Foresters ("Foresters") moves for an Order staying discovery until the Court rules on Foresters' pending Motion to Dismiss Plaintiff Digna Vinas's Second Amended Complaint (Doc. 95; "Motion to Dismiss").  In support, Foresters states:

**I.**     **Introduction**

This case should have been over on April 3, 2020, when Foresters fully compensated Plaintiff by paying her the death benefit under a life insurance policy, plus interest, and agreeing to pay reasonable attorney's fees and costs.  However, Plaintiff's counsel has precluded Foresters from evaluating the reasonableness of his requested fees because he has refused to provide time records.  In an effort to gain leverage and circumvent Florida law which precludes Plaintiff from asserting a bad faith claim since Foresters cured all alleged violations, Plaintiff's counsel filed the facially insufficient Second Amended Complaint, which should be dismissed in its entirety.  Discovery should be stayed pending resolution of the Motion to Dismiss because Foresters would be substantially prejudiced by having to respond to discovery requests which will be rendered

moot if the Motion to Dismiss is granted, and Plaintiff would not be harmed in any way by the delay.

Count I of the Second Amended Complaint is nothing more than Plaintiff's attempt to re-assert her moot breach of contract claim, in which she seeks to recover extra-contractual consequential damages for the alleged delay in receiving the death benefit—the same delay for which she was already compensated with an interest payment.  In Count II, Plaintiff asks this Court for a declaration that the life insurance policy was valid when she filed a claim, even though Foresters already acknowledged that the policy was valid and paid the death benefit plus interest, and there is no longer a live case or controversy for the Court to resolve.  Finally, in Count III, Plaintiff attempts to assert a facially deficient fraudulent inducement claim, in which she alleges that the life insurance policy—a contract—contained misrepresentations that she claims fraudulently induced her husband to purchase the policy.  Not only does Plaintiff lack standing to pursue this claim, but she fails to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule(s)"), and does not allege that Foresters engaged in any wrongful conduct separate and apart from the alleged breach of the contract, for which Foresters already compensated her, in violation of Florida's Independent Tort Doctrine.    Thus, Foresters' Motion to Dismiss would dispose of this case in its entirety.[1]

Nevertheless, after filing the facially deficient Second Amended Complaint, Plaintiff embarked on a fishing expedition to support her insufficient allegations by serving Foresters with a Second Set of Interrogatories and a Third Request for Production, which are overbroad and

---

[1] Foresters acknowledges that if the Motion to Dismiss is granted, the only remaining issue will be the amount of reasonable attorney's fees and taxable costs to which Plaintiff is entitled prior to April 3, 2020, and has asked the Court to maintain jurisdiction of this action with respect to that limited issue.

unreasonably burdensome.   Essentially, Plaintiff seeks all information, documents and communications in any form, from any time period, which bear any marginal relationship to applications for any of Foresters' insurance products, contestability investigations, underwriting reviews and evaluations, and statistics regarding Foresters' life insurance policies.  These topics far exceed the scope of discovery in what was a straightforward claim for death benefits, which should have ended when Foresters paid the claim plus interest.

Additionally, Plaintiff requested dates to conduct  multiple 30(b)(6) depositions, even though Plaintiff already deposed Foresters' corporative representative on March 4 and 5, 2020. Plaintiff seeks to depose various corporate representatives, including Douglas Parrott, the individual "in charge of the Underwriting Dept [sic] when Mr. Vinas' policy was issued," and the individual "in charge of the life insurance sales department when the Vinas policy was issued." See 7.23.20 E-Mail.  Plaintiff is attempting to circumvent the pleading requirements of Rules 8, 9(b), and 9(g) by fishing for information to complete the gaps in her facially deficient allegations. Plaintiff is attempting to do an end run around Florida's bad faith statute, which precludes her from pursuing a bad faith claim regarding Foresters' general practices because Foresters agreed to pay the full death benefit plus interest within the 60 day window.

Foresters would be substantially harmed by having to respond to Plaintiff's overbroad discovery requests, and sitting for multiple 30(b)(6) depositions, prior to the resolution of the Motion to Dismiss, which will entirely eliminate the need for discovery.  The harm Foresters would suffer by having to respond to these requests prior to resolution of the Motion to Dismiss substantially outweighs any inconvenience to Plaintiff caused by a delay in discovery.  Plaintiff has already been made whole financially, and does not need discovery in order to respond to the

Motion to Dismiss.  Therefore, good cause exists to enter an order staying discovery pending resolution of the case-dispositive Motion to Dismiss.

