UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No.: 1:18-CV-24100-COOKE/ GOODMAN

DIGNA VINAS,

    Plaintiff,

vs.

THE INDEPENDENT ORDER
OF FORESTERS,

    Defendant.
_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Digna Vinas ("Vinas"), by and through her undersigned counsel, hereby responds in opposition to Defendant's ("Foresters'") Motion to Dismiss the Second Amended Complaint, and states as follows:

### INTRODUCTION AND PROCEDURAL HISTORY

1. Vinas is the named beneficiary of a life insurance policy sold by Foresters to her husband, Rigoberto. Mr. Vinas died one year, 11 months and several days after the policy was issued. Mrs. Vinas filed a claim for $92,000 in death benefits. Foresters denied the claim asserting its rights under the policy's incontestability clause as a defense, claiming Mr. Vinas failed to answer policy application questions to his best knowledge and belief.

2. After over a year of litigation, unfettered access to Mr. Vinas' medical history, and unlimited resources to conduct its own investigation, Foresters finally admitted it

wrongfully breached its contract with Mr. Vinas by not paying his death benefit.

3.     Discovery in the case, however, not only revealed that Foresters breached its contract, but also provided evidence that Foresters never intended to honor the policy it sold to Mr. Vinas, whether Mr. Vinas answered the application questions to his best knowledge and belief or not.  As such, Ms. Vinas requested leave to amend her complaint to allege a cause of action for Fraud in the Inducement. See D.E. 55.

4.     Foresters responded with strenuous opposition, raising numerous arguments including that the amendment was "futile". See D.E. 72 (Defendant's Response in Opposition); D.E. 80 (Motion for Leave to File Sur-Reply in Opposition); D.E. 82 (Reply in Support of Motion for Leave to File Sur-Reply); D.E. 86 (Sur-Reply). The Court rejected each of Foresters' arguments and granted Plaintiff's Motion for Leave to File a Second Amended Complaint. (D.E.90).

5.     Foresters re-argued the same points in its recently filed, and denied, Motion to Stay Discovery, which tracks all the same arguments raised here. (D.E. 96, at 10-15).  This is relevant because, as the Court knows, disposition of such a motion requires the Court to "take a 'preliminary peek'" at the issues raised in the motion to dismiss to determine whether discovery is necessary. (Id. at 10). Here, the Court's peek apparently revealed nothing of merit.  The arguments should be rejected again.[1]

---

[1] Like all of Defendant's motions, regardless of the relief being sought, Foresters has again taken the Court back through every aspect of the case, including discovery disputes, Civil Remedy Notices, and other immaterial issues (usually rewriting history along the way), in a desperate attempt to justify its wrongful denial of $92,000 in life insurance benefits.  Even after being forced to pay benefits, Foresters continues, right up to the present motion, to wrongfully claim Mr. Vinas "misrepresented his medical history" and assert unsupported legal positions. (D.E. 95, at 2).

2

**STANDARD OF REVIEW**

A motion to dismiss is properly denied if, taking the allegations in the plaintiff's complaint as true, the plaintiff makes out a claim "that is plausible on its face." SmileDirectClub, LLC v. Battle, 969 F.3d 1134, 1140 (11th Cir. 2020) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must be interpreted "in the light most favorable to the plaintiff." Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 863–64 (11th Cir. 2017).

The Court necessarily already used this standard to evaluate the arguments Foresters raises against Count III (Fraud in the Inducement) when it granted Plaintiff's motion to file the Second Amended Complaint, which argued that the amendment would be futile. E.g., Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Florida, 19-CV-62591, 2020 WL 43221, at *12 (S.D. Fla. Jan. 3, 2020); John Hancock Life Ins. Co. (U.S.A.) v. Soudijn, 8:15-CV-01277-T-27AEP, 2015 WL 12859315, at *1 (M.D. Fla. Dec. 11, 2015).

