UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

                Plaintiff,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

                Defendant.

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO
AMEND THE SECOND AMENDED COMPLAINT BY INTERLINEATION
<u>TO CONFORM TO EVIDENCE</u>**

Defendant, The Independent Order of Foresters ("Foresters") files this Response in

Opposition to Plaintiff's Motion to Amend the Second Complaint by Interlineation to Conform

to Evidence ["Motion"; Doc. 120], and states:

I.     <u>Introduction</u>

On November 19, 2020, Plaintiff filed the Motion seeking leave to amend her complaint,

for the **third** time, by interlineation, just a few days before mediation on November 24, 2020,

and two weeks before the dispositive motion deadline on December 4, 2020.  Plaintiff's meritless

Motion to file her fourth complaint is nothing more than another effort  by Plaintiff to needlessly

prolong the proceedings and enhance her claim for attorney's fees.  This time Plaintiff seeks to

add an allegation that Foresters' "sales agent," Jazmin Lightbourn" represented that "Foresters

would not deny a claim or rescind the Policy . . .so long as Mr. Vinas answered the Application

questions . . . to his best knowledge and belief."  [<u>Id.</u> ¶7].  The deadline to amend pleadings

passed over ten months ago on January 3, 2020.  [Scheduling Order at 2; Doc. 21].  After this

deadline, on July 24, 2020, this Court permitted Plaintiff to file the Second Amended Complaint. On August 18, 2020, Foresters filed a motion to dismiss Plaintiff's Second Amended Complaint, which is ripe for resolution. Plaintiff should not be permitted to amend his pleading for a third time at this late juncture. Plaintiff has failed to establish good cause to permit this untimely amendment as required under Rule 16(b) of the Federal Rules of Civil Procedure ("Rule(s)"). Further, even if good cause existed, which it does not, leave should not be granted under Rule 15 because Foresters would be unduly prejudiced. Contrary to Plaintiff's contention that his "proposed amendment does not add any additional causes of action or theory of recovery," Plaintiff is attempting to introduce agency theory into this case, and to allege that Mr. Vinas relied on a pre-contractual representation. Recognizing that Foresters did not make any fraudulent misrepresentations to Mr. Vinas, Plaintiff is now trying to hold Foresters vicariously liable for Ms. Lightbourn's allegedly fraudulent representation as Foresters' agent by attempting to sneak in by "interlineation" a brand new cause of action . Finally, this Court should deny the Motion on the grounds of futility because Plaintiff is attempting to assert a new claim based on an agency theory in a fraudulent inducement claim based on direct liability. This is improper and cannot survive a motion to dismiss as it fails as a matter of law. Plaintiff also fails to allege the type of agency relationship on which she relies, or the elements of that relationship. Therefore, the Motion should be denied.

## II.   Background

### A. Factual Background

#### a. Procurement of the Certificate

On January 12, 2015, Mr. Vinas completed an Application for Individual Life Insurance [Application; Doc. 34-2]. Mr. Vinas named Plaintiff as the sole beneficiary. The Application

contained several questions aimed at ascertaining medical information that was material to Foresters' consideration of the risk to insure Mr. Vinas.  [Id. at 3-5].  On the Application, Mr. Vinas represented that he had not been diagnosed with, or received treatment for, diabetes within the past 10 years.  [Id.  at 5.].  Mr. Vinas declared and agreed that his Application answers, statements, and representations were "full, complete and true, to the best of [his] knowledge and belief."  [Id. at 7].

Shortly thereafter, Foresters received an MIB alert that Mr. Vinas might have diabetes. Foresters asked Mr. Vinas to review his MIB Consumer File for accuracy and complete a Diabetes Questionnaire [Doc. 34-3].  Mr. Vinas completed the Diabetes Questionnaire on January 15, 2017 and indicated that he did not have diabetes or any complication from diabetes such as any kidney or sensory problems secondary to diabetes.  [Diabetes Questionnaire at 2] Mr. Vinas represented:

> Proposed insured had a medical exam done for an insurance policy in 2012. The medical examiner told him that he had Diabetes. After following up with his **primary doctor and doing additional testing he concluded that the proposed** insured did not have Diabetes. He's never taken medication or had treatment for this condition."

[Id.]  Once again, Mr. Vinas declared that his statements were true and complete "to the best of [his] knowledge and belief."  [Id.]

