UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:18-cv-24100-MGC

DIGNA VINAS,

    Plaintiff,

vs.

THE INDEPENDENT ORDER OF
FORESTERS,

    Defendant.
_____/

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE SECOND AMENDED COMPLAINT BY INTERLINEATION TO CONFORM TO EVIDENCE**

Plaintiff, Digna Vinas ("Vinas"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 7 and S.D. Fla. L.R. 7.1(c)(1), hereby files her Reply to Defendant's Response in Opposition to Plaintiff's Motion to Amend the Second Amended Complaint by Interlineation to Conform to Evidence (D.E. 121) and states:

1. Defendant's strategy in its Response to Plaintiff's Motion to Amend by Interlineation to Conform to Evidence ("Motion to Amend") is to once again (for the third time), re-argue the *entire merits* of its case and regurgitate the same legal positions, claims, and arguments already rejected by this Court on two prior occasions.

2. Defendant's assertion of lack of good cause is meritless. "Diligence is the key to satisfying the good cause requirement". De Varona v. Discount Auto Parts, LLC, 285 F.R.D. 671, 672–73 (S.D. Fla. 2012). The present motion does not seek to re-open discovery or add any claim that is not 100% already of record and fully discovered. In fact, the purpose was solely to bring to the Court's attention, (because of the pending Motion to Dismiss) an additional single allegation of evidence that had recently been adduced during discovery

supporting Plaintiff's claim for Fraud in the Inducement. Because the testimony was taken <u>after</u> the Amended Complaint was filed but <u>before</u> the Court ruled on the Motion to Dismiss, this was an allegation the Court would have no other way to know about.

3. As such, Plaintiff sought to add a single paragraph "36a" that supplements the fraudulent statements made by Foresters to Mr. Vinas to induce him to purchase the policy. The proposed additional paragraph states:

> 36a. Furthermore, at all times material hereto and prior to the sale of the policy, Foresters, through its sales agent Jazmin Lightbourn, explained how the contestability period worked and represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully, i.e. to his best knowledge and belief.

The evidence supporting the allegation was adduced at the depositions of Foresters' Corporate Representative Douglas Parrot taken on October 13, 2020 and of Ms. Vinas taken on October 16, 2020. The Motion for Leave to Amend to Conform with the Evidence was filed on November 19, 2020 (D.E. 120).

4. Further, while this is a 2018 case, the only remaining liability issue, Fraud in the Inducement, was raised for the first time in March 2020.[1] This was <u>immediately</u> following the depositions of Foresters' witnesses that gave rise to the first evidence of the cause of action. Foresters has already acknowledged its liability for its original breach of contract and paid some of the damages caused by its conduct. As such, with the exception of Foresters' liability for consequential damages and attorney's fees, that entire portion of the case is concluded and

---

[1] In fact, this is the first "amendment" of Plaintiff's Fraud in the Inducement Count, which as stated above is solely informational for the Court's benefit.

the only portion remaining is the Fraud in the Inducement claim that has only been pending since March.

5.  Foresters' claim that it will be "prejudiced" by this conformation to the evidence is so completely empty, it could not cite a <u>single example</u> of discovery it would like to undertake that hasn't already been completed or provide the Court with <u>any action</u> it is supposedly prevented from taking by Plaintiff's addition of a paragraph 36a.

6.  Appallingly, in a desperate attempt to bolster its claim of prejudice, Foresters' opposition was written as though the carrier had never heard the name "Jazmin Lightbourn". Ms. Lightbourne's name and her role in this case appears <u>nine times</u> in Foresters' initial disclosure documents regarding the Breach of Contract action.  These include several references as Foresters' sales "agent" or "producer".

