UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

        Plaintiff,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

        Defendant.

_____/

## THE INDEPENDENT ORDER OF FORESTERS' MOTION
## FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, The Independent Order of Foresters ("Foresters") moves for summary judgment against Plaintiff Digna Vinas pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Rule(s)") and Local Rules 7.1 and 56.1, and states:

## I.      INTRODUCTION

This entire action is an improper attempt by Plaintiff to recover a windfall above what Foresters already paid her under the Certificate, and to do an end run around Fla. Stat. § 624.155, which precludes her from asserting a bad faith claim against Foresters.  Since Plaintiff filed this breach of contract action, Foresters paid the Death Benefit under the Certificate plus interest, and agreed to pay reasonable attorney's fees and recoverable costs through the date of partial settlement, and thereby cured all alleged violations in Plaintiff's Civil Remedy Notice ("CRN").  As a matter of public policy, when an insurer pays a claim, the insured may not pursue a bad faith action because "the 60 day window is designed to be a cure period that will encourage payment of the underlying claim, and avoid unnecessary bad faith litigation."[1]  Plaintiff's request for extra-contractual damages which were not contemplated by the parties at the  time of the sale, and her fraud claim, is nothing more than an inappropriate attempt to destroy the purpose and intent of the

---

[1] Talat Enterprises, Inc. v. Aetna Cas. And Sur. Co., 753 So.2d 1278, 1282 (Fla. 2000).

Florida Legislature's enactment of the cure provisions of 624.155 and should not be countenanced by this Court.

## II.      STATEMENT OF MATERIAL FACTS

Pursuant to Rule 10(c) and Local Rule 56.1, Foresters adopts by reference its Statement of Material Facts ("SOF"), which is being filed contemporaneously with this Motion. Capitalized terms used in this Motion are as defined in the SOMF.

By way of brief summary, on January 12, 2015, Mr. Vinas completed an Application for life insurance. [SOF ¶1]. Mr. Vinas declared that within the past 10 years he had not been diagnosed with, or received treatment or medication, tested positive, or been given medical advice for diabetes. [Id. ¶¶3-4]. Mr. Vinas also completed a Diabetes Questionnaire, in which he declared that "related to" the condition of diabetes, he never had kidney problems (including protein in his urine), or sensory problems. [Id. ¶¶8-9]. Mr. Vinas declared that the answers on his Application and Diabetes Questionnaire were true to his "best knowledge and belief." [Id. ¶¶5, 11]. Based on these representations, Foresters issued the Certificate, insuring the life of Mr. Vinas for $92,000, effective January 26, 2015. [Id. ¶15].

After Mr. Vinas died on January 11, 2017, Plaintiff filed a claim for the Death Benefit. [Id. ¶¶18-19]. Because Mr. Vinas died within the two year contestability period, Foresters performed a contestability investigation. [Id. ¶20]. Foresters received medical records from Mr. Vinas's treating physician, Dr. Hershman, which repeatedly referred to diabetes and secondary issues. [Id. ¶21]. Based on the number of times diabetes appeared in the records, Foresters' underwriter determined that Mr. Vinas did not answer the questions in his Application and Diabetes Questionnaire to his best knowledge and belief, and materially misrepresented his medical history. [Id. ¶¶23-24]. The underwriter concluded that had Foresters been aware of Mr. Vinas's medical history, it would not have issued the Certificate. [Id. ¶25]. Therefore, by letter dated April 5, 2017, Foresters denied Plaintiff's claim, rescinded the Certificate, and tendered a full refund of premiums. [Id. ¶26]. Foresters asked Plaintiff to provide any medical or other information she believed would show that Foresters' decision was incorrect. [Id.].

Instead of providing additional information, Plaintiff initiated this action. Initially, Plaintiff filed a claim for breach of contract and sought the Death Benefit. Plaintiff amended this claim to add a request for consequential damages. [Id. ¶¶27-28]. Foresters served numerous discovery requests seeking information about Mr. Vinas's knowledge and belief regarding his

history with diabetes and secondary conditions. [Id. ¶¶29, 31]. Plaintiff not only objected to every request, but on February 5, 2020, she filed a CRN alleging that Foresters denied her claim in bad faith. [Id. ¶¶29-31]. Plaintiff waited until March 26, 2020—three years after Foresters asked Plaintiff to provide any evidence showing its decision was wrong, and with only 10 days remaining to investigate the allegations in the CRN—to provide a letter from Dr. Hershman stating that he never diagnosed Mr. Vinas with diabetes, or told him that he had diabetes. [Id. ¶32]. Immediately thereafter, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest, which compensated Plaintiff for the time between the loss and payment. [Id. ¶¶33-34].

Despite being fully compensated, Plaintiff filed a Second Amended Complaint in which she claims that she is entitled to consequential damages for Foresters' alleged breach, and asserted a new claim for fraud in the inducement.[2] Plaintiff's breach of contract claim fails as a matter of law because it is moot, and the undisputed evidence shows that Foresters did not breach the Certificate, and Plaintiff is not entitled to consequential damages in this action. Additionally, Plaintiff's fraud in the inducement claim fails because she lacks standing, and does not allege anything more than a fraudulent breach of contract claim in violation of Florida's Independent Tort Rule. Further, the undisputed evidence shows that Foresters neither made any fraudulent representations, nor had the fraudulent intent to induce Mr. Vinas to purchase the Certificate. Accordingly, Foresters is entitled to summary judgment in its favor.

## III.    INCORPORATED MEMORANDUM OF LAW

### A.  Summary Judgment Standard

Summary judgment is proper where, as here, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show "that there is no genuine dispute as to any material fact and the movant is

---

[2] In Count II, Plaintiff asserted a claim for declaratory relief and requested a declaration that the Certificate was "valid and in full force and effect" when Mr. Vinas died. [Second Am. Compl. ¶¶21-29]. As Foresters states in its Motion to Dismiss the Second Amended Complaint, which Foresters incorporates by reference into this Motion, Count II should be dismissed as moot because there is no longer an actual controversy as to the validity of the Certificate. [MTD at 11-12, Doc. 95]. In Plaintiff's response, Plaintiff "agree[d] that Count II has become moot." [Plf. Resp. at 7, Doc. 102]. Accordingly, Foresters is entitled to judgment in its favor on Count II.

