UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

        Plaintiff/Counter Defendant,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

        Defendant/Counter Plaintiff.
_____/

**THE INDEPENDENT ORDER OF FORESTERS' MOTION TO PRECLUDE MR. SCOTT STEIN'S EXPERT TESTIMONY FOR ALL PURPOSES AND INCORPORATED MEMORANDUM OF LAW**

Defendant, The Independent Order of Foresters ("Foresters") file this Motion to preclude Mr. Scott Stein from providing expert testimony in this action for any purposes. In support of its Motion, Foresters states:

## I.    INTRODUCTION

Mr. Stein's "expert" report consists of seven opinions which he is not qualified to offer, which are not based on any reliable methodology, and most importantly, which are not helpful to the trier of fact because they are readily understood by the average lay person and do not require Mr. Stein's scientific, technical, or other specialized knowledge. Accordingly, Mr. Stein's opinions should be excluded under Rule 702 of the Federal Rules of Evidence ("Rule(s)"). Additionally, to the extent that Mr. Stein opines on extra-contractual representations allegedly made by Jazmin Lightbourn, Mr. Vinas's insurance broker, Foresters' duty to communicate with Ms. Lightbourn, and Foresters' fiduciary obligations to Mr. Vinas, his testimony is should

excluded under Rule 402 because it is not relevant. In the Second Amended Complaint, Plaintiff seeks to hold Foresters directly liable for fraud in the inducement based on alleged misrepresentations contained in the Certificate. Plaintiff does not allege that Foresters made any misrepresentations outside of the Certificate, that Foresters owed, or breached, any fiduciary duties, and does not seek to hold Foresters vicariously liable for any misrepresentations by a broker, an agent, or specifically, Ms. Lightbourn. However, even if the Court finds Mr. Stein's opinions relevant, they should be excluded under Rule 403 because any probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

## II. BACKGROUND

By way of brief summary, in January 2015, Plaintiff's husband, Rigoberto Vinas ("Mr. Vinas") submitted an application to Foresters for a $92,000 life insurance policy. On Mr. Vinas' application and supplemental forms, Mr. Vinas represented that within the last 10 years, he had not been diagnosed with, or received treatment for, diabetes or complications from diabetes, including kidney or sensory problems. Mr. Vinas declared that his statements were true and complete to his "best knowledge and belief." Relying on Mr. Vinas's representations, Foresters issued SMART Universal Life Insurance Certificate No. 8356627 (the "Certificate"), effective January 26, 2015  The Certificate's incontestability clause provides that Foresters would not contest the validity of Certificate after two years, consistent with Fla. Stat. § 627.455.

Mr. Vinas died on January 11, 2017. Thereafter, Plaintiff filed a claim for benefits under the Certificate. On February 1, 2017, Plaintiff submitted Mr. Vinas's medical records from his treating physician, Dr. Kenneth Hershman. These medical records demonstrate that during the time periods asked about in the Application and Diabetes Questionnaire, Dr. Hershman diagnosed

Mr. Vinas with diabetes, and attendant kidney and sensory problems. Under the "assessment" section, Dr. Hershman listed the following conditions:

   a. Diabetes mellitus type 2 or unspecified type with renal manifestations on July 30, 2012, and August 19, 2014.

   b. Diabetes mellitus type 2 or unspecified type with neurological manifestation on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.

   c. Neuropathy in diabetes on November 5 and 12, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.

   d. Diabetes mellitus type 2 or unspecified type with peripheral circulatory disorder on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.

   e. Nephritis and nephropathy on August 19, 2014.

Based on the number of times diabetes and secondary conditions appeared on Mr. Vinas's records, Foresters' underwriting department determined that Mr. Vinas must have been aware that he was diagnosed with, treated, or monitored for, diabetes and secondary complications. Accordingly, by letter dated April 5, 2017, Foresters denied Plaintiff's claim for benefits, rescinded the Certificate, and refunded all premiums.

