UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

       Plaintiff,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

       Defendant.

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE TESTIMONY AND EVIDENCE OF THE REPORT FROM DEFENDANT'S EXPERT, MARC S. FRAGER, M.D.**

## I.    Introduction

In Plaintiff's Motion to Preclude Dr. Frager ["Motion"; Doc. 130], Plaintiff distorts and mischaracterizes Dr. Marc S. Frager's testimony to craft a meritless argument that Dr. Frager's testimony should be excluded as irrelevant and unreliable. Dr. Frager opines that it is standard protocol for a reasonably prudent physician to discuss all lab results, exam findings, and conditions that a patient is being followed for with that patient. Dr. Frager further opines that based on the number of times diabetes and related complications appeared in Mr. Vinas's medical records, anyone reviewing Mr. Vinas's medical records would reasonably determine that his treating physician, Dr. Kenneth Hershman, adhered to standard protocol and discussed these conditions with Mr. Vinas. Dr. Frager's opinion is relevant to Plaintiff's fraudulent inducement claim, should it proceed to trial,[1] because it refutes Plaintiff's allegation that Foresters had the fraudulent intent

---

[1] As set forth in detail in Foresters' Motion for Summary Judgment [Doc. 128], the undisputed evidence shows that Foresters is entitled to judgment in its favor as a matter of law, and there is no need for a trial.

to deny her claim without consideration of Mr. Vinas's knowledge and belief of the representations in his application. Dr. Frager's opinion establishes that during Foresters' contestability investigation, it reasonably determined that Mr. Vinas must have known and believed that he was being followed for diabetes and secondary complications. Additionally, Dr. Frager's opinion is relevant to Plaintiff's breach of contract claim because it shows that Foresters decision to deny Plaintiff's claim for the Death Benefit in April of 2017 was correct based on the information available to Foresters at that time. Further, Dr. Frager's opinion regarding the standard of care for physicians with respect to communications about diabetes is reliable because it is based on Dr. Frager's review of all of Mr. Vinas's pertinent records, and his extensive experience as an endocrinology practitioner and professor of medicine in the areas of endocrinology and medical ethics.[2]

## II. Background

By way of brief summary, in January 2015, Plaintiff's husband, Rigoberto Vinas ("Mr. Vinas") submitted an application to Foresters for a $92,000 life insurance policy. On Mr. Vinas' application and supplemental forms, Mr. Vinas represented that within the last 10 years, he had not been diagnosed with, or treated for, diabetes or complications from diabetes, including kidney or sensory problems. Mr. Vinas declared that his statements were true and complete to his "best

---

[2] Plaintiff's contention that "Foresters has refused Plaintiff's request to depose Dr. Frager" is not only irrelevant to the Motion, but a distortion of reality. As Foresters sets forth in its Response in Opposition to Plaintiff's Expedited Motion to Extend Deadlines for Expert Discovery, Daubert Motions, and Dispositive Motions [Doc. 123], Foresters agreed to Plaintiff's request to extend the deadlines for expert disclosures on the condition that discovery would not be reopened in any fashion. After the parties each disclosed their experts on the dates requested by Plaintiff, the expert discovery deadline passed on November 27, 2020. On November 30, 2020, Plaintiff unreasonably demanded that Foresters provide a time to depose Dr. Frager within the next two days. Foresters advised that it never agreed to extend the deadline for expert discovery and expressly opposed reopening expert discovery when it agreed to Plaintiff's request to extend the disclosure deadlines.

knowledge and belief." Relying on Mr. Vinas's representations, Foresters issued SMART Universal Life Insurance Certificate No. 8356627 (the "Certificate"), effective January 26, 2015. The Certificate's incontestability clause provides that Foresters would not contest the validity of Certificate after two years, consistent with Fla. Stat. § 627.455.

