UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

        Plaintiff/Counter Defendant,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

        Defendant/Counter Plaintiff.
_____/

**THE INDEPENDENT ORDER OF FORESTERS' MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT WITH INTERLINEATION
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, The Independent Order of Foresters ("Foresters") moves to dismiss Plaintiff Digna Vinas's Second Amended Complaint with Interlineation (Doc. 147; "Second Am. Compl.") pursuant to Article III of the United States Constitution and Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rule(s)").[1] In support, Foresters states:

**I.   Introduction**

This is an action that should have ended on April 13 2020, when Foresters paid Plaintiff the $92,000 death benefit (the "Death Benefit") under a life insurance certificate (the "Certificate") naming Plaintiff as the beneficiary, plus accrued interest to compensate Plaintiff for any alleged delay in receiving the funds, and agreed to pay reasonable attorney's fees and recoverable costs. At that point, Foresters fulfilled all of its contractual obligations under the Certificate and made Plaintiff whole. Foresters also cured all of the purported violations alleged in Plaintiff's Civil

---

[1] The Second Amended Complaint with Interlineation supersedes the Second Amended Complaint [Doc. 94], and rendered Foresters' Motion to Dismiss the Second Amended Complaint [Doc. 95] moot. See Castros v. Signal Finance Co., No. 1:17-cv-21870-KMM, 2018 WL 1137099, at *2 (S.D. Fla. Feb. 4, 2018) ("[A]n 'amended pleading supersedes the former pleading' which renders moot a motion pertaining to the original pleading.") (quoting Dresdner Bank AG in Hamburg v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006)).

Remedy Notice ("CRN") within 60 days, which precluded Plaintiff from pursuing a bad faith claim under Fla Stat. § 624.155. Instead of recognizing that this action was concluded except for the amount of attorney's fees due, Plaintiff filed an amended pleading seeking extra-contractual consequential for the alleged delay in receiving the Death Benefit, and punitive damages for alleged fraudulent misrepresentations in the Certificate, both of which are precluded as a matter of law, as dictated by the Florida Supreme Court's recent opinion, Citizens Property Ins. Corp. v. Manor House, LLC, No. SC19-1294 (Fla. 2021) ("Citizens Property," **Ex. A**).

By way of brief background after Rigoberto Vinas ("Mr. Vinas") passed away and Plaintiff filed her claim, Foresters conducted a contestability investigation, and discovered that it appeared that Mr. Vinas had misrepresented his medical history in his life insurance application. After Plaintiff initiated this action on October 4, 2018, Foresters, through discovery, sought to obtain Mr. Vinas's complete medical records to among other things, ascertain Mr. Vinas's knowledge of the medical conditions that he did not disclose in his application. However, Foresters was stonewalled at every turn. Plaintiff served meritless objections and imposed frivolous roadblocks, which required Foresters to schedule a discovery hearing, and prompted the Court to order the parties to brief the issues.[2] On March 26, 2020, after months of wasting judicial resources, Plaintiff finally provided Foresters with evidence establishing her entitlement to the Death Benefit. As soon as Plaintiff provided this evidence, Foresters approved her claim, and paid the Death Benefit and accrued interest to compensate Plaintiff for the alleged delay in receiving the funds, and agreed to pay reasonable attorney's fees and costs.[3] On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest. [Check, **Ex. B**]. In doing so, Foresters fulfilled all of its contractual obligations.

Nevertheless, despite the fact that Plaintiff is not entitled to extra-contractual damages she filed the Second Amended Complaint with Interlineation and attempts to assert three causes of action—all of which fail as a matter of law. Despite **four** opportunities to state a valid claim,

---

[2] See Defendant's Motion to Overrule Plaintiff's Subpoena Objections and Responses to Defendant's Written Discovery [Doc. 61]; Plaintiff's Response [Doc. 62]; Paperless Order [Doc. 66)] (directing Foresters to provide a declaration in support of its motion); Defendant's Affidavit [Doc. 67]; Paperless Order (Doc. 68) (ordering the parties to provide additional briefing).

[3] Once the Court became aware of the parties' settlement, after having wasted time analyzing the parties' numerous filings, the Court suspended the briefing schedule. [Paperless Order, Doc. 71].

Plaintiff still has not done so.  In Count I, Plaintiff asserts a breach of contract claim based on Foresters' alleged untimely payment of the Death Benefit and seeks consequential damages.  The Court should dismiss this claim because Foresters paid the Death Benefit, plus interest, and satisfied all of its contractual obligations and Plaintiff is not entitled to consequential damages.  In Count II, Plaintiff seeks a declaration that the Certificate was valid and in force at the time of the insured's death.  Despite that the fact that Plaintiff recognized that Count II is moot in response to Foresters' prior Motion to Dismiss because Foresters has already acknowledged the Certificate's validity, Plaintiff refiled the claim.  [Doc. 102 at 7].  Finally, in Count III, Plaintiff attempts to assert a bad faith claim couched as a fraudulent inducement claim based on direct and vicarious liability.  The Court should dismiss Count III because: (1) Plaintiff is attempting to an end run around Fla. Stat. § 624.155; (2) Plaintiff lacks standing to assert a fraudulent inducement claim against Foresters; (3) Plaintiff fails to allege the requisite elements of fraud with the specificity required by Rule 9(b); (4) Plaintiff does not allege that Foresters committed any wrongdoing separate and apart from its alleged breach of contract, for which she has already been made whole; (5) Plaintiff does not allege any basis to hold Foresters vicariously liable; and (6) Count III is an improper shotgun pleading.  All claims should be dismissed with prejudice because Plaintiff has already had **four** opportunities to state a claim and failed to do so.

