IN THE CIRCUIT COURT OF THE
18TH JUDICIAL CIRCUIT, IN AND FOR
BREVARD COUNTY, FLORIDA

**CASE NO.: 05-2007 CA 007058**

**MANOR HOUSE LLC, OCEAN VIEW
LLC, MERRITT LLC,**

       **Plaintiff,**

**vs.**

**CITIZENS PROPERTY INSURANCE
CORPORATION, a Florida
Government entity,**

       **Defendant.**

_____/

### CITIZENS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant, CITIZENS PROPERTY INSURANCE CORPORATION (Citizens), pursuant to Florida Rule of Civil Procedure 1.140(c), requests judgment on the pleadings regarding Counts II and III of Plaintiff's Second Amended Complaint, and as grounds states:

### Introduction

Counts II and III of Plaintiff's Second Amended Complaint fail to state a cause of action and Citizens is entitled to judgment on the pleadings. Count II for common law fraud fails to state a cause of action based on the independent tort doctrine that requires additional conduct distinguishable from or independent of the breach of contract. Because Count II does not allege any conduct by Citizens separate and apart from the breach of contract, Plaintiff's only remedy lies in contract pled in Count I, not tort. Rather, Count II is merely an attempt to assert extra contractual or bad faith liability for which Citizens remains statutorily and sovereignly immune. Likewise, Count III for breach of the implied covenant of good faith and fair dealing fails to state a cause of action as a matter of law because such allegations can only

be made as part of a statutory bad faith action pursuant to *QBE Insurance Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*, 94 So. 3d 541 (Fla. 2012).

## Factual Background

Plaintiff initially filed suit against Citizens in 2007 regarding a claim for Hurricane Frances damage to Plaintiff's property. The case was stayed and ordered to proceed to appraisal in 2009. Following the initial and supplemental payment pursuant to the appraisal award, a total of $7,725,957.42 was paid by Citizens, and Plaintiff was granted leave to amend in April 2010. In July 2010, Plaintiff filed a Second Amended Complaint.   [See Exhibit A – Second Amended Complaint].

The Second Amended Complaint contains three counts: breach of contract (Count I), common law fraud (Count II), and breach of the implied covenant of good faith and fair dealing (Count III).

- Count I is for breach of contract and alleges that Citizens failed to pay all benefits due, honor Plaintiff's demand for appraisal, and timely pay the appraisal award.

- Count II is for common law fraud and alleges that Citizens intentionally made false statements and concealed material information during the adjustment and appraisal process with the intent to injure, defraud, or deceive Plaintiff.

- Count III is for breach of the implied covenant of good faith and fair dealing and alleges that Citizens failed to promptly and fairly adjust and pay Plaintiff's claim.

## Law and Analysis

Citizens is entitled to judgment on the pleadings regarding Counts II and III of Plaintiff's Second Amended Complaint because both fail to state a cause of action.

### I.   *Count II Fails to State a Cause of Action Based on the Independent Tort Doctrine and Citizens' Statutory Immunity*

### A. *Count II Fails to State a Cause of Action Based on the Independent Tort Doctrine*

Unlike the economic loss rule, which is a creature of products liability law concerned with the fact that "'contract principles are more appropriate than tort principles for resolving economic loss claims,'" the independent tort doctrine is a creature of general contract law requiring that "to plead a tort claim in an action arising out of contract, 'there must be a tort "distinguishable from or independent of the breach of contract."'" *See Resolution Trust Corp. v. Holland & Knight*, 832 G. Supp. 1528, 1532 n.5 (S.D. Fla. 1993)(making distinction between doctrines based on Florida law).[1]   In fact, "'fundamental contractual principles' properly delineate the general boundary between contract law and tort law." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 409 (Fla. 2013)(Pariente, J., concurring)(citing *Moransais v. Heathman,* 744 So. 2d 973, 981 (Fla. 1999)).   The *only* way to set forth a claim in tort between parties in contractual privity is for the party to allege an action beyond and *independent* of breach of contract that amounts to an independent tort. *See Tiara,* 110 So.3d at 408 (Pariente, J., concurring)(quoting *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.,* 482 So. 2d 518, 519 (Fla. 3d DCA 1986)).

Many Florida cases recognize the independent tort doctrine, even if not calling it by name.  *See, e.g., Electronic Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986)("ESS's negligence count was based solely on the breach of contract claim.  Since a breach of contract, alone, cannot constitute a cause of action in tort, the trial court properly dismissed the negligence count. It is only when the breach of contract is

---

[1]   Although the economic loss rule was limited to products liability actions in *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013), the opinion did not undermine the viability of the independent tort doctrine, as recognized in the concurrence: "in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim."  (Pariente, J., concurring, at 408).

attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.")(internal citations omitted); *Lewis v. Guthartz*, 428 So. 2d 222, 223-224 (Fla. 1982)("The Tenants failed to allege an independent tort in their pleadings and the district court's conclusion that 'the tenants failed to allege or prove a tort committed by Guthartz which was distinguishable from or independent of his breach of contract,' is competently supported by the record. The fact that the trial court found that the Landlord acted intentionally, willfully, and outrageously as to the breach of contract does not by itself create a tort where a tort otherwise does not exist."); *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 104 (Fla. 4th DCA 1969)(holding count two of the complaint was insufficient because the plaintiff "does not assert that there was a breach of a duty apart from the contract").

Count II of the Second Amended Complaint for common law fraud does not allege the required *conduct separate and apart* from that supporting a breach of contract as alleged in Count I. Consequently, the count fails to state a cause of action as a matter of law based on the independent tort doctrine.

- Count I alleges that Citizens breached the contract of insurance by, among other things: 1) failing and refusing "to fairly, honestly, or properly **adjust** the loss with its insured"; 2) failing and refusing "to **pay all of the benefits** due and owing Plaintiff under the insurance policy with regard to loss arising out of hurricane and/or hurricane-force winds"; 3) refusing "to honor Plaintiff's demand for **appraisal**"; 4) failing "to **pay** the undisputed amount it knew it owed under the Policy"; 5) failing "to proceed voluntarily into the contractual alternative dispute resolution process of **appraisal**"; and 6) failing "to timely and appropriately **pay** the amount of the Appraisal Award."

- Count II alleges the same conduct as the basis for the common law fraud claim, including: 1) claiming Citizens "intentionally made false statements to Plaintiff concerning material facts and intentionally concealed material information it had a duty under the circumstances to disclose to Plaintiff during the **adjustment** of this insurance claim"; 2) claiming that Citizens'

false statements concerning insurable interest were intended to "negate Citizens' clear obligations to **pay** any insured the loss to the insured property caused by the hurricane force winds of Hurricane Frances"; 3) alleging that requested materials "were known by Citizens to be immaterial to its claim **payment** obligation"; 4) claiming Citizens made false statements regarding "whether Plaintiff had the right to demand **appraisal**"; 5) asserting Citizens concealed material information from its **appraiser** and the **appraisal** panel; 6) claiming Citizens "misrepresented the Policy conditions and duties after loss to Plaintiff with the intent that Plaintiff rely on those misrepresentations of fact by concluding that Plaintiff was not entitled to full **payment** of its loss"; and 7) asserting Citizens made false statements "for the purpose of misleading Plaintiff about **benefits owed** under the insurance policy."

What should be apparent from a close comparison of Count I and Count II of the Second Amended Complaint is that Plaintiff is twice seeking relief for the same conduct of breaching the policy by certain allegedly misleading and false actions, related to the adjustment of the claim, the payment of insurance benefits, and the appraisal process.

|  | **Count I** | **Count II** |
|---|---|---|
| **Adjustment** | • Breach by failing to adjust | • False statements regarding adjustment of claim |
| **Payment** | • Breach by failing to pay | • False statements regarding payment and benefits owed<br>• Improper requests related to payment obligations |
| **Appraisal** | • Breach by failing to proceed to appraisal | • False statements regarding the right to demand appraisal<br>• Concealment of material information from appraiser and appraisal panel |

Clearly, Count I is appropriate to answer the only viable question posed by the Second Amended Complaint: did Citizens breach the policy?  Count II does not ask any separate and independent question, but instead again asks whether Citizens breached the policy by non-

performance of the contract but did so in an ugly and unattractive manner. All that matters is whether Citizens breached or not; the circumstances of how and why are not elements of Plaintiff's claim. Florida law does not recognize an "ugly" breach. Because Count II does not assert a tort independent of breach of contract, it fails to state a cause of action and Citizens is entitled to judgment on the pleadings.

**B. *To the Extent Count II Alleges a Cause of Action for Extracontractual Damages or Bad Faith, Citizens is Immune***

To the extent Count II can be interpreted as a cause of action for extracontractual damages or bad faith based on its allegations about how Citizens adjusted, paid, and appraised Plaintiff's claim, Citizens is statutorily and sovereignly immune from such cause of action. There are only five specific enumerated exceptions to Citizens' enabling statute immunity, and they expressly do not include extracontractual and bad faith claims:

> There shall be no liability on the part of, and no cause of action of any nature shall arise against, any assessable insurer or its agents or employees, the corporation or its agents or employees, members of the board of governors or their respective designees at a board meeting, corporation committee members, or the office or its representatives, for any action taken by them in the performance of their duties or responsibilities under this subsection. Such immunity does not apply to:
>
> a.   Any of the foregoing persons or entities for any willful tort;
>
> b.   The corporation or its producing agents for breach of any contract or agreement pertaining to insurance coverage;
>
> c.   The corporation with respect to issuance or payment of debt;
>
> d.   Any assessable insurer with respect to any action to enforce an assessable insurer's obligations to the corporation under this subsection; or
>
> e.   The corporation in any pending or future action for breach of contract or for benefits under a policy issued by the

> corporation; in any such action, the corporation shall be liable to
> the policyholders and beneficiaries for attorney's fees under s.
> 627.428.

§ 627.351(6)(s)1., Fla. Stat.   Controlling precedent in this district, *Citizens Property Insurance Corp. v. Garfinkel*, 25 So. 3d 62 (Fla. 5th DCA 2009), recognized the same in holding Citizens immune from bad faith suits.   *But see Perdido Sun Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp.*, 129 So. 3d 1210 (Fla. 1st DCA 2014)(holding Citizens is not immune from bad faith suits pursuant to its statutory immunity)(on appeal to the Florida Supreme Court, Case No. SC14-185).   Therefore, on this separate basis, Count II fails to state a cause of action against Citizens, and Citizens is entitled to judgment on the pleadings.

### II. Count III Fails to State a Cause of Action as a Matter of Florida Law

Plaintiff alleges a claim for breach of the implied covenant of good faith and fair dealing.   After the Second Amended Complaint was filed, the Florida Supreme Court decided *QBE Insurance Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*, 94 So. 3d 541 (Fla. 2012).   The Court held that first-party claims for breach of the implied covenant of good faith and fair dealing for failure to timely adjust the insured's claim "are actually statutory bad-faith claims that must be brought under section 624.155 of the Florida Statutes."   *Id.* at 549. Therefore, there is no cause of action for breach of the implied covenant of good faith and fair dealing as alleged by Plaintiff under Florida law, and Citizens is entitled to judgment on the pleadings regarding Count III.

### Conclusion

Citizens is entitled to a judgment on the pleadings as to Counts II and III of Plaintiff's Second Amended Complaint. Neither counts states a cause of action as a matter of law. Count II for common law fraud fails to state a cause of action due to the independent tort doctrine

and Citizens' immunity. Count III for breach of the implied covenant of good faith and fair dealing fails to state a cause of action as a matter of law based on *QBE Insurance Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*, 94 So. 3d 541 (Fla. 2012).

WHEREFORE, Defendant, CITIZENS PROPERTY INSURANCE CORPORATION, respectfully requests that this Court grant judgment on the pleadings in its favor regarding Counts II and III of Plaintiff's Second Amended Complaint which fail to state a cause of action.

/s/ *Kara Berard Rockenbach*
KARA BERARD ROCKENBACH
Florida Bar No. 0044903
METHE & ROCKENBACH, P.A.
1555 Palm Beach Lakes Blvd.,Ste. 1200
West Palm Beach, Florida 33134
Telephone:  (561) 727-3600
Facsimile:  (561) 727-3601
E-mail: kbrock@flacivillaw.com

and

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

/s/ *Gina G. Smith*
GINA G. SMITH, ESQ.
Florida Bar No.:  698989
gsmith@butlerpappas.com
3600 Maclay Blvd., Suite 101
Tallahassee, Florida  32312
Telephone:     (850) 894-4111
Facsimile:     (850) 894-4999
Attorneys for CITIZENS PROPERTY INSURANCE
CORPORATION

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy hereof has been furnished to:

      Christopher N. Mammel, Esq.
      BECKER & POLIAKOFF, P.A.
      625 N. Flagler Drive, 7th Floor
      West Palm Beach, FL 33401
      Tel: (561) 655-5444
      Fax: (561) 832-8987
      cmammel@bplegal.com
      bmichenfelder@bplegal.com

by e-Portal and e-mail on February 13th, 2015.

                    /s/ *Gina G. Smith*
                    GINA G. SMITH, ESQ.

IN THE CIRCUIT COURT OF THE 18TH
JUDICIAL CIRCUIT, IN AND FOR BREVARD
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO:  05-2007 CA 007058

MANOR HOUSE LLC, OCEAN
VIEW LLC, MERRITT LLC,

Plaintiff,

vs.

CITIZENS PROPERTY INSURANCE
CORPORATION,

Defendant.
_____/

## SECOND AMENDED COMPLAINT

The Plaintiff, Manor House LLC, Ocean View LLC, Merritt LLC, by its attorneys, Childress Duffy Goldblatt Ltd., for its Second Amended Complaint against the Defendant, Citizens Property Insurance Corp., states as follows:

1.      This action sounds in contract and intentional tort based on breaches of contractual obligations, including the covenant of good faith and fair dealing implied in the contract between Plaintiff, Manor House LLC, Ocean View LLC, Merritt LLC (hereinafter referred to collectively as "Plaintiff" and/or "Manor House") and Defendant, Citizens Property Insurance Corporation (hereinafter referred to as "Defendant" and/or "Citizens"), and Citizens' fraud in the performance of that contract.  Citizens deliberately misrepresented terms and conditions of the insurance contract to Manor House, and concealed material information in order to evade its obligations to pay all benefits due Manor House following hurricane wind losses in 2004.  As alleged more fully hereafter, Manor House, to its considerable detriment, reasonably and justifiably relied on Citizens' deliberate misrepresentations of the false statements regarding the requirements of the terms and conditions of the insurance contract and the obligations of the parties.

EXHIBIT

A
_____

2.      At all times material herein Manor House was and is a limited liability company duly organized and existing under and by virtue of the laws of the State of Florida located in Merritt Island, Brevard County, Florida.

3.      At all times material hereto, Citizens was and is a Florida insurance company engaged in the business of providing insurance coverage in the State of Florida, and is authorized by the State of Florida to engage in the business of insurance in the State of Florida. Citizens, while engaging in the business of insurance in the State of Florida, is required to follow and/or comply with all Florida Insurance Code Statutes and regulations promulgated by the legislature and the Florida Department of Financial Services.

4.      This Court has subject matter and personal jurisdiction over the parties to this cause of action.

5.      A cause of action exists under Florida law for claims regarding the conduct complained of herein.

6.      Jurisdiction is proper as to Citizens pursuant to Florida Statute §48.193(1)(a) and (d) because Citizens is a citizen of Florida and conducted business within the State of Florida.

7.      Venue is proper pursuant to Florida Statute §47.051 because it is the venue in which the cause of action accrued and where the insured property in question is located.

8.      This is an action for damages in excess of $15,000.00, exclusive of interest, costs and attorneys' fees.

## **FACTS COMMON TO ALL COUNTS**

9.      Citizens issued a policy of insurance, Policy Number CPP1008288 (the "Policy"), to Plaintiff for insurance coverage to the property located at: 700 N. Courtenay Pkwy., Merritt Island, FL 32952 (7 Buildings); 88 Skylark Avenue, Merritt Island, FL 32952 (1 Building); and 620 Club House Drive, Merritt Island, FL 32952 (1 Building) (hereinafter referred to collectively as "Plaintiff's property"). Each of the buildings is listed in the Policy as a separate coverage item, with separate coverage limits. (A copy of the insurance policy is attached as Exhibit A.)

2

10.     The Policy was in effect from May 13, 2004 to May 13, 2005.

11.     Under the Policy, Citizens agreed to pay for direct physical loss and damage to Plaintiff's property as a result of windstorm.

12.     Plaintiff paid the premiums due on the Policy in a timely manner and performed all of the duties and responsibilities required of it under the Policy.

13.     During September 2004, while the Policy was in full force and effect, Plaintiff's property was directly and substantially damaged due to windstorm as a result of Hurricane Frances.  Hurricane and hurricane-force winds are covered perils under the Policy.

14.     Damages caused by hurricane and/or hurricane-force winds, and ensuing damages as a direct result thereof, are covered damages under the Policy.

15.     Plaintiff's property sustained substantial damage as a result of hurricane and/or hurricane-force winds, and ensuing damages as a result of Hurricane Frances.

16.     As a result of the subject loss, Plaintiff timely notified and presented a claim to Citizens, and fulfilled all other duties required of it under the insurance policy after discovery of the loss.

17.     Defendant acknowledged the claim, which is the subject of this action, and assigned it claim number 2270 FL 054676.

18.     Citizens inspected Plaintiff's property and determined that the property had sustained covered windstorm damages from Hurricane Frances.

19.     On or about December 12, 2006, Citizens Property Direct field adjuster, Bill Pacheco, met with Plaintiff's authorized representative and acknowledged that based on his inspection and estimate,  $6,410,456.01 was the undisputed replacement cost value (hereinafter "RCV") amount of the covered loss and damage.  Mr. Pacheco and Plaintiff's representative also agreed that, at least $5,489,061.91 was the minimum undisputed actual cash value (hereinafter "ACV") amount of the covered loss and damage.

3

20. The $5,489,061.91 ACV undisputed amount reflects the minimum scope and amount of loss Citizens knew it owed under Policy, and was itemized as follows in Mr. Pacheco's estimates:

| | RCV | ACV | Deductible | Net Claim[1] |
|---|---|---|---|---|
| (a) 2270 Clubhouse | $ 70,154.54 | $ 61,603.77 | $ 5,940.00 | $ 55,663.77 |
| (b) 2270 Tower | $ 800,509.13 | $ 680,250.79 | $85,152.00 | $ 595,098.79 |
| (c) 2270 Building 100 | $1,292,237.75 | $1,208,340.38 | $26,775.00 | $1,181,565.38 |
| (d) 2270 Building 200 | $1,169,411.14 | $ 969,280.38 | $ 50,151.00 | $ 919,129.35 |
| (e) 2270 Building 300 | $ 966,846.28 | $ 800,896.21 | $ 53,376.00 | $ 747,520.21 |
| (f) 2270 Building 400 | $ 741,149.60 | $ 623,700.72 | $ 36,969.00 | $ 586,731.72 |
| (g) 2270 Building 500 | $1,086,419.60 | $ 904,587.14 | $ 36,969.00 | $ 867,618.14 |
| (h) 2270 Building 600 | $ 256,149.20 | $ 214,119.27 | $ 19,293.00 | $ 194,826.27 |
| (i) 2270 Building 700 | $ 27,579.01 | $26,284.12 | $ 0 | $ 26,284.12 |
| Total Undisputed Damage: | $6,410,456.01 | $5,489,061.91 | $314,625.00 | $5,174,437.91 |

(Copies of Mr. Pacheco's estimates are attached as Exhibits B through J and are referred to hereafter as the "December 2006 estimate.").

21. The December 2006 estimate omitted and did not include an amount for all of the covered loss and damaged items.

22. Plaintiff retained the services of public adjusting firm Dietz International ("Dietz"), and through Dietz informed Citizens that its windstorm damages in this claim totaled at least $10,027,087.05 for Replacement Cost Value of the loss and damage to Plaintiff's property.

23. Thereafter, although Citizens had determined the undisputed minimum amount of the loss as alleged above, Citizens failed and refused to pay that undisputed amount despite the fact that Citizens' claim manual governing the adjustment of this claim required payment of the undisputed minimum amount.

---

[1] Actual Cash Value less deductible.

4

24. On or about February 13, 2007, Citizens' authorized representative, Keith Molton, stated to Plaintiff's representative that Citizens had reviewed the estimate prepared by its adjuster and still required additional information to make any further payment to Plaintiff. This statement was false since, among other things, Citizens had never made the undisputed amount payment of the ACV amount in the estimate.

25. The Policy provides that:

**2. Appraisal**

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
> (Exhibit "A" at Form CP 00 10 10 00, p. 8 of 13).

26. On March 23, 2007, Plaintiff demanded that Citizens pay the undisputed amount of the loss as determined by Citizens Property Direct field adjuster in the December 2006 estimate. Plaintiff also demanded appraisal pursuant to the contractual alternative dispute resolution process provided in the Policy at that time, based on the disagreement in the scope and amount of the loss resulting from the hurricane. (Copies of these letters are attached as Exhibits K and L).

27. Although aware that the parties disagreed on the amount of the loss, Citizens refused to name its appraiser and commence the appraisal process.

28. Instead, on or about April 10, 2007, Citizens falsely stated that it did not have sufficient information to determine whether Plaintiff had an "insurable interest" in the Policy. Based on that purported concern, Citizens refused to make any payment of the undisputed amount stated in the Pacheco estimate, and refused to honor Plaintiff's demand for appraisal of the loss under the Policy.

29. Citizens further misled Plaintiff by taking the position that certain exclusions for particular causes of loss contained in the Policy appeared to be applicable to the claim, even though

5

Citizens' knew its field adjuster had already determined that the amounts reflected in December 2006 estimate reflected amounts owed for covered damages caused by the storm.

30.      Even though provided with the differing estimate submitted by Plaintiff's representative demonstrating the parties' disagreement as to the amount of the loss, Citizens refused to proceed to appraisal in direct contravention of the Policy and Florida law.

31.      On or about June 14, 2007, Plaintiff's representative, Jeff Wells, spoke with Citizens' representative, Alan Renshaw, regarding Plaintiff's claim.  Mr. Renshaw acknowledged having received from Mr. Wells the Purchase and Sale Contract between Plaintiffs and the prior owner of the property and a document executed on behalf of those prior owners entitled "Appointment of Agent in Fact for All Insurance Claims" appointing Mr. Wells as the prior owners' agent for purposes of all insurance claims.  (*See* Appointment of Agent in Fact for All Insurance Claims, attached as Ex. M)  Mr. Renshaw nonetheless took the position at this time that such documents were insufficient to establish an insurable interest under the Policy in Plaintiff.  This position was known by Defendant to be incorrect.

32.      Thereafter, by letter dated June 25, 2007, Plaintiff's representative Mr. Wells again provided the documentation establishing Plaintiff's insurable interest under the Policy, asking Citizens to re-review such information to verify Plaintiff's interest.

33.      Shortly thereafter, in or about July 2007, Mr. Wells spoke again with Mr. Renshaw on the telephone.  At that time, Mr. Renshaw admitted that Citizens had determined that Plaintiff had an insurable interest under the Policy, based on the information provided to Citizens.

34.      Plaintiff relied on the representation of Citizens' agent, Mr. Renshaw, that Citizens had determined Plaintiff had an insurable interest under the Policy, based on the information provided to Citizens.

35.      Notwithstanding Mr. Renshaw's admissions during his call with Mr. Wells, in or about July or August, 2007, Citizens again denied in writing that Plaintiff had an insurable interest, effectively taking the position that although the Policy was fully paid and a covered loss had

6

occurred undisputedly amounting to at least $5,489,061.91 on an ACV basis, Citizens had no obligation to pay either Plaintiff's predecessor in interest in the property or Plaintiff, as the current owner.

36.     On or about August 24, 2007, Plaintiff was forced to initiate a lawsuit against Citizens in order to obtain its rights under the Policy, including appraisal and all benefits to which it was or would become entitled following appraisal.

37.     Plaintiff was also forced to litigate unnecessarily for two years because Citizens falsely stated that it did not have sufficient information to determine whether appraisal was appropriate and based on those false statements persuaded the Court to enter orders requiring Plaintiff to providing Citizens with additional documents Citizens did not need to determine if appraisal was appropriate.   Plaintiff suffered delay and considerable expense during this unnecessary period of litigation.

38.     Ultimately, the Court agreed appraisal was required under the circumstances, as requested by Plaintiff.   On October 20, 2009, the Court entered an Agreed Order compelling appraisal and staying other proceedings in the lawsuit until November 30, 2009, to allow the parties to conclude appraisal, and set the amount of loss.   (Agreed Order dated October 20, 2009, attached as Exhibit "N.")

39.     Plaintiff named George Keys as its appraiser.   Citizens named Ignacio Hidalgo as its appraiser.   The appraisers agreed on Randolph Clark as the neutral umpire.

40.     The appraisal clause of the insurance policy requires each appraiser to "state separately the value of the property and amount of loss."   (Exhibit "A" at Form CP 00 10 10 00, p. 8 of 13).

41.     As a means of depressing the amount of its appraiser's estimate of the loss and  in order to conceal from him the minimum undisputed amount Citizens knew it was already required to pay, Citizens withheld from its appraiser the December 2006 estimate of damages caused by the loss.

7

42.     During the times he was preparing his own estimate of damages, Citizens' appraiser did not have the benefit of the December 2006 contemporaneous estimate of damages that Citizens had in its possession.   Consequently and as intended by Citizens, its appraiser's estimate of damages caused by the hurricane was substantially less than the amount of Mr. Pacheco's contemporaneous estimate.

43.     Additionally, the December 2006 estimate wrongfully attempted to deprive Manor House of the benefits of its Policy by aggregating various "General Conditions" expenses attributable to construction for all nine separately insured buildings at Plaintiff's property, by applying the "General Conditions" expenses all to Mr. Pacheco's Building 100 estimate, so the estimate for Building 100 would exceed its policy limit. (*See* Exhibit "D," p. 93 of Citizens' Building 100 Estimate dated December 12, 2006).

44.     Citizens' representatives knew at the time of the December 2006 estimate that such aggregation of "General Condition" expenses was not only contrary to estimating and adjusting practices and wrongful, but would promote the improper interests of the insurer in evading payment for covered losses over the right of the insured to receive all benefits promised under the policy.  Citizens also knew that this practice would be easily concealed by the insurer, and extremely difficult for an insured to detect.

45.     Since each of the nine buildings are listed as separate coverage items, with separate coverage limits and deductibles for each, Citizens' aggregation of the "General Conditions" expenses for construction on all nine buildings into the estimate for Building 100 was knowingly deceptive and dishonest.  The "General Conditions" expenses attributable to each building should have been listed separately under each building estimate.

46.     Citizens' December 2006 estimate for damages to Building 100 totaled $417,482.25 for windstorm damages before Citizens aggregated the "General Conditions" expenses for construction for all nine buildings to the Building 100 estimate total. (See Exhibit "D").  The estimate of windstorm damage to Building 100 would have been well within the coverage limit of

8

$892,500.00 for that Building before Citizens aggregated the "General Conditions" expenses, which amounted to an additional $660,544.08 to the estimate for Building 100. (*See id.,* p. 93).

47.     Citizens' December 2006 estimate for Building 100 damages totaled $1,265,462.75 once the windstorm damages and "General Conditions" expenses were aggregated in order to exceed the Building 100 policy limit of $892,500.00.

48.     Citizens' actions alleged above were done with the intent to deceive and injure Plaintiff in this matter.

49.     Plaintiff relied on Citizens' December 2006 estimate to be a truthful and accurate estimate of the minimum amount of covered benefits Citizens believed that it owed under the Policy.

50.     During the appraisal hearing, Citizens' appraiser was presented for the first time with the December 2006 estimate showing the undisputed amount of damages already determined by Citizens. Thereafter, Citizens' appraiser agreed with the Umpire and Manor House's appraiser to unanimously make the Appraisal Award. On November 29, 2009, the appraisal panel unanimously executed a valid and binding Appraisal Award in the amount of $8,649,816.12 for Replacement Cost Value, and $8,388,752.06 for Actual Cash Value damages caused by the hurricane. (Appraisal Award attached as Exhibit "O.")

51.     To date, Citizens has refused to pay Plaintiff the amount of the Appraisal Award in full, which is beyond the thirty (30) day Loss Payment time stated in the Policy. (Exhibit "A" at Form CP 01 25 06 95, p. 1 of 2).

52.     F.S.A. § 627.351(6)(s)1 states in pertinent part (emphasis added):

> There shall be no liability on the part of, and no cause of action of any nature shall arise against, any assessable insurer or its agents or employees, the corporation [Citizens] or its agents or employees, members of the board of governors or their respective designees at a board meeting, corporation committee members, or the office or its representatives, for any action taken by them in the performance of their duties or responsibilities under this subsection. *Such immunity does not apply to:*
>
> a.      Any of the foregoing persons or entities for any willful tort;

9

b.    The corporation or its producing agents for breach of any contract or agreement pertaining to insurance coverage;

c.    The corporation with respect to issuance or payment of debt;

d.    Any assessable insurer with respect to any action to enforce an assessable insurer's obligations to the corporation under this subsection; or

e.    The corporation in any pending or future action for breach of contract or for benefits under a policy issued by the corporation; in any such action, the corporation shall be liable to the policyholders and beneficiaries for attorney's fees under s. 627.428.

53.    F.S.A. § 627.351(6)(r)2 mandates that:

The corporation [Citizens] shall manage its claim employees, independent adjusters, and others who handle claims to ensure they carry out the corporation's duty to its policyholders to handle claims carefully, timely, diligently, and in good faith, balanced against the corporation's duty to the state to manage its assets responsibly to minimize its assessment potential.

## COUNT I – BREACH OF CONTRACT

54.    Plaintiff reasserts and re-alleges paragraphs 1-53 as if fully set forth herein.

55.    Pursuant to the Policy, Citizens has a contractual obligation to pay the full amount of Plaintiff's damages, and to adjust all losses with Plaintiff.

56.    Citizens has failed and refused to fairly, honestly, or properly adjust the loss with its insured, thereby breaching the Policy.

57.    Hurricane and/or hurricane-force winds substantially damaged Plaintiff's property which has adversely affected Plaintiff, causing it substantial hardship and loss.

58.    Citizens failed and/or refused, and continues to refuse, to pay all of the benefits due and owing Plaintiff under the insurance policy with regard to loss arising out of the hurricane and/or hurricane-force winds, including the full costs to repair and/or replace the damage to Plaintiff's property, forcing Plaintiff to litigate this matter.  This is a breach of the insurance policy.

59.     Citizens refused to honor Plaintiff's demand for appraisal. This conduct breached the Appraisal provision of the Policy. (Exhibit "A" at Form CP 00 10 10 00, p. 8 of 13).

60.     Plaintiff was forced to initiate this lawsuit in order to compel Citizens to honor the appraisal provision and other terms of the Policy.

61.     Plaintiff requested that Citizens assist it in adjusting this loss by providing Citizens' damage estimates, reports and/or opinions, scope(s) of the extent and nature of the covered and uncovered damages, and reasons why Citizens asserted that any claimed damage was not covered, but Citizens denied all such requests. This denial was a breach of the insurance policy.

62.     Citizens' failure to pay the undisputed amount it knew it owed under the Policy constituted a wrongful denial of this claim, and was in breach of the Policy and Florida law.

63.     Plaintiff should not have had to resort to appraisal, and should not have had to utilize the courts to force Citizens to honor its Policy obligations. Citizens' failure to proceed voluntarily into the contractual alternative dispute resolution process of appraisal constituted a wrongful denial of this claim, and was in breach of the Policy and Florida law.

64.     Citizens' failure to timely and appropriately pay the amount of the Appraisal Award constituted a wrongful denial of this claim, and was in breach of the Policy and Florida law.

Plaintiff has repeatedly requested that Citizens pay its covered damages; Citizens has failed and refused, and continues to refuse to pay the full damages despite knowing payment is required under the insurance policy and Florida law.

65.     Plaintiff has done and performed all those matters and conditions properly required of it under the Policy, or alternatively, has been excused from performance as a result of the acts, representations, omissions, and/or conduct of Citizens.

66.     Plaintiff has suffered a substantial loss regarding its insured property and continues to suffer the loss. Citizens' failure to comply with its contractual obligations has damaged Plaintiff monetarily.

11

67.    Citizens' wrongful denials, actions and/or omissions in the handling of Plaintiff's claim constitute a breach of the Policy and Florida law.

68.    As a direct and foreseeable result of Defendant's breach of contract, Plaintiff has:

   a.    suffered and will continue to suffer significant property damage to Plaintiff's property;

   b.    incurred and will incur in the future costs to repair and restore or replace the significant damage to Plaintiff's property;

   c.    suffered and will continue to suffer consequential damages due to Defendant's delay and failure to timely pay this claim; and

   d.    suffered and will continue to incur attorneys' fees, investigatory fees, and all other losses including pre-judgment interest.

WHEREFORE, Plaintiff respectfully requests judgment in its favor and against Defendant, CITIZENS PROPERTY INSURANCE CORPORATION, for monetary damages, including, but not limited to, the costs to repair and restore or replace the Plaintiff's property damaged by the covered loss, permanent loss to the value of the Plaintiff's property, incidental and consequential damages, investigatory fees, and pursuant to F.S.A. §627.428 and F.S.A. §57.105, *inter alia,* an award of Plaintiff's attorneys' fees, costs and pre-judgment interest from the date of loss.

## COUNT II – COMMON LAW FRAUD

69.    Plaintiff reasserts and re-alleges paragraphs 1-53 as if fully set forth herein.

70.    This is an action for damages sustained by Plaintiff as a result of insurance fraud committed by Citizens during the adjustment of this insurance claim.

71.    As alleged herein, Citizens intentionally made false statements to Plaintiff concerning material facts and intentionally concealed material information it had a duty under the circumstances to disclose to Plaintiff during the adjustment of this insurance claim.

72.    Citizens' representations of the nature and extent of its coverage obligations were intentionally false and misleading, including:

   a.    Citizens' false statements regarding Plaintiff's rights to assert its interest under the Policy as an aspect of its clear insurable interest;

12

b.   Citizens' false statements that Plaintiff's evidence of insurable interest were "insufficient" to obligate Citizens to honor any right, interest or demand made by Plaintiff under the Policy, in order to negate Citizens' clear obligations to pay any insured the loss to the insured property caused by the hurricane force winds of Hurricane Frances;

c.   Citizens' intentional misrepresentations of the claim process and policy conditions to Plaintiff by asserting that it would need seven categories of documents before Plaintiff would be entitled to payment pursuant to Citizens' own internal estimate of covered damages that it knew it owed under the policy. (See Exhibit "B through J.") These materials were known by Citizens to be immaterial to its claim payment obligation.

d.   Citizens' false statements regarding whether Plaintiff had the right to demand appraisal under circumstances where Citizens admitted the policy covered the windstorm damage to the property, knew it had obligations to pay Plaintiff an undisputed level of benefits, but the parties clearly disagreed on the amount of loss;

e.   Citizens' concealment of its knowingly improper aggregation of various "General Conditions" expenses attributable to construction for all nine separately insured buildings at Plaintiff's property into the Building 100 estimate dated December 12, 2006, so the estimate for Building 100 of $1,265,462.75 would be artificially inflated and substantially exceed the Building 100 Policy limit of $892,500.00;

f.   Citizens' concealment of material information from its appraiser, including specifically the December 12, 2006 estimate determining the minimum undisputed amount owed by Citizens.

g.   Citizens' knowing concealment of material information from the appraisal panel, including specifically its knowledge of the minimum undisputed amount determined to be owed to Plaintiff as of no later than December 2006, intending to wrongfully depress the award likely to be reached by the appraisal panel.

73.   Citizens' made its false representations and concealed information with the intent to injure, defraud or deceive Plaintiff in this Hurricane Frances claim.

74.   Citizens knowingly misrepresented the Policy conditions and duties after loss to Plaintiff with the intent that Plaintiff rely on those misrepresentations of fact by concluding that Plaintiff was not entitled to full payment of its loss, or even payment at the level known to Citizens based on its internal estimate of covered damages owed under the policy.

13

75.     Citizens' misrepresentations of the foregoing facts were contrary to Citizens' own interpretations of Policy requirements and conditions as reflected in its internal adjustment guidelines and claims handling procedures, as well as known standards and practices in the industry.

76.     Citizens' intent in making the false statements concerning material facts to Plaintiff and concealing material facts from Plaintiff was to induce Plaintiff to act on such false statements and appearances to its financial detriment.

77.     Citizens made such false statements to Plaintiff with the knowledge that they contained materially false information concerning the insurance claim, and/or concealed information for the purpose of misleading Plaintiff about benefits owed under the insurance policy.

78.     Plaintiff spent substantial time and invested resources in order to respond to Citizens' falsely stated positions, obtained professional services to assist in satisfying or overcoming the falsely asserted Policy obligations and informational needs asserted by Citizens, participated at great expense in the unnecessary appraisal proceedings, and utilized the figures set forth in the December 2006 estimate without knowledge that even those figures were understated through Citizens' improper aggregation of all General Condition expenses to the estimate for Building 100, among other detriment incurred in reliance on Citizens' misrepresentations and concealments.

79.     Plaintiff suffered damage as a direct and proximate result of Citizens' fraudulent acts and concealments of material facts, including, among other harm: delayed payment of insurance benefits, including the amount of Citizens' own internal estimate of covered damages that it knew it owed under the policy; delayed relief in the lawsuit based on Citizens' assertion of bogus informational needs and false contentions about investigational needs to the Court and Plaintiff; Plaintiff's net recovery was reduced because it was forced to hire a public adjuster, appraiser, neutral umpire and attorney to represent it in the claim, when Citizens concealed and misrepresented its actual evaluation and disavowed its coverage obligations; Plaintiff's net recovery

14

was reduced further because it incurred litigation costs as a result of Citizens' knowing refusal to acknowledge and admit its actual evaluation of the loss coverage.

80.    Citizens' actions subverted the insurance adjusting and indemnification processes, and were willful, wanton, malicious and in reckless disregard for the rights of Plaintiff.

WHEREFORE, Plaintiff demands judgment in its favor against Defendant, CITIZENS PROPERTY INSURANCE CORPORATION, for the full amount of its damages within the jurisdictional limits of this Court, compensatory damages, consequential damages, plus all reasonable investigation and litigation expenses, including attorneys' fees pursuant to F.S.A. § 627.428 and F.S.A. § 57.105, *inter alia,* costs and pre-judgment interest from the date of loss.

## COUNT III – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

80.    Plaintiff reasserts and re-alleges paragraphs 1-53 as if fully set forth herein.

81.    At all material times, the Policy was in full force and effect.

82.    Under Florida law, a covenant of good faith and fair dealing is implied in every contract.  The Policy between Plaintiff and Citizens has an implied covenant of good faith and fair dealing as a material term.

83.    The purpose of the implied covenant of good faith and fair dealing is to protect the reasonable expectations of the contracting parties in light of their express agreement.

84.    Under the insurance policy, Citizens agreed to pay for direct physical loss and damage to Plaintiff's property as a result of windstorm.

85.    The Policy set forth the rights and obligations of Citizens to Plaintiff with respect to its claim, including but not limited to the following terms and conditions:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

A.    **Coverage**
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

...

15

**CAUSES OF LOSS – BASIC FORM**

    **A.**    **Covered Causes of Loss**

        When Basic is shown in the Declarations, Covered Causes of Loss means the following:

...

        **4.**    Windstorm or Hail, but not including:

            **a.**    Frost or cold weather;
            **b.**    Ice (other than hail), snow or sleet, whether driven by wind or not; or
            **c.**    Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

(*See* Insurance policy, Form CP 10 10 10 00, p. 1 of 4, attached as Exhibit "A").

    86.    Pursuant to the terms and conditions of the Policy, and in particular the terms quoted above, Plaintiff has a right to property coverage for damages caused by hurricane and/or hurricane force winds. Plaintiff also has the right to a fair and prompt adjustment, payment and/or settlement of its claim consistent with the Policy and the established standards in the industry.

    87.    On or about December 12, 2006 and continuing through the present, Citizens materially breached the implied covenant of good faith and fair dealing, by, among other things:

        a.    Failing to fairly acknowledge and pay the undisputed loss or damages to Plaintiff's property, which was caused by hurricane and/or hurricane-force winds;

        b.    Failing to fairly and promptly adjust Plaintiff's claim;

        c.    Failing to fairly and promptly pay Plaintiff's full claim;

        d.    Failing to fairly and promptly settle Plaintiff's claim;

        e.    Unreasonably refusing to participate in the appraisal process, and then refusing to participate in the appraisal process in good faith, purposely misleading the participants in that process by withholding its own internal estimate disclosing the minimum undisputed amount of the loss;

16

f.      Otherwise failing to honestly and fairly evaluate and provide property coverage for Plaintiff's claim; and

g.      Failing to fairly and promptly pay the amount it knew it owed under the Policy for Plaintiff's claim

88.     Additionally, the Policy lists each of the nine buildings as separate coverage items, with separate coverage limits and deductibles applicable to each. (*See* Declarations Pages of the insurance policy attached as Exhibit "A").

89.     Citizens' covert aggregation of various "General Conditions" expenses attributable to construction for all nine separately insured buildings at Plaintiff's property into the Building 100 estimate dated December  2006 in order to inflate that estimate, is an unreasonable interpretation of the express terms of the Policy that list each of the nine buildings as separate coverage items, with separate coverage limits and deductibles for each. (*See* Exhibit "D," p. 93 of Citizens' Building 100 Estimate dated December 12, 2006; and Declarations Pages of the insurance policy attached as Exhibit "A").

90.     Citizens' conduct was undertaken pursuant to a grant of discretion in the Policy for Citizens in preparing its damage estimates and the scope of that discretion has not been specifically designated by the terms of the Policy.

91.     Consequently, Citizens failed and/or refused to discharge its contractual responsibilities, prompted by deliberate acts that unfairly frustrate the agreed common purpose to adjust all losses, disappoints Plaintiff's reasonable expectations, and thereby deprives Plaintiff of the benefits of the Policy.

92.     Furthermore, Citizens' enabling statute requires it to handle claims carefully, timely, diligently, and in good faith.

93.     The Policy states that Citizens will determine the value of the damaged property or the cost of repair and replacement, but there is no time frame for these determinations, or other specific conditions about how valuations will be made, all of which are implied terms.

17

94.     As a direct and proximate result of Citizens' material breach of the implied covenant of good faith and fair dealing of the Policy, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment in its favor against Defendant, CITIZENS PROPERTY INSURANCE CORPORATION, for the full amount of its damages within the jurisdictional limits of this Court including compensatory damages in addition to that recoverable under the breach of contract count, plus all reasonable investigation and litigation expenses, including attorneys' fees pursuant to F.S.A. § 627.428 and F.S.A. § 57.105, and pre-judgment interest from the date of loss.

## DEMAND FOR A JURY TRIAL

The Plaintiff demands trial by jury on all issues so triable.

Respectfully Submitted,

Christopher N. Mammel, Esq.
F.B.N. 0054051
Childress Duffy Goldblatt, Ltd.
Counsel for Plaintiff
500 N. Dearborn St., Suite 1200
Chicago, IL 60654
(312) 494-0200
(312) 494-0202 (facsimile)
cmammel@cdglawyers.com

18