UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

       Plaintiff,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

       Defendant.

_____/

### DEFENDANT'S STATEMENT OF MATERIAL FACTS
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, The Independent Order of Foresters ("Foresters"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, submits its Statement of Material Facts in Support of its Motion for Summary Judgment.

### Procurement of the Certificate

1. On January 12, 2015, Plaintiff's late husband, Rigoberto Vinas ("Mr. Vinas") completed an Application for Individual Life insurance (the "App."; **Ex. A**).

2. The Application contained several questions aimed at ascertaining medical information that was material to Foresters' consideration of the risk to insure Mr. Vinas, and Foresters' determination of his eligibility for insurance and for various premium rates. [Id. at 3-5].

3. Specifically, Question No. 24(h) of the Application asks:

    24.    Within the past 10 years, have you been diagnosed with, or received treatment or medication, tested positive or been given medical advice for:
    . . .
    h.    Diabetes, or a disease or disorder of the thyroid, pituitary, pancreas or endocrine system?

    [Id. at 5].

4. Mr. Vinas answered "No" to Question No. 24(h) of the Application. [Id.]

5. Mr. Vinas declared that he understood and agreed that "[t]he statements, answers and representations contained in the Application are full, complete and true, to the best of [his] knowledge and belief." [Id. at 7].

6. Mr. Vinas also declared and agreed that "No agent/producer, medical examiner or any other person, except Foresters Executive Secretary or successor position, has power on behalf of Foresters to make, modify, or discharge an insurance contract." [Id.]

7. Jazmin Lightbourn, Mr. Vinas' insurance broker, certified that she "**made no misrepresentation(s)** about Foresters product(s) applied for in th[e] Application," and "**no promise(s) regarding the benefit(s) or future performance of the product(s)** applied for, other than as specifically written in the specific product(s) applied for." [Id. at 8 (emphasis added)].

8. Shortly after Foresters received Mr. Vinas' Application, it received an MIB alert indicating that Mr. Vinas had been diagnosed with diabetes mellitus. Accordingly, Foresters required Mr. Vinas to complete a Diabetes Questionnaire. [App. at 10-11].

9. Mr. Vinas answered "No" to Question 7 of the Diabetes Questionnaire, which asks:

> Related to this condition [Diabetes], have you ever had:
> iv) Kidney problems (including protein in your urine)?
> v) Sensory problems (such as burning in your feet)?"

[Id. at 2].

10. In addition, Question 11 of the Diabetes Questionnaire asked Mr. Vinas to provide any additional information that he believed was important with respect to this condition. [Id.]. Mr. Vinas responded:

> Proposed insured had a medical exam done for an insurance policy in 2012. The medical examiner told him that he had Diabetes. After following up with his primary doctor and doing additional testing he concluded that the proposed insured did not have Diabetes. He's never taken medication or had treatment for this condition.

[Id.].

11. By signing the Diabetes Questionnaire, Mr. Vinas declared as follows:

"I declare that I have read this Diabetes Questionnaire and represent that the information provided, as shown in this questionnaire, is true, and is a complete disclosure of all information requested in this questionnaire, to the best of my knowledge and belief. I

2

understand and agree that this questionnaire is part of and subject to the Application. I also understand and agree that the information provided in this questionnaire will be relied upon as evidence of insurability that will influence the assessment and acceptance of the application by Foresters.

[Id.].

12. Foresters forwarded Mr. Vinas's Application to Underwriting, who determined that there was a discrepancy between the MIB hit and the Application and Diabetes Questionnaire. [Foresters UW at 1, **Ex. B**].

13. By letter dated January 16, 2016, Foresters requested a copy of Mr. Vinas's MIB Consumer File and asked for details about any information not disclosed. [1.16.15 Letter, **Ex. C**]. Foresters also advised that if the MIB file was inaccurate, Mr. Vinas could request that Foresters defer underwriting until it was corrected. [Id.].

14. In response, Ms. Lightbourn provided a letter from Mr. Vinas's treating physician, Dr. Kenneth Hershman, dated January 22, 2015, which stated that Mr. Vinas was "in good health and [wa]s not taking any medication for diabetes or on a diabetic diet. He ha[d] been advised to diet and exercise on a regular basis." [1.22.15 Letter, **Ex. D**].

15. Foresters forwarded Mr. Vinas's application materials to underwriting for review. Foresters relied on Mr. Vinas's representations on the Application and Diabetes Questionnaire, and Dr. Hershman's letter without determining whether those representations were true to Mr. Vinas's best knowledge and belief. [Parrot Tr. at 56:18-25, 57:1-3, **Ex. E**; Fla. Stat. § 627.404(3)("An insurer shall be entitled to rely upon all statements, declarations, and representations made by an applicant for insurance.")].

16. Foresters approved the Application and issued Foresters SMART Universal Life Insurance Certificate No. 8356627 ("Certificate"; Doc. 147-1), insuring the life of Mr. Vinas for $92,000, effective January 26, 2015.

17. Mr. Vinas owned the Certificate. [Id. at 1]. Plaintiff was the primary beneficiary. [Overflow Form, **Ex. F**].

18. The Certificate contains an Incontestability Clause, consistent with Fla. Stat. § 627.255, which provides that Foresters "will not contest the validity of this certificate after it has been in effect during the lifetime of the insured for two years except for non-payment of premiums." [Certificate at 14].

19. The Certificate also contains a Merger Clause, which provides that that the Certificate and application materials, <u>inter alia</u>, constitute the parties' "entire contract," which could not be modified by anyone. [<u>Id.</u> at 10].

20. The Certificate further provides that "[n]o one, including the producer who provided you with this Certificate can make a promise or representation about the entire contract other than what is described in the entire contract." [<u>Id.</u>]

21. Mr. Vinas had 14 days to examine the Certificate and notify Foresters that he was not satisfied. [<u>Id.</u> at 1]. Upon request, Foresters would have voided the Certificate and refunded all premiums. [<u>Id.</u>]

22. During the underwriting process, neither Plaintiff nor Mr. Vinas spoke with anyone other than Ms. Lightbourn about the Certificate [Plf. Tr. at 64:15-21, **Ex. G**].

### **Plaintiff's Claim for the Death Benefit**

23. On January 12, 2017, Ms. Lightbourn called Foresters and reported that Mr. Vinas died on January 11, 2017. [Activity Chart at 1, **Ex. H**]. Later that day, Plaintiff completed a Statement of Claim for Death Benefits and Authorization for Disclosure of Medical and Health Related Information, which Ms. Lightbourn faxed to Foresters. [**Ex. I**].

24. By letter dated January 16, 2017, Foresters advised Ms. Lightbourn that because Mr. Vinas died within the first two years of the Certificate's issuance, Plaintiff's claim was contestable. [1.16.17 Letter at 1, **Ex. J**].

25. Thereafter, Plaintiff sent Foresters a copy of Mr. Vinas's Death Certificate, as well as medical records from Dr. Hershman. [Hershman R., **Ex. K**].

26. Dr. Hershman's records contained a lab report dated October 14, 2010, which indicated that Mr. Vinas's Hemoglobin A1c level was 6.6, which was consistent with diabetes. [<u>Id.</u> at 2].

27. Additionally, under the "assessment" section of Dr. Hershman's office visit notes, he identified the following conditions:

    a. Diabetes mellitus type 2 or unspecified type with renal manifestations on July 30, 2012, and August 19, 2014. [<u>Id.</u> at 49, 60].

    b. Diabetes mellitus type 2 or unspecified type with neurological manifestation on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014. [<u>Id</u>. at 47, 51-52, 57].

    c. Neuropathy in diabetes on November 5 and 12, 2013, March 10, 2014, August 13, 2014, and December 15, 2014. [<u>Id.</u> at 47, 51-52, 54, 57].

    d. Diabetes mellitus type 2 or unspecified type with peripheral circulatory disorder on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014. [Id. at 47, 51-52, 57].

    e. Nephritis and nephropathy on August 19, 2014. [Id. at 49].

28. On February 28, 2017, Foresters' underwriting department reviewed Mr. Vinas's medical records. [UW Opinion, **Ex. L**]. Based on the number of times the diabetes and related conditions appeared in the records, the underwriter determined that Mr. Vinas knew he was being followed for diabetes and secondary complications, including nephritis, nephropathy, and renal complications. [Buckland Tr. at 17:5-7, 21:10-13, **Ex. M**; Sullivan Tr. at 138:5-9, Doc. 79-2, **Ex. N**].

29. The underwriter determined that Mr. Vinas did not accurately answer Questions 7 and 11 of the Diabetes Questionnaire. [UW Opinion at 2]. The underwriter found that "[h]ad [Foresters] been aware of the Applicant's history of diabetes complicated by disorders of the circulatory system and the kidneys, [Foresters] would have declined to issue coverage." [Id. at 2].

30. By letter dated April 5, 2017, Foresters denied Plaintiff's claim, rescinded the Certificate, and tendered a check in the amount of $11,448.00 representing all premiums paid for the Certificate. [4.5.17 Letter, **Ex. O**]. Foresters advised: "If you have any medical or other information that you think would show that the conclusions arrived at . . . are incorrect or incomplete, **we ask that you provide us with all such information so we may conduct a further review**." [Id. at 3 (emphasis added)].

31. Plaintiff did not request a further review and did provide any additional information until after she initiated this action.

## The Action

32. On October 4, 2018, Plaintiff initiated this action by filing the Complaint, and asserted a claim against Foresters for breach of contract, in which sought the Death Benefit, and a claim for a declaration that the Certificate was not void ab initio. [Doc. 1]. In response, Foresters asserted a counterclaim for declaratory judgment of rescission. [Doc. 16].

33. On September 9, 2019, with leave of Court, Plaintiff filed the Amended Complaint [Doc. 33], in which she sought consequential damages for Foresters' alleged breach, which

5

    Florida's Supreme Court recently held is precluded as a matter of law.  In response, Foresters re-asserted its counterclaim.  [Doc. 35].

34. Throughout the discovery process, Foresters sought to discover information regarding Mr. Vinas's medical history and his knowledge of his medical issues by propounding written discovery and serving non-party subpoenas to various entities, including Dr. Hershman, laboratories who conducted blood tests, as well as Mr. Vinas's prior life insurance carrier. [Docs. 61-1, 61-2, and 61-3].  However, Foresters was stonewalled at every turn by Plaintiff's meritless objections to its discovery, and instruction to the non-party subpoena recipients not to respond, which resulted in unnecessary motion practice.  [Doc. 61-4 at p. 1-2, 4-5; Doc. 61-5 at pp. 6-10].

35. On February 5, 2020, Plaintiff served Foresters with a Civil Remedy Notice ("CRN"), alleging, without basis, that Foresters denied Plaintiff's claim in bad faith.  [CRN, Doc. 152-3].  Under Florida law, Foresters had 60 days to investigate and "cure" Plaintiff's alleged violations.  [Fla. Stat. § 624.155].

36. Plaintiff waited until March 26, 2020—50 days after filing the CRN, and with only 10 days left in the 60 day CRN response time—to provide a letter from Dr. Hershman stating that despite the notations in his records indicating that Mr. Vinas had diabetes and secondary complications, he did not diagnose Mr. Vinas with diabetes or any complications from diabetes, and did not tell Mr. Vinas that he had diabetes.  [3.26.20 Letter, **Ex. P**].

37. Based on Dr. Hershman's letter, Foresters immediately agreed to pay the Death Benefit, plus interest to compensate Plaintiff for any damages she may have experienced between her loss and the settlement, as well as reasonable attorney's fees and taxable costs through the date of payment.  [CRN Response, Doc. 152-4].

38. On April 6, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest.  [Check, Doc. 152-2].

39. Foresters' CRN cure precludes Plaintiff from pursuing a bad faith claim against Foresters. [Fla. Stat. § 624.155].

40. On August 4, 2020, Plaintiff filed the Second Amended Complaint [Second Am. Compl., Doc. 94] and asserted a bad faith claim, which she labeled "fraudulent inducement" and sought extra-contractual punitive damages based on representations in the Certificate.

6

41. On January 11, 2021, Plaintiff amended her pleading for the third time by filing the Second Amended Complaint with Interlineation [Doc. 147]. In this shotgun pleading, Plaintiff seeks to hold Foresters directly liable for fraudulent inducement based on representations in the Certificate, and vicariously liable for alleged representations by Ms. Lightbourn, who Plaintiff concludes, without any supporting facts, is Foresters' agent.


Dated: February 5, 2021                MCDOWELL HETHERINGTON LLP
                                       Attorneys for Defendant
                                       2385 N.W. Executive Center Drive, Suite 400
                                       Boca Raton, FL 33431
                                       (561) 994-4311
                                       (561) 982-8985 fax


                                       By:   s/Kristina B. Pett
                                             KRISTINA B. PETT
                                             Fla. Bar No. 0973688
                                             kristina.pett@mhllp.com
                                             DANIELLE E. SHURE
                                             Fla Bar No. 118911
                                             danielle.shure@mhllp.com

**CERTIFICATE OF SERVICE**

I certify that on February 5, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Craig M. Greene, Esq.
>Kramer Green Zuckerman Greene & Buchsbaum, P.A.
>4000 Hollywood Blvd.
>Suite 485-S
>Hollywood, FL 33021
>cgreene@kramergreen.com
>*Counsel for Plaintiff*
>
>Adrian Neiman Arkin, Esq.
>Mintz Truppman, P.A.
>1700 Sans Souci Blvd.
>North Miami, FL 33181
>adrian@mintztruppman.com
>*Co-Counsel for Plaintiff*
>
>   s/Kristina B. Pett
>   Kristina B. Pett