## II.    Background

### A. Factual Background

On January 12, 2015, Plaintiff's husband, Rigoberto Vinas ("Mr. Vinas"), completed an Application for Individual Life Insurance (Doc. 34-2; the "Application").  Mr. Vinas named Plaintiff as the sole beneficiary.  The Application contained questions aimed at ascertaining medical information that was material to Foresters' consideration of the risk to insure Mr. Vinas. Id. at 3-5.[2] Mr. Vinas represented that he had not been diagnosed with, or received treatment for, diabetes within the past 10 years.  Id. at 5.  Mr. Vinas declared and agreed that his Application answers, statements, and representations were "full, complete and true, to the best of [his] knowledge and belief."  Id. at 7.  On January 15, 2017, Mr. Vinas completed a Diabetes Questionnaire (Doc. 34-3) as part of the application process.  Mr. Vinas indicated that he did not have diabetes or any related complications.  See Diabetes Questionnaire at 2.  Mr. Vinas declared that his statements were true and complete "to the best of [his] knowledge and belief."  Id. Additionally, on January 22, 2015, Mr. Vinas' agent, Jazmin Lightbourn, submitted a letter from Dr. Kenneth Hershman (Mr. Vinas's treating physician), which stated that Mr. Vinas was "in good health" and "not taking any medication for diabetes or on a diabetic diet."  See 1.22.15 Ltr (Doc. 72-1).

Relying on Mr. Vinas's material representations in the Application and Diabetes Questionnaire, Foresters issued SMART Universal Life Insurance Certificate No. 8356627 (Doc. 34-1; the "Certificate"), effective January 26, 2015, which provides a base death benefit of

---

[2] For ease of the reference, we refer to the ECF page numbers.

$92,000.00 (the "Death Benefit."). The Certificate's incontestability clause provides that Foresters would not "contest the validity of this certificate after it ha[d] been in effect during the lifetime of the insured **for two years** except for non-payment of premiums." Id. at 14 (emphasis added). The Certificate also contains a merger clause stating that the "entire contract" between Foresters and Mr. Vinas consisted of the Certificate and application materials, in pertinent part. Id. at 10.

After Mr. Vinas died on January 11, 2017, Plaintiff filed a claim for the Death Benefit. Because Mr. Vinas died within the first two years of the Certificate's issuance, Foresters instituted a contestability investigation. On February 1, 2017, Plaintiff provided Foresters an incomplete copy of Dr. Hershman's medical records, which indicated that during the time periods asked about in the Application and Diabetes Questionnaire, Dr. Hershman diagnosed Mr. Vinas with diabetes, and attendant kidney and sensory problems. Foresters' underwriter determined that had Mr. Vinas accurately represented his medical history during the application process, Foresters would not have issued the Certificate. By letter dated April 5, 2017, Foresters notified Plaintiff of its determination to rescind the Certificate, refunded all premiums, and expressly reserved "all claims and defen[s]es that it may have or further discover." See Rescission Letter (Doc. 61-6).

### B. Procedural Background

Plaintiff initiated this action on October 4, 2018, asserting claims for breach of contract and declaratory relief against Foresters, and seeking the Death Benefit and a declaration that Foresters improperly rescinded the Certificate. See Compl. (Doc. 1). In response, Foresters asserted a counterclaim for declaratory judgment of rescission. See Answer, Defenses and Counterclaim (Doc. 16). On September 9, 2019, with leave of Court, Plaintiff filed an Amended Complaint, in which she sought consequential damages for Foresters' alleged breach. See Am. Compl. (Doc. 33). In response, Foresters re-asserted its counterclaim. See Am. Answer, Defenses,

and Counterclaim (Doc. 35).  Thereafter, on October 15, 2019, Plaintiff filed a meritless motion to strike Foresters' affirmative defenses, which the Court ultimately denied as moot.  See Plf.'s Motion to Strike (Doc. 36); Endorsed Order (Doc. 91).

Throughout the discovery process, Foresters sought to obtain Mr. Vinas's medical records to ascertain Mr. Vinas's knowledge of his diabetes diagnosis, among other conditions that he did not disclose in his Application.  However, Foresters was stonewalled at every turn.

On February 5, 2020, Plaintiff filed a Civil Remedy Notice ("CRN") against Foresters, alleging, without basis, that Foresters denied Plaintiff's claim in bad faith.  See CRN (Doc. 95-2).  Under Florida law, Foresters had 60 days to investigate and "cure" Plaintiff's alleged violations.  See Fla. Stat. § 624.155.  However, Plaintiff continued to impede Foresters' investigation by serving meritless objections to its discovery requests and imposing frivolous roadblocks.

Accordingly, on March 11, 2020, Foresters scheduled a discovery hearing.  See Notice of Hrg. (Doc. 52).  The Court cancelled this hearing due to COVID-19, and instructed Foresters to file a motion to compel.  See Paperless Order (Docs. 57 and 58).  Accordingly, on March 24, 2020, Foresters filed a motion to overrule Plaintiff's meritless objections to Foresters' third-party subpoenas and compel responses to Foresters' requests for production and interrogatories.  See Motion to Overrule (Docs. 61 and 67).

Two days later, on March 26, 2020—50 days after filing the CRN, and with only 10 days left in the 60 day CRN response time—Plaintiff finally provided a letter from Dr. Hershman stating that despite the notations in his records indicating that Mr. Vinas had diabetes and secondary complications, he did not diagnose Mr. Vinas with diabetes or any complications from diabetes, and did not tell Mr. Vinas that he had diabetes.  Based on this letter, Foresters immediately agreed to pay the Death Benefit, plus interest to compensate Plaintiff for any damages she may have

6

experienced between her loss and the settlement, as well as reasonably attorney's fees and taxable costs.  See CRN Response and Letter (Docs. 95-3 and 95-4).  On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest.  See Settlement Check (Doc. 95-1).  In doing so, Foresters fulfilled all of its contractual obligations and cured the alleged violations in Plaintiff's CRN.  As such, Florida law precludes Plaintiff from filing a bad faith claim against Foresters.   See Fla. Stat. § 624.155(5)(c).[3]

In addition to filing the Second Amended Complaint, Plaintiff served a Second Set of Interrogatories ("ROGS") and a Third Request for Production ("RFP").  See ROGS (attached as **Exhibit 1**) and RFP (attached as **Exhibit 2**).  In nearly all of Plaintiff's discovery requests, she seeks information which well exceeds the scope of discovery initially sought in what was a straightforward rescission action.  Additionally, Plaintiff has requested dates to depose additional corporate representatives to testify on matters allegedly relating to the fraudulent inducement claim.  See 7.23.20 E-Mail (attached as **Exhibit 3**).  Plaintiff's requests are overbroad and ultimately ask Foresters to provide all information and documents from any infinite period of time which bear any marginal relationship to applications for any of Foresters' insurance products, contestability investigations, underwriting reviews and evaluations, and statistics regarding Foresters' life insurance policies.  Plaintiff is attempting to use this discovery to fish for information to complete the gaps in her insufficient allegations, and to engage in bad faith discovery regarding Foresters' allegedly improper general practices with respect to all of its prospective and actual customers, disguised as fraud discovery.

---

[3] Although Foresters was unable to issue the Settlement Check within the 60 day window due to the COVID-19 crisis, the parties agreed that Foresters agreement to pay the Death Benefit plus interest within the window was a sufficient cure for purposes of Fla. Stat. § 624.155.

Accordingly, Foresters requests that the Court stay discovery pending resolution of its Motion to Dismiss because this will entirely eliminate the need for Plaintiff's discovery. Requiring Foresters to respond to Plaintiff's discovery requests and sit for multiple depositions would not serve the interests of judicial economy and would be unduly burdensome. Although Foresters intends to discuss its objections with Plaintiff's counsel, as is required by the Local Rules and this Court's Order Regarding Court Practices and Procedures (Doc. 4), if the parties are unable to resolve their dispute, Foresters will be required to set a hearing, which would be a waste of judicial resources in light of the pending Motion to Dismiss. Further, Plaintiff will not be harmed in any way by a delay in discovery, as Foresters has already paid her the Death Benefit plus interest, and agreed to pay reasonable attorney's fees and costs. Therefore, the benefits of staying discovery far outweigh any harm Plaintiff might suffer, and the Court should enter an order staying discovery pending resolution of the Motion to Dismiss.

## III.  Discussion

### A.  Applicable Law

The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997); Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002) ("At the outset, we stress the broad discretion district courts have in managing their cases."); Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling."). "Matters pertaining to discovery," in particular, "are committed to the sound

discretion of the district court." Patterson v. United States Postal Serv., 901 F.2d 927, 929 (11th Cir. 1990). Federal courts routinely exercise their power to stay a proceeding where a stay would promote judicial economy and efficiency. See, e.g., Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist., 559 F.3d 1191, 1198 (11th Cir. 2009) (approving district court's decision to stay case pending appeal in another case that was "likely to have a substantial or controlling effect on the claims and issues in the stayed case").

In order to prevail on a motion to stay discovery, the movant must show that good cause and reasonableness support a stay. McCabe v. Foley, 233 F.R.D. 683, 685 (M.D. Fla. 2006). "[C]ourts have held good cause to stay discovery exists wherein 'resolution of a preliminary motion may dispose of the entire action." Nankivil v. Lockheed Martin Corp., 216 F.R.D. 689, 692 (M.D. Fla. 2003), aff'd, 87 F. App'x 713 (11th Cir. 2003); see also Patterson, 901 F.2d at 927 (holding district court did not abuse its discretion by staying discovery where pending dispositive motions gave court enough information to ascertain further discovery not likely to produce a genuine issue of material fact). As such, "[p]otentially dispositive motions filed prior to discovery weigh heavily in favor of issuing a stay." See Fondo de Proteccion Social De Los Depositos Bancarios v. Diaz Reus & Targ, LLP, No. 16-21266-CIV-TORRES, 2016 WL 10952495, at *1 (S.D. Fla. Dec. 29, 2016) (citing Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366 (11th Cir. 1997)). Therefore, in evaluating whether the moving party has met its burden, a court "must balance the harm produced by a delay in discovery against the possibility that the [dispositive] motion will be granted and entirely eliminate the need for such discovery." McCabe, 233 F.R.D. at 685 (citation omitted). Additionally, the Local Rules require a movant to make "a specific showing of prejudice or burdensomeness." See S.D.Fla L.R. app. A Discovery Practices Handbook, I(D)(5) (adopted by Admin. Order 96-36).

**B. Good cause exists to stay discovery pending resolution of the case-dispositive Motion to Dismiss because Foresters would be substantially harmed by having to prematurely respond to Plaintiff's improper requests, and the Motion to Dismiss will entirely do away with the need for such discovery.**

Here, there is good cause to stay discovery pending resolution of Foresters' Motion to Dismiss because the motion would dispose of Plaintiff's entire Second Amended Complaint if granted.  See Safeco Ins. Co. of Am. v. Amerisure Ins. Co., No. 8:14-cv-774-35MAP, 2014 WL 12621558, at *1 (M.D. Fla. Sept. 9, 2014) ("Where a preliminary motion may dispose of the entire action, a court has good cause to stay the case pending resolution of the dispositive motion.").  In making this determination, "the Court must take a 'preliminary peek' at the merits of" the motion.  McCabe, 233 F.R.D. at 685 (citation omitted).   As Foresters set forth in detail in the Motion to Dismiss, and briefly summarized below, the Second Amended Complaint is due to be dismissed in its entirety with prejudice.

In Count I, Plaintiff asserts a claim for breach of contract based on "Foresters' failure to timely pay the death benefit to Vinas."  See Second Am. Compl. ¶18.  However, this claim fails because Foresters' payment of the full Death Benefit, plus interest, rendered this claim moot, as there is no longer a case or controversy for the Court to resolve.  See Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004) ("Plainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.").  Additionally, Plaintiff does not state a valid claim because for breach of contract because she fails to plead the requisite elements.  In order to state a claim for breach of contract under Florida law, a plaintiff must plead:  (1) that a contract existed; (2) that there was a breach of contract; and (3) that damages occurred.  See Bland v. Freightliner LLC, 206 F. Supp.2d 1202, 1210 (M.D. Fla. 2002).  With respect to the second element, Foresters paid the Death Benefit, plus interest, and therefore did not breach the Certificate as a matter of law.  See Stewart v. Chesapeake

10

Life Ins. Co., No. 5:17-cv-380-Oc-30PRL, 2017 WL 4410097, at *2 (M.D. Fla. Oct. 4, 2017) (dismissing a breach of contract claim brought against a life insurance company because the insurance company "paid the entire death benefit," and therefore "could not have breached the policy.").

Further, with respect to the third element, Plaintiff fails to allege that she experienced any direct damages (as she has been fully compensated), and fails to allege that she is entitled to consequential damages with the specificity required by Rule 9(g). See Rule 9(g) ("If an item of special damage is claimed, it must be specifically stated.").  A plaintiff may only recover consequential, or special, damages, if she can "prove the damages were within the contemplation of the parties when the contract was formed." Trident Hospitality Fla., Inv. v. Am. Economy Ins. Co., No. 6:08-cv-289-Orl-22GJK, 2008 WL 11334515, at *2 (M.D. Fla. May 30, 2008) (citation omitted).  Plaintiff alleges that as a result of Foresters' alleged breach, she sustained consequential damages, "including but not limited to" her "inability to pay necessary monthly expenses," "unpaid debts, accruing interest and defense costs in defense of the county court collection action," in which Plaintiff is being sued in the amount of $11,810.87, "and other expenses." See Second Am. Compl. ¶18.  However, the Complaint is devoid of any allegations suggesting that when Foresters issued the Certificate, it contemplated paying damages above and beyond the Death Benefit. Indeed, the Certificate's merger clause provides that the Certificate constitutes the parties' "entire contract." See Certificate at 10.

To the extent that Plaintiff seeks to recover her "necessary monthly expenses," "unpaid debts," and all "other expenses," Plaintiff has not provided Foresters and the Court with sufficient notice of the damages she seeks.  Additionally, Plaintiff's conclusory demand for "all expenses," including but not limited to all monthly expenses and all unpaid debts is insufficient to inform

11

Foresters and the Court of the specific nature of the damages Plaintiff seeks, and therefore does not satisfy the requirements of Rule 9(g).  See Landsman v. City of Vero Beach, No. 13-14375-CIV-GRAHAM/LYNCH, 2015 WL 10960951 (S.D. Fla. Oct. 21, 2015) (striking the plaintiff's claims for special damages because they "failed to give Defendants sufficient notice.").

Additionally, to the extent that Plaintiff seeks to recover the $11,810.87 for which she is being sued for in a county court collection action, Plaintiff's claim is not ripe because no judgment has been entered against Plaintiff.  Therefore, any future liability is purely speculative and non-recoverable under Florida law.   See Casey v. Bank of Am., N.A., No. 13-60983-CIV-DIMITROULEAS, 2014 WL 12580515, at *2 (S.D. Fla. March 12, 2014) ("Under Florida law, speculative damages are not recoverable for a breach of contract.").

Count II of the Second Amended Complaint is also due to be dismissed.  There, Plaintiff seeks a declaration that the Certificate was "valid and in full force and effect" at the time of Mr. Vinas's death.  See Second Am. Compl. ¶¶26-27.   However, Foresters acknowledged that the Certificate was "valid and in full force and effect" at the time of Mr. Vinas's death, and paid Plaintiff the Death Benefits, plus interest.  Thus, any issue regarding the validity of the Certificate is now moot.  See 200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp., 965 F. Supp.2d 1405, 1408 (S.D. Fla. 2013) (finding that a claim for declaratory judgment was moot because the parties agreed that the property damage in dispute was covered under the insurance policy).

Finally, Count III of the Second Amendment Complaint, in which Plaintiff attempts to assert a claim for fraudulent inducement, also fails as a matter of law.  Plaintiff states, in a conclusory fashion, that "Foresters falsely and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits

12

under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief" "in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy." See Second Am. Compl. ¶¶36-37.

As a threshold matter, Plaintiff's claim should be dismissed for lack of standing, as Plaintiff neither alleges that Foresters fraudulently induced **her** to the Certificate, nor that Mr. Vinas assigned his contractual rights to pursue this claim to her. See Branch Banking & Trust Co. v. Appraisalfirst, Inc., No. 10-21141-CIV-GOLD/MCALILEY, 2010 WL 11596299, at *4 (S.D. Fla July 7, 2010) ("Plaintiff must demonstrate either (1) that the Defendant['s] misrepresentation was directly made to [her] and Plaintiff relied on the misrepresentation to [her] detriment; or (2) that Plaintiff was properly assigned the rights to pursue this claim by the original party to whom the misrepresentation was made and detrimentally relied upon."). The Florida legislature recognized the limited recourse available to third-party beneficiaries, and enacted Section 624.155 to enable those directly interested in, but not parties to, a contract, to maintain a bad faith action. Macola v. Gov't Employees Ins. Co., 953 So.2d 451, 456 (Fla. 2006) (recognizing that the purpose of Section 624.155 was to create a statutory cause of action for third party bad faith). The fact that this recourse is no longer available to Plaintiff because Foresters' cured the allegations in Plaintiff's CRN within the 60 day window does not change the fact that she lacks standing to assert a fraudulent inducement claim. See Fla. Stat. § 624.155(5)(c)

Additionally, Plaintiff's claim fails because she does not satisfy the specificity requirements of Rule 9(b). Under Rule 9(b), a plaintiff must set forth

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). However, in the Complaint, Plaintiff does not identify any allegedly fraudulent statements, representations, or omissions, much less the time, place, person responsible, and content of those statements. Plaintiff's conclusory allegations regarding an unidentified representation, at an unknown time and place, by an unidentified individual, are insufficient. Additionally, Plaintiff does not allege that Foresters made any fraudulent statements to **her** to induce her to purchase the Certificate, or that **she** relied on Foresters' statements to her detriment. Instead, Plaintiff alleges that Foresters made allegedly false representations to Mr. Vinas in order to induce him to purchase the Certificate. See Second Am. Compl. ¶¶36-37. Accordingly, Plaintiff's allegations are insufficient to state a claim for fraudulent inducement, and should be dismissed.

Further, to the extent that Plaintiff claims that Foresters' fraudulent conduct consisted of failing to adhere to the representations in the Certificate regarding Foresters' right to investigate whether Mr. Vinas answered the questions in his Application to the best of his knowledge and belief, Plaintiff's claim fails as a matter of law because it violates Florida's Independent Tort Rule. Under this doctrine, "a plaintiff may not pursue a tort theory of relief where a contract created the duty to act, performance is measured against the contractual obligations, and the contract provides the remedy for defective performance." Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Protection LP, No. 19-14050-CIV-ROSENBERG/MAYNARD, 2019 WL 3428552, at *2 (S.D. Fla. Apr. 18, 2019). Plaintiff does not allege that Foresters committed any wrongdoing independent of its alleged breach of contract, but instead simply alleges that "the Policy provisions constituted specific representations to by [sic] Foresters in the form of contractual promises and/or statements of present intention," and Foresters did not intend to perform those provisions. See Second Am. Compl. ¶32. Even assuming this allegation is true, which Foresters disputes,

14

Foresters' promise to pay the Death Benefits was embodied in the Certificate, and therefore the appropriate remedy for failure to comply is a breach of contract claim.

Therefore, the Second Amended Complaint fails as a matter of law, and should be dismissed with prejudice.  Where, as here, a dispositive motion is pending, "Defendants should not be required to suffer monetary burdens or expenses when it appears that Plaintiff's claims may fail for several reasons as a matter of law."   Chevaldina v. Katz, No. 17-22225-Civ-WILLIAMS/TORRES, 2017 WL 6372620, at *3 (S.D. Fla. Aug. 28, 2017).  The Eleventh Circuit has stated:

> If the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided.  Conversely, **delaying ruling on a motion to dismiss such a claim until after the parties complete discovery encourages abusive discovery and, if the court ultimately dismisses the claim, imposes unnecessary costs**. For these reasons, any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible. Allowing a case to proceed through the pretrial processes with an invalid claim that increases the costs of the case does nothing but **waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system**.

Chudasama, 123 F.3d at 1368 (emphasis added).[4]   These concerns are heightened when the defendant presents facial challenges to an "especially dubious" fraud claim, like the one at issue

---

[4] Although Chudasama does not create a requirement to stay discovery pending resolution of a dispositive motion in every case, it underscores that "motions to dismiss should be resolved as soon as practicable to obviate avoidable discovery costs, especially where a dubious claim appears destined for dismissal." Dayem v. Chavez, No. 13-62405-Civ-COOKE/TURNOFF, 2014 WL 12588513, at *1 (S.D. Fla. Mar. 11, 2014) (Cooke, J.).  Notably, in Lawrence v. Governor of Ga., 721 F. App'x 862 (11th Cir. 2018), the Eleventh Circuit held that district court did not abuse its discretion in staying discovery pending resolution of a motion to dismiss because it "**specifically identified [the] warnings in Chudasama, and heeded them**." Id. at 864 (emphasis added); see also DYC Fishing, Ltd. v. Beaver Street Fisheries, Inc., No. 3:05-cv-481-J-25TEM, 2006 WL 8439171, at *2 (M.D. Fla. Feb. 1, 2006) (considering the Chudasama factors and staying discovery).

in Chudasama, which would significantly expand the scope of discovery, and permit the plaintiff to circumvent the heightened pleading requirements of Rule 9(b) . See id.; see also Tradex Global Master Fund SPC Ltd. v. Palm Beach Capital Mgmt., No. 09-21622-CIV-MORENO, 2009 WL 10664410, at *1 (S.D. Fla. Nov. 24, 2009) (citing United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1313 n.24 (11th Cir. 2002) (recognizing that permitting discovery where claims have not been properly pleaded would allow parties to circumvent Rule 9(b))). In these circumstances, "facial challenges to the legal sufficiency of a claim should be resolved before discovery begins," as they raise purely legal questions which do not require discovery to resolve. See Tradex Global, 2009 WL 10664410 at *1 (citing Chudasama, 123 F.3d at 1367-68). In the Motion to Dismiss, Foresters raises threshold issues including standing and Article III case or controversy, in addition to Plaintiff's failure to satisfy the heightened pleading requirements of Rules 9(b) and 9(g). Accordingly, a stay is warranted. See Textile USA, Inc. v. Diageo N. Am., Inc., No. 15-24309-CIV-WILLIAMS, 2016 WL 11317301 (S.D. Fla. June 8, 2016) (finding "a short stay of discovery appropriate" because "the pending motions to dismiss raise[d] a range of jurisdictional objections as well as facial challenges to the sufficiency of the complaint.").

Based on the information sought in Plaintiff's Second Set of ROGS, Third RFP, and the topics identified on Plaintiff's request for additional 30(b)(6) depositions, Plaintiff seems to believe that her fraudulent inducement claim gives her a right to all documents and communications, in any form, from any time period, which bear any marginal relationship to applications for any of Foresters' insurance products, contestability investigations, underwriting reviews and evaluations, and statistics regarding its life insurance policies. These topics far exceed the scope of discovery in what should have been a straightforward action for benefits , which should have ended when Foresters paid the Death Benefit and interest on April 3, 2020. See

Dayem, 2014 WL 12588513 at *1 (granting a motion to stay discovery pending resolution of a motion to dismiss based on "the potential scope of discovery.") (Cooke, J.).  In actuality, Plaintiff is using her fraudulent inducement claim as a ruse to gather bad faith evidence, which Fla. Stat. § 624.155 precludes her from doing because Foresters cured the alleged violations identified in her CRN within the 60 day window.  See Fla. Stat. § 624.155(d).  Indeed, "[t]he purpose of the [CRN] is to give the insurer once last chance to settle a claim with its insured and avoid unnecessary bad faith litigation—not to give the insured a right of action to proceed against the insurer even after the insured's claim has been paid or resolved."  Lane v. Westfield Ins. Co., 862 So.2d 774, 779 (Fla. 5th DCA 2003).  Thus, Foresters would be substantially prejudiced if it were forced to provide the requested documents and information, and to defend multiple depositions of its employees after curing the alleged violations.

Plaintiff's discovery requests are also improper because they are overbroad and unduly burdensome.  Foresters would face a substantial burden, in terms of time and cost, if it were required to respond to Plaintiff's discovery requests.  For example, Rog No. 2, Plaintiff asks for detailed statistical information regarding the number of life insurance policies Foresters sold, the number of claims it evaluated, the number of contestability evaluations performed, and the number of claims it "determined to be contestable."  See ROG No. 2.   Foresters does not keep the requested statistics on a global basis in the normal course of business, and therefore it would be unduly burdensome to require Foresters to compile this data.  See Ellison v. Ala. Bd. of Pardons & Paroles, No. 17-13235-D, 2017 WL 6947946, at *4 (11th Cir. 2017) (finding that the district court did not abuse its discretion in denying a motion to compel the defendant to provide statistics that were "not regularly kept in the normal course of business.").  In these circumstances, staying discovery is appropriate.

Plaintiff also improperly requested the undersigned's time sheets "reflecting the amount of time Foresters' counsel has spent, and has billed for, in the present matter from the initial time of assignment to the date of production."  See RFP No. 7.  This request is objectionable to the extent that it seeks privileged information, and vague because it does not define "initial time of assignment."  Additionally, however, this request is improper because discovery regarding the amount of attorney's fees is inappropriate while the claims in the Second Amended Complaint are still pending. Further, this request is premature because Plaintiff's counsel has not provided a copy of his time records which have been previously requested.  In Paton v. GEICO General Ins. Co., 190 So.3d 1047 (Fla. 2016), Florida's Supreme Court held that the time sheets of opposing counsel were relevant "to the issue of reasonableness of time expended in a claim for attorney's fees."  Id. at 1052.  However, Foresters has not yet evaluated whether Plaintiff's counsel has expended a reasonable amount of time on this action, as Plaintiff's counsel has refused to provide his time logs.  See Houston Specialty Ins. Co. v. Vaughn, No. 8:14-cv-1187-T-17JSS, 2017 WL 5631945, at *2 (M.D. Fla. Nov. 22, 2017) (recognizing that opposing counsel's time sheets are only relevant if the amount of fees if the number of hours the movant's attorney expended are "highly contested.").  Therefore, this request is premature because the reasonableness of Plaintiff's counsel's time is not yet an issue.

Additionally, it would be particularly burdensome to require Foresters to undergo multiple rounds of 30(b)(6) depositions in light of the COVID-19 pandemic.  Although the depositions would be conducted remotely, this presents logistical difficulties, including providing witnesses with hard copies of the exhibits, setting up cameras inside the witnesses' homes, and ensuring that all witnesses have proper internet connection.  As this Court recognized, social distancing makes it significantly more difficult for "defense counsel to entail assistance from [in house] attorneys

and other employees (e.g., to track down documents and information) to adequately prepare the corporate representative." <u>See</u> Paperless Order (attached as **Exhibit 4**).  Notably, Foresters is headquartered in Canada, and due to the travel bans, does not have the option of having defense counsel present, even at 6 foot distance.[5]

Although Foresters intends to discuss its objections with Plaintiff's counsel, as it is required to under the Local Rules and this Courts procedures, if the parties are unable to resolve their dispute, Foresters might need to file a motion for a protective order.  Accordingly, a stay in this action "would promote judicial economy and efficiency by avoiding the litigation of issues that may become irrelevant or moot." <u>Morrissey v. Subaru of Am., Inc.</u>, No. 1:15-cv-21106-KMM, 2015 WL 4512641, at *2 (S.D. Fla. July 24, 2015) (granting a motion to stay pending a ruling on a dispositive motion).

Further, if the Court does not stay discovery in this matter, then Foresters will need to conduct its own discovery regarding Plaintiff's meritless request for consequential damages, which, for the reasons stated in the Motion to Dismiss, Plaintiff is not entitled to as a matter of law.  Nevertheless, Plaintiff has made a conclusory demand for consequential damages which does not satisfy the specificity requirements of Rule 9(g), and does not inform Foresters, or the Court, of the nature of her alleged damages.  If discovery is not stayed, then Foresters will be forced to draft written discovery, and depose Plaintiff, in order to gather the information which Plaintiff was legally required to plead, but failed to do.

> **C.  Plaintiff would not be harmed by staying discovery pending resolution of the Motion to Dismiss.**

---

[5]  <u>See</u> <u>Coronavirus</u> <u>Disease</u> <u>(COVID-19)</u>, Canada.ca, available at https://www.canada.ca/en/immigration-refugees-citizenship/services/coronavirus-covid19/travel-restrictions-exemptions.html (last accessed August 20, 2020).

Here, a stay of discovery is warranted here because Plaintiff would not be prejudiced by any delay.  Notably, Plaintiff has been already been fully compensated for Foresters' alleged breach, as Foresters paid Plaintiff the Death Benefit, plus interest.  Further, Plaintiff does not need to engage in discovery in order to defend against the Motion to Dismiss, as Foresters presented facial challenges to the Second Amended Complaint.  See Tillman v. Ally Financial Inc., No. 2:16-cv-313-FtM-99CM, 2016 WL 9488774, at *3 (M.D. Fla. Oct. 18, 2016) (granting a stay where the plaintiff did not "need to engage in discovery in order to defend against the motion to dismiss.").  Additionally, in the Amended Order Setting Civil Trial Date and Pretrial Deadlines (Doc. 92; the "Scheduling Order"), the Court set the fact discovery deadline on October 16, 2020, the dispositive motion deadline for October 23, 2020, the expert discovery deadline on November 27, 2020, and trial on the Court's two week trial period commencing March 29, 20201.  Thus, Plaintiff should have adequate time to conduct discovery, file a dispositive motion, and prepare for trial, in the unlikely event the Motion to Dismiss be denied.  See Allmond v. City of Jacksonville, No. 3:07-cv-1139-J-33TEM, 2008 WL 2704426, at *3 (M.D. Fla. July 8, 2008) (finding that the plaintiff would not be prejudiced by a stay of discovery because the scheduling order provided adequate time for discovery if the dispositive motion were denied).[6]

**V. Conclusion**

Accordingly, Foresters requests that this Court enter an order staying discovery pending resolution of the Motion to Dismiss.

---

[6] Nevertheless, if the stay precludes Plaintiff's ability to satisfy the other deadlines in the Scheduling Order, Foresters would not oppose a motion to extend those deadlines at the appropriate time, and has no objection to the Court sua sponte modifying those deadlines.  See Glynn v. Basil Street Partners, LLC, No. 2:09-cv-585-99SPC, 2010 WL 2508605 (M.D. Fla. June 16, 2010) (staying discovery for at least 60 days pending resolution of a motion to dismiss, and inviting the parties to "petition the Court for further relief at the end of that time frame if the motion to dismiss is still pending.").

**Rule 7.1 Certification**

I certify that I have conferred with Plaintiff's counsel, who opposes the relief sought in this

Motion.

Dated: August 27, 2020

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant/Counter Plaintiff
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax


By: __s/Kristina B. Pett_____
        KRISTINA B. PETT
        Fla. Bar No. 0973688
        kristina.pett@mhllp.com
        DANIELLE E. SHURE
        Fla Bar No. 118911
        danielle.shure@mhllp.com

21

<u>**CERTIFICATE OF SERVICE**</u>

       I certify that on August 27, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Craig M. Greene, Esq.
Kramer Green Zuckerman Greene & Buchsbaum, P.A.
4000 Hollywood Blvd.
Suite 485-S
Hollywood, FL 33021
cgreene@kramergreen.com
*Counsel for Plaintiff/Counter Defendant*

Adrian Neiman Arkin, Esq.
Mintz Truppman, P.A.
1700 Sans Souci Blvd.
North Miami, FL 33181
adrian@mintztruppman.com
*Co-Counsel for Plaintiff/Counter Defendant*

       _s/Kristina B. Pett_____
       Kristina B. Pett