**ARGUMENT AND MEMORANDUM OF LAW**

**I.    Count I for Breach of Contract is Viable and Actionable Because Defendant Has Refused to Pay Plaintiff's Consequential Damages**

Foresters claim that Count I, for Breach of Contract is moot, completely ignores Plaintiff's claim for consequential damages as a result of Foresters' admitted breach. The case and controversy with respect to the breach continues because Vinas has not recovered those consequential damages. Indeed, Vinas' Complaint (the allegations of which the Court must accept as true), expressly alleges "[Vinas] is suffering consequential damages of unpaid debts, accruing interest, and defense costs in defense of the county court collection action and other expenses". (D.E. 94, at ¶¶ 17-19).

The contract does not provide Foresters with a defense as it states only that, subject to

3

the terms and conditions, "we will pay the death benefit if we receive satisfactory proof of the insured's death." (D.E. 94-1, at 12). Foresters suggests, without citation to any authority, that it can wrongfully delay payment, without consequence, by unsuccessfully seeking to take advantage of the two-year contestability period. While Foresters may certainly seek to enforce the terms of its incontestability provision, if in doing so Foresters breaches the contract, it is responsible for the damages caused by its breach. Further, the policy itself in no way supports Foresters' interpretation that it can delay payment for as long as it wishes, with no consequence except payment of interest. Foresters is therefore responsible for any reasonably foreseeable consequential damages as a result of that breach.

Addressing, briefly, Foresters' claim that the parties had to agree to consequential damages in the contract, the seminal case on the issue, fodder for every first-year course in contracts, is Hadley v. Baxendale, 9 Exch. 341, 156 Eng. Rep. 145 (1854). Hadley made it clear that the issue is foreseeability of the consequential damages for breach, not the intent of the parties at the time a contract is executed E.g., Bizrocket.com, Inc. v. Interland, Inc., 04-60706-CIV, 2005 WL 8168264, at *4 (S.D. Fla. Nov. 15, 2005) (explaining that "it is not necessary to prove that the parties contemplated the precise injuries that occurred so long as the actual consequences could have reasonably been expected to flow from the breach.") (quoting Mnemonics, Inc. v. Max Davis Associates, Inc., 808 So. 2d 1278 (Fla. 5th DCA 2002)). Florida courts have adopted the Hadley principle, see e.g. Life Investors Insurance Company of America v. Johnson 422 So.2d 32, (Fla. 4th DCA 1982), with courts most recently extending consequential damages to insurance policies. Manor House, LLC v. Citizens Prop. Ins. Corp., 277 So. 3d 658, 661 (Fla. 5th DCA 2019).[2]

---

[2] Manor House is currently under review by the Florida Supreme Court pursuant to a

To the extent that Foresters argues that "contemplating" special damages equates to expressing a contractual intent to cover them, Foresters is simply wrong. The purpose of contract damages is to put the non-breaching party in the same position as if the other party had performed. Id. Absent some explicit contractual provision, not present here, the limiting concept is foreseeability, not whether some unspoken intent to include special damages for breach can be discerned from the contract.

Foresters next argues the policy's merger clause insulates it from liability for misrepresentations. (D.E. 95, at 9-10). Florida law clearly holds otherwise. Noack v. Blue Cross and Blue Shield of Florida, Inc., 742 So.2d 433, 434 (Fla. 1st DCA 1999). ("[I]t is a well-established rule that 'alleged fraudulent misrepresentations may be introduced into evidence to prove fraud notwithstanding a merger clause in a related contract.'") (citation omitted); see also Romo v. Amedex Ins. Co., 930 So. 2d 643, 650 (Fla. 3d DCA 2006) (explaining that merger clause did not bar plaintiff from seeking reformation); Mejia v. Jurich, 781 So. 2d 1175, 1178 (Fla. 3d DCA 2001) (holding that integration clause did not affect oral representations "which are alleged to have fraudulently induced a person to enter into the agreement").

Finally, Vinas' claim is more than adequately plead. (D.E. 95, at 10-11). Vinas alleges that as a "direct and proximate result of Foresters' failure to timely pay the death benefit to Vinas, Vinas is being sued in state court for a collection action in the amount of $11,810.37

---

certified question of great public importance. Citizens Property Ins. Corp. vs Manor House, LLC, et al., No. SC19-1394. As such, the opinion of the Fifth District Court of Appeal establishes that consequential damages are available. Manor House at 661. Unless the Florida Supreme Court creates a special exception for all insurance policies, general contract principles will continue to support an award of consequential damages.

with interest continuing to accrue." (D.E. 94, at ¶ 18). She "is suffering consequential damages of unpaid debts, accruing interest, and defense costs in defense of the county court collection action and other expenses." (Id. at ¶ 19).

Foresters' desperate suggestion that Vinas should have explicitly plead every imaginable item of consequential damage a widow might suffer as the result of an insurance company wrongfully denying her husband's life insurance benefit is respectfully absurd. (D.E. 95, at 9). Ironically, in the very next paragraph of its motion, Foresters acknowledges that the "very purpose of life insurance is to provide a sanctuary from the rigors and <u>uncertainties</u> of age, unemployment, and other disabilities that eventually incumber all flesh, and to <u>provide some assurance that those dependent on the insured will at least have bread when he is gone.</u>" (Id. at 10 (quoting <u>N.Y. Life Ins. Co. v. Kincaid</u>, 122 Fla. 283, 298 (Fla. 1935)) (emphasis added)). Obviously, Foresters was on notice of the foreseeability of uncertainty and the disastrous financial consequences that will likely follow if an insurer breaches the contract. The additional detail is obvious and unnecessary to "nudge [entitlement to consequential damages] across the line from conceivable to plausible." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

Further, spelling out every single item of expense Vinas incurred because she did not have the life insurance money when she needed it, is not necessary to provide Foresters with "sufficient notice of the damages she seeks," and Foresters' authority does not hold otherwise. (D.E. 95, at 10 (citing <u>Landsman v. City of Vero Beach</u>, No. 13-CV-14375, 2015 WL 10960951 (S.D. Fla. Oct 21, 2015))). As for the $11,810.87 lawsuit Vinas faces in county court – that money is owed. The eventual imposition of a judgment against her is more than "purely speculative." (D.E. 95, at 11).

6

In sum, Foresters breached the contract by failing to pay Vinas upon proof of Mr. Vinas' death. Foresters gambled that it could avoid liability altogether. Foresters now has to contend with the consequential damages attendant to that breach, which were both eminently foreseeable and recoverable under Florida law. Foresters' Motion to Dismiss the Second Amended Complaint should be denied as to Count I.

## II. Foresters' Concession That the Policy Was in Full Force And Effect At The Time Of Mr. Vinas' Death Renders Count II, Declaratory Relief, Moot.

Consistent with its post-suit payment of benefits, with interest, Foresters now concedes that the policy was "valid and in full force and effect" when Mr. Vinas died. (D.E. 95, at 11-12). This obviates any need for a declaration that "Foresters' attempted recission of the policy was incorrect." (D.E. 94, at ¶ 24). Vinas agrees Count II has become moot.

## III. Vinas has Sufficiently Alleged a Cause of Action for Fraud in the Inducement Separate and Apart from Foresters' Breach. The Court Has Already Rejected Foresters' Meritless Challenge to That Count

### A. Foresters' Arguments Supporting Dismissal of Count III Have Already Been Rejected Using the Same Motion To Dismiss Standard Of Review

This is not the first time the Court has addressed Foresters' arguments. In opposing Vinas' Motion to Amend as futile, Foresters brought the same arguments for evaluation under the same legal standard as a motion to dismiss. See, e.g., Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Florida, 19-CV-62591, 2020 WL 43221, at *12 (S.D. Fla. Jan. 3, 2020) ("The futility threshold is akin to that for a motion to dismiss….") aff'd, 20-10173, 2020 WL 4581439 (11th Cir. Aug. 10, 2020). Foresters provides no basis upon which the Court should reconsider its reasoning and ruling.

### B. Vinas Has Standing to Pursue This Cause of Action for Fraud In The Inducement.

Foresters' argument that Vinas does not have standing to pursue this matter is as

7

unsupported as it was the first time the Court rejected it. (D.E. 95, at 14; see also D.E. 72, at 11 (pressing same line of argument in opposition to Motion for Leave to File a Second Amended Complaint)). Foresters' single item of new authority does nothing to support its argument. Branch Banking & Trust Co. v. Appraisalfirst, Inc., No. 10-21141-CIV-GOLD/MCALILEY, 2010 WL 11596299, at *4 (S.D. Fla. July 7, 2010) (holding that, where BB&T was not a third party beneficiary, and had not acquired right to sue by assignment or from FDIC, it lacked standing to pursue fraud claim against appraiser).

As Vinas pointed out in opposition to Foresters' first bite at this particular apple, she has, as a direct beneficiary of the policy "a basis upon which . . . [she] may . . . invoke the benefits of a contract to which [she] is not a party." (D.E. 79, at 10 (citing Medimport S.R.L. v. Cabreja, 929 F. Supp. 2d 1302, 1315 (S.D. Fla. 2013))). Additionally, limiting standing under the present facts to the party whose death occasioned the payment obligation creates a hugely perverse incentive to cheat:

> Foresters' argument should be denied for its lack of practical applicability. Specifically, to accept Foresters' standing argument would be to eliminate from jurisprudence any claim for fraud with respect to all life insurance policies, as the named insured in the majority of such policies is usually deceased. Thus, according to Foresters, no beneficiary would ever be able to sue for breach of contract or fraud. Perhaps this is why Foresters could not find a single case to cite even suggesting that a beneficiary of a life insurance policy does not have standing to sue for fraud in the inducement.

(D.E. 79, at 10) (emphasis added). This reasoning held true in support of the Motion to Amend and continues to be valid today. It is not surprising that, despite knowing this argument was being made, Foresters still could not find a case even suggesting that a beneficiary of a life insurance policy does not have standing to sue for fraud in the inducement. Clearly, such lawsuits have been filed. E.g., JMIC Life Ins. Co. v. Henry, 922

8

So. 2d 998, 1000 (Fla. 5th DCA 2005). It would be remarkable, although highly unlikely indeed, if Foresters were correct on the law, but no other insurance company had ever succeeded on the same point. The Court should again reject Foresters' standing argument.

### C. Count III of Vinas' Second Amended Complaint for Fraudulent Inducement Alleges a Tort Independent of Foresters' Subsequent Breach Of Contract.

Foresters' main argument here is directed at expressing its disproval of, and disagreement with Florida law clearly establishing that fraudulent inducement "is an independent tort in that it requires proof of facts separate and distinct from the breach of contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996); see, e.g., Maxted v. SATO Glob. Sols., Inc., 17-61769-CIV, 2018 WL 3109628, at *6 (S.D. Fla. Mar. 9, 2018) (applying HTP to hold that a fraudulent inducement claim was not "impermissibly duplicative" of a claim of breach of oral employment contract). It is well-established that "a promise of future performance" can "serve as a predicate for a claim of fraud" when "the promise was made with the present intention not to comply." Noack v. Blue Cross & Blue Shield of Florida, Inc., 742 So. 2d 433, 434 (Fla. 1st DCA 1999) (emphasis added) (citations omitted); see also Mejia v. Jurich, 781 So. 2d 1175, 1177–78 (Fla. 3d DCA 2001) (explaining that "if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform, such a promise may also constitute a fraudulent misrepresentation.").

Ignoring paragraph after paragraph of specifically plead facts directed at the formation of the contract, (D.E. 94, at ¶¶ 32-45), Foresters again conclusorily argues Vinas alleged facts only proving breach. (D.E. 86, at 4; compare, e.g., D.E. 96, at 17). Foresters is clearly ignoring the expressed allegations in the Second Amended Complaint that allege Foresters committed an independent tort at the time it entered the contract, because it had no intention of honoring

9

the "best knowledge and belief" language. (D.E. 94, at ¶¶ 36-42).

A brief recitation of the history of the litigation of the Fraudulent Inducement count, may assist the Court and explain any sense of déjà vu. Defendant first challenged the Fraud Count by citing this Court to Florida's Economic Loss Rule ("ELR") in its Opposition to the Motion to File a Second Amended Complaint. (D.E. 72, at 12). In her Reply, Vinas pointed out that under Florida law, since 2013, the ELR only applied to products liability cases. (D.E. 79, at 6-7 (citing Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Co., 110 So. 3d 399 (Fla. 2013))).

Presumably to address its mistake, Foresters requested leave to file a sur-reply to raise new arguments based on the independent tort doctrine, i.e. that "basic contract principles continue to bar a tort claim where the plaintiff cannot establish the breach of a duty independent of its contractual obligations." (D.E. 80, at 1). Foresters devoted its five-page sur-reply to distinguishing Tiara. (D.E. 86, at 1-2).

Because the sur-reply raised the independent tort doctrine for the first time, Plaintiff requested leave to file a two-page response to the sur-reply in order to point out which specific parts of the proposed Second Amended Complaint alleged "tortious independent wrongdoing separate, apart and temporally before, the Defendant ever breached its contract." (D.E. 89, at 1 (citing D.E. 55-1, at ¶¶ 36-42, 44)). The Court denied the motion to file the two-page sur sur reply as moot, because it granted the Motion for Leave to File the Second Amended Complaint. (D.E. 93).

Armed with this preview, Foresters' present motion coyly advises the Court that it "anticipates that Plaintiff will rely on Tiara" (D.E. 95, at 18), and then goes on to reproduce, in full, the entire first seven-citation paragraph from the sur-reply. (*Compare* D.E. 95, at 18-

10

19 *with* D.E. 86, at 2-3). Respectfully, this seems wasteful to Plaintiff. In fact, Tiara has no real role to play in the question currently before the Court. Plaintiff only raised Tiara to rebut Defendant's now-abandoned ELR argument. Again, "Plaintiff generally agrees with" (D.E 89, at 1) arguments that the independent tort rule survived Tiara, which merely limits the ELR to products liability cases. The reason Tiara doesn't apply here, is the same reason Foresters' motion should be denied, Plaintiff's Second Amended Complaint alleges an independent tort!

Specifically, the Second Amended Complaint alleges that "all the Policy provisions constituted specific representations to or by Foresters in the form of contractual promises and/or statements of present intention." (D.E. 94, at ¶ 32). Mr. Vinas' application asked him to provide "answers that were 'full, complete, and true to the best of [his] knowledge and belief.'" (D.E. 94, at ¶ 33). But Defendant had "no intention to pay Mr. Vinas during the first two years following issuance of the Policy," (while its validity was still contestable), regardless of Mr. Vinas' best knowledge and belief. (Id., at ¶41). The representation that the application need be completed only to his best of his knowledge "was made to induce Rigoberto Vinas to pay premiums for the policy despite the fact that Foresters knew it had no intention to ever pay benefits if [he] were to die during" the contestability period, "even if Application answers were provided to Mr. Vinas' best knowledge and belief." (D.E. 94, at ¶ 37).[3] Nevertheless, Mr. Vinas relied on the validity of the representations in the contract and made premiums as required. (D.E. 94, at ¶ 41). All of these allegations go to formation of

---

[3] Plaintiff expects to prove that, in addition to inducing payment of premiums, Mr. Vinas' reliance on the policy as written induced him to relinquish a different life insurance policy for which the contestability period had expired.

11

the policy, separate and distinct from the breach that occurred approximately two years later when Foresters refused payment of benefits.

In addition, while not necessary to satisfy Rule 9(b) requirements[4], Vinas has alleged specific anticipated evidence of fraudulent intent at the inception, including "the fact that, upon presentation of the Vinas claim to Foresters, Foresters never even made inquiry into Rigoberto Vinas' best knowledge and belief." (D.E. 94, at 40). Consider just one example of the specificity of the allegations in combination with the evidence already adduced. The Second Amended Complaint alleges:

> At all times material hereto, Foresters knew or should have known this promise was false when made as Foresters intended, at the time of sale of the policy, to improperly ignore Mr. Vinas' "best knowledge and belief" in the Application and instead deny a claim based upon Foresters' interpretation of the medical accuracy of information without regard to Rigoberto Vinas' best knowledge and belief.

(D.E. 94, at ¶ 38) (Emphasis supplied). Evidentiary support for this proposition is already on record. During the deposition of Lisa Buckland, one of Foresters' claim representatives charged with deciding whether policies will be rescinded based upon an insured not providing answers to his/her best knowledge and belief, Ms. Buckland testified:

> Q:   So you would have recommended rescinding this policy even though the last information you have about what Mr. Vinas actually knew was that he was told he didn't have diabetes; is that true?
>
> A:   He stated he didn't know. The information I had in the medical records showed that he did have it, so I would have still recommended rescission.
>
> Q:   So, for you, it wasn't a question of what he knew or not, it was what the diagnosis was?
>
> A:   Correct.

---

[4] See p. 13, infra.

12

(D.E. 79-1, Lisa Buckland deposition, p. 55, l. 25-p. 56, l. 11) (Emphasis supplied). Additional evidentiary bases for Vinas' claim are explained in the Motion for Leave to File the Second Amended Complaint (D.E. 55) and the Reply to Foresters' opposition, (D.E. 79), both of which are incorporated herein. In sum, Vinas' fraudulent inducement claim does not merely duplicate the breach of contract claim and the Court should reject Foresters' argument and deny the Motion to Dismiss.

  D. <u>Count III, Fraudulent Inducement, Is Alleged with Sufficient Specificity.</u>

Foresters once again, invokes Rule 9(b), complaining that it has no idea what the "allegedly fraudulent statements" might be. (D.E. 95, at 15). Ignoring the allegations does not make them go away. Plaintiff has expressly alleged that:

> 36. At all times material hereto, Foresters falsely and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief.

(<u>Id</u>., at ¶ 36). The specific language in the policy states: "**Incontestability** We will not contest the validity of this certificate [the policy] after it has been in effect during the lifetime of the insured for two years except for non-payment of non-payment of premiums." (D.E. 94-1 at 14). The relevant language in the application, also alleged in the Complaint, which is incorporated into the policy by Florida law, expressly stated:

> I, by signing this Form: 1) Declare that I have provided the statements, answers and representations shown in this Form and they are full, complete and true, <u>to the best of my knowledge and belief</u>.

<u>See</u> Policy Application (D.E. 16-2) (Emphasis supplied); Policy, D.E. 94-1, at 8, 10

13

(explaining that "entire contract" includes the application); Fla. Stat. §632.621(1), (providing that benefit contracts issued by fraternal benefit societies shall include the application for insurance).[5]

Further, immediately preceding paragraph 36, allegation, Vinas alleged:

> 35. At all times material hereto, Foresters knew that if Rigoberto Vinas died within the first two years following the issuance of the Policy, the Policy would be contestable under Florida law. That is, Foresters knew that it would have the opportunity to review the Application questions and determine whether the information provided was answered to Rigoberto Vinas' "best knowledge and belief."
>
> . . .
>
> 32. [T]he Policy provisions constituted specific representations to or by Foresters in the form of contractual promises and/or statements of present intention. The Policy was executed and attested to on behalf of Foresters by its Executive Secretary, K. Routhiaike."

(Id., at ¶¶ 35, 32). The complaint makes it clear that the representations in the policy were fraudulent because Foresters did not intend to honor its promises from the instant they were made.

Undaunted, Foresters next argument creatively asserts Plaintiff does not allege any "pre-contractual statements which induced Mr. Vinas to purchase the Certificate." (D.E. 95 at 17) (emphasis supplied). Defendant's self-serving unsupported interpretation of the law notwithstanding, an independent tort occurs when a defendant harbors the intent not to

---

[5] To the extent that the specific fraternal benefit society laws do not apply to Foresters, Florida law imposes a similar requirement on life insurance policies generally. Fla. Stat. §627.454 ("Every insurance contract shall provide that the policy, or the policy and the application therefor if a copy of such application is endorsed upon or attached to the policy when issued, shall constitute the entire contract between the parties, and that all statements contained in the application shall, in the absence of fraud, be deemed representations and not warranties.")

14

perform a promise at the time it is made; i.e., at the time the contract is formed. Noack, 742 So. 2d at 434; see also John Hancock Life Ins. Co. (U.S.A.) v. Soudijn, 8:15-CV-01277-T-27AEP, 2015 WL 12859315, at *1 (M.D. Fla. Dec. 11, 2015) (denying motion to dismiss where plaintiff alleged false representation in text of application for life insurance). Florida law does not require anything further. The Court should reject the argument that Vinas has inadequately pled Count III, Fraud in the Inducement.

    E.    §627.428 Attorney's Fees are Available Because the Fraudulent Inducement Cause of Action, While Independent From a Breach of Contract Cause of Action, Still Arises Under A Policy Executed by the Insurer as §627.428 Requires.

Section 627.428 provides:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court . . . shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Fla. Stat §627.428(1). Significantly, Foresters fails to cite a single case holding that attorneys fees are not available for a plaintiff who successfully establishes that an insurance company fraudulently induced an insured to enter into the contract of insurance. This is understandable since a fraudulent inducement cause of action, based upon inducing a Plaintiff into entering into a contract, satisfies all the elements of §627.428.

Similarly, the allegations in the present complaint satisfy every statutory element for prevailing party attorney fees. Mr. Vinas was the named insured, and Ms. Vinas is a named beneficiary under the policy. Count III (Fraud in the Inducement), while independent and separate from Count I (Breach of Contract), in that they require different elements of

15

evidentiary proof, nevertheless features the issuance of the policy as a critical element of the claim. Without the issuance of the policy, there would have been no fraudulent inducement. The fact that Foresters induced Mr. Vinas into entering into the policy, albeit fraudulently, does not eliminate the contractual tie to the transaction. Thus, Vinas' claim arises "under a policy or contract executed by the insurer." §627.428(1), Fla. Stat.

Foresters' cases are totally distinguishable from the present case. (D.E. 95, at 19-20). In United Gen. Life Ins. Co. v. Koske, 519 So. 2d 71, 72 (Fla. 5th DCA 1988), the Court held, the statute did not apply because "no policy of insurance was ever issued or executed by the insurer covering Mr. Koske as an insured." (D.E. 95, at 20). Therefore, the claim could not have arisen "under a policy or contract executed by the insurer." §627.428(1), Fla. Stat. In the present case, there is no question the policy was issued (albeit fraudulently so), to Mr. Vinas.

In Hilson v. GEICO Gen. Ins. Co., the Court determined that malpractice of one of GEICO's staff attorneys did not arise "under" the policy Geico had issued to the Plaintiff. 8:11-CV-13-MSS-MAP, 2016 WL 3211474, at *3 (M.D. Fla. Mar. 31, 2016) (finding no fee entitlement where "the negligence of GEICO's staff attorney caused GEICO not to settle for the policy limits and resulted in an excess judgment"). That makes perfect sense as the cause of action was for professional negligence having nothing to do with the underlying liability contract. Further, the Hilson plaintiffs made it clear during litigation that they were asserting a tort claim unrelated to GEICO's contract with the insured. (Id. at 3). Instead, GEICO's liability was allegedly based upon its "vicariously liab[ility] for [the attorneys'] professional malpractice under the principle of respondeat superior." (Id.). In the present case, however, the fraudulent misrepresentations occurred with respect to and in the policy itself. Plaintiffs

16

have alleged these representations caused Mr. Vinas to enter into that contract with Foresters. The contractual nexus that was entirely lacking in Hilson is absolutely present here.

Johnson v. Omega Insurance Company, 200 So. 3d 1207 (Fla. 2016), has nothing to do with the present case. In Johnson, the Supreme Court merely clarified that "in the context of Section 627.428, a denial of benefits simply means an incorrect denial," with no requirement of "bad faith or maliciousness" as well. Foresters completely fails to explain how Johnson, a sinkhole case, has anything to do with the analysis of the Count III (Fraud in the Inducement).

In sum, if Vinas prevails, the "judgment or decree" in her favor will be rendered because Foresters fraudulently provided coverage to Vinas under a policy or contract executed by the insurer, because the policy itself contains the fraudulent statement. §627.428(a), Fla. Stat. Moreover, the claim alleged is fraud in the inducement to contract, which is alleged to have resulted in the creation of the policy. The Court should recognize Vinas' entitlement to attorney fees under the Second Amended Complaint.

## CONCLUSION

The volume of argument in this case is disproportional to the difficulty of the issues. Foresters failed to honor its contractual obligation, causing Vinas to incur unnecessary expenses from which her husband's life insurance policy was supposed to protect her. Foresters is liable for these consequential damages. Therefore, compensable damages still exist with respect to Count I (Breach of Contract), which is therefore not moot. With respect to Count III (Fraud in the Inducement), Vinas has sufficiently alleged standing and the elements of fraudulent inducement, which exist independent of, and temporally before, Foresters' breach of contract. Finally, attorney's fees are available under Section 627.428

because Foresters issued a policy, albeit fraudulently, to Vinas. Without that policy, there could be no cause of action for fraudulent inducement. As such, there is a nexus between Foresters' policy and the tort cause of action for fraudulent inducement, such that the cause of action arises sufficiently "under" the contract issued by the insurer. While Plaintiff does not believe it's necessary, to the extent that the Court disagrees, Vinas asks the Court to dismiss without prejudice so that any defects in pleading can be corrected.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing has been electronically filed with the Court and a copy has been served on September 15, 2020 on: Kristina B. Pett, Esq. Kristina.pett@mhllp.com and Danielle Shure, Esq., Danielle.shure@mhllp.com, McDowell, Hetherington, LLP, 2101 N.W. Corporate Blvd., Suite 316, Boca Raton, FL 33431.

>
> KRAMER, GREEN, CKERMAN,
> GREENE & BUCHSBAUM, P.A.
> Co-Counsel for Plaintiff
> 4000 Hollywood Blvd., Suite 485-S
> Hollywood, FL 33021
> (954) 966-2112 – phone
> (954) 981-1605 - fax
>
> By: ____/s/ Craig M. Greene____
> Craig M. Greene, Esq.
> Fla. Bar No. 618421
> cgreene@kramergreen.com
>
> and
>
> Adrian Neiman Arkin, Esq.
> MINTZ, TRUPPMAN, P.A.
> Co-Counsel for Plaintiff
> 1700 Sans Souci Boulevard
> North Miami, FL 33181
> (305) 893-5506 – phone
> adrianarkin@mintztruppman.com