Additionally, on January 22, 2015, Mr. Vinas' insurance broker, Jazmin Lightbourn, submitted a letter from Dr. Kenneth Hershman (Mr. Vinas's treating physician), which stated:

> Please be advised that the above mentioned patient has been under my medical care for 15 years.  **This patient is in good health and is not taking any medication for diabetes or on a diabetic diet**.  He has been advised to diet and exercise on a regular basis.

[January 22, 2015 Letter, Doc. 72-1].

Relying on Mr. Vinas's material representations in the Application and Diabetes Questionnaire, Foresters issued SMART Universal Life Insurance Certificate No. 8356627 (the "Certificate"; Doc. 34-1], effective January 26, 2015, which provides a base death benefit of $92,000.00 (the "Death Benefit").   The Certificate's incontestability clause provides that Foresters would not "contest the validity of this certificate after it ha[d] been in effect during the lifetime of the insured for two years except for non-payment of premiums."   [Id. at 14].   The Certificate also contains a merger clause stating that the "entire contract" between Foresters and Mr. Vinas consisted of the Certificate and application materials, in pertinent part.   [Id. at 10].

### b.  Plaintiff's Claim for Benefits Under the Certificate.

After Mr. Vinas died on January 11, 2017, Plaintiff filed a claim for benefits under the Certificate.   Because Mr. Vinas died within the first two years of the Certificate's issuance, Foresters instituted a contestability investigation.   On February 1, 2017, Plaintiff submitted Dr. Hershman's medical records.   These medical records demonstrate that during the time periods asked about in the Application and Diabetes Questionnaire, Dr. Hershman diagnosed Mr. Vinas with diabetes, and attendant kidney and sensory problems.   Specifically, under the "assessment" section, Dr. Hershman listed the following conditions:

a.  Diabetes mellitus type 2 or unspecified type with renal manifestations on July 30, 2012, and August 19, 2014.

b.  Diabetes mellitus type 2 or unspecified type with neurological manifestation on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.

c.  Neuropathy in diabetes on November 5 and 12, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.

d.  Diabetes mellitus type 2 or unspecified type with peripheral circulatory disorder on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.

e.  Nephritis and nephropathy on August 19, 2014.

4

Foresters' underwriter determined that had Mr. Vinas accurately represented his medical history during the application process, Foresters would not have issued the Certificate. By letter dated April 5, 2017, Foresters notified Plaintiff of its determination to rescind the Certificate expressly reserving "all claims and defen[s]es that it may have or further discover." [Rescission Letter, Doc. 61-6]. Foresters issued a refund for all premiums paid under the Certificate.

## B. Procedural History

Plaintiff initiated this action on October 4, 2018, asserting claims for breach of contract and declaratory relief against Foresters, and seeking the Death Benefit under the Certificate and a declaration that Foresters improperly rescinded the Certificate. [Compl.; Doc. 1]. In response, Foresters asserted a counterclaim for declaratory judgment of rescission. [Doc. 16].

Thereafter, the Court entered the Scheduling Order, setting the following deadlines:

- **January 3, 2020:  deadline to file amended pleadings.**

- April 3, 2020:  fact discovery deadline.

- April 10, 2020:  dispositive and pretrial motion deadline.

- May 15, 2020: expert discovery deadline

- September 14, 2020: two-week trial period

In late August 2019, Plaintiff asked Foresters whether it would object to the filing of an Amended Complaint to seek consequential damages. Foresters noted that Plaintiff was not entitled to consequential damages under Florida law. However, because requests for leave to amend are freely granted before the amendment deadline passes, Foresters did not oppose the request. After the Court granted leave to amend Plaintiff filed her Amended Complaint on September 9, 2019. [Am. Compl.; Doc. 33]. Foresters filed its Answer to Plaintiff's Amended Complaint and re-asserted its counterclaim for a declaratory judgment of rescission. [Doc. 34].

Throughout the discovery process, Foresters sought to discover information regarding Mr. Vinas's medical history and his knowledge of his own medical issues by propounding written discovery and serving non-party subpoenas to various entities, including Dr. Hershman, laboratories who conducted blood tests, as well as Mr. Vinas's prior life insurance carrier. [Docs. 61, 61-1, 61-2, 61-3, 61-4, and 61-5]. However, Foresters was stonewalled at every turn by Plaintiff's frivolous objections to the discovery, and instructions to the non-party subpoena recipients not to respond. [Id.].

On February 5, 2020, Plaintiff served Foresters with a Civil Remedy Notice ("CRN"), alleging, without basis, that Foresters denied Plaintiff's claim in bad faith. [Doc. 95-2]. Under Florida law, Foresters had 60 days to investigate and "cure" Plaintiff's alleged violations. [Fla. Stat. § 624.155]. However, Plaintiff continued to impede Foresters' investigation by continuing to serve meritless objections to the discovery requests and imposing frivolous roadblocks.

On March 11, 2020, Foresters scheduled a discovery hearing. [Doc. 52]. The Court cancelled this hearing due to COVID-19, and instructed Foresters to file a motion to compel. [Docs. 58 and 59]. Accordingly, on March 24, 2020, Foresters filed a motion to overrule Plaintiff's subpoena objections and to compel better responses to its written discovery. [Doc. 61].

On March 16, 2020—three and a half months after the deadline to amend—Plaintiff filed another motion to amend and sought leave to assert a claim for fraudulent inducement. [First Motion to Amend; Doc. 55].

Ten days later, on March 26, 2020—50 days after filing the CRN, and with only 10 days left in the 60 day CRN response time—Plaintiff provided a letter from Dr. Hershman stating that despite the notations in Mr. Vinas' medical records indicating that Mr. Vinas had diabetes and

6

secondary complications, he did not diagnose Mr. Vinas with diabetes or any complications from diabetes, and did not tell Mr. Vinas that he had diabetes.  Based on Dr. Hershman's letter, Foresters immediately agreed to pay the Death Benefit, plus interest to compensate Plaintiff for any damages she may have experienced between her loss and the settlement, as well as reasonable attorney's fees and taxable costs.  On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest.  [Doc. 95-1].

Despite the fact that Foresters cured all alleged violations in the CRN, Plaintiff continued to pursue his motion for leave to file a second amended complaint and assert a fraud in the inducement claim to do an end run around Fla. Stat. §624.155, which  precludes her from asserting a bad faith claim.  After extensive briefing, including a response, reply, and a sur-reply, on July 23, 2020, the Court entered an Endorsed Order granting Plaintiff leave to file a second amended complaint.  [Doc. 93].[1]

The Court then entered an Amended Scheduling Order and **deliberately did not reset a new deadline to amend**.  [Doc. 92].  The Court set the following deadlines:

- October 16, 2020:  fact discovery deadline

- October 23, 2020:  dispositive and pretrial motions deadline

- November 27, 2020:  expert discovery deadline

- March 29, 2021:  two week trial period.

---

[1] The Court appears to have granted Plaintiff's motion to amend because of the uncertainty surrounding the COVID-19 pandemic at that time, and the fact that the parties filed a Joint Motion to Continue on July 10, 2020, which perhaps mitigated prejudice caused by Plaintiff's untimely request.

On August 4, 2020, Plaintiff filed the Second Amended Complaint [Doc. 94]. On August 18, 2020, Foresters filed a motion to dismiss the Second Amended Complaint with prejudice. [Doc. 95]. Briefing closed on September 25, 2020, and the motion to dismiss is ripe for review.

On October 13, 2020, Foresters filed an unopposed motion to extend the dispositive motion deadline based on its pending motion to dismiss, which would dispose of this case in its entirety. [Doc. 110]. The Court extended the dispositive motions deadline to December 4, 2020, and stated that "**[n]o further extensions of said deadline will be granted**," and **"all other deadlines in the Court's Scheduling Order remain unaltered."** [Doc. 11 (emphasis added)].

On November 19, 2020—almost a year after the amendment deadline, well after the expiration of the fact discovery deadline, days away from the expiration of expert discovery, and with only two weeks remaining until the summary judgment deadline—Plaintiff filed the instant motion seeking leave to amend his pleading for the **third** time. Plaintiff's request is not only impermissible, but  too late and prejudicial to Foresters. This Court should deny the because Plaintiff has failed to show good cause exists for this Court to permit the filing of a Second Amended Complaint beyond the amendment deadline, the relief she requests is unduly prejudicial to Foresters, and her requested amendment is futile.

### III.    Standard of Review

After the amendment deadline set forth in a scheduling order has passed, a party must establish good cause to amend its pleading. See Rule 16(b); see also Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1988). To establish good cause, the party must show that the scheduling deadlines could not have been met despite its diligence as to the matter that is the subject of the motion to amend. Sosa, 133 F.3d at 1418.

Thereafter, the Court must consider whether the amendment is appropriate under Rule 15. Ordinarily, leave is granted in the absence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party.  See Rule 15(a)(2); Garfield v. NDC Health Corp., 456 F.3d 1255, 1270 (11th Cir. 2006) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); United Nat'l Ins. Co. v. Owl's Nest of Pensacola Beach, Inc., No. 3:05CV374MCRMD, 2006 WL 1653380, at *2 n.4 (N.D. Fla. June 8, 2006).

However, the Court may deny leave to amend a complaint when leave would be futile such that "the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."  Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

## IV.   Argument

### A. Leave to Amend by Interlineation is Inappropriate for Plaintiff's Proposed Substantive Change.

Plaintiff's characterization of her request as a motion to amend as a simple interlineation is not only disingenuous, it is false.  Motions to amend by interlineation are appropriate to correct clerical errors and make "trivial" or "formal" changes to a pleading.  See Sanders v. Pierson, No. 19-cv-60607-BLOOM/Reid, 2020 WL 3895131, at *2 (S.D. Fla. July 10, 2020) (permitting amendment by interlineation "to correct the spelling of Defendant's name."); Sade v. Insel Air, No. 17-22003-Civ- WILLIAMS/TORRES, 2018 WL 1886575, at *2 (S.D. Fla. Mar. 2, 2018) (permitting interlineation to correct "a trivial misspelling of a latter in one of the defendant's names."); Woodburn v. State of Fla. Dep't of Children & Family Serv's, 854 F. Supp. 2d 1184, 1210 (S.D. Fla. 2011) (permitting amendment by interlineation in child negligence action to correct name of child's next friend); Marco's Franchising, LLC v. Marco's

<u>Italian Exp., Inc.</u>, 239 F.R.D. 686, 688 (M.D. Fla. 2007) (permitting amendment by interlineation "to remedy [a] clerical error.").  Here, Plaintiff is not seeking to correct a clerical error or make a trivial change, Plaintiff is seeking to add a new cause of action against Foresters.  Plaintiff admits that in the Second Amended Complaint she "only referenced fraudulent representations made by Foresters in the policy itself."  [Motion ¶2].[2]  In the Motion, Plaintiff seeks to add a new theory of liability against Foresters regarding its alleged agency relationship with Ms. Lightbourn. Specifically, Plaintiff seeks to add an entirely new paragraph stating that "prior to the sale of the policy, Foresters, **through its sales agent Jazmin Lightbourn**, explained how the contestability period worked and represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions . . . to his best knowledge and belief."  [<u>Id.</u> ¶7].  Plaintiff's proposed amendment goes well beyond the correction of a scrivener's error.   Plaintiff improperly seeks to introduce a new theory of liability in this action, and to allege an entirely new pre-contractual fraudulent representation which Mr. Vinas purportedly relied on.

In a procedurally similar case, <u>McBride v. Carnival Corp.</u>, No. 1:16-CV-24894-JLK, 2019 WL 4731940 (S.D. Fla. May 30, 2019), the plaintiff sought leave to "amend her Complaint by interlineation to reflect that the man 'who caused [her] injuries . . . was an 'agent or independent contractor of Carnival' rather than an 'employee' or 'crewmember.'" <u>Id.</u> at *2.  The Court held that this was not an appropriate amendment by interlineation because "Plaintiff [wa]s not merely seeking to correct an entity's name, but to add theories of liability against Carnival regarding its agency relationship with 'Mr. Charles.'"  <u>Id.</u> at *3.  Here too, Plaintiff may not

---

[2] As Foresters states in its pending Motion to Dismiss, Plaintiff's fraud in the inducement claim is due to be dismissed under the Independent Tort Doctrine because she has failed to state anything more than a breach of contract claim.

substantively amend her pleading by interlineation to introduce a new theory of liability.  See Ifill v. United States Sugar Corp., No. 2:18-cv-713-FtM-29UAM, 2019 WL 2476676, *2, n.3 (M.D. Fla. June 13, 2019) (denying a motion to amend by interlineation to change the date a discrimination charge was filed with the EEOC because the proposed amendment was not "trivial or formal in nature.")[3]  On this basis alone, Plaintiff's Motion should be denied.

**A. Plaintiff Does Not Establish Good Cause for Failing to Satisfy the Deadline.**

This Court should deny the Motion because Plaintiff has not established good cause for her failure to comply with the Court's Scheduling Order. Good cause to amend does not exist where, as here, the amendment is based on facts that "have been known to the [movant] all along."  See Alexander v. AOL Time Warner, Inc., 132 F. App'x 267 (11th Cir. 2005) (finding no good cause to amend when the information was available to the movant.)  Plaintiff claims that she is seeking to amend her pleading "to conform to evidence obtained during discovery." [Motion at p.1].  Plaintiff distorts reality, as the "evidence" consists of her own testimony, based on a conversation she claims she observed in January 2015.  Specifically, Plaintiff states, "recent testimony at Foresters' **deposition of Mrs. Vinas** confirmed that Foresters, through its sales agent, Jazmin Lightbourn, made oral representations to Mr. Vinas prior to the sale of the Policy, and explained how the incontestability clause worked."  [Motion ¶4].  Obviously, Plaintiff was aware of Ms. Lightbourn's alleged representations during a conversation she claims that she observed in January 2015.  Plaintiff knew about this information when she filed her first Complaint over two years ago on October 4, 2018.  Plaintiff also knew about this information when she filed her First Amended Complaint over a year ago on September 9, 2020.  Clearly,

---

[3] The Court ultimately denied the motion as moot, but held it would have been denied on the merits because interlineation was inappropriate due to the substantive nature of the proposed amendment.

Plaintiff knew about this information when the deadline to amend expired on January 3, 2020. Needless to say, Plaintiff knew about this information when she sought leave to file the Second Amended Complaint to assert a fraud in the inducement claim on March 16, 2020.

In the Motion, Plaintiff claims that her amendment "is also supported by the testimony of Foresters' Chief Underwriting Officer Doug Parrott who expressly acknowledged that Foresters authorized its sales agents to make purportedly truthful representations regarding the contents of the policies they sell." [Motion ¶9]. Plaintiff's contention is false, as Mr. Parrot testified, unequivocally, that Foresters' "entire company is independent producers, independent advisors. We don't have a captive sales force, that is to say a sales force or salaried agents paid for by the company." [Parrot Tr. at 39:14-21, **Ex. A**]. In an effort to deceive the Court, Plaintiff improperly filed selective portions of Mr. Parrot's transcript. However, even if true, Plaintiff has failed to show good cause as to why she did not allege an agency theory of liability in any of her three pleadings. The purported "acknowledgment" by Mr. Parrott does not add any new evidence which Plaintiff needed to allege an agency theory. "The additional utility [s]he may have gained form reviewing the transcripts of the defendants' depositions . . . did not justify the delay in seeking leave to amend." Reese v. Herbert, 527 F.3d 1253, 1264 (11th Cir. 2008

Here, there is a complete absence of good cause to permit Plaintiff to amend her pleading after the deadline to amend expired based on information that was available to her since 2015. The relief Plaintiff seeks is inappropriate, unsupported, and "would render scheduling orders meaningless." Sanchez v. H&R Maintenance, L.C., 294 F.R.D. 677, 679 (S.D. Fla. 2013) (Cooke, J.). Good cause is lacking when a plaintiff "has full knowledge of the information with which it seeks to amend its complaint before the deadline passes," and when a plaintiff fails "to seek the information it needs to determine whether an amendment is in order." S. Grouts &

Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 n.3 (11th Cir. 2009).  Therefore, this Court should deny the Motion  for lack of good cause and undue delay.

**B. Foresters Would be Unduly Prejudiced by the Proposed Third Amended Complaint.**

Further, even if Plaintiff established good cause, which she has not, the Court should deny the Motion because Foresters would be prejudiced by permitting Plaintiff to introduce agency theory at this late stage of the proceedings.  The Eleventh Circuit has taken a "fairly broad view of prejudice."  Dannenbrog Rederi AS v. M/Y True Dream, 146 F. Supp. 2d 1307, 1315 (S.D. Fla 2001).  An amendment is prejudicial where, as here "the opponent would be required to engage in significant new preparation at a late stage of the proceedings, if the defendant would be put to added expense and the burden of a more complicated and lengthy trial, or if the issues raised by the amendment are remote from the other issues in the case and might confuse or mislead the jury."  Id.  All of these concerns are present in this case.

First, fact discovery closed on October 16, 2020.  Foresters has already served two Requests for Production, two Requests for Admissions, and two sets of Interrogatories to Plaintiff (totaling the maximum 25 questions permitted under Rule 33), in addition to eight third party subpoenas.  On October 16, 2020, Foresters deposed Plaintiff.  Foresters has already "exerted significant resources and expenses" in litigating the issues in the Second Amended Complaint, "and it would be unfair to go back and permit the plaintiff to proceed as if another theory had been asserted all along."  Id. at 1316.

Compounding this prejudice, although Plaintiff does not allege the nature of the agency relationship (ie, statutory, actual, or apparent)—which renders her allegation futile, as will be discussed below—Foresters has been deprived of an opportunity to ask Plaintiff questions about Mr. Vinas's understanding of the relationship between Ms. Lightbourn and Foresters.  There is

no time left to conduct additional discovery.  Reese, 527 F.3d at 1263 ("Because the period for discovery had expired, granting the motion would have caused the defendants undue prejudice, as they would not have been able to conduct further discovery with respect to the claim the proposed amendment asserted.").  Foresters "will not be able to submit discovery requests or depose witnesses who may have relevant information to share, thus diminishing [its] ability to craft a meaningful defense."  Carter v. City of Montgomery, No. 2:15-cv-555-RCL, 2019 WL 7170449, at *3 (M.D. Ala. Dec. 20, 2019).

> [Foresters] would be prejudiced by having to change gears entirely and defend a different lawsuit at summary judgment while also drafting and briefing a[nother] motion to dismiss addressed to the newly amended complaint.  This would be an astronomical and, quite frankly, impossible task. . . . Plaintiff's timing could hardly have been designed to inflict more prejudice.

Id. at *4.  Although Foresters agreed to permit Plaintiff to depose Ms. Lightbourn on November 30, 2020, outside of the discovery window, it never agreed to expand the scope of that deposition beyond the allegations in the Second Amended Complaint.  In any event, at approximately 5:00 PM on November 25, 2020, the day before Thanksgiving, Plaintiff unilaterally cancelled Ms. Lightbourn's deposition, leaving Foresters without an opportunity to question the alleged agent.

Additionally, the issues raised in Plaintiff's new allegation are likely to confuse and mislead the jury.  As stated, Foresters does not have any "captive agents" sufficient to support a vicarious liability theory.  [Parrot Tr. at 39:14-21, **Ex. A**].  Foresters' sales force consists entirely of independent insurance brokers.  [Id.].  Under Florida law, while acts of an agent are imputable to the insurer, acts of a broker are imputable to the insured.  Essex Ins. Co. v. Zota, 958 So. 2d 1036, 1046 (Fla. 2008).  An "insurance broker is one who solicits insurance orders from the general public and is not bound by contract to work for or solicit insurance for any particular insurance company."  Amstar Ins. Co. v. Cadet, 862 So. 2d 736, 739 (Fla. 5th DCA 2003).  As a

general rule, an insurance broker acts as the agent of the insured.  Id. at 7240.  An insurance agent, on the other hand, is "contractually obligated to work for and solicit insurance on behalf of a specific insurance company."  Id.  The nature of the relationship between the agent and insurer is generally ongoing and continuous, whereas a broker is usually employed by the insured for the specific purpose of procuring a policy of insurance.  Id.  Ultimately, however, the acts of a broker are not imputable to the insurance company, and the insurance company cannot be held vicariously liable for those acts.  Id.; Essex, 958 So. 2d at 1046.  Because Ms. Lightbourn is not Foresters' agent, but instead was a broker who served as Mr. Vinas's agent, Foresters cannot be held vicariously liable for her acts or representations.  Therefore, permitting Plaintiff to present evidence to the jury regarding Ms. Lightbourn's allegedly fraudulent representations would only serve to confuse them.

In light of the fact that the deadline to amend expired in January 2020 and this Court has already granted leave to amend beyond that deadline once, discovery has closed, dispositive motions are due in a few days, and the high probability that Plaintiff's proposed amendment will confuse the jury, granting the Motion would be unduly prejudicial to Foresters.  Accordingly, the Court should deny the Motion.

### C.  Plaintiff's Proposed Third Amended Complaint is Futile.

Finally, even if Plaintiff established good cause, which she has not, and Foresters would not be unduly prejudiced by granting Plaintiff leave to amend, which it would, the Motion should be denied on the ground of futility.  In this Circuit, "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."  Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999).  Here, this Court should deny Plaintiff's Motion because Plaintiff's Proposed Third Amended Complaint is futile.  "Leave to amend a complaint

is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Cockrell, 510 F.3d at 1310.

As a threshold matter, Plaintiff's claim for fraud in the inducement based on alleged misrepresentations made by Ms. Lightbourn to Mr. Vinas fails as a matter of law because Plaintiff lacks standing. As Foresters states in it pending Motion to Dismiss, to establish standing for a fraudulent inducement claim based on a misrepresentation, "Plaintiff must demonstrate either (1) that the Defendant['s] misrepresentation was directly made to [her] and Plaintiff relied on the misrepresentation to [her] detriment; or (2) that Plaintiff was properly assigned the rights to pursue this claim by the original party to whom the misrepresentation was made and detrimentally relied upon." Branch Banking & Trust Co. v. Appraisalfirst, Inc., No. 10-21141-CIV-GOLD/MCALILEY, 2010 WL 11596299, at *4 (S.D. Fla July 7, 2010)(citing Connecticut v. Health Net, Inc., 383 F.3d 1258, 1261 (11th Cir. 2004)).  Plaintiff lacks standing under the first prong because she does not allege that Ms. Lightbourn made any misrepresentations **to her** in order to fraudulently induced **her** to purchase the Certificate.  Instead, she claims that Ms. Lightbourn made fraudulent statements **to Mr. Vinas** in order to induce **him** to purchase the Certificate.  Additionally, Plaintiff lacks standing under the second prong because she fails to allege that Mr. Vinas assigned his right to pursue a fraudulent inducement claim to Plaintiff.

Notably, Plaintiff's status as a third party beneficiary of the Certificate is insufficient to confer standing to pursue a claim for fraudulent inducement.  Under Florida law, general principles of contract law give an intended third-party beneficiary standing to enforce a contract. Enterprise Leasing Co. v. Demartino, 15 So.3d 711, 714 (Fla. 2d DCA 2009).  Here, however, Plaintiff does not seek to enforce the Certificate, but instead seeks extra-contractual and punitive damages, to which she is not entitled under Florida law or the terms of the Certificate.

Therefore, Plaintiff's status as a third party beneficiary does not give her standing to pursue this tort claim.  See Branch Banking, 2010 WL 11596299 at **3-5 (analyzing whether plaintiff was a third party beneficiary in order to determine whether she had standing to pursue a breach of contract claim, and analyzing whether the plaintiff was assigned rights under the contract to determine whether she had standing to pursue a fraudulent misrepresentation claim).

Additionally, Plaintiff's Third Amended Complaint fails as a matter of law because it constitutes an improper shotgun pleading.  A shotgun pleading is "[t]he failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading."  Beckwith v. Bellsouth Telecommunications Inc., 146 F. App'x 368, 371-72 (11th Cir. 2005).  A shotgun pleading occurs when a party "commits the sin of not separating into a different count each cause of action or claim for relief," as Plaintiff seeks to do here.  Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1322 (11th Cir. 2015).  In the Eleventh Circuit, shotgun pleadings are "altogether unacceptable."  Cramer v. State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997).  "District courts have the inherent authority to dismiss a complaint on shotgun-pleading grounds."  Vibe Miko, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018).[4]

In Plaintiff's improper shotgun fourth complaint, she "[c]rams multiple, distinct theories of liability into one claim."  Wheeler v. Carnival Corp., No. 20-20859, 2020 WL 977935, at *1 (S.D. Fla. Feb. 28, 2020).  That is, in the same count, she seeks to hold Foresters directly liable for fraud in the inducement, and vicariously liable for fraud in the inducement based on an

---

[4] Although ordinarily a party is provided an opportunity to correct the deficiency, the court need not do this where the party already had prior chances to amend the deficiency.  Id. ("We will not adopt a rule requiring district courts to endure endless shotgun pleadings."). Although Plaintiff has not had "an opportunity to correct [her] shotgun pleading," this is her fourth attempt to state a sufficient claim, and the deadline to amend has already passed.  As discussed, Plaintiff has failed to establish good cause and the opportunity to file a belated fourth pleading would be even more prejudicial than Plaintiff's filing of this fourth pleading.

agency theory. "Each distinct theory, however, is a separate cause of action that must be asserted independently and with corresponding supporting factual allegations." Id. For example, in Noon v. Carnival Corp., this Court dismissed an improper shotgun complaint because "the amended complaint conflate[d] tow different theories of liability—direct negligence and vicarious liability." Id. at *6. The Court held that "[t]hese allegations c[ould] not stand because 'commingling direct and vicarious liability is an improper pleading practice." Id.; see also Gayou v. Celebrity Cruises, Inc., No. 11-23359-Civ, 2012 WL 2049431, at **5-6, n.2 (S.D. Fla June 5, 2012), the court dismissed a complaint that "lumped" various theories of liability into "a single maritime negligence claim." Therefore, Plaintiff's allegation is futile because it is an improper shotgun pleading.

Plaintiff's fourth pleading is also futile because she fails to provide "a short and plain statement of claim showing that [she] is entitled to relief." Fed. R. P. 8(a)(2). That is, Foresters does not know if Plaintiff intends to proceed on a statutory agency theory under Fla. Stat. § 626.342(2), an actual agency theory, or an apparent agency theory, or a combination of the three theories. Plaintiff's failure to plead her theory of recovery renders her proposed amendment futile.

Regardless, Plaintiff has failed to sufficiently state a claim to support any of the three agency theories. Franza v. Royal Caribbean Cruises, Ltd., 772 F.3d 1225, 1249 (11th Cir. 2014) ("Plainly, actual agency and apparent agency are distinct theories of liability" with their own elements). First, Plaintiff fails to allege that Ms. Lightbourn was a "statutory agent" of Foresters pursuant to Fla. Stat. § 626.342(2). In fact, the proposed pleading does not even use the term "statutory agent" or cite the statute.

Second, Plaintiff fails to allege of the elements of apparent agency.  "To state a claim of apparent agency, a plaintiff must allege that:  1) the alleged principal makes some sort of manifestation causing the third party to believe that the alleged agent had authority to act for the benefit of the principal; 2) that such belief was reasonable; and 3) that the claimant reasonably acted on such belief to his or her detriment."  Thompson v. Carnival Corp., 174 F. Supp. 3d 1327, 1342 (S.D. Fla. 2016).  None of these elements are present in Plaintiff's proposed amended pleading.  Plaintiff does not allege that Foresters made any "manifestation" which caused **her** (or even Mr. Vinas) to believe that Ms. Lightbourn had authority to act on its behalf, that such a belief was reasonable, and that she (or Mr. Vinas) reasonably relied on that belief.

Additionally, the amended pleading is devoid of any allegations supporting actual agency.  "To properly plead actual agency, one must allege: (1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) the principal's right to control the actions of the agent."  Johnston v. Maserati N. Am., Inc., No. 08-20898-CIV-HUCK/O'SULLIVAN, 2008 WL 11417405, at *2 (S.D. Fla. July 16, 2008).  Plaintiff does not allege that Foresters "acknowledged" that Ms. Lightbourn would act for it, that Ms. Lightbourn "accepted" the undertaking, and that Foresters had the right to control Ms. Lightbourn's conduct.

Plaintiff's proposed amendment also fails because she does not state a claim for fraud in the inducement based on an agency theory with sufficient particularity, as required under Rule 9(b).  Medimport S.R.L. v. Cabreja, 929 F. Supp.2d 1302, 1318 (S.D. Fla. Mar. 12, 2013).  Under Florida law, a fraudulent inducement claim requires proof of:  "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the

19

party acting in reliance on the representation." <u>Johnson Enters. of Jacksonville, Inc. v. FPL Grp.</u>, 162 F.3d 1290, 1315 (11th Cir. 1998).   Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud."   <u>See</u> Rule 9(b).   To properly plead a fraud claim, a plaintiff must allege the "who, when, when, where, and how of the allegedly false statements and then allege generally that those statements were made the required intent."   <u>BICZ v. Colliers Int'l</u>, No. 8:17-cv-1840-T-17CPT, 2019 WL 4714373 (M.D. Fla. Sept. 10, 2019) (quoting <u>Mizzaro v. Home Depot</u>, 544 F.3d 1230, 1237 (11th Cir. 2008)).   Here, however, Plaintiff does not allege that Ms. Lightbourn "knew" that her representation was false, or that she had an intention that Plaintiff would rely on her alleged representation.   Therefore, Plaintiff has failed to state a claim for fraud in the inducement based on agency theory.

## V.   <u>Conclusion</u>

For the reasons stated above, Plaintiff's Motion lacks any merit because she fails to make a showing of good cause, it is unduly prejudicial to Foresters to amend at this late juncture, and the requested amended is futile because she does not state a claim for fraud in the inducement based on agency law.   Accordingly, this Court should deny the Motion.

Dated: November 30, 2020

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant/Counter Plaintiff
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax


By:   ___s/Kristina B. Pett
      KRISTINA B. PETT
      Fla. Bar No. 0973688
      kristina.pett@mhllp.com
      DANIELLE E. SHURE
      Fla Bar No. 118911
      danielle.shure@mhllp.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 30, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Craig M. Greene, Esq.
Kramer Green Zuckerman Greene & Buchsbaum, P.A.
4000 Hollywood Blvd.
Suite 485-S
Hollywood, FL 33021
cgreene@kramergreen.com
*Counsel for Plaintiff/Counter Defendant*

Adrian Neiman Arkin, Esq.
Mintz Truppman, P.A.
1700 Sans Souci Blvd.
North Miami, FL 33181
adrian@mintztruppman.com
*Co-Counsel for Plaintiff/Counter Defendant*

s/Kristina B. Pett
Kristina B. Pett