7.  Foresters' Response was further drafted as though Foresters had not taken a 7 ½ hour deposition of Digna Vinas in which <u>every issue</u> of Jazmin Lightbourn's status as a sales agent was examined with the proverbial "fine tooth comb".  In fact, Foresters' counsel so exhaustively examined Ms. Vinas about the issue that counsel got tired of hearing Ms. Vinas' answer and interrupted her to move on to another subject.  Consider just an example of the testimony:

> Q: …what are you specifically claiming was falsely represented?
>
> A: That as long as we answered all the questions correctly and we said the truth – and I know that we said the truth, because <u>she mentioned that a lot</u> – and because it would still be paid.
>
> If not – if it wasn't going to be paid, we would never have left the other insurance. … It was more reputable.  Foresters would pay even though it would be within the first two years, which we thought it would never happen. …

> Q: When you say "she" do you mean Jazmin Lightbourn?
>
> A: Jazmin and Foresters, because Jazmin was Foresters. As far as we were concerned, when we talked to Jazmin, we were talking to Foresters.
>
> Q: We'll get through that quickly, but just answer the question. Was there anyone, other than Jazmin Lightbourn, that you contend made representations to you concerning the policy?
>
> A: As far as we were concerned, Jazmin –
>
> Q: I understand that's your position.
>
> MR. GREENE: Don't interrupt her. Kristina please don't interrupt.
>
> . . .
>
> THE WITNESS: Because I called Foresters – we called Foresters. Foresters gave Jazmin the number. When we talked to Jazmin, she only said "Foresters this, Foresters that. Foresters will pay. Foresters is a better company than American General. When I say "Jazmin," I'm saying "Foresters".

(See Vinas Depo excerpt, p. 112, l. 8 – p. 114, l. 24 attached hereto as Exhibit "A"). (Emphasis supplied).

8. Not coincidently, this is completely consistent with the testimony received from Foresters' Corporate Representative, Doug Parrott, on the identical agency issue:

> Q: When a sales representative is going to a prospective insured's home, is it fair for that sales representative to advise the insured that they are there on behalf of Foresters? Is that fair?
>
> A: That is correct.
>
> Q: From the prospective insured's position, the prospective insured is not expected to distinguish between whether that person is technically employed by an intermediate agency but only selling on behalf of Foresters or not, would that be true?
>
> A: I wouldn't think so. They would have knowledge that this person is representing Foresters.
>
> Q: And that's the way Foresters wants it, right?

4

   A:  <u>Correct</u>.

(See Parrot Depo. excerpt, p. 92, l. 13 – p. 93, l. 4 attached hereto as Composite Exhibit "B").

(Emphasis supplied).

   Q:  … you agree with me that its necessary for the independent agent to communicate with the prospective insured about the product that they are looking to sell, does that sound reasonable?

   A  That's reasonable, yes.

   Q:  <u>And you agree with me that Foresters authorizes these people to make accurate representations about Foresters products, correct</u>?

   A:  <u>Correct</u>.

   …

   Q:  <u>And all of those representations are authorized by Foresters</u> as long as they are accurate representations; correct?

   A:  <u>That is correct</u>.

(Parrot Depo. excerpt, p. 40, l. 20 – p. 41, l. 11 attached hereto as Composite Exhibit "B").

(Emphasis supplied).

  9.  Foresters' claim that Plaintiff misquoted Mr. Parrott and "deceived the Court" with citations to the above quotes (D.E. 121, p. 12), apart from being unprofessional, is likely attributable to Foresters' frustration at the admissions made by its representative on the subject.[2] As the above direct quotes reveal, Plaintiff's characterization of Mr. Parrott's testimony was accurate, and the issue of agency was raised, discovered and thoroughly examined. The question of Ms. Lightbourn's status as an agent is a question to be resolved by

---

[2] Similarly, it is both ironic and hypocritical that Defendant would accuse the Plaintiff of using its <u>five page</u> Motion to Amend as a basis to "… enhance her claim for attorney's fees" given Foresters' <u>21-page</u> Response, the first eight pages of which walk the Court through the history of the case (<u>for the fourth time</u>) and the last four of which repeats Foresters' identical arguments already rejected by this Court twice before.

the jury; not a basis for denying a motion to amend by interlineation, the only effect of which is to advise the Court of additional evidence to be presented.

10. Equally meritless is Foresters' claim that Plaintiff's decision not to depose Ms. Lightbourn somehow "[left] Foresters without an opportunity to question [Ms. Lightbourn]". (D.E. 121, p. 14). Really?! Foresters obviously had the opportunity and ability to notice its own depositions and subpoena its own witnesses … including Ms. Lightbourn. In addition, one must wonder why Foresters failed to depose Ms. Lightbourn any time over the past two years while the breach of contract action was pending <u>or</u> during the past eight months since the fraudulent inducement count was pending. It is unpersuasive at best and disingenuous at worst for Foresters to claim prejudice for its own lack of discovery.

11. Second, as indicated in paragraph 6 above, Ms. Lightbourn has been well-known to Foresters since the beginning of this case. In fact, in Foresters' response to first set of interrogatories dated July 8, 2019, the Defendant was asked to state the name, address and other identifying information of witnesses with relevant knowledge to the action. Among the names Foresters provided was Jazmin Lightbourn. More significantly, however, Ms. Lightbourn was listed <u>in the middle of six other Foresters' employees with no address, but instead the specific instruction that if Plaintiff wished to contact the witnesses, "*these individuals may be contacted through the undersigned attorney*</u>." (See Defendant's Answers to Interrogatories attached hereto as Exhibit "C") (Emphasis supplied). Obviously, Foresters knew Ms. Lightbourn well enough that it refused to provide her address and instructed that Plaintiff should contact Ms. Lightbourn through Foresters' counsel. It is quite unbelievable that Foresters can be heard today to complain about not being able to depose a witness they instructed Plaintiff not to contact except through their counsel's office.

12. In yet another example of irony, on pages 17 through 20, Foresters, in "shotgun fashion," alleges Vinas' Motion to Amend should be denied for: (i) shotgun pleading, (ii) failure to specifically state the relief to which Plaintiff is entitled and (iii) failure to allege fraud with particularity. Again, this "shotgun" approach to reeling off as many reasons for denying a motion as possible has already ben rejected by this Court.

13. Additionally, as should be clear to the Court, paragraph 36(a) is not meant to state a cause of action on its own. As Plaintiff has explained, it is a single additional fact meant to be read in conjunction with the other related paragraphs which, when taken together state a cause of action for fraudulent inducement.

14. Finally, Defendant's futility and standing arguments seek to take advantage of the old proverb "third time's a charm". Defendant's entire futility and standing arguments are a virtual "cut and paste" of the arguments already rejected by this Court when it granted Plaintiff's leave to amend her Complaint (D.E. 90) and denied Defendant's Motion to Stay Discovery (D.E. 100). Defendant's arguments have no more merit now than they did when they were previously rejected. Accordingly, Plaintiff will resist the temptation to restate all of the arguments in opposition that this Court previously accepted. In in an abundance of caution, however, to the extent the Court is considering re-re addressing the issues, Plaintiff respectfully readopts pages 6 through 10 of D.E. 79 in opposition to the arguments set forth on pages 15 through 20 of Forester's Response.

WHEREFORE, Plaintiff, Digna Vinas, respectfully requests leave of this Court to amend the Second Amended Complaint by Interlineation to conform to evidence.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY a true and correct copy of the foregoing has been electronically filed with the Court and a copy has been served on December 3, 2020 on: Kristina B. Pett, Esq. Kristina.pett@mhllp.com and Danielle Shure, Esq., Danielle.shure@mhllp.com, McDowell, Hetherington, LLP, 2101 N.W. Corporate Blvd., Suite 316, Boca Raton, FL 33431.

          KRAMER, GREEN, ZUCKERMAN,
          GREENE & BUCHSBAUM, P.A.
          Co-Counsel for Plaintiff
          4000 Hollywood Blvd., Suite 485-S
          Hollywood, FL 33021
          (954) 966-2112 – phone
          (954) 981-1605 - fax

By:    /s/ Craig M. Greene
          Craig M. Greene, Esq.
          Fla. Bar No. 618421
          cgreene@kramergreen.com

and

Adrian Neiman Arkin, Esq.
MINTZ, TRUPPMAN, P.A.
Co-Counsel for Plaintiff
1700 Sans Souci Boulevard
North Miami, FL 33181
(305) 893-5506 – phone
adrianarkin@mintztruppman.com