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**B.  Foresters is Entitled to Summary Judgment on Plaintiff's Claim for Breach of Contract.**

Foresters is entitled to summary judgment on Count I of Plaintiff's Second Amended Complaint for breach of contract.  In Florida, to establish a claim for breach of contract, a plaintiff must establish that:  (1)  a contract existed; (2)  there was a breach of contract; and (3)  damages occurred.  Bland v. Freightliner LLC, 206 F. Supp.2d 1202, 1210 (M.D. Fla. 2002).  Foresters is entitled to judgment because it is moot and the undisputed evidence shows that Foresters did not breach the Certificate because it paid the Death Benefit once Plaintiff provided Dr. Hershman's letter and Plaintiff did not experience any recoverable damages.

**1.  Plaintiff's breach of contract claim is moot.**

As a threshold matter, and as Foresters states in its Motion to Dismiss, Plaintiff's breach of contract claim fails because it is moot.  [MTD at 7].  Article III of the United States Constitution requires courts to decide only cases or controversies.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992).  However, a "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Al Najjar v. Ashcroft, 273 F.3d 1330, 1335-36 (11th Cir. 2001).   "Plainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it."  Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004).  As will be discussed in detail, there is no longer a "live" issue as to whether Foresters breached the Certificate because on April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest.  [SOF ¶34; Benefit Payment Check]. Foresters fulfilled all of his obligations under the Certificate and made Plaintiff whole.  Under the plain terms of the Certificate, Plaintiff is not entitled to any additional damages.  Therefore, there is no Article III controversy for the Court to resolve with respect to Plaintiff's breach of contract claim. Plaintiff's breach of contract claim fails as a matter of law, and Foresters is entitled to judgment in its favor.

**2.  Foresters did not breach the Certificate.**

Additionally, Plaintiff's breach of contract claim fails because the undisputed evidence shows that Foresters did not breach the Certificate because it paid Plaintiff the Death Benefit, plus interest, as soon as she provided sufficient proof of loss.  Plaintiff did not provide Foresters with

evidence that Dr. Hershman did not diagnose Mr. Vinas with diabetes or any complications from diabetes, and did not tell Mr. Vinas that he had diabetes or complications from diabetes, until March 26, 2020.  [SOF ¶32; 3.26.20 Letter].  Until that time, Foresters reasonably believed that Dr. Hershman diagnosed Mr. Vinas with diabetes and related conditions, and that Mr. Vinas believed he had been diagnosed with such conditions, based on the number of times the conditions appeared in his medical records.  [SOF ¶¶23-24; Buckland Tr. at 17:5-7, 21:10-13, Sullivan Tr. at 138:5-9].   Specifically, Dr. Hershman's records indicated that Dr. Hershman identified the following conditions under "assessment":

a.  Diabetes mellitus type 2 or unspecified type with renal manifestations on July 30, 2012, and August 19, 2014.  [SOF ¶21; Hershman R. at 49, 60]]

b.  Diabetes mellitus type 2 or unspecified type with neurological manifestation on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.  [Id. at 47, 51-52, 57].

c.  Neuropathy in diabetes on November 5 and 12, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.  [Id. at 47, 51-52, 54, 57].

d.  Diabetes mellitus type 2 or unspecified type with peripheral circulatory disorder on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.  [Id. at 47, 51-52, 57].

e.  Nephritis and nephropathy on August 19, 2014.  [Id. at 49].

As soon as Foresters received sufficient proof of loss, it approved Plaintiff's claim.  [SOF ¶31].  On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest.  [SOF ¶34; Benefit Payment].  Notably, Foresters paid interest at the rate of 8%, which is more than the 3.92% interest rate required by Fla. Stat. § 627.4615.  See Fla. Stat. § 627.4615 (stating that the interest rate must be at least equal to the Moody's Corporate Bond Yield Average-Monthly Average Corporate as of the day the claim was received, which was 3.92% on January 12, 2017, when Plaintiff filed her claim); see also Stewart v. Chesapeake Life Ins. Co., No. 5:17-cv-380-Oc-30PRL, 2017 WL 4410097, at *2 (M.D. Fla. Oct. 4, 2017) (dismissing a breach of contract claim brought against a life insurance company because the insurance company "paid the entire death benefit," and therefore "could not have breached the policy.").   Therefore, Foresters did not breach the Certificate.

### 3. **Plaintiff is not entitled to consequential damages .**

Despite the fact that Foresters paid the Death Benefit and interest, Plaintiff contends that she is entitled to recover consequential damages incurred as a result of the alleged delay in payment.  "Consequential damages are '[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act.'"  See Kingship Hospitality, Inc. v. Am. Economy Ins. Co., No. 5:18-cv-520-Oc-30PRL, 2018 WL 6427681, at *2 (M.D. Fla. Dec. 5, 2018) (citing Black's Law Dictionary (10th ed. 2014)); see also Keystone Airpark Auth. v. Pipeline Contractors, Inc., 266 So.3d 1219, 1222-23 (Fla. 1st DCA 2019) ("Consequential damages . . . stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting.").  Plaintiff's claim for consequential damages fails both as a matter of law and fact.

First, Plaintiff cannot recover consequential damages in this action because there is no genuine dispute that Foresters and Mr. Vinas did not contemplate these damages when they executed the Certificate.  Under Florida law, a plaintiff may only recover consequential, or special, damages, if she can "prove the damages were within the contemplation of the parties when the contract was formed."  Trident Hospitality Fla., Inv. v. Am. Economy Ins. Co., No. 6:08-cv-289-Orl-22GJK, 2008 WL 11334515, at *2 (M.D. Fla. May 30, 2008) (citation omitted); DiDomenico v. N.Y. Life Ins. Co., 837 F. Supp. 1203, 1206 (M.D. Fla. 1993) (recognizing that consequential damages are unavailable to an insured who "proved that Defendant merely breached the insurance policy provisions without violating the [bad faith] statute or if [the insured] cannot prove that such damages were contemplated by the parties at the time they executed the policy."); Macola v. Gov't Empls. Ins. Co., 953 So. 2d 451, 455 (Fla. 2006) (recognizing that in breach of contract actions against an insurer, "damages [are] limited to those contemplated by the parties in the insurance policy."); Talat, 753 So. at 1278 ("In the context of a first-party insurance claim, the contractual amount due the insured is the amount owed pursuant to the express terms and conditions of the policy."); Manor House, LLC v. Citizens Prop. Ins. Corp., 277 So. 3d 658, 661-62 (Fla. 5th DCA 2019) (holding that consequential damages are recoverable if contemplated by the parties when they entered into the agreement).[3]  For example, in Swamy v. Caduceus Self Ins. Fund, Inc., 648

_____

[3] Florida's Supreme Court granted review of Manor House to consider whether an insured to recover consequential damages in an action not brought under Fla. Stat. § 624.155.

So. 2d 758 (Fla. 1st DCA 1994),  the court entered judgment in favor of the malpractice insurer and held that the insured could not recover "lost profits" and "damages to his professional reputation" based on the alleged breach of the duty to settle in good faith because these damages were not "within the contemplation of the parties to the insurance contract."[4]  Id. at 760.

Here, too, the undisputed evidence shows that Mr. Vinas and Foresters did not contemplate Plaintiff's expenses and debts when they entered into the contract.  The Certificate's merger clause precludes the argument that Foresters assumed the risk of any extra-contractual damages, let alone the type that Plaintiff seeks.  The merger clause provides that the Certificate and application materials, inter alia, constitute the parties' "entire contract," which could not be modified by anyone.  [SOF ¶26; Certificate at 10].  Further, Plaintiff testified that neither she nor Mr. Vinas spoke with Foresters prior to Mr. Vinas's death.  [Plf. Tr. at 64:15-25, 65:1-4].  Plaintiff and Mr. Vinas communicated solely with Mr. Vinas's insurance broker, Jazmin Lightbourn, who did not discuss Mr. Vinas's "financial situation," expenses, and debt.  [Id. at 64:15-21, 79:4-21].  Thus, such damages were not contemplated and are not recoverable.

Because Foresters and Mr. Vinas did not contemplate any consequential damages, Plaintiff was not able to allege any such damages with particularity, as is required by Rule 9(g), and constitutes an additional ground to deny Plaintiff's request.  Plaintiff's allegations "do not inform Foresters and the Court of the "nature of the damages claimed in order to avoid surprise." Landsman v. City of Vero Beach, No. 13-14375-CIV-GRAHAM/LYNCH, 2015 WL 10960951 (S.D. Fla. Oct. 21, 2015).  In the Second Amended Complaint, Plaintiff claims that she is entitled to consequential damages "of unpaid debts, accruing interest, and defense costs in defense of the county court collection action and other expenses."  [Second Am. Compl. ¶19].  Throughout the discovery process, Plaintiff repeatedly modified, and added to, her list of consequential damages, and is causing the very "surprise" Rule 9(g) is intended to avoid.  Plaintiff cannot rectify her deficient allegations by serving informal lists after the close of discovery and presenting argument in a summary judgment brief.  Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  It is settled that "[ev]idence of special damages is inadmissible if those damages are not pled in the complaint."  Vaughn v. Producers Agric. Ins. Co., No. 1:14-cv-12-

---

[4] The court construed the insured's claim for failure to settle as a breach of contract claim. Swamy, 648 So. 2d at 76o.

MWGRJ, 2015 WL 12914150, at *3 (N.D. Fla. Jan. 23, 2015) (citation omitted).

Specifically, on February 5, 2020, Foresters served its First Request for Production and asked for "[a]ll documents supporting Plaintiff's claim that she sustained consequential damages as a result of Foresters' decision to deny her claim for the death benefits." [First RFP at p.13, No. 21, Doc. 61-2]. Plaintiff refused to answer and said such documents were privileged. [Id.]. On March 24, 2020, Plaintiff served Initial Disclosures, which lacked any mention, much less a calculation, of consequential damages. Plaintiff stated: "Plaintiff's damages can be computed by adding the amount of the life insurance policy proceeds to the amount of attorney's fees due under Florida Statute §627.428 **to the amount of prejudgment interest** that has accumulated and will accumulate onto both the insurance proceeds and attorney's fees." [Initial Disclosures at 3, Doc. 61-7 (emphasis added)].[5] Even at Plaintiff's deposition on October 16, 2020, she testified that she did not know precisely what her consequential damages were and did not calculate the amount. [Plf. Tr. at 79:22-25, 80:1-15]. Finally, on October 19, 2020, Plaintiff served an itemized list of her alleged consequential damages. Plaintiff requested: (1) $91,893 for a life insurance policy Plaintiff sold after Mr. Vinas died; (2) $1,200 to compensate Plaintiff for 3 years of home insurance (ie, mortgage insurance); (3) $3,200 for personal items (a bracelet and wedding ring) Plaintiff sold after Mr. Vinas died; (4) $3,400 in interest owed to American Express and Chase; (5) $4,500 in interest owed to Bank of America; (6) $43,180 in "loans" from friends and family; (7) $2,250 in attorney's fees owed to Adrian Arkin for defense of action Bank of America's collection action; and (8) an unknown amount for "seriously damaged credit." [SOF ¶37; Plf. Consequential Damages]. The next day, Plaintiff amended her request to seek $3,213.37 in interest owed to Bank of America. [SOF ¶37; Plf. Am. Consequential Damages]. Plaintiff did not specifically request any of these damages in the Second Amended Complaint, and is therefore precluded from recovering these sums.

Plaintiff's request for consequential damages is also improper because she is seeking a double recovery. Although not alleged and difficult to discern, Plaintiff appears to claim that as a result of Foresters' allegedly untimely payment, she experienced losses in the form of interest payments owed to American Express and Chase, attorney's fees associated with a collection action, 3 years of home insurance, and "seriously damaged credit." Plaintiff seeks to recover the

---

[5] Plaintiff appears to acknowledge that interest fully compensated her for any harm sustained between the date of Mr. Vinas's death and payment of the Death Benefit.

amount she allegedly paid to these institutions **in addition** to the amount she recovered from friends and the sale of a life insurance policy and personal items in order to pay the institutions. Essentially, Plaintiff seeks to recover the amount she paid, and separately to recover the amount of money she assembled in order to make the payment—this is, by definition, an improper double recovery.

Further, Plaintiff cannot recover the $43,180 she received from friends and family because these were gifts, not loans, and Plaintiff was not required to re-pay them.  Plaintiff testified that her friends knew the sums were not "borrowed," and she "paid them as a gift" to show appreciation.  [Plf. Tr. at 80:17-25, 81:1-3].  There is no legal basis to hold Foresters liable for Plaintiff's generosity.  Notably, there is not even a scintilla of evidence supporting that Plaintiff received funds from her friends.  Plaintiff relies  solely on the itemized list she prepared and produced during discovery.  "Without more," such as a receipt, contract, or evidence of a conversation with her friends, "a reasonable jury could not return a verdict finding that." Bouey v. Orange Cnty. Service Unit, No. 6:14-cv-48-Orl-37GJK, 2015 WL 1894278, at *3 (M.D. Fla. Apr. 27, 2015).  "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion. Solliday v. Fed Officers, 413 F. App'x 206, 207 (11th Cir. 2011).

Similarly, Plaintiff cannot recover consequential damages under the doctrine of avoidable consequences, which "prevents a party from recovering those damages inflicted by a wrongdoer that the injured party could have reasonably avoided."  Sys. Components Corp. v. Fla. Dep't of Transp., 14 So.3d 967 (Fla. 2009).  Here, after Foresters paid Plaintiff's claim, she decided to pay off her mortgage, which was not due, and cover the rest of her expenses by selling personal property and her life insurance policy, and gifts from family and friends.  [Plf. Tr. at 127:15-25, 128:1-6].  Plaintiff could have continued paying $200 a month for her mortgage, but instead decided to pay it off rather  than paying for her other alleged expenses.  [Id. at 127:15-25, 128:1-25].  Plaintiff could have avoided her alleged consequential damages, and therefore they are not recoverable.

Plaintiff also could have mitigated her damages by providing Foresters with Dr. Hershman's letter stating that he did not diagnose Mr. Vinas with diabetes prior to March 26, 2020. In Foresters' denial letter dated **April 5, 2017**—well before Plaintiff incurred any of these alleged consequential damages—Foresters stated:  "If you have any medical or other information that you

think would show that the conclusions arrived at . . . are incorrect or incomplete, we ask that you provide us with all such information so we may conduct a further review." [4.5.17 Letter at 3]. Instead of providing additional information, Plaintiff initiated this action and waited **almost three years** to provide evidence that to Mr. Vinas's knowledge and belief he did not have diabetes. Under Florida law, she may not recover these readily avoidable consequential damages.

Additionally, there is no evidence that Foresters **caused** Plaintiff to incur any of these alleged damages. Plaintiff testified that some time prior to her husband's death, she had $20,000 in credit card debt. [Plf. Tr. at 76:14-21]. On the date of Mr. Vinas's death, she had approximately $12,000 in credit card debt. [Id. at 78:18-21]. Therefore, Foresters' allegedly belated payment did not cause Plaintiff's inability to pay Bank of America, American Express or Chase. Plaintiff was unable to pay these entities while Mr. Vinas was alive. As such, Plaintiff is not entitled to recover the attorney's fees she incurred in defending the collection against Bank of America. Plaintiff has failed to provide any evidence supporting that Foresters caused Bank of America to institute the collection action and necessitate the need for counsel, as Plaintiff owed money to Bank of America long before Mr. Vinas's death.

To the extent that Plaintiff claims Foresters' alleged untimely payment caused her to incur interest on her already existing debt, she has failed to provide sufficient evidence. Plaintiff relies on a statement from American Express dated June 3, 2019, indicating that Plaintiff owed $110.98 in interest, and a letter from Chase Bank dated May 16, 2018 setting forth a payment plan, but not stating the total amount owed or interest due. [Plf. Consequential Damage Docs at 2, 5]. According to Plaintiff's Bank of America records, on May 22, 2017, she was charged a total of $151.39 in interest for a **cash advance**. [Id. at 23]. Only $0.26 of that interest payment was "interest charged on purchases," ie, her credit card balance. In May 2018, her outstanding interest remained $151.39. [Id.]. On December 22, 2018, she was charged additional interest of another cash advance—not on the principal amount owed. [Id. at 19]. Plaintiff's conclusory statement that Foresters caused her to experience consequential damages, in the form of debt, interest or otherwise, is completely unsupported.

Finally, Plaintiff also cannot recover for "seriously damaged credit." Foresters' obligation, if any, would be "to repay the actual debt owed, not the consequential damages of a poor credit rating and reputation resulting from the obligation." Sharon v. Royal Caribbean Cruises Ltd., No. 17-22323, 2017 WL 11220344, at *4 (S.D. Fla. Oct. 6, 2017). There is no evidence supporting

that Plaintiff was harmed by any alleged drop in credit, such as proof that she was rejected from a loan, as she was gifted funds by friends and family.  Further, such damages are not recoverable because they cannot be proved with reasonable certainty.  Harter v. Ohio Security Ins. Co., No. 5:20-cv-268-Oc-30PRL, 2020 WL 6384159, at *1 (M.D. Fla. 2020) ("The Court notes that consequential damages may be recoverable in a breach of contract action if the damages were contemplated by the parties and can be proven with reasonable certainty.").

Therefore, Foresters is entitled to summary judgment in its favor on Plaintiff's breach of contract claim.

Additionally, Plaintiff is not entitled to consequential damages as a matter of law because Foresters paid Plaintiff interest to compensate her for time between the loss and the payment. Indeed, "[i]t is precisely for this delay in the payment of money that additional damages are allowed in the form of prejudgment interest." Md. Cas. Co. v. Fla. Produce Distribs., Inc., 498 So. 2d 1383, 1384 (Fla. 5th DCA 1986); see also Shideler v. Conn. Gen. Life Ins. Co., 563 So. 2d 1082, 1084 (Fla. 5th DCA 1990) (Prejudgment interest is a legally recognized "means to transfer to the prevailing party the gain the losing party realized, or could have realized, from the use of the money during the relevant time period."); Baxter v. Royal Indem. Co., 285 So. 2d 652, 657 (Fla. 1st DCA 1973)[6] ("The penalty imposed by law on the insurer for its failure to settle [or resolve] the claim of its insured within a reasonable time is the payment of interest at the legal rate.").  "To charge the insurer prejudgment interest on the delayed payment of the money due and also charge it for the loss of use of the damaged property [ie, consequential damages] would be to make the insurer pay twice for essentially the same thing." Fla. Produce Distribs., Inc., 498 So. 2d at 1384-85.

Finally, Plaintiff's request should be denied as a matter of public policy.  The Florida Supreme Court recognizes that "[t]he very purpose of life insurance is to provide a sanctuary from the rigors and uncertainties of age, unemployment, and other disabilities that eventually incumber all flesh, and to provide some assurance that those dependent on the insured will at least have bread when he is gone." N.Y. Life Ins. Co. v. Kincaid, 122 Fla. 283, 298 (Fla. 1935); see also Sciaretta v. Lincoln Nat'l Life Ins. Co., No. 9:11-cv-80427-DM, 2013 WL 11317858, at *1 n.1 (S.D. Fla. May 6, 2013) ("The fundamental purpose of life insurance is to provide financial protection to the

---

[6] Although Baxter was decided before Florida enacted Fla. Stat. § 624.155, its statement regarding the purpose of prejudgment interest remains viable.

living in the end of death."). Accordingly, to achieve these ends, Mr. Vinas purchased the Certificate with a $92,000.00 Death Benefit, which Foresters agreed to pay. Plaintiff seems to believe that regardless of the face value of a life insurance policy, a beneficiary should be able to recover an amount sufficient to cover all debts when the insured dies. If Plaintiff's request is granted, then taken to its logical end, a life insurance beneficiary would be able to recover all financial losses and expenses incurred anytime payment is allegedly delayed.

**C. Foresters is Entitled to Summary Judgment on Plaintiff's Claim for Fraudulent Inducement.**

Foresters is entitled to summary judgment in its favor on Plaintiff's claim for fraudulent inducement. Under Florida law, to prevail on a fraudulent inducement, a plaintiff must establish:

> (1) false statement of material fact or suppression of truth by the defendant; (2) the defendant knew or should have known the statement was false, or made the statement without knowledge as to its truth or falsity; (3) the defendant intended the false statement or omission would **induce the plaintiff's reliance**; and (4) **the plaintiff relied** to his detriment.

Latell v. Triano, No. 2:13-cv-565-FtM-29CM, 2014 WL 6240001, at *4 (M.D. Fla. Nov. 13, 2014) (citations omitted) (emphasis added). Plaintiff's claim fails as a matter of law because the undisputed evidence shows that: (1) Plaintiff lacks standing; (2) Foresters did not make any fraudulent misrepresentations to induce Plaintiff to take any actions, and did not have the intention of fraudulently inducing Plaintiff to act; and (3) Foresters did not make any fraudulent misrepresentations to Mr. Vinas, and did not have the fraudulent intent to induce Mr. Vinas to purchase the Certificate.

**1. Plaintiff lacks standing to pursue a fraudulent inducement claim.**

As Foresters states in the MTD, Plaintiff lacks standing to pursue a fraudulent inducement claim against Foresters. [MTD at 13-14]. To establish standing for a fraudulent inducement claim based on a misrepresentation, "Plaintiff must demonstrate either (1) that the Defendant['s] misrepresentation was directly made to [her] and Plaintiff relied on the misrepresentation to [her] detriment; or (2) that Plaintiff was properly assigned the rights to pursue this claim by the original party to whom the misrepresentation was made and detrimentally relied upon." Branch Banking & Trust Co. v. Appraisalfirst, Inc., No. 10-21141-CIV-GOLD/MCALILEY, 2010 WL 11596299, at *4 (S.D. Fla July 7, 2010)(citing Connecticut v. Health Net, Inc., 383 F.3d 1258, 1261 (11th Cir. 2004)). Plaintiff lacks standing under the first prong because there is no dispute that Mr. Vinas

owned the Certificate.  Additionally, Plaintiff lacks standing under the second prong because there ¶is not even a scintilla of evidence supporting that Mr. Vinas assigned his right to Plaintiff to pursue a fraudulent inducement claim.[7]

### 2. Foresters did not make a false statement of material fact to induce Plaintiff to take any action, and Plaintiff did not rely on any of Foresters' representations.

Similarly, Plaintiff's fraudulent inducement claim also fails because the undisputed evidence shows that Foresters did not make any fraudulent statements to induce **Plaintiff's** reliance, and on which **Plaintiff** relied to her detriment.  As stated, Mr. Vinas owned the Certificate, and there are no allegations, much less evidence, that Plaintiff relied on any of Foresters' representations.  Therefore, there is no evidence supporting the third and fourth elements of fraud in the inducement, and Plaintiff's claim fails.

### 3. Foresters did not make a false statement of material fact to induce Mr. Vinas to enter into a contract, which he relied on to his detriment.

Plaintiff's claim also fails because the undisputed evidence shows that Foresters did not make any false statements to induce Mr. Vinas to purchase the Certificate, and that Foresters did not have the fraudulent intent to induce Mr. Vinas to purchase the Certificate.  Plaintiff claims that Foresters' committed fraud because it did not intend to comply with the terms of the Certificate and timely pay her claim.  Specifically, Plaintiff alleges that "the Policy provisions constituted specific representations to o [sic] by Foresters in the form of contractual promises and/or statements of present intention."  [Second Am. Compl. ¶32].  "Foresters false and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answers Application questions to his best knowledge and belief."  [Id. ¶36].  Plaintiff alleges that this "representation was made to induce [Mr.] Vinas to pay premiums for the policy despite the fact that Foresters knew it had no intention to ever pay benefits if [Mr.] Vinas were to die during the first two years following issuance of the Policy even if Application answers were provided to Mr. Vinas's best knowledge and belief.  This statement was a false statement of material fact by Foresters to

---

[7] As Foresters states in the MTD, Plaintiff's status as third-party beneficiary gives her standing to seek benefits under the contract, but not to seek extra-contractual and punitive damages under a fraudulent inducement claim.  [MTD at 14].

Rigoberto Vinas **contained within the Policy language** and incorporated Florida law."   [Id. ¶37(emphasis added)].

Plaintiff's claim fails as a matter of law because it violates Florida's Independent Tort Rule. Under this doctrine, "a plaintiff may not pursue a tort theory of relief where a contract created the duty to act, performance is measured against the contractual obligations, and the contract provides the remedy for defective performance." Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Protection LP, No. 19-14050-CIV-ROSENBERG/MAYNARD, 2019 WL 3428552, at *2 (S.D. Fla. Apr. 18, 2019). "In practical effect it bars a plaintiff from raising a tort cause of action that restates a breach of contract cause of action. For a tort claim to stand, it must be independent of the breach of contract claim." Id. (emphasis in original). "In assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract." Kaye v. Ingenio, Filale De Loto-Quebec, Inc., No. 13-61687-CIV, 2014 WL 2215770, at *5 (S.D. Fla. May 29, 2014). Notably, "statements or misrepresentations made to induce an individual to enter a contract, **if later contained within the terms of the actual contract**, cannot constitute a basis on which to bring the fraud claim." Ben-Yishay v. Mastercraft Dev., LLC, 553 F. Supp.2d 1360, 1370 (S.D. Fla. 2008) (emphasis added).

Here, Plaintiff alleges that Foresters fraudulently failed to comply with its promise to pay the Death Benefit if Plaintiff satisfied the Certificate's the terms and conditions, which Plaintiff acknowledges is embodied in the Certificate. That is, Plaintiff alleges nothing more than "fraud in the performance," not "fraud in the inducement," which "is not actionable alongside a breach of contract claim because the misrepresentations are interwoven and distinct from the heart of the contractual agreement." Cutler v. Voya Financial, Inc., No. 18-20723-Civ-WILLIAMS/TORRES, 2018 WL 4410202, at *8 (S.D. Fla. Aug. 23, 2018) (internal quotation and citation omitted) (dismissing a fraudulent inducement claim).[8] Plaintiff's fraud claim is "inextricably intertwined with Plaintiff's breach of contract claim," and fails as a matter of law. See Lookout Mountain Wild Animal Park, Inc. v. Stearns Zoological Rescue & Rehab Ctr., Inc., 553 F. App'x 864, 865

---

[8] A reading of Plaintiff's allegations makes clear that he is alleging nothing more than that a "fraudulent" breach of contract, which is encompassed within Count I. See Second Am. Compl. ¶¶32, 36-39, 40, 45.

(11th Cir. 2014) (affirming the district court's order dismissing various tort claims, including fraudulent inducement, because the "plaintiff ha[d] not identified any tortious acts that [we]re sufficiently independent of the alleged breach of contract to render the tort claims viable."); Perez v. Scottsdale Ins. Co., No. 19-22761-Civ-Scola, 2019 WL 5457746, at *4 (S.D. Fla. Oct. 24, 2019)(dismissing a fraudulent inducement claim because "the misrepresentations alleged [were] in the performance of the contract."); Kaye, 2014 WL 2215770 at *5 (dismissing a fraudulent inducement claim because "[w]hile the initial promise may have been fraudulent, the terms of the purported fraud were memorialized in the License Agreement," and therefore, "any failure to comply with those terms results in an action for breach of contract." ).

Plaintiff acknowledges that "fraud cannot be predicated upon a mere promise not performed." Noack v. Blue Cross & Blue Shield of Fla., Inc., 742 So. 2d 433, 434 (Fla. 1st DCA 1999); Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) ("An action for fraud generally may not be predicated on . . . promises of future action, but rather must be based on a statement concerning a past or existing fact."). However, Plaintiff attempts to rely on a limited exception to this rule which allows a plaintiff to pursue a fraud in the inducement claim "where it can be shown that the promisor had a **specific intent** not to perform the promise **at the time the promise was made**, and the other elements of fraud are established." Noack, 742 So. 2d (emphasis added); Mejia v. Jurich, 781 So. 2d at 1177. Plaintiff fails to acknowledge that the misrepresentation, or fraudulent statement itself, must be extraneous to the contract, and separate from the breach. Florida's Supreme Court recognizes that fraudulent inducement "normally occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1996). Here, Plaintiff simply points to the Contestability Clause, and states that Foresters' alleged breach of that clause means that it must not have intended to perform. Plaintiff does not point to a single statement extraneous to the Certificate to support her fraud in the inducement claim. A reading of Plaintiff's allegations makes clear that he is alleging nothing more than that a "fraudulent" breach of contract, which is encompassed within Count I. See Second Am. Compl. ¶¶32, 36-39, 40, 45. Accordingly, Plaintiff's fraud in the inducement claim fails as a matter of law.

However, even if the Court finds that Plaintiff has stated a valid claim for fraud in the inducement, Plaintiff's claim still fails because there is not even a scintilla of evidence supporting that Foresters had the "fraudulent intent" to not pay the Death Benefit if Plaintiff satisfied the other

terms and conditions of the Certificate when it issued the Certificate.  There is no dispute that Mr. Vinas died within two years of the Certificate's effective date and that Foresters was entitled, under Florida law and the terms of the Certificate, to conduct an incontestability investigation.  [SOF ¶¶23, 24, 27; Certificate at 14; Fla. Stat. § 627.255].  Further, the undisputed evidence shows that none of the individuals involved in sales or marketing of Foresters' products had any awareness or knowledge of the claims or underwriting process and an applicant's knowledge and belief. [Parrot Tr. at 32:5-25, 33:1-2, 33:15-25, 34:1-20].  As such, none of the individuals involved in the sale of the Certificate could have harbored the fraudulent intent to deny any claim filed during the contestability period.

Additionally, the undisputed evidence shows that Foresters meaningfully considered whether Mr. Vinas's representations in the Application and Diabetes questionnaire were true to his best knowledge and belief.  Foresters reasonably determined that based on the number of times diabetes and diabetic-related conditions appeared in the records, Dr. Hershman must have discussed the condition with Mr. Vinas, and therefore Mr. Vinas must have known that he had diabetes or a related condition.  Specifically, under the "assessment" section, Dr. Hershman listed the following conditions:

    f.   Diabetes mellitus type 2 or unspecified type with renal manifestations on July 30, 2012, and August 19, 2014.  [Id. at 49, 60].

    g.   Diabetes mellitus type 2 or unspecified type with neurological manifestation on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.  [Id. at 47, 51-52, 57].

    h.   Neuropathy in diabetes on November 5 and 12, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.  [Id. at 47, 51-52, 54, 57].

    i.   Diabetes mellitus type 2 or unspecified type with peripheral circulatory disorder on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.  [Id. at 47, 51-52, 57].

    j.   Nephritis and nephropathy on August 19, 2014.  [Id. at 49].

Foresters' claims adjuster, Lisa Buckland, testified that in Mr. Vinas's medical file, diabetes "was documented so many times that [she] would think that he was aware of his condition." [Buckland Tr. at 17:5-7, 21:10-13].  David Sullivan, Foresters' Assistance Vice President of Claims, also testified that "[i]n [Foresters'] review of the records, it would seem, with the number of

assessments for the diabetes condition, and the complications, that a reasonable person would expect that physician to tell their patient of those conditions." [Sullivan Tr. at 138:5-9]. Dr. Frager, Foresters' expert, opined that based on "the number of times diabetes and related complications appeared in Mr. Vinas's records, it would be reasonable to assume that Mr. Vinas was being followed for diabetes and secondary conditions." [Frager R. at 3]. "Anyone reviewing these records would reasonably determine that Dr. Hershman adhered to standard protocol and discussed diabetes and secondary complications with Mr. Vinas, including nephropathy and neuropathy. Based on these records, Mr. Vinas must have been aware of these conditions." [Id.]

The fact that Foresters' underwriting department initially approved Mr. Vinas's Application and issued the Policy, and then later determined that he did not answer the questions to his best knowledge and belief is not evidence of fraudulent intent. The initial decision to issue the Certificate depends only on the information Foresters has in its possession. [Parrot Tr. at 50:6-25, 51:1]. Douglas Parrot, Foresters' Chief Underwriter, testified that "[t]he application lays out the responsibilities of the customer to answer those questions to the best of their knowledge and belief. [Foresters] rel[ies] on the transparency of the customer to tell [it] what it is that they know. [Foresters] also rel[ies] on a number of different data elements that [it] secure[s] on every customer for background, underwriting background, underwriting investigation, information to corroborate information." [Id. at 50:6-14]. Indeed, Florida Statute section 627.404(3) provides that an insurer is entitled to rely upon the statements made by an insured in the application. Fla. Stat. § 627.404(3). The only exception is when the insurer has "actual or constructive knowledge that such representations are incorrect or untrue." Certain Underwriters at Lloyd's London v. Jimenez, 197 So. 3d 597, 601 (Fla. 3d DCA 2016). Once Foresters obtained the MIB alert that Mr. Vinas was diagnosed with diabetes, it immediately asked Mr. Vinas to complete a Diabetes Questionnaire and provide any information he thought necessary to clarify the issue.[9] At the underwriting stage, Foresters reasonably relied on the application materials. Notably, "there is no claims decision made at the time of underwriting [as to] whether they [the applicant] have been completely truthful . . . with their knowledge and belief, a contestable review will happen and a decision will come of that review." [Parrot Tr. at 56:21-25, 57:1-3].

---

[9] Mr. Vinas completed the Diabetes Questionnaire and represented that he did not have diabetes and had never been treated for diabetes. [Questionnaire at 2]. Foresters relied on this representation to issue the Certificate.

That is, Foresters does not make an actual determination regarding the insured's best knowledge and belief until it conducts an incontestability investigation. "[W]hen a claim is made it then becomes the responsibility of the contestable claim review practice to make determinations around belief and knowledge." [Id. at 50:16-20]. At that point Foresters has "the right to review that information and go back and review the information." [Id. at 54:2-7]. The purpose of the contestable review "is to make sure that what [Foresters] learned at the front end when the case was issued is indeed accurate on the back end. If it's accurate to what [Foresters] knew on the front end a claim would be paid." [Id. at 86:14-18]. To conduct the incontestability investigation, Foresters obtained Mr. Vinas's medical records, which it was not required to do during the underwriting process. It relied on the information in those records to find that Mr. Vinas did not answer the questions on the Application and Diabetes Questionnaire to his best knowledge and belief. Therefore, Plaintiff cannot rely on the fact that underwriting decided to the issue the Certificate as evidence of a fraudulent intent to deny a contestable claim based on a finding that the insured made a material misrepresentation.

Notably, Foresters does not permit the original underwriter to be involved in an incontestability investigation for a policy that she approved. [Id. at 204:15-25, 205:1-14]. Foresters requires a new underwriter, who did not review the application materials, to perform the incontestability investigation as a form of checks and balances. [Sullivan Tr. at 205:1-4]. It "would be a conflict of interest" to have the same underwriter perform the contestability review. [Parrot at 114:6-8]. Plaintiff may not agree with the merits of this process, but the fact that Foresters has protocols in place to ensure an unbiased, fair incontestability investigation refutes Plaintiff's contention that Foresters had the intent not to approve her claim when it issued the Certificate.

Ultimately, there is not even a scintilla of evidence in this case supporting that Foresters issued the Certificate with the fraudulent intent to deny a contestable claim. The undisputed evidence demonstrates that Foresters did not harbor any fraudulent intentions when it issued the Certificate, and did not make any false statements of fact. As soon as it received information showing that Mr. Vinas's statements during the application process were true to his best knowledge and belief, Foresters paid the claim.

Notably, Plaintiff may not, at the summary judgment stage, attempt to hold Foresters liable for statements allegedly made by Ms. Lightbourn on an agency theory because she does not assert,

or even allude to, an agency theory in the Second Amended Complaint.  Plaintiff acknowledges as much in her belated motion to file a third amended complaint.  [SOF ¶38; Doc. 120].  When pursuing a claim based on an agency relationship, the plaintiff must allege the elements of an agency relationship, in addition the elements of the underlying claim.  See Rojas v. Carnival Corp., d/b/a Carnival Cruise Lines, 93 F. Supp. 3d 1305, 133 (S.D. Fla. 2015) ("Thus to hold a principal liable for the negligence of an apparent agent, a plaintiff must sufficiently allege the elements of apparent agency in addition to the elements of the underlying negligent act of the agent for which the plaintiff seeks to hold the principal liable.  Plaintiffs appear to have overlooked this fact.").  Plaintiff's Second Amended Complaint, and both of her prior pleadings, are devoid of any allegations regarding an agency theory, let alone an allegation that Ms. Lightbourn was Foresters' agent.  It is settled that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment."  Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004).  The Eleventh Circuit "does not hesitate to apply the Gilmour rule by affirming summary judgment orders in favor of a defendant when a plaintiff tries to assert a new claim for the first time in a memorandum of law opposing a summary judgment motion."  Dawsey v. Carnival Corp., No. 16-23939-CIV-GOODMAN, 2018 WL 5251850, at *13 (S.D. Fla. Oct. 22, 2018) (collecting Eleventh Circuit cases).  "Similarly, Florida district courts are not reluctant to rely on Gilmour."  Id. (collecting Florida district court cases).  "Given this procedural background, [Plaintiff] cannot now assert new claims for actual/apparent agency and therefore cannot rely on those doctrines to avoid summary judgment in favor of [Foresters]."  Id.

For example, in Dawsey, the Court held that the plaintiff could not pursue an agency theory against Carnival because "[s]he never asserted in any way—directly or indirectly, expressly or implicitly—those claims in her amended complaint (or in her initial complaint, for that matter)." Id.  The held that she could not, "in a memorandum opposing a summary judgment motion, pursue for the first time an agency theory against Carnival."  Id.  Here too, neither Plaintiff's First Complaint, Amended Complaint, nor the operative Second Amended Complaint, asserted a fraud in the inducement theory based on an agency relationship.  There is no valid reason why Plaintiff did not pursue this theory initially, as she has, at all times, known Ms. Lightbourn's identity.  Plaintiff cannot now, at the summary judgment stage, pursue an agency theory for the first time.

In any event, Ms. Lightbourn did not make any fraudulent misrepresentations.  Plaintiff alleges that Ms. Lightbourn told Mr. Vinas that a claim would not be denied based on

misrepresentations in the application if Mr. Vinas answered the questions to his best knowledge and belief.   For the reasons discussed, that statement is accurate, as Foresters performs contestability investigations if an insure dies within two years of a policy's issuance, and approves claims if the evidence supports that the insured's material representations were true to his best knowledge and belief and all of the policy's other terms and conditions are satisfied.

### 4.  Plaintiff is not entitled to attorneys' fees for fraud in the inducement.

Foresters is also entitled to summary judgment on Plaintiff's request for attorney's fees under Fla. Stat. § 627.428 with respect to her fraud in the inducement claim.   Section 627.428 provides that upon entry of judgment against an insurer "under a policy or contract executed by the insurer," the court shall award reasonable attorney's fees in favor of the insured.   Florida Supreme Court's most recent applicable holding states: "[W]e hold that recovery for attorney's fees under Section 627.428 requires an incorrect denial of benefits by the insurance company . . ." Johnson v. Omega Ins. Co., 200 So.3d 1207, 1219 (Fla. 2016) (emphasis added). [10]   Plaintiff's fraud in the inducement claim does not arise "under a policy or contract executed by the insurer," as Section 627.428 requires, and does not seek to recover benefits due under a policy.   Indeed, "one of the circumstances in which attorney's fees consistently are not authorized under the statute is in actions in which an insured has prevailed against an insurer on a tort claim." Hilson v. Geico Gen. Ins. Co., No. 8:11-cv-13-MSS-MAP, 2016 WL 3211474, at *6 (M.D. Fla. Mar. 31, 2016) (collecting cases); see also United Gen. Life Ins. Co. v. Koske, 519 So.2d 71, 72 (Fla. 5th DCA 1988) ("Claimants in negligence actions are not entitled to attorney's fees under this statute."). Plaintiffs' fraudulent inducement claim is a tort claim, and fees for its successful prosecution are not compensable under Fla. Stat. § 627.428.   Therefore, Foresters is entitled to summary judgment to the extent Plaintiff seeks to recover fees for pursuit of her fraud in the inducement claim.

## IV.    CONCLUSION

For the reasons set forth above, the Court should enter summary judgment in Foresters' favor, declare that Foresters is only responsible for reasonable attorney's fees through April 13, 2020, dismiss Plaintiff's claims with prejudice, and award Foresters all other relief to which it may be legally and justly entitled.

---

[10] Although Foresters agreed to pay Plaintiff reasonable attorney's fees and taxable costs incurred in pursuing the Death Benefit with respect to Count I through the date the claim was paid Plaintiff is not entitled to attorney's fees for her remaining claims.

Dated: December 4, 2020               MCDOWELL HETHERINGTON LLP
                                      Attorneys for Defendant
                                      2385 N.W. Executive Center Drive, Suite 400
                                      Boca Raton, FL 33431
                                      (561) 994-4311
                                      (561) 982-8985 fax


                                      By:  s/Kristina B. Pett_____
                                           KRISTINA B. PETT
                                           Fla. Bar No. 0973688
                                           kristina.pett@mhllp.com
                                           DANIELLE E. SHURE
                                           Fla Bar No. 118911
                                           danielle.shure@mhllp.com

## CERTIFICATE OF SERVICE

I certify that on December 4, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Craig M. Greene, Esq.
Kramer Green Zuckerman Greene & Buchsbaum, P.A.
4000 Hollywood Blvd.
Suite 485-S
Hollywood, FL 33021
cgreene@kramergreen.com
*Counsel for Plaintiff/Counter Defendant*

Adrian Neiman Arkin, Esq.
Mintz Truppman, P.A.
1700 Sans Souci Blvd.
North Miami, FL 33181
adrian@mintztruppman.com
*Co-Counsel for Plaintiff/Counter Defendant*

            s/Kristina B. Pett_____
            Kristina B. Pett

21