On October 4, 2018, Plaintiff initiated this action, asserting claims for breach of contract and declaratory relief against Foresters, and seeking the death benefit under the Certificate and a declaration that Foresters improperly rescinded the Certificate. On September 9, 2019, Plaintiff filed an Amended Complaint in which she added a request for consequential damages to her breach of contract claim.

Since this case's inception, Foresters sought discovery regarding Mr. Vinas's medical history and knowledge of his medical issues. However, Plaintiff routinely served meritless objections to Foresters' discovery requests. It was not until March 26, 2020—a year and a half after this case began—that Plaintiff provided a letter from Dr. Hershman stating that he did not

3

diagnose Mr. Vinas with diabetes or any complications from diabetes, and did not tell Mr. Vinas that he had diabetes. Based on Dr. Hershman's letter, Foresters immediately agreed to pay the Death Benefit, plus 8% interest to compensate Plaintiff for any damages she may have experienced between her loss and the payment of the claim, as well as reasonable attorney's fees and taxable costs. On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 death benefit and $26,220.74 in interest.

However, despite receiving the full death benefit and interest, Plaintiff sought leave to amend her complaint (after the amendment deadline) for the second time to add a claim for fraud in the inducement. The Court entered an Endorsed Order granting the Plaintiff's motion. In the Second Amended Complaint, Plaintiff claims that "Foresters falsely and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief" "in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy." [Second Am. Compl. ¶¶36-37].

Notably, in the Second Amended Complaint, Plaintiff does not allege that Foresters made any representations outside of the Certificate. Plaintiff also does not seek to hold Foresters vicariously liable for any representations allegedly made by an agent or insurance broker. On November 19, 2020, Plaintiff filed a second untimely motion to amend seeking to amend her complaint for the third time (and for the second time after Foresters paid the Death Benefit) in

4

order to add an allegation that Foresters authorized Ms. Lightbourn to make fraudulent misrepresentations to induce Mr. Vinas to purchase the Certificate.[1]

Despite Plaintiff's circumscribed allegations in the Second Amended Complaint, which controls the issues in this action, Plaintiff intends to rely on the "expert" testimony of Mr. Stein. Mr. Stein offers the following seven opinions, none of which are admissible:

1. A broker that is authorized to sell insurance products is authorized to make representations about the product, how the product works, and how the claims process works. Agent Lightbourne acted upon the marketing authority that she received from Foresters in selling the life insurance product, and assisting with the completion of the Vinas application and supporting underwriting documents. This included representations that she was authorized to make by Foresters regarding how the contestability clause worked and the best knowledge and belief standard.

2. It is important that an insurance company accurately and truthfully explain how the contestability clause of an insurance policy works to every insured. It is especially important, however, to an elderly applicant, due to the increased likelihood of death during the first two years (contestability period) after policy issuance. In this case, the accuracy and truthfulness of the representations made by Foresters about how it handles claims (addressing knowledge and belief) of Mr. Vinas were even more important because he was considering cancelling a policy with American Life that had already passed the contestability period of two years.

3. Foresters was in a superior position compared to Mr. Vinas, relevant to representations made about the contestability process at the time of application, because Mr. Vinas had no way to know the internal workings at Foresters. Mr. Vinas had no way to learn that Foresters representation that it would base a contestable decision on Mr. Vinas' best knowledge and belief was a lie because he couldn't independently check the accuracy or inaccuracy of that information. Only the insurance company knew that internal information.

4. Foresters' superior position created a fiduciary relationship between Foresters and Mr. Vinas. The insured was relying on Foresters to provide accurate information regarding how Foresters would handle a claim in the event of death within the first two years. Foresters told Mr. Vinas that as long as he told the truth (gave his best knowledge and belief), his claim would not be denied for making a mistake in the application. Mr. Vinas

---

[1] As explained in its opposition to the Motion to Amend, Plaintiff's untimely motion should be denied because Plaintiff has not shown good cause, the requested relief is prejudicial to Foresters, and most importantly for present purposes, it is futile. Her proposed amendment does not sufficiently allege an agency theory of liability, and the undisputed evidence in this case demonstrates that Ms. Lightbourn was not Foresters' agent.

  had to rely on Foresters as to the accuracy of that information because there was no way for Mr. Vinas to find out that it was a lie.

5. Foresters representation to Mr. Vinas was a lie because Foresters claims department did not seek to determine the insured's (including Mr. Vinas') best knowledge and belief. Instead, the claims department only sought to determine the medical diagnosis; rather than whether Mr. Vinas <u>knew</u> of the diagnosis. In fact, Foresters expressly stated that it was not interested in obtaining information that would have revealed the insured's best knowledge and belief. So, either Foresters knew the falsity of its statement and openly lied to Mr. Vinas, or, according to Foresters own testimony, the sales department never bothered to check with the claims department to determine the truth or falsity of the representation, and asserted it as true to Mr. Vinas anyway.

6. The departments within an insurance company must communicate with each other to ensure that representations made at the time of sale of a policy are accurate. Specifically, Foresters sales should have communicated with both underwriting and claims to be certain that Foresters representation to Mr. Vinas was truthful (ie, that as long as he told the truth on his application to this best knowledge and belief, his claim would not be denied for a factual inaccuracy). This communication between sales, underwriting, and claims is standard in the insurance industry.

7. Mr. Vinas was reasonable to rely upon what was told to him by the Foresters sales representative and what was written on the application because, from the insured's perspective, Mr. Vinas was dealing with a single company.

[Plf. Disclosure, **Ex. A**].

  These opinions should be excluded because Mr. Stein is not a qualified expert, the opinions are not based on any reliable methodology, and they are not helpful to the trier of fact because they do not require scientific, technical, or other specialized knowledge. Accordingly, Mr. Stein's opinions should be excluded under Rule 702 of the Federal Rules of Evidence ("Rule(s)"). Additionally, to the extent that Mr. Stein opines on alleged representations made by Jazmin Lightbourn, Mr. Vinas's insurance broker, Foresters' duty to communicate with Ms. Lightbourn, and Foresters' fiduciary obligations to Mr. Vinas, the opinions are not relevant as they are not part of the operative complaint. Alternatively, any probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time**.**

### III. ARGUMENT

**A. Mr. Stein's opinions should be excluded under Rule 702 because it fails the <u>Daubert</u> Standard, as he is not qualified, his opinions are not based on a reliable methodology, and his opinions are not helpful to the trier of fact.**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. See Fed. R. Evid. 702. The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case

See Fed. R. Evid. 702. In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court established three requirements to satisfy Rule 702, which the Eleventh Circuit refers to as the "qualifications," "reliability" and "helpfulness" prongs. <u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004). Specifically, the court must consider whether:

> (1) The expert is **qualified** to testify competently regarding the matters he intends to address; (2) the **methodology** by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony **assists the trier of fact**, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.</u>, 402 F.3d 1092, 1107 (11th Cir. 2005) (citation omitted) (emphasis added). "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." <u>Frazier</u>, 387 F.3d at 1260. "The burden of laying

7

the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Cook, 402 F.3d at 1111. "Thus, the proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." Id. Plaintiff has failed to provide evidence supporting any of these factors.

### a. Mr. Stein is not qualified to testify competently regarding the matters he intends to address.

With respect to the first prong of the inquiry, Mr. Stein is not qualified to competently testify regarding the matters raised in his Report. An expert "may be qualified by knowledge, skill, experience, training, or education." Gomez v. General Nutrition Corp., 323 F. Supp. 3d 1368, 1377 (S.D. Fla. 2018) (J., Cooke). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." Id.

In the Report, Mr. Stein opines on the scope of Ms. Lightbourn's authority to make representations about Foresters' contestability investigations (Opinion No. 1), the importance of explaining how a contestability clause works to applicants (Opinion No. 2), whether Mr. Vinas had an opportunity to ask Foresters about its contestability investigations (Opinion No. 3), whether Foresters and Mr. Vinas had a fiduciary relationship (Opinion No. 4), whether Foresters conducted an appropriate contestability investigation (Opinion No. 5), whether there should have been more communication within Foresters about its contestability investigations (Opinion No. 6), and whether it was reasonable for Mr. Vinas to rely on Ms. Lightbourn's alleged representations (Opinion No. 7). However, Mr. Stein's CV makes clear that he is not qualified to opine on any of these topics.

8

Mr. Stein purports to be an expert in property and casualty insurance, auto and workers compensation insurance, professional liability and crime insurance, directors and officers insurance, and broker and agency procedures. From 1993 to 2000, Mr. Stein worked as an account executive at various institutions and was responsible for selling and marketing property, general liability, workers compensation, product liability, and professional liability insurance policies to public and private companies.

Noticeably absent from Mr. Stein's CV is any experience with life insurance policies and contestability investigations. Mr. Stein has never worked as a life insurance broker, a claims examiner, or an underwriter. Although "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand," Mr. Stein's experience "is at best tangentially related" to issues he opines on. Gomez, 323 F. Supp. 3d at 1377 (excluding an expert whose experience was "tangentially" related to the opinions he offered). That is, Mr. Stein may have a general working knowledge of what goes into the sale of property and professional liability insurance policies, the representations the sales agent or broker can and should make, and the information the sales agent or broker should know. However, there is no indication he has any knowledge about life insurance policies, and contestability investigations, in particular, and what should, or should not, be represented about those investigations during the sale.

### b. Mr. Stein's opinions are not supported by a sufficiently reliable method.

Plaintiff has also failed to prove by a preponderance of the evidence that Mr. Stein relied on a reliable method to reach any of his seven conclusions. "When evaluating the reliability of scientific expert opinion, the trial judge must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be applied to the facts in issue." Frazier, 387 F.3d at 1261-62. In assessing the reliability of scientific

9

opinion or non-scientific, experience-based testimony, a court must consider: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Id. at 1262. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Id. at 1261 (quoting Fed. R. Evid. 702 advisory committee note 2000).

Mr. Stein does not provide **any** information about his methodology or reasoning, and therefore Foresters does not know if he is purporting to rely on a scientific method or on his experience or something else. To the extent that Mr. Stein relies on scientific methodology, the Report is clearly lacking, as there is no information about whether his theory was, or can be, tested, has been subject to peer review, the rate of error, and whether the method is generally accepted in the insurance industry . To the extent that Mr. Stein relies on his experience, the Report is equally deficient, as Mr. Stein does not explain, or even state in a conclusory fashion, how any of his work experience supports his findings. There is no information regarding how Mr. Stein determined that Ms. Lightbourn was authorized to make representations to Mr. Vinas about Foresters' contestability investigations (Opinion No. 1), that it is especially important to explain explaining how a contestability clause works to older applicants (Opinion No. 2), that Mr. Vinas did not have a way of learning about Foresters' contestability investigations (Opinion No. 3), that Foresters and Mr. Vinas had a fiduciary relationship (Opinion No. 4), that Foresters conducted an inappropriate contestability investigation (Opinion No. 5), that Foresters various departments should have

communicated about how to conduct contestability investigations (Opinion No. 6), and that it was reasonable for Mr. Vinas to rely on Ms. Lightbourn's representations (Opinion No. 7).

Other than the opinions themselves, the Report provides no insight into the reasoning or methodology. Mr. Stein's opinion "is imprecise and unspecific," and "its factual basis is not adequately explained." Cook, 402 F.3d at 1111 (internal citations and quotations omitted). Mr. Stein "does not indicate, in any way, that his opinions are supported by reliable sources or sources that are accepted within the industry." Affiliati Network, Inc. v. Wanamaker, No. 1:16-cv-24097, 2017 WL 7361048, at *4 (S.D. Fla. Aug. 14, 2017) (excluding expert testimony as unreliable). Plaintiff has failed to satisfy her burden of demonstrating that Mr. Stein's testimony is "scientific," or "ground[ed] in the methods and procedures in science." Daubert, 509 U.S. at 589. Accordingly, the Report should be excluded.

### c. Mr. Stein's opinions are not helpful to the trier of fact.

Plaintiff has also failed to satisfy the third prong, as she has not shown by a preponderance of the evidence that any of Mr. Stein's opinions would be helpful to the trier of fact to understand the evidence or to determine a fact in issue through the application of technical, or specialized expertise. First, several of Mr. Stein's opinions are not helpful because they are irrelevant. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591. Specifically, Opinion Numbers 1, 6, and 7 regarding whether Foresters authorized Ms. Lightbourn to make representations regarding the operation of the contestability provision of the Certificate, whether Ms. Lightbourn should have communicated with underwriting and claims prior to making any representations, and whether Mr. Vinas was reasonable in relying on Ms. Lightbourn's representation are not relevant to this action. In the Second Amended Complaint, Plaintiff does not assert a fraud in the inducement claim based on an agency theory of

11

liability, and does not allege that Foresters made any representations other than those in the Certificate. Plaintiff alleges that "Foresters falsely and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief." [Second Am. Compl. ¶36]. Plaintiff acknowledged that she alleges a direct liability fraud in the inducement claim against Foresters based on the representations in the Certificate in a belated motion to amend, filed on November 19, 2020. In the Motion, Plaintiff seeks leave to file a fourth pleading to allege that Foresters authorized Ms. Lightbourn to make fraudulent representations prior to the sale of the Certificate. However, Plaintiff's allegations in the operative pleading are limited to the representations in the Certificate, and do not state a basis to hold Foresters vicariously liable for pre-contractual representations allegedly made by Ms. Lightbourn, or any agent. Therefore, Opinion Numbers 1, 6, and 7 not helpful to the jury because they are irrelevant to the issues in this action. See Lopez v. Allstate Fire & Casualty Ins. Co., No. 14-20654-Civ/OOKE/TORRES, 2015 WL 5584898 (S.D. Fla. Sept. 23, 2015) (J., Cooke) ("With respect to Opinions 1 through 3, which opine that Allstate timely and properly proffered the $5,000 PIP death benefit and the $25,000 per person bodily injury liability benefits, I find that these opinions are not helpful to the jury because Plaintiffs have not alleged that these three types of benefits were **not timely proffered**. In other words, these three opinions are not relevant.") (emphasis added).

Opinion number 4, in which Mr. Stein opines that "Foresters' superior position created a fiduciary relationship between Foresters and Mr. Vinas" is also irrelevant. Plaintiff does not assert a claim for breach of a fiduciary duty, nor could she, as the alleged relationship is between

Foresters and Mr. Vinas, not Foresters and Plaintiff. Mr. Stein does not contend that Foresters owed any fiduciary duties to Plaintiff. Additionally, Mr. Stein's opinion is an improper legal conclusion, which a testifying expert may not offer. Montgomery v. Aetna Cas. & Surety Co., 898 F.2d 1537, 1541 (11th Cir. 1990) (finding that the district court committed clear error by permitting an expert to testify about the scope of Aetna's duties to its insured because this was an improper legal conclusion); Sowell v. United States, No. Civ.A. 3:97-CV-1519-G, 1998 WL 531884 (N.D. Tx. Aug. 17, 1998) (excluding an expert's legal opinion regarding the ultimate issue of reasonableness of a fiduciary's conduct), aff'd, 198 F.3d 169 (5th Cir. 1999); Brown Jordan Int'l Inc. v. Carmicle, No. 14-cv-60629-ROSENBERG/BRANNON, 2015 WL 11661770, at *1 (S.D. Fla. Oct. 9, 2015) ("Whether [defendants] breached a fiduciary duty to its shareholders is an ultimate issue of law in this case and therefore is an inappropriate subject of expert opinion.").

Notably, there is a limited exception to this rule, in which an expert may state an opinion on an ultimate issue "with adequate exploration of the criteria upon which the opinion is based," so that the "jury is provided with independent means by which it can reach its own conclusion or give proper weight to the expert testimony." O'Brien v NCL (Bahamas) Ltd., No. 16-23284-CIV-LENARD/GOODMAN, 2017 WL 10410455, at *9 (S.D. Fla. Oct. 13, 2017). Here, however, as stated, Mr. Stein failed to provide any information about his methodology or reasoning. Therefore, his legal conclusion that Foresters was in a fiduciary relationship with Mr. Vinas is improper.

Additionally, none of Mr. Stein's seven opinions would be helpful to the jury because they do not "concern[ ] matters that are beyond the understanding of the average lay person." Cook, 402 F.3d at 1111 (citation omitted). "Proffered expert testimony generally will not help the trier of fact when," as here, "it offers nothing more than what lawyers for the parties can argue in closing argument." Id. The fact that Mr. Stein's opinions are not beyond the understanding of the average

13

lay person is underscored, and interrelated with, Mr. Stein's failure to explain any scientific or experience-based reliable methodology. Mr. Stein did not apply scientific, technical, or specialized expertise to form these opinions because they do not require any expertise.

For example, with respect to Opinion Number 2, the jury does not need an expert to understand the importance of an insurance company making "accurate" and "truthful" representations about an insurance policy. Similarly, expertise is not required to understand that Foresters had "superior" knowledge about the mechanics of a contestability investigation. It is common knowledge that a company knows more about its inner workings than a client. Opinions 4 and 7 stating that Mr. Vinas reasonably relied on the information provide by Ms. Lightbourn and Foresters also do not require expertise. The jurors would not need an expert to explain that when an individual purchases a life insurance policy, he relies on information he receives from his sales broker and the insurance company. Further, specialized knowledge is not required for Opinion Number 5, that Foresters allegedly "lied" to Mr. Vinas because it did not determine whether he believed his representations during the application process were true. This "opinion" is nothing more than an argument Plaintiff's counsel will likely make in his closing statement. It is not an opinion that requires technical knowledge, but instead a factual finding within the province of the jury. Similarly, one does not need specialized expertise to understand Opinion Number 6, that an insurance broker should understand the nature of the product she is selling. Thus, Mr. Stein's opinions should be excluded as not helpful to the trier of fact. See U.S. Postal Serv. V. Am. Postal Workers Union, Miami Area Local, No. 07-21685-CIV, 2009 WL 3347903, *1 (S.D. Fla. Mar. 31, 2009) (J., Cooke) (granting a motion to preclude the testimony regarding "the method of calculation of the amount due under the specialty warranty deed and the mortgage" because this was "not beyond the understanding of the average lay person.").

14

In Brooks v. J.C. Penney Life Ins. Co., 231 F. Supp. 2d 1136 (N.D. Ala. July 30, 200), the beneficiary of an accidental death policy filed breach of contract, bad faith, and other tort claims, including negligence and fraud, against an insurance company after it denied her claim for benefits following the death of the named insured. Id. at 1137-40. The plaintiff offered the affidavit of a purported expert witness who opined that: (1) the insurance company's "failure to define significant terms in the policy [wa]s improper" and "lead to vagueness and ambiguity,"; (2) that the exclusion the insurance company relied on to deny the plaintiff's claim was "vague, ambiguous and unclear,"; (3) the insurance company "knew or should have known it was improper not to define significant terms in the policy; (4) the insurance company did not adequately investigate the claim; and (5) the insurance company "applie[d] the exclusion as it s[aw] fit." Id. at 1141 n.5. The court held that affidavit was unhelpful and inadmissible because it consisted "primarily of legal conclusions, which are the province of the court to make, along with a few factual observations that the court is capable of making without the assistance of an expert." Id.

Ultimately, Mr. Stein's report suffers from the safe defects as the affidavit in Brooks. Mr. Stein and the expert in Brooks both opine that the insurance company defendants knowingly acted inappropriately, failed to properly handle a claim, and did not correctly apply the terms of the policy. Mr. Stein's report is fundamentally defective because it invades the province of the jury, who is perfectly capable of resolving the ultimate issues in this case without Mr. Stein's unreliable, unscientific, and unhelpful testimony. Therefore, it should be excluded.

**B. Opinion Numbers 1, 4, 6, and 7 should be excluded under Rules 401 and 403 of the Federal Rules of Evidence because they are not relevant and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.**

"Relevant evidence is admissible unless" excluded by the United States Constitution, a federal statute, another Rule, or a rule prescribed by the United States Supreme Court. Rule 402.

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of no consequence in determining the action." Rule 401. "Evidence that is not relevant is inadmissible." McCaskill v. Ray, 279 F. App'x 913, 915 (11th Cir. 2008) (citing Fed. R. Evid. 402).

As discussed, Opinion Numbers 1, 4, and 7 are not relevant to this action because in the Second Amended, Plaintiff seeks to hold Foresters directly liable for fraud in the inducement based on alleged misrepresentations contained in the Certificate. The Second Amended Complaint is devoid of any allegations regarding vicarious liability premised on an agency theory, or representations other than those contained in the Certificate. Accordingly, Mr. Stein's opinion as to whether Ms. Lightbourn was authorized to make representations, whether Foresters should have communicated with Ms. Lightbourn, and whether Plaintiff reasonably relied on Ms. Lightbourn's representations, are not relevant, and not admissible. Additionally, Opinion Number 6 is not relevant. Mr. Stein opines that Foresters and Mr. Vinas had a "fiduciary" relationship. However, the Second Amended Complaint does not involve a breach of a fiduciary duty claim. Accordingly, this opinion should be excluded.

However, even if the court finds that these opinions are relevant, they should be excluded because any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. See Fed. R. Evid. 403. Plaintiff does allege any that any representations outside the Certificate were fraudulent. Plaintiff also does not allege any basis on which to hold Foresters liable for Ms. Lightbourn's alleged representations. However, if the jury is permitted to hear expert testimony about Ms. Lightbourn's extra-contractual representations, they are likely to be confused and assume that those representations are at issue, and that Foresters is somehow responsible for them. Similarly,

16

Plaintiff does not allege that Foresters had, or breached, any fiduciary duties owed to Mr. Vinas. However, if the jury hears Opinion Number 4, it is likely to get confused and assume that whether Foresters breached an alleged fiduciary duty is at issue. Therefore, these opinions should be excluded because any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. There is also a significant risk that these opinions will cause undue delay and waste time because they detract from the actual issues alleged in the Second Amended Complaint.

"[E]xpert testimony may be assigned talismanic significant in the eyes of lay jurors, and therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." Cook, 402 F.3d at 1111 (citation omitted). Indeed, "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice over probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." Daubert, 509 U.S. at 595. Therefore, the Court should exclude Opinion Numbers 1, 4, 6 and 7 as not relevant, or alternatively, because any probative value is substantially outweighed by the danger of confusing the jury.

## IV.   CONCLUSION

For the above reasons, Mr. Stein should be precluded from offering expert testimony in this action.

## Local Rule 7.1 Certification

Counsel for Foresters has conferred with Counsel for Plaintiff, who objects to the relief Foresters seeks.

Dated: December 4, 2020

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax


By: ____s/Kristina B. Pett
    KRISTINA B. PETT
    Fla. Bar No. 0973688
    kristina.pett@mhllp.com
    DANIELLE E. SHURE
    Fla Bar No. 118911
    danielle.shure@mhllp.com

## CERTIFICATE OF SERVICE

I certify that on December 4, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Craig M. Greene, Esq.
Kramer Green Zuckerman Greene & Buchsbaum, P.A.
4000 Hollywood Blvd.
Suite 485-S
Hollywood, FL 33021
cgreene@kramergreen.com
*Counsel for Plaintiff/Counter Defendant*

Adrian Neiman Arkin, Esq.
Mintz Truppman, P.A.
1700 Sans Souci Blvd.
North Miami, FL 33181
adrian@mintztruppman.com
*Co-Counsel for Plaintiff/Counter Defendant*

    s/Kristina B. Pett
    Kristina B. Pett