Mr. Vinas died on January 11, 2017. Thereafter, Plaintiff filed a claim for benefits under the Certificate. On February 1, 2017, Plaintiff submitted Mr. Vinas's medical records from his treating physician, Dr. Kenneth Hershman. These medical records demonstrate that during the time periods asked about in the Application and Diabetes Questionnaire, Dr. Hershman was following Mr. Vinas for diabetes, and attendant kidney and sensory problems. Under the "assessment" section, Dr. Hershman listed the following conditions:

a. Diabetes mellitus type 2 or unspecified type with renal manifestations on July 30, 2012, and August 19, 2014.

b. Diabetes mellitus type 2 or unspecified type with neurological manifestation on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.

c. Neuropathy in diabetes on November 5 and 12, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.

d. Diabetes mellitus type 2 or unspecified type with peripheral circulatory disorder on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.

e. Nephritis and nephropathy on August 19, 2014.

Based on the number of times diabetes and secondary conditions appeared on Mr. Vinas's records, Foresters' underwriting department determined that Mr. Vinas must have been aware that he was diagnosed with, treated for, or monitored for, diabetes and secondary complications. Accordingly, by letter dated April 5, 2017, Foresters denied Plaintiff's claim for benefits, rescinded the Certificate, and refunded all premiums.

On October 4, 2018, Plaintiff initiated this action, asserting claims for breach of contract and declaratory relief, and seeking the death benefit under the Certificate and a declaration that Foresters improperly rescinded the Certificate. On September 9, 2019, Plaintiff filed an Amended Complaint in which she added a request for consequential damages to her breach of contract claim.

Since this case's inception, Foresters sought discovery regarding Mr. Vinas's medical history and knowledge of his medical issues. However, Plaintiff routinely served meritless objections to Foresters' discovery requests. It was not until March 26, 2020—a year and a half after this case began—that Plaintiff provided a letter from Dr. Hershman stating that he did not diagnose Mr. Vinas with diabetes or any complications from diabetes, and did not tell Mr. Vinas that he had diabetes or secondary complications. Based on Dr. Hershman's letter, Foresters immediately agreed to pay the Death Benefit, plus 8% interest to compensate Plaintiff for any damages she may have experienced between her loss and the payment of the claim, as well as reasonable attorney's fees and taxable costs. On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 death benefit and $26,220.74 in interest. Contrary to Plaintiff's contention, Foresters' payment of the death benefit was not an admission of liability for breach of contract. [Motion at 2]. As Foresters sets forth in detail in its pending Motion for Summary Judgment, the undisputed evidence shows that Foresters fulfilled its obligations under the Certificate because it paid Plaintiff the Death Benefit as soon as Plaintiff provided sufficient proof of loss and demonstrated that Mr. Vinas's did not materially misrepresent his medical condition. [Foresters' MSJ at 4-5, Doc. 128].

Despite receiving the full death benefit and interest, Plaintiff filed the Second Amended Complaint, in which she asserted a new claim for fraudulent inducement. Specifically, Plaintiff claims that "Foresters falsely and fraudulently represented, through language in the Policy and

incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief" "in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy." [Second Am. Compl. ¶¶36-37].

Foresters' expert, Dr. Frager, reviewed Mr. Vinas's medical records, as well as other pertinent documents, and concluded that based on the reasonable standard of communication between a physician and his patient, Foresters reasonably believed that Dr. Hershman must have advised Mr. Vinas that he was being treated and monitored for diabetes and secondary complications, based on the number of times these conditions were recorded in Mr. Vinas's records. [Frager R. at 3, Doc. 130-1]. Specifically, Dr. Frager offered the following opinion:

> Based on my review of these documents, and the number of times diabetes and related complications appeared in Mr. Vinas's records, it would be reasonable to assume that Mr. Vinas was being followed for diabetes and secondary complications. **A reasonably prudent physician would discuss all conditions with that patient. It is standard protocol for a physician to discuss all lab results and exam findings.** This is especially important in Mr. Vinas's case because he had an HgbA1c level of 6.6 in 2010, which is diagnostic of diabetes. Additionally, the records contain evidence of diminished sensation on neurologic examination, which supports diabetic nephropathy and neuropathy, and protein in his urine. Once a patient has diabetes, they are always a "diabetic," as the condition remains dormant in his system. The records show that Dr. Hershman was actively monitoring Mr. Vinas for diabetes and secondary complications. **Anyone reviewing these records would reasonably determine that Dr. Hershman adhered to standard protocol and discussed diabetes and secondary complications with Mr. Vinas, including nephropathy and neuropathy.** Based on these records, Mr. Vinas must have been aware of these conditions.

[Id. (emphasis added)].

In the Motion, Plaintiff claims, without basis, that Dr. Frager's opinion should be precluded because it is not relevant to her fraudulent inducement claim. Plaintiff is wrong. Dr. Frager's

5

opinion is relevant to nearly every element of Plaintiff's fraudulent inducement claim. Dr. Frager's opinion that Foresters reasonably determined that Dr. Hershman must have discussed diabetes and secondary complications with Mr. Vinas based on the standard of communication between a patient and physician shows that Foresters did not make any misrepresentations regarding the contestability investigation, and that Foresters lacked the fraudulent intent not to consider Mr. Vinas's knowledge and belief. Additionally, Dr. Frager's opinion is relevant to Plaintiff's claim for breach of contract because it establishes that Foresters did not the breach the Certificate because its decision to deny Plaintiff's claim was correct at the time it was made.

### III. Standard of Review

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. See Fed. R. Evid. 702. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court established three requirements to satisfy Rule 702, which the Eleventh Circuit refers to as the "qualifications," "reliability" and "helpfulness" prongs. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). Specifically, the Court must consider whether:

> (1) The expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1107 (11th Cir. 2005) (citation omitted) (emphasis added). "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." Frazier, 387 F.3d at 1260. "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Cook, 402 F.3d at 1111.

Plaintiff does not dispute that Dr. Frager is qualified under the first prong, and that his methodology is sound.

### IV.  Argument

**A. Dr. Frager's Expert Opinion is Relevant and Helpful to the Trier of Fact.**

Plaintiff's argument that Dr. Frager's opinion is irrelevant is nonsensical, as it bears directly on the elements of Plaintiff's pending claims for fraudulent inducement and breach of contract.[3]

> Under Florida law, the elements of fraudulent inducement are:
>
> > (1) **false statement** of material fact or suppression of truth by the defendant; (2) the **defendant knew or should have known the statement was false**, or made the statement without knowledge as to its truth or falsity; (3) the **defendant intended** the false statement or omission would **induce the plaintiff's reliance**; and (4) the plaintiff relied to his detriment.

Latell v. Triano, No. 2:13-cv-565-FtM-29CM, 2014 WL 6240001, at *4 (M.D. Fla. Nov. 13, 2014) (citations omitted) (emphasis added).  In the Second Amended Complaint, in an attempt to satisfy these elements, Plaintiff alleges that:

> A all times material hereto, **Foresters falsely and fraudulently represented** through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, **Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief**.
>
> At all times material hereto, **this representation by Foresters was false and Foresters knew it to be false** when it was made to Rigoberto Vinas in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters. The representation was made to induce Rigoberto Vinas to pay premiums for the policy despite the fact that **Foresters knew it had no intention to ever**

---

[3] In the Second Amended Complaint, Plaintiff asserted a third claim for declaratory relief and requested a declaration that the Certificate was "valid and in full force and effect" when Mr. Vinas died. [Second Am. Compl. ¶¶21-29]. However, in Plaintiff's Response to Foresters' pending Motion to Dismiss the Second Amended Complaint, Plaintiff acknowledged that her declaratory judgment claim is moot because there is no longer an actual controversy as to the validity of the Certificate. [MTD at 11-12, Doc. 95].

7

> **pay benefits if Rigoberto Vinas were to die during the first two years following issuance of the Policy even if application answers were provided to Mr. Vinas's best knowledge and belief.**  This statement was a false statement of material fact by Foresters to Rigoberto Vinas contained within the Policy language and incorporated Florida law.
>
> At all times material hereto, **Foresters knew or should have known this promise was false when made** as Foresters intended, at the time of sale of the policy, to improperly ignore Mr. Vinas' "best knowledge and belief" in the Application and instead deny a claim based upon Foresters' interpretation of the medical accuracy of the information without regard to Rigoberto Vinas's best knowledge and belief.

[Second Am. Compl. ¶¶36-38 (emphasis added)].[4]

Dr. Frager's opinion is helpful to the trier of fact because it refutes Plaintiff's allegations and establishes that Foresters did not fraudulently induce Mr. Vinas to purchase the Certificate based on an alleged misrepresentation regarding the contestability investigation.  Dr. Frager opines that "[a] reasonably prudent physician would discuss all conditions with that patient.  It is standard protocol for a physician to discuss all lab results and exam findings." [Frager R. at 3].  Dr. Frager further opines that based on "the number of times diabetes and related complications appeared in Mr. Vinas's records, it would be reasonable to assume that Mr. Vinas was being followed for diabetes and secondary complications."  [Id.].  Further, "[a]nyone reviewing these records would reasonably determine that Dr. Hershman adhered to standard protocol and discussed diabetes and secondary complications with Mr. Vinas, including nephropathy and neuropathy."  [Id.].  Therefore, "Mr. Vinas must have been aware of these conditions."  [Id.].

---

[4] As Foresters argues in its pending Motion to Dismiss the Second Amended Complaint and Motion for Summary Judgment, these allegations amount to nothing more than an improper claim for fraudulent performance in violation of Florida's independent tort rule.  Plaintiff does not state a proper claim for fraud in the inducement, and the undisputed evidence shows that Foresters did not fraudulently induce Mr. Vinas to purchase the Certificate.  Accordingly, this claim is due to be dismissed and Foresters is entitled to judgment in its favor.

Dr. Frager's opinion supports the undisputed record evidence in this case which shows that Foresters meaningfully considered whether Mr. Vinas's representations in his application and supplemental materials were true to his best knowledge and belief. Specifically, Foresters' claims adjuster, Lisa Buckland, testified that in Mr. Vinas's medical file, diabetes "was documented so many times that [she] would think that he was aware of his condition." [Buckland Tr. at 17:5-7, 21:10-13, Doc. 79-1]. David Sullivan, Foresters' Assistance Vice President of Claims, also testified that "[i]n [Foresters'] review of the records, it would seem, with the number of assessments for the diabetes condition, and the complications, that a reasonable person would expect that physician to tell their patient of those conditions." [Sullivan Tr. at 138:5-9, Doc. 79-2]. Dr. Frager's opinion supports that Foresters performed a good faith contestability investigation and acted reasonably in relying on the standard of communication between a patient and physician to evaluate whether Mr. Vinas knew and believed that he was being followed for diabetes and secondary complications. This shows that Foresters did not "misrepresent" that it would perform a contestability investigation, and that Foresters did not have the fraudulent intent to deny Plaintiff's claim regardless of Mr. Vinas's knowledge and belief. Therefore, Plaintiff's contention that Dr. Frager's opinion is irrelevant is patently wrong.

Additionally, Dr. Frager's opinion is relevant to Plaintiff's claim for breach of contract. Foresters denied Plaintiff's claim on April 5, 2017, based on the information in Dr. Hershman's records. Foresters reasonably relied on Dr. Hershman's records to determine that based on the number of times diabetes and secondary complications appeared, Dr. Hershman must have discussed these conditions with Mr. Vinas. That is, Foresters reasonably determined that Mr. Vinas must have "known" and "believed" that he was being followed for diabetes and secondary complications. On March 26, 2020, Plaintiff provided a letter from Dr. Hershman stating that he

9

neither diagnosed Mr. Vinas with diabetes, nor told him that he had diabetes. Immediately thereafter, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest, which compensated Plaintiff for the time between the loss and payment. However, contrary to Plaintiff's contention, this payment was in no way an admission of liability as to breach. The undisputed evidence shows, and Dr. Frager's report supports, that Foresters did not breach the Certificate when it denied Plaintiff's claim in April of 2017.

### B. Dr. Frager's Opinion is Reliable.

Plaintiff claims, without basis, that Dr. Frager's opinion is unreliable. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular testimony is reliable." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999)). "To be sure, there are instances in which a district court may determine the reliability prong under Daubert based primarily upon an expert's **experience and general knowledge** in the field." Kilpatrick v. Breg, 613 F.3d 1329, 1336 (11th Cir. 201) (citing United States v. Brown, 415 F.3d 1257 (11th Cir. 2005) (emphasis added)). "The type of opinion at issue here—essentially a failure to adhere to a certain standard of care—is precisely the type of opinion where experience may be appropriately relied upon." Anderson v. Techtronic Industries N. Am., Inc., No. 6:13-cv-1571-Orl-41TBS, 2015 WL 12843836, at *4 (M.D. Fla. Apr. 14, 2015); see also Mann v. Taser Int'l, Inc., No. 4:05-CV-0273-HLM, 2007 WL 9712075, at *7 (N.D. Ga. Dec. 27, 2007) (finding that expert testimony regarding the "standard of care for paramedics and EMTs" "does not require scientific study or scientific methodology, but may be based on "knowledge and experience.").

Here, Dr. Frager's opinion on the standard of care regarding communications about diabetes is reliable. With respect to the standard of communication between a patient and physician, the information that ought to be conveyed to a patient depends on the circumstances of each patient's condition and course of treatment, and expert testimony is required to establish what information must be conveyed to the patient under the circumstances of each case. See Public Health Trust of Dade Cnty. v. Valcin, 507 So.2d 596, 598 (Fla. 1987) (remanding and requiring the plaintiff to "establish through expert testimony the information which should have been conveyed to her under the circumstances" in the context of a medical negligence case.). Under Florida law, "[t]he prevailing professional standard of care for a given health care providers shall be that level of care . . . which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent **similar** health care providers." See Fla. Stat. § 766.102(1).

Dr. Frager's opinion is reliable because he reviewed all of Mr. Vinas's relevant medical records, and applied "h[is] extensive, relevant experience" to conclude that based on the standard of care and communication between a patient and physician, anyone reviewing Mr. Vinas's records would reasonably assume that Dr. Hershman advised Mr. Vinas that he was being followed for diabetes and secondary complications, including nephropathy and neuropathy. See Adams v. Laboratory Corp. of Am., 760 F.3d 1322, 1330 (11th Cir. 2014) (finding the opinion of a medical expert was reliable based on her "extensive experience."). Dr. Frager is a Board Certified Internist and Endocrinologist who has been practicing internal medicine since 1978, and focusing on endocrinology since 1985. [Frager R. at 4-5]. An endocrinologist is an "internist who concentrates

11

of disorders of the internal (endocrine) glands . . . and deals with disorders such as diabetes."[5] Dr. Frager also served as the Medical Director of the Diabetes Center at Boca Raton Community Hospital from 1999 to 2003, and regularly lectures on diabetes and secondary complications. [Id. at 6, 9]. Additionally, Dr. Frager served as the Lab Director of various endocrinology and diabetes institutions from 1986 through the present. [Id. at 5]. For the past twenty years Dr. Frager has served as an Associate professor of medicine, where he continues to teach courses in endocrinology. [Id. at 6; FAU Staff Directory at 4, **Ex. A**]. Dr. Frager lectures on professionalism, professional responsibilities, and adherence to ethical principles. [Endocrinology Course Curriculum at 3, 10 **Ex. B**].

Dr. Frager's extensive endocrinology experience, which includes both clinical work and lecturing medical students about the standard of care, provided him with a reliable basis on which to review Mr. Vinas's medical records and opine that anyone reviewing the records would reasonably believe that Dr. Hershman told Mr. Vinas he was being monitored for diabetes and attendant complications. For example, in Pages-Ramirez-Gonzalez, 605 F.3d 109 (1st Cir. 2010), the First Court held that a district court abused its discretion in precluding Dr. Carolyn Crawford from opining on whether the defendant, an OBGYN, departed from the standards of care in the field. Id. at 116-17. The court noted that Dr. Crawford's knowledge rested on a reliable foundation, including "her medical education and many years of experience in the field," and her testimony was "relevant to the task at hand." Id. at 116.

Without basis, Plaintiff claims that Dr. Frager's opinion is not reliable because it is speculative. However, Dr. Frager does not "speculate" about whether Dr. Hershman did, in fact,

---

[5] Endocrinology, Diabetes & Metabolism Specialty Description, AM. MED ASS'N, available at https://www.ama-assn.org/specialty/endocrinology-diabetes-and-metabolism-specialty-description (last accessed Dec. 9, 2020).

discuss these conditions with Mr. Vinas, as Plaintiff suggests. In fact, by letter dated March 26, 2020, Dr. Hershman states that he did not diagnose Mr. Vinas with diabetes or any complications from diabetes, and did not tell Mr. Vinas that he had diabetes. Dr. Frager does not "speculate" as to whether Dr. Hershman's statement is true or not. Rather, Dr. Frager opines that it is standard protocol for a reasonably prudent physician to discuss all conditions, lab results, and exam findings with his patient. [Frager R. at 3]. Therefore, "[a]nyone reviewing these [Mr. Vinas's] records would reasonably determine that Dr. Hershman adhered to standard protocol and discussed diabetes and secondary complications with Mr. Vinas, including nephropathy and neuropathy." [Id.]. Dr. Frager's opinion is based on his knowledge of the standard of communication between reasonably prudent physicians and their patients, with regard to diabetes in particular, and the number of times diabetes and secondary complications appeared in Mr. Vinas's records. While Plaintiff "may disagree with [Dr. Frager]'s assessment that [Dr. Hershman] did not conform to these standard, that is a matter for cross-examination and not a basis for exclusion." Anderson v. Techtronic Industries N. Am., Inc., No. 6:13-cv-1571-Orl-41TBS, 2015 WL 12843836, at *4 (M.D. Fla. Apr. 14, 2015).

### C. Dr. Frager Reviewed all Relevant Materials.

Finally, Plaintiff claims that Dr. Frager's report should be excluded because he did not review "key items of evidence" consisting of Mr. Vinas's Application and Diabetes Questionnaire, and a letter from Dr. Hershman dated January 22, 2015. [Motion at 6]. First, Plaintiff is wrong, as Dr. Frager was provided and reviewed these materials in support of his opinion. [Kronzek Decl., **Ex. C**].

Second, even if Dr. Frager did not review Mr. Vinas's Application and Diabetes Questionnaire and Dr. Hershman's January 22, 2015 letter, which he did, his opinion would still

13

be reliable, as these documents are not relevant to Dr. Frager's opinion regarding the standard of communication between a patient and his physician with respect diabetes.  In the Application Mr. Vinas represented that within the past 10 years, he had never been diagnosed with, or received treatment or medication, tested positive, or been given medical advice for diabetes. [Application at 5, Doc. 34-2].  During the initial underwriting process, Foresters was entitled to rely upon Mr. Vinas's representations during the application process.  See Fla. Stat. § 627.404(3).  The only exception is when the insurer has "actual or constructive knowledge that such representations are incorrect or untrue." Certain Underwriters at Lloyd's London v. Jimenez, 197 So. 3d 597, 601 (Fla. 3d DCA 2016).  Once Foresters obtained the MIB alert that Mr. Vinas was diagnosed with diabetes, it immediately asked Mr. Vinas to complete a Diabetes Questionnaire and provide any information he thought necessary to clarify the issue.  On the Diabetes Questionnaire, Mr. Vinas represented:

> Proposed insured had a medical exam done for an insurance policy 2012.  The medical examiner told him that he had Diabetes after following up with his primary doctor and doing additional testing he concluded that the proposed insured did not have diabetes.  He's never taken medication or had treatment for this condition.

[Diabetes Questionnaire at 2, Doc. 34-3].  Mr. Vinas also provided a letter from Dr. Hershman, dated January 22, 2015, which stated that Mr. Vinas "[wa]s in good health and [wa]s not taking any medication for diabetes or on a diabetic diet.  He ha[d] been advised to diet and exercise on a regular basis."  [1.22.15 Letter at 2, Doc. 127-4].  Contrary to Plaintiff's contention, Dr. Hershman's letter does not state whether Mr. Vinas had, or was being monitored for, diabetes and secondary complications.  The letter simply indicates that Mr. Vinas was not taking medication or adhering to a specific diet for diabetes.

Because Mr. Vinas died within two years of the Certificate's issuance, Foresters was entitled to conduct a contestability investigation and evaluate whether the insured's representations during the application process were true to the insured's best knowledge and belief. To conduct the investigation, Foresters obtained Mr. Vinas's medical records, which it was not required to do during the underwriting process. Dr. Frager reviewed these records and opined that, based on the standard of communication between a patient and physician, and the number of times diabetes and related conditions appeared in the records, anyone reviewing the records would reasonably assume that Mr. Vinas was aware that he was being followed for diabetes. As discussed, Dr. Hershman does not opine on whether Mr. Vinas did, in fact, make any material misrepresentations in the application. That, is Dr. Hershman does not opine on whether Mr. Vinas actually believed that he was being followed for diabetes, or whether Dr. Hershman actually discussed diabetes with Mr. Vinas. Dr. Frager's opinion is that anyone reviewing Mr. Vinas's medical records would reasonably believe that Mr. Vinas knew he was being followed for diabetes and secondary complications, including nephropathy and neuropathy, based on the number of times these conditions appeared in Mr. Vinas's medical records, and the standard of care in the medical field regarding communications between patients and doctors about diabetes. Mr. Vinas's representations in the Application and Diabetes Questionnaire are not relevant to this opinion. Further, Dr. Hershman's January 22, 2015 letter does not definitively state whether Mr. Vinas was being followed for diabetes and secondary complications, and therefore would bear on Dr. Frager's opinion.

In any event, Plaintiff's "criticisms regarding the universe of documents the expert[ ] considered go to the weight to be accorded th[i]s expert['] s opinions, rather than their admissibility." In re Seroquel Prods. Liability Litig., No. 6:06-md-1769-Orl-22DAB, 2009 WL

3806436, at *4 (M.D. Fla. July 20, 2009) (denying a motion to preclude based on the movant's argument that the expert "looked at 'only a fraction' of the thousands of documents provided to her by counsel."); see also ConSeal Int'l Inc. v. Neogen Corp., No. 19-cv-61242-BLOOM/Valle, 2020 WL 5797631, at *5 (S.D. Fla. Sept. 29, 2020) (challenges regarding an expert's factual assumptions go to the weight and credibility of his opinions and are more appropriately addressed through cross examination at trial, not exclusion).  In Plaintiff's cases, Rinker v. Carnival Corp., No. 09-23154-CIV, 2012 WL 37381, at *1 (S.D. Fla. Jan. 6, 2020) and Noon v. Carnival Corp., No. 18-23181-Civ-WILLIAMS/TORRES, 2019 WL 5784680 9s.D. Fla. Nov. 6, 2019), the court excluded expert opinions on the plaintiffs' life expectancy because the experts did not review the plaintiffs' medical records.  Here, however, not only did Dr. Frager review the allegedly omitted materials, but these documents were not relevant to his analysis.  Dr. Frager's report is based on all relevant and important materials.

## V.     Conclusion

For the reasons stated above, Dr. Frager is a qualified expert and his opinions are helpful to the trier of fact and reliable.  Accordingly, this Court should deny the Motion.

Dated: December 23, 2020

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant/Counter Plaintiff
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax

By:    s/Kristina B. Pett
KRISTINA B. PETT
Fla. Bar No. 0973688
kristina.pett@mhllp.com
DANIELLE E. SHURE

                                            Fla Bar No. 118911
                                            danielle.shure@mhllp.com

**CERTIFICATE OF SERVICE**

      I certify that on December 23, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> Craig M. Greene, Esq.
> Kramer Green Zuckerman Greene & Buchsbaum, P.A.
> 4000 Hollywood Blvd.
> Suite 485-S
> Hollywood, FL 33021
> cgreene@kramergreen.com
> *Counsel for Plaintiff/Counter Defendant*
>
> Adrian Neiman Arkin, Esq.
> Mintz Truppman, P.A.
> 1700 Sans Souci Blvd.
> North Miami, FL 33181
> adrian@mintztruppman.com
> *Co-Counsel for Plaintiff/Counter Defendant*

          s/Kristina B. Pett
          Kristina B. Pett