**II.     Factual Allegations in the Second Amended Complaint with Interlineation**

On January 26, 2015, Foresters issued the Certificate to Mr. Vinas, insuring Mr. Vinas's life in the amount of $92,000.  [Second Am. Compl. ¶¶4, 6; Certificate, Doc. 127-1].  Mr. Vinas named Plaintiff, his wife, as the sole beneficiary.  [Second Am. Compl. ¶5.]

After Mr. Vinas died on January 11, 2017, Plaintiff filed a claim for the Death Benefit.  [Id. ¶¶9, 14.]  Because Mr. Vinas died within the Certificate's two year contestability period, Foresters conducted a contestability investigation.  [Id. ¶35; Certificate at 14]; Fla Stat. 627.455 ("Every insurance contract shall provide that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue.").  On Mr. Vinas's application for the Certificate and accompanying Diabetes Questionnaire, Mr. Vinas declared that "the statements, answers, and representations contained . . . [we]re full, complete, and true to the best of [his] knowledge and belief."  [Second Am. Compl. ¶¶23, 33].  However, during Foresters' contestability investigation, Foresters came to believe that Mr. Vinas's application answers were

not true to the best of his knowledge and belief. [Id. ¶22.] Accordingly, by letter dated April 5, 2017, Foresters notified Mrs. Vinas of its decision to rescind the Certificate. [Id. ¶10.]

On October 4, 2018, Plaintiff initiated this action and sought Death Benefit under the Certificate. [Compl., Doc. 1]. On September 9, 2019, Plaintiff amended her complaint to seek consequential damages in addition to the Death Benefit. [Am. Compl., Doc. 33].

Throughout the discovery process, Foresters attempted to obtain additional information about Mr. Vinas's medical history and his knowledge of his conditions. However, Plaintiff repeatedly impeded Foresters' efforts by making unwarranted objections. Plaintiff did not provide any evidence suggesting that Mr. Vinas believed that his application answers were accurate until March 26, 2020. Once Foresters received this information, the parties reached a partial settlement, in which Foresters agreed to pay Plaintiff the Death Benefit under the Certificate, plus interest, as well as reasonable attorney's fees and taxable costs. [Notice of Partial Settlement, Doc. 73.] On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest. [Check.]

Nevertheless, on August 4, 2020, Plaintiff filed the Second Amended Complaint. [Second Am. Compl., Doc. 94]. On January 11, 2021, Plaintiff amended her pleading for the third time by filing the Second Amended Complaint with Interlineation. In Count I, Plaintiff re-asserts her claim for breach of contract and seeks to recover consequential damages as a result of "Foresters' failure to timely pay the death benefit." [Second Am. Compl. ¶19.] In Count II, Plaintiff seeks a declaration that the Certificate was "valid and in full force and effect" at the time of Mr. Vinas's death. [Id. ¶26.] Finally, in Count III, Plaintiff asserts a claim for fraud in the inducement based on Foresters' alleged breach of the terms of the Certificate. [Id. ¶¶30-45.] Specifically, Plaintiff claims that "Foresters falsely and fraudulently represented, **through language in the Policy** and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief" "in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy." [Id.¶¶36-37 (emphasis added)]. Plaintiff alleges that "Foresters, through its sales agent Jazmin Lightbourn, explained how the contestability period work and represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the

4

Application so long as Mr. Vinas answered the Application questions truthfully." [Id.¶36a]. Plaintiff's claims are due to be dismissed in their entirety.

### III. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. A complaint must state sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is plausible only where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. This standard requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Iqbal, 556 U.S. at 678 (stating that under this standard, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While factual allegations are accepted as true, the court is not required to accept mere conclusory allegations or conclusions of law. Iqbal, 556 U.S. at 678; Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453 (2006); see also Warren Tech., Inc. v. UL LLC, 962 F.3d 1324, 1328 (11th Cir. 2020) ("[A] court is not required to credit 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts.'") (citation omitted).

### IV. Discussion

> **a. Plaintiff's claim for breach of contract should be dismissed as moot under Article III because there is no longer a live controversy for the Court to resolve and Plaintiff is not entitled to consequential damages as a matter of law.**

In Count I of the Complaint, Plaintiff asserts a claim for breach of contract based on "Foresters' failure to timely pay the death benefit to Vinas." [Second Am. Compl. ¶18.] In order to state a claim for breach of contract under Florida law, a plaintiff must plead: (1) that a contract existed; (2) that there was a breach of contract; and (3) that damages occurred. See Bland v. Freightliner LLC, 206 F. Supp.2d 1202, 1210 (M.D. Fla. 2002). Although Foresters initially denied Plaintiff's claim, it has since paid Plaintiff the Death Benefit, plus interest. Foresters fulfilled its contractual obligations, and this claim is now moot, as there is no longer a case or

controversy for the Court to resolve.[4] Article III of the United States Constitution requires courts to decide only cases or controversies. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). However, a "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Al Najjar v. Ashcroft, 273 F.3d 1330, 1335-36 (11th Cir. 2001). "Plainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004).

Here, there is no longer a "live" issue as to whether Foresters breached the Certificate, and whether Plaintiff sustained recoverable damages. On April 8, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest. [Check.][5] Therefore, the issue of breach is moot. See Stewart v. Chesapeake Life Ins. Co., No. 5:17-cv-380-Oc-30PRL, 2017 WL 4410097, at *2 (M.D. Fla. Oct. 4, 2017) (dismissing a breach of contract claim brought against a life insurance company because the insurance company "paid the entire death benefit," and therefore "could not have breached the policy.").

Additionally, Plaintiff's claim that she is entitled to consequential damages fails as a matter of law. [Second Am. Compl. ¶17]. "Consequential damages are '[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act.'" See Kingship Hospitality, Inc. v. Am. Economy Ins. Co., No. 5:18-cv-520-Oc-30PRL, 2018 WL 6427681, at *2 (M.D. Fla. Dec. 5, 2018) (citing Black's Law Dictionary (10th ed. 2014)). Plaintiff claims that she is entitled to consequential damages to compensate her for the alleged delay between her claim

---

[4] The only remaining issue for the Court to resolve is the amount of reasonable attorney's fees and taxable costs to which Plaintiff is entitled. Foresters asks the Court to retain jurisdiction as to this limited issue.

[5] The Court may consider the Check in resolving this Motion without converting it into one for summary judgment because the authenticity of the check is undisputed, and the issue of whether, and when, Foresters paid Plaintiff the Death Benefit, plus interest, is central to Plaintiff's breach of contract claim. See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Additionally, because the Check directly contradicts Plaintiff's assertion that Foresters has not paid the Death Benefit, the Check governs and the Court must disregard Plaintiff's allegation. See Eiras v. Florida, 239 F. Supp.3d 1331, 1342 (M.D. Fla. 2017) ("[W]hen the Court considers exhibits attached to a motion to dismiss, and those exhibits directly contradict the allegations in the pleading, the exhibits govern.").

and the Check. [Second Am. Compl. ¶17]. However, in Citizens Property, the Florida Supreme Court squarely held that "**extra-contractual, consequential damages are not available in a first-party breach of insurance contract action** because the contractual amount due to the insured is the amount owed pursuant to the express terms and conditions of the insurance policy." Citizens Property at 9 (emphasis added). The Court recognized that "the contractual amount due the insured is the amount owed pursuant to the express terms and conditions of the policy," and extra-contractual damages are only available in a bad faith action pursuant to Section 624.155, which Plaintiff is precluded from pursuing since Foresters cured any violation alleged in the CRN. Id. at 6 (citing Talat Enterprises, 753 So.2d at 1283). Here, the Certificate contemplates payment of the Death Benefit and interest. [Certificate at 12.] The Certificate's merger clause, which provides that the Certificate and application materials, inter alia, constitute the parties' "entire contract," which could not be modified by anyone. [Id. at 10.] The merger clause expressly limits the amount due under the Policy to the Death Benefit and interest.

In addition to paying the Death Benefit, Foresters also paid interest at the rate of 8%, which is more than the 3.92% interest rate required by Fla. Stat. § 627.4615. See Fla. Stat. § 627.4615 (stating that the interest rate must be at least equal to the Moody's Corporate Bond Yield Average-Monthly Average Corporate as of the day the claim was received, which was 3.92% on January 12, 2017, when Plaintiff filed her claim). "It is precisely for this delay in the payment of money that additional damages are allowed in the form of prejudgment interest." Md. Cas. Co. v. Fla. Produce Distribs., Inc., 498 So. 2d 1383, 1384 (Fla. 5th DCA 1986); see also Shideler v. Conn. Gen. Life Ins. Co., 563 So. 2d 1082, 1084 (Fla. 5th DCA 1990) (Prejudgment interest is a legally recognized "means to transfer to the prevailing party the gain the losing party realized, or could have realized, from the use of the money during the relevant time period."); Baxter v. Royal Indem. Co., 285 So. 2d 652, 657 (Fla. 1st DCA 1973)[6] ("The penalty imposed by law on the insurer for its failure to settle [or resolve] the claim of its insured within a reasonable time is the payment of interest at the legal rate."). "To charge the insurer prejudgment interest on the delayed payment of the money due and also charge it for the loss of use of the damaged property [ie, consequential damages] would be to make the insurer pay twice for essentially the same thing." Fla. Produce Distribs., Inc., 498 So. 2d at 1384-85; see also Ins. Co. of N. Am. v. Lexow, 937 F.2d 569 (11th

---

[6] Although Baxter was decided before Florida enacted Fla. Stat. § 624.155, its statement regarding the purpose of prejudgment interest remains viable.

Cir. 1991) ("After determination of the amount of damages and defendant's liability, the plaintiff is to be made whole by an award of prejudgment interest from the date of the loss."); see also Gross v. Silverg, No. 11-80210-CIV-MIDDLEBROOKS/VITUNAC, 2012 WL 13129923, at *3 (S.D. Fla. Mar. 16, 2012) (same); Norsul Oil & Min. Co., Ltd. v. Texaco, Inc., 703 F. Supp. 1520 (S.D. Fla. 1988) ("The purpose of awarding interest on damages incurred is to make whole the party owed those damages by compensating him for the loss of the use of h[er] money for the period involved."). Foresters payment of the Death Benefit and interest satisfied its contractual obligations, and therefore Plaintiff is not entitled to consequential damages as a matter of law. See Citizens Property.

### b. Plaintiff's claim for declaratory relief should be dismissed because there is no live controversy for the Court to resolve.

In Count II of Plaintiff's Second Amended Complaint, she seeks a declaration that the Certificate was "valid and in full force and effect" at the time of Mr. Vinas's death. [Second Am. Compl. ¶¶26-27.]

> An essential element of every declaratory judgment action is the existence of an "actual controversy" between the parties. An actual controversy exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Ordinarily, a controversy is not sufficiently immediate or real where the parties' dispute is only hypothetical and not yet ripe, has been rendered moot, or where the court's resolution of the matter would be purely academic.

Mt. Hawley Ins. Co. v. Tactic Security Enforcement, Inc., 252 F. Supp.3d 1307 (M.D. Fla. 2017) (internal citations omitted). Here, Plaintiff has failed to state a sufficient claim for declaratory relief because she has not alleged the existence of an actual controversy between the parties. As discussed in Section IV.a supra, Foresters acknowledged that the Certificate was "valid and in full force and effect" at the time of Mr. Vinas's death, and paid Plaintiff the Death Benefits, plus interest. Thus, any issue regarding the validity of the Certificate is now moot. See 200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp., 965 F. Supp.2d 1405, 1408 (S.D. Fla. 2013) (finding that a claim for declaratory judgment was moot because the parties agreed that the property damage in

dispute was covered under the insurance policy). Therefore, Count II of Plaintiff's Second Amended Complaint with Interlineation for declaratory judgment should be dismissed.[7]

### c. Plaintiff's claim for fraud in the inducement should be dismissed because it is an improper bad faith claim in disguise, Plaintiff lacks standing and failed to allege that Foresters committed any wrongdoing other than breach its contractual obligations.

In Count III of the Complaint, Plaintiff attempts to assert a claim for fraud in the inducement. Specifically, Plaintiff states, in a conclusory fashion, that "Foresters falsely and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief" "in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy." [Second Am. Compl. ¶¶36, 37.] Plaintiff also alleges that "Foresters, through its sales agent Jazmin Lightbourn, explained how the contestability period worked and represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully." [Id.¶36a]. Plaintiff is seeking punitive damages. [Id., Wherefore Clause ¶f.] Not only is Plaintiff precluded from asserting this claim as a matter of law, but she has not sufficiently alleged a fraud claim under Rule 9(b), or any basis to hold Foresters vicariously liable for Ms. Lightbourn's alleged misrepresentations.

Plaintiff's claim should be dismissed as an improper attempt to do an end run around Fla. Stat. § 624.155 ("Section 624.155"), which precludes Plaintiff from pursuing a bad faith claim against Foresters and from seeking extra-contractual damages. On February 5, 2020, Plaintiff filed a Civil Remedy Notice ("CRN") alleging that Foresters engaged in bad faith conduct based on the same conduct underpinning Plaintiff's fraudulent inducement claim. [CRN, **Ex. C**].[8] During the discovery process, Foresters repeatedly attempted to obtain information about Mr. Vinas's medical history and his knowledge of his medical conditions. Plaintiff impeded Foresters' efforts with

---

[7] In Plaintiff's Response to Foresters' Motion to Dismiss the Second Amended Complaint, she "agree[d] Count II has become moot." [Doc. 102 at 7].

[8] The Court may consider Plaintiff's CRN and Foresters' Response without converting the instant Motion into one for summary judgment. See Bouton v. Ocean Properties, Ltd., 201 F. Supp.3d 1341 (S.D. Fla. 2016) ("A court properly takes judicial notice of relevant public records in deciding a motion to dismiss, and consideration of such documents

9

unwarranted objections and failed to provide any evidence suggesting that Mr. Vinas's representations were accurate until March 26, 2020—leaving Foresters only **10 days** to potentially "cure" any alleged violation. See Section 624.155(5)(c) ("No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected."). Immediately thereafter, on April 3, 2020, Foresters agreed to pay the Death Benefit, plus interest and reasonable attorney's fees and costs, and thereby cured the alleged violations. [Foresters' CRN Responses, **Ex. D**]. Because Foresters corrected the alleged violations within 60 days of the CRN, Section 624.155 precludes Plaintiff from seeking bad faith damages against Foresters. See Section 624.155(5)(c).[9]

Here, Plaintiff's attempt to assert a fraudulent inducement claim, in which she seeks extra-contractual punitive damages, is a statutorily precluded bad-faith claim in disguise. In the CRN, Plaintiff alleged that Foresters committed bad faith by committing the same acts which underpin her fraud claim. Specifically, Plaintiff alleged that Foresters "misrepresent[ed] pertinent facts or insurance policy provisions relating to coverages at issue" in violation of Fla. Stat. 626.9541(1)(i)(3)(b). [CRN at 2]. Because Foresters cured the violation, Section 624.155 precludes Plaintiff from asserting a bad faith claim under Fla. Stat. 626.9541(1)(i)(3)(b). In the Complaint, Plaintiff improperly couched a claim under this provision as a fraud in the inducement claim based on identical allegations.

In Citizens Manor, the circuit court granted the insurance company's motion to dismiss Plaintiff's common law fraud claim because it violated the independent tort doctrine, which Foresters addresses below, and because it was "interpreted as a cause of action for extracontractual damages or bad faith." [Citizens' Motion for Judgment on the Pleadings at 3-7, **Ex. D**; Order Granting Citizens' Motion, **Ex. E**]. Additionally, in Geico General Ins. Co. v. Hoy, 927 So.2d 122 (Fla. 2d DCA 2006), the court recognized that an insured's fraud claims were bad faith claims in disguise under Fla. Stat. § 624.155. Id. at 123-26. The plaintiff asserted claims against GEICO for "fraudulent misrepresentation" and "fraudulently inducing her" to sign a release. Id. at 123. The court held that the plaintiff was not entitled to her claim file because "[w]hen a litigant files

---

[9] Notably, "it is not necessary that extra-contractual damages be paid by an insurer to avoid bad faith litigation." Franklin v. Minnesota Mut. Life Ins. Co., 97 F. Supp.2d 1324, 1329 (S.D. Fla. 2000) (citing Talat Enterprises, Inc. v. Aetna Casualty & Surety Co., 753 So.2d 1278, 1283 (Fla. 2000)).

claims for both coverage and bad faith in the same action, the insurer's claim file is not discoverable until the issue of coverage has been resolved." Id. at 125.[10] Further underscoring this point, in Hogan v. Provident Life & Accident Ins. Co., 665 F. Supp.2d 1273 (M.D. Fla. 2009), the court recognized that a plaintiff could not recover under a common law claim for fraud **and** a statutory claim under Fla. Stat. § 624.155, because this would constitute a double recovery based on the same alleged harm. Therefore, Plaintiff's fraud in the inducement claim should be dismissed as a matter of law because it is precluded under Section 624.155.

Even if the Court finds that Plaintiff's fraudulent inducement is not a bad faith claim in disguise, Plaintiff is precluded from seeking extra-contractual damages as a result of the alleged fraud. In Citizens Manor, Florida's Supreme Court made clear that extra-contractual damages are only available in a bad faith action under Section 624.155. Citizens Manor at 6. The court held that the plaintiff could not seek extra-contractual damages against the insurance company because the insurer was immune from suit under Section 624.155. Id. Similarly, Plaintiff may not seek extra-contractual damages against Foresters because it is now statutorily immune from suit under Section 624.155 as a result of its CRN cure. Because Plaintiff has already paid the Death Benefit, plus interest, Plaintiff's fraud in the inducement claim is moot.

Additionally, Plaintiff's claim should be dismissed because she lacks standing. To establish standing for a fraudulent inducement claim based on a misrepresentation, "Plaintiff must demonstrate either (1) that the Defendant[']s misrepresentation was directly made to [her] and Plaintiff relied on the misrepresentation to [her] detriment; or (2) that Plaintiff was properly assigned the rights to pursue this claim by the original party to whom the misrepresentation was made and detrimentally relied upon." Branch Banking & Trust Co. v. Appraisalfirst, Inc., No. 10-21141-CIV-GOLD/MCALILEY, 2010 WL 11596299, at *4 (S.D. Fla July 7, 2010)(citing Connecticut v. Health Net, Inc., 383 F.3d 1258, 1261 (11th Cir. 2004)). Plaintiff lacks standing under the first prong because she does not allege that Foresters fraudulently induced **her** to purchase the Certificate. Instead, she claims that Foresters made fraudulent statements to Mr. Vinas in order to induce him to purchase the Certificate. Additionally, Plaintiff lacks standing under the second prong because she fails to allege that Mr. Vinas assigned his right to Plaintiff to pursue a fraudulent inducement claim.

---

[10] The issue of whether the fraud claims were ripe was not before the court.

Plaintiff's status as a third party beneficiary of the Certificate is insufficient to confer standing to pursue a claim for fraudulent inducement. Under Florida law, an intended third-party beneficiary has standing to enforce a contract. Enterprise Leasing Co. v. Demartino, 15 So.3d 711, 714 (Fla. 2d DCA 2009). Here, however, Plaintiff does not seek to enforce the Certificate, but instead seeks extra-contractual and punitive damages, to which she is not entitled under Florida law or the terms of the Certificate. Therefore, Plaintiff's status as a third party beneficiary does not give her standing to pursue this tort claim. See Branch Banking, 2010 WL 11596299 at **3-5 (analyzing whether plaintiff was a third party beneficiary in order to determine whether she had standing to pursue a breach of contract claim, and analyzing whether the plaintiff was assigned rights under the contract to determine whether she had standing to pursue a fraudulent misrepresentation claim).

Plaintiff's claim also fails as a matter of law because it constitutes an improper shotgun pleading. A shotgun pleading is "[t]he failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." Beckwith v. Bellsouth Telecommunications Inc., 146 F. App'x 368, 371-72 (11th Cir. 2005). A shotgun pleading occurs when a party "commits the sin of not separating into a different count each cause of action or claim for relief," as Plaintiff seeks to do here. Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1322 (11th Cir. 2015). In the Eleventh Circuit, shotgun pleadings are "altogether unacceptable." Cramer v. State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997). "District courts have the inherent authority to dismiss a complaint on shotgun-pleading grounds." Vibe Miko, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018).[11]

In Plaintiff's shotgun pleading, she "[c]rams multiple, distinct theories of liability into one claim." Wheeler v. Carnival Corp., No. 20-20859, 2020 WL 977935, at *1 (S.D. Fla. Feb. 28, 2020). That is, in the same count, she seeks to hold Foresters directly liable for fraud in the inducement, and vicariously liable for fraud in the inducement based on an agency theory. "Each

---

[11] Although ordinarily a party is provided an opportunity to correct the deficiency, the court need not do this where the party already had prior chances to amend. Id. ("We will not adopt a rule requiring district courts to endure endless shotgun pleadings."). Although Plaintiff has not had "an opportunity to correct [her] shotgun pleading," this is her fourth attempt to state a sufficient claim, the deadline to amend has already passed over a year ago on January 3, 2020, dispositive motions are due in two weeks on February 5, 2021, and trial is scheduled for April 5, 2021. The Court need not grant leave to correct this deficiency under these circumstances.

distinct theory, however, is a separate cause of action that must be asserted independently and with corresponding supporting factual allegations." Id. For example, in Noon v. Carnival Corp., No. 18-23181-Civ-Williams/Torres, 2019 WL 2254924 (S.D. Fla. Feb. 1, 2019), adopted, 2019 WL 3886543 (S.D. Fla. Feb. 20, 2019), this Court dismissed an improper shotgun complaint because "the amended complaint conflate[d] two different theories of liability—direct negligence and vicarious liability." Id. at *6. The Court held that "[t]hese allegations c[ould] not stand because '**commingling direct and vicarious liability is an improper pleading practice**." Id.; see also Gayou v. Celebrity Cruises, Inc., No. 11-23359-Civ, 2012 WL 2049431, at **5-6, n.2 (S.D. Fla June 5, 2012) (dismissing a complaint that "lumped" various theories of liability into "a single maritime negligence claim."). Therefore, Plaintiff's claim should be dismissed as an improper shotgun pleading.

Further, Plaintiff has failed to state a sufficient claim for fraudulent inducement with the specificity required by Rule 9(b). Under Florida law, to state a claim for fraudulent inducement, a plaintiff must allege": (1) a false statement of material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802 (11th Cir. 2010). Notably, "[w]here a complaint contains averments of fraud . . . [Rule 9(b)] imposes a heightened pleading standard, requiring that the circumstances constituting fraud be state with particularity." Medimport S.R.L. v. Cabreja, 929 F. Supp.2d 1302, 1318 (S.D. Fla. Mar. 12, 2013). Under Rule 9(b), a plaintiff must set forth

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).

Here, Plaintiff does not sufficiently allege any of the elements with the specificity Rule 9(b) requires. Plaintiff simply states that "Foresters falsely and fraudulently represented, through language in the Policy . . . that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief"

13

"in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy." [Id.¶¶36-37.] Plaintiff alleges that Ms. Lightbourn "explained how the contestability period worked and represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully." Plaintiff does not identify the time, place, or content of these alleged misrepresentations. Plaintiff does not state, specifically, what Ms. Lightbourn allegedly said about "how the contestability period worked." Plaintiff's conclusory allegations regarding an unidentified representation, at an unknown time and place are insufficient, and the Court need not accept these at true in resolving the Motion. See Warren Tech., 962 F.3d at 1328 ("[A] court is not required to credit 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts.'"). Further, with respect to the third and fourth elements in particular, Plaintiff does not allege that Foresters made any fraudulent statements to **her** to induce her to purchase the Certificate, or that **she** relied on Foresters' statements to her detriment. Instead, Plaintiff alleges that Foresters made allegedly false representations to Mr. Vinas in order to induce him to purchase the Certificate. [Second Am. Compl. ¶¶36-37.] Accordingly, Plaintiff's allegations are insufficient to state a claim for fraudulent inducement, and should be dismissed.

Notably, to the extent that Plaintiff claims that Foresters' fraudulent conduct consisted of failing to adhere to the representations in the Certificate regarding Foresters' right to investigate whether Mr. Vinas answered the questions in his Application to the best of his knowledge and belief within two years of issuing the Certificate, Plaintiff's claim fails as a matter of law because it violates Florida's Independent Tort Rule. Under this doctrine, "a plaintiff may not pursue a tort theory of relief where a contract created the duty to act, performance is measured against the contractual obligations, and the contract provides the remedy for defective performance." Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Protection LP, No. 19-14050-CIV-ROSENBERG/MAYNARD, 2019 WL 3428552, at *2 (S.D. Fla. Apr. 18, 2019). "In practical effect it bars a plaintiff from raising a tort cause of action that restates a breach of contract cause of action. For a tort claim to stand, it must be independent of the breach of contract claim." Id. (emphasis in original). "In assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract." Kaye v. Ingenio, Filale De Loto-Quebec, Inc., No. 13-61687-CIV, 2014 WL 2215770, at *5 (S.D. Fla. May 29, 2014). Notably, "statements or

14

misrepresentations made to induce an individual to enter a contract, **if later contained within the terms of the actual contract**, cannot constitute a basis on which to bring the fraud claim." Ben-Yishay v. Mastercraft Dev., LLC, 553 F. Supp.2d 1360, 1370 (S.D. Fla. 2008) (emphasis added).

Here, Plaintiff alleges nothing more than fraud in the performance, which underscores that this is an improper bad faith claim in disguise. Plaintiff alleges that "prior to the sale of the policy, Foresters, through its sales agent Jazmin Lightbourn . . . represented that Foresters would not deny a claim or rescind the policy" if Mr. Vinas answered the Application questions to his best knowledge and belief. [Second Am. Compl. ¶36a]. There is no dispute that Ms. Lightbourn's alleged representation was embodied in the Certificate's Incontestability clause. [Certificate at 14]. As such, Plaintiff further alleges that "Foresters falsely and fraudulently represented, **through language in the Policy** and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief." [Second Am. Compl. ¶36]. Plaintiff alleges that the Policy provisions constituted specific representations to o by [sic] Foresters in the form of contractual promises and/or statements of present intention," and Foresters did not intend to perform those provisions. [Id. ¶32.]. Even assuming these allegations are true, which Foresters disputes, Ms. Jazmin and Foresters' alleged misrepresentation regarding the contestability investigation was embodied in the Certificate, and therefore the appropriate remedy for failure to comply is a breach of contract claim. See Kaye, 2014 WL 2215770 at *5 (dismissing a fraudulent inducement claim because "[w]hile the initial promise may have been fraudulent, the terms of the purported fraud were memorialized in the License Agreement," and therefore, "any failure to comply with those terms results in an action for breach of contract." ). That is, Plaintiff does not allege that Foresters made any pre-contractual statements which were not embodied in the Certificate which induced Mr. Vinas to purchase the Certificate, and certainly not with the specificity Rule 9(b) requires. Instead, she relies on a statement within the contract. Id. (citing HTP, Ltd. v. Lineas Aras Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla 1996)). Plaintiff's fraud claim is "inextricably intertwined with Plaintiff's breach of contract claim" because the misrepresentations alleged are "in the performance of the contract." Perez v. Scottsdale Ins. Co., No. 19-22761-Civ-Scola, 2019 WL 5457746, at *4 (S.D. Fla. Oct. 24, 2019)(dismissing a fraudulent inducement claim because "the misrepresentations alleged [were] in the performance of the contract."). Therefore, Plaintiff's

15

fraudulent inducement claim should be dismissed. See Lookout Mountain Wild Animal Park, Inc. v. Stearns Zoological Rescue & Rehab Ctr., Inc., 553 F. App'x 864, 865 (11th Cir. 2014) (affirming the district court's order dismissing various tort claims, including fraudulent inducement, because the "plaintiff ha[d] not identified any tortious acts that [we]re sufficiently independent of the alleged of contract to render the tort claims viable.")

Plaintiff's claim also fails because she does not sufficiently allege that Ms. Lightbourn was Foresters' agent, and therefore does not state a basis to hold Foresters vicariously liable for any of her alleged misrepresentations. That is, Plaintiff does not state the requisite elements to plead an agency relationship. First, Plaintiff does not allege, even in a conclusory fashion, that Ms. Lightbourn was Foresters' "statutory agent" pursuant to Fla. Stat. § 626.342(2). Second, Plaintiff fails to allege of the elements of apparent agency. "To state a claim of apparent agency, a plaintiff must allege that: 1) the alleged principal makes some sort of manifestation causing the third party to believe that the alleged agent had authority to act for the benefit of the principal; 2) such belief was reasonable; and 3) the claimant reasonably acted on such belief to his or her detriment." Thompson v. Carnival Corp., 174 F. Supp. 3d 1327, 1342 (S.D. Fla. 2016). Plaintiff does not allege any of these elements. Plaintiff does not allege that Foresters made any "manifestation" which caused **her**, or Mr. Vinas, to believe that Ms. Lightbourn had authority to act on its behalf, that such a belief was reasonable, and that she (or Mr. Vinas) reasonably relied on that belief. Additionally, the Complaint is devoid of any allegations supporting an actual agency relationship. "To properly plead actual agency, one must allege: (1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) the principal's right to control the actions of the agent." Johnston v. Maserati N. Am., Inc., No. 08-20898-CIV-HUCK/O'SULLIVAN, 2008 WL 11417405, at *2 (S.D. Fla. July 16, 2008). Plaintiff does not allege that Foresters "acknowledged" that Ms. Lightbourn would act for it, that Ms. Lightbourn "accepted" the undertaking, and that Foresters had the right to control Ms. Lightbourn's conduct.

Plaintiff's conclusory allegation that Ms. Lightbourn was Foresters' "sales agent" is insufficient to state the requisite elements of an agency relationship. Conclusory allegations are insufficient to establish agency. Mesa v. Am. Express Educational Assurance Co., No. 16-CV-24447-HUCK, 2017 WL 2210271, at *3 (S.D. Fla. May 18, 2017) (dismissing a claim for failure to plead the existence of an agency relationship in more than a conclusory fashion). Therefore,

16

Plaintiff fails to plead any basis on which the Court could hold Foresters vicariously liable for Ms. Lightbourn's alleged statements, and Plaintiff's claim should be dismissed.

If, however, the Court declines to dismiss Plaintiff's fraudulent inducement claim, then it should strike Plaintiff's request for attorney's fees under Fla. Stat. § 627.428. Section 627.428 provides that upon entry of judgment against an insurer "under a policy or contract executed by the insurer," the court shall award reasonable attorney's fees in favor of the insured. Florida Supreme Court's most recent applicable holding states: "[W]e hold that recovery for attorney's fees under Section 627.428 requires an <u>incorrect denial of benefits</u> by the insurance company . . ." <u>Johnson v. Omega Ins. Co.</u>, 200 So.3d 1207, 1219 (Fla. 2016) (emphasis added).[12] Plaintiff's fraud in the inducement claim does not arise "under a policy or contract executed by the insurer," as Section 627.428 requires, and does not seek to recover benefits due under a policy. Indeed, "one of the circumstances in which attorney's fees consistently are <u>not</u> authorized under the statute is in actions in which an insured has prevailed against an insurer on a tort claim." <u>Hilson v. Geico Gen. Ins. Co.</u>, No. 8:11-cv-13-MSS-MAP, 2016 WL 3211474, at *6 (M.D. Fla. Mar. 31, 2016) (collecting cases); <u>see also</u> <u>United Gen. Life Ins. Co. v. Koske</u>, 519 So.2d 71, 72 (Fla. 5th DCA 1988) ("Claimants in negligence actions are not entitled to attorney's fees under this statute."). Plaintiffs' fraudulent inducement claim is a tort claim, and fees for its successful prosecution are not compensable under Fla. Stat. § 627.428. Therefore, Plaintiff's claim for fees with respect to Count III should be stricken.

### d. All claims should be dismissed with prejudice.

The Second Amended Complaint with Interlineation should be dismissed with prejudice. Dismissal with prejudice is appropriate where, as here, a plaintiff has already had **four** opportunities to state a claim. "Plaintiff here appears essentially to be on a fishing expedition in an attempt to state a cause of action against Defendants." <u>Gellert v. Richardson</u>, No. 95-256-CIV-ORL-19, 1996 WL 107550, at *6 (M.D. Fla. Jan. 26, 1996). It would not be "proper to require Defendant[ ] to continuously spend time and money defending an action while a Plaintiff . . . file[s] in seriatim attempts to state new causes of action based on conclusory allegations." <u>Id.</u> Accordingly, Plaintiff's claims should be dismissed with prejudice.

---

[12] Although Foresters agreed to pay Plaintiff reasonable attorney's fees and taxable costs incurred in pursuing the Death Benefit with respect to Count I through the date the claim was paid, Plaintiff is not entitled to attorney's fees for her remaining claims.

**V. Conclusion**

Accordingly, Foresters requests that this Court enter an Order dismissing the Second Amended Complaint with Interlineation with prejudice. Foresters also requests that this Court retain jurisdiction to determine the appropriate amount of attorney's fees and taxable costs Plaintiff is entitled to recover with respect to Count I through the date the Death Benefit was paid.

Dated: January 25, 2021

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant/Counter Plaintiff
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax


By: ___s/Kristina B. Pett
    KRISTINA B. PETT
    Fla. Bar No. 0973688
    kristina.pett@mhllp.com
    DANIELLE E. SHURE
    Fla Bar No. 118911
    danielle.shure@mhllp.com

**CERTIFICATE OF SERVICE**

      I certify that on January 25, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Craig M. Greene, Esq.
>Kramer Green Zuckerman Greene & Buchsbaum, P.A.
>4000 Hollywood Blvd.
>Suite 485-S
>Hollywood, FL 33021
>cgreene@kramergreen.com
>*Counsel for Plaintiff/Counter Defendant*
>
>Adrian Neiman Arkin, Esq.
>Mintz Truppman, P.A.
>1700 Sans Souci Blvd.
>North Miami, FL 33181
>adrian@mintztruppman.com
>*Co-Counsel for Plaintiff/Counter Defendant*

                s/Kristina B. Pett
                Kristina B. Pett