UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

       Plaintiff,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

       Defendant.

_____/

## THE INDEPENDENT ORDER OF FORESTERS' MOTION
## FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, The Independent Order of Foresters ("Foresters") moves for summary judgment against Plaintiff Digna Vinas pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Rule(s)") and Local Rules 7.1 and 56.1, and states[1]:

### I.      INTRODUCTION

Plaintiff's claims for consequential damages, fraud, and punitive damages are barred as a matter of law by the Florida Supreme Court's decision in Citizens Property Ins. Corp. v. Manor House, LLC, ---So.3d---, No. SC19-1394, 2021 WL 208455 (Fla. 2021). The Supreme Court held that an insured may not seek extra-contractual damages outside the context of a bad faith claim under Fla. Stat. § 624.155. In the same case, the trial court entered judgment in favor of Citizens on the insured's fraud claim because it was nothing more than a bad faith claim in disguise. [Doc. 152-5 at p. 6-7; Doc. 152-6]. Here, as soon as Foresters obtained evidence supporting that Plaintiff's claim was payable, it immediately paid the Death Benefit plus interest, and agreed to pay reasonable attorney's fees and recoverable costs through the date of payment. This

---

[1] The Second Amended Complaint with Interlineation [Doc. 147] supersedes the Second Amended Complaint [Doc. 94], and rendered Foresters' initial Motion for Summary Judgment [Doc. 128] moot. See Santiago v. Jaguar Therapeutics, LLC, No. 17-22749-CIV-MARTINEZ-OTAZO-REYES, 2019 WL 4731980, at *1 (S.D. Fla. Jan. 17, 2019).

payment mooted Plaintiff's breach of contract claim and cured all of the allegations in Plaintiff's Civil Remedy Notice ("CRN"), including any purported claim for "fraud" and entitlement to extracontractual damages. Accordingly, Plaintiff's claims for consequential damages, fraud, and punitive damages are improper as a matter of law and Foresters is entitled to judgment in its favor.

## II.   STATEMENT OF MATERIAL FACTS

Pursuant to Rule 10(c) and Local Rule 56.1, Foresters adopts by reference its Statement of Material Facts ("SOF"), which is being filed contemporaneously with this Motion. Capitalized terms used in this Motion are as defined in the SOF.

By way of brief summary, on January 12, 2015, Mr. Vinas completed an Application for life insurance. [SOF ¶1]. Mr. Vinas declared that within the past 10 years he had not been diagnosed with, or received treatment or medication, tested positive, or been given medical advice for diabetes. [Id. ¶¶3-4]. Mr. Vinas also completed a Diabetes Questionnaire, in which he declared that he never had kidney problems (including protein in his urine), or sensory problems "related to" the condition of diabetes. [Id. ¶¶9-10]. Mr. Vinas declared that his answers were true to his "best knowledge and belief." [Id. ¶¶5, 11]. Based on these representations, Foresters issued the Certificate, insuring the life of Mr. Vinas for $92,000, effective January 26, 2015. [Id. ¶16].

After Mr. Vinas died on January 11, 2017, Plaintiff filed a claim for the Death Benefit. [Id. ¶23]. Because Mr. Vinas died within the two year contestability period, Foresters performed a contestability investigation. [Id. ¶24]. Foresters received medical records from Dr. Hershman, which showed that in 2010 Plaintiff tested positive for diabetes, and which repeatedly referred to diabetes and secondary issues under assessment. [Id. ¶¶25-27]. Based on the number of times diabetes appeared in the records, Foresters' underwriter determined that Mr. Vinas did not answer the questions in his Application and Diabetes Questionnaire to his best knowledge and belief, and materially misrepresented his medical history. [Id. ¶¶28-29]. The underwriter concluded that had Foresters been aware of Mr. Vinas's medical history, it would not have issued the Certificate. [Id. ¶29]. By letter dated April 5, 2017, Foresters denied Plaintiff's claim, rescinded the Certificate, and tendered a full refund of premiums. [Id. ¶30]. Foresters asked Plaintiff to provide any information she believed would show that the decision was incorrect for a further review. [Id.].

Instead of providing additional information and requesting another review, Plaintiff initiated this action. Initially, Plaintiff filed a claim for breach of contract and sought the Death Benefit, but later amended this claim to seek consequential damages, which are precluded as a

matter of law.  [Id. ¶¶32-33].  Foresters served numerous discovery requests and third party subpoenas seeking information about Mr. Vinas's knowledge and belief regarding his history with diabetes and secondary conditions.  [Id. ¶34].  Plaintiff not only objected to every request and instructed the subpoena recipients not to respond, but on February 5, 2020, filed a CRN alleging that Foresters denied her claim in bad faith.  [Id. ¶¶34-35].  Plaintiff waited until March 26, 2020 to provide a letter from Dr. Hershman stating that he never diagnosed Mr. Vinas with diabetes, or told him that he had diabetes.  [Id. ¶36].  Immediately thereafter, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest.  [Id. ¶38].

Despite Foresters' cure, which precludes a bad faith claim, Plaintiff filed a Second Amended Complaint with Interlineation in which she claims that she is entitled to consequential damages for Foresters' alleged breach, and asserts a fraudulent inducement claim.[2]  Plaintiff's breach of contract claim fails because it is moot, and Plaintiff may not seek consequential damages as a matter of law.  Additionally, Plaintiff's fraudulent inducement claim fails as a matter of law because it is a statutorily precluded bad faith claim in disguise, and Plaintiff lacks standing. Further, Plaintiff's claim is based on the alleged breach of the Certificate's Incontestability provision, which violates Florida's Independent Tort Rule barring a tort claim based on a breach of contract claim.  Finally, the undisputed evidence establishes that neither Foresters, nor Ms. Lightbourn, who was not Foresters' agent, fraudulently induced Mr. Vinas to purchase the Certificate.  Accordingly, Foresters is entitled to summary judgment in its favor.

## III.     INCORPORATED MEMORANDUM OF LAW

### A.  Summary Judgment Standard

Summary judgment is proper where, as here, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show "that there is no genuine dispute as to any material fact and the movant is

---

[2] In Count II, Plaintiff asserted a claim for declaratory relief and requested a declaration that the Certificate was "valid and in full force and effect" when Mr. Vinas died.  [Second Am. Compl. ¶¶21-29].  In Plaintiff's Response to Foresters' First Motion to Dismiss, Plaintiff "agree[d] that Count II has become moot" because there is no longer a case and controversy as to the validity of the Certificate.  [Plf. Resp. at 7, Doc. 102].  Accordingly, Foresters is entitled to judgment in its favor on Count II.

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**B. Foresters is Entitled to Summary Judgment on Plaintiff's Claim for Breach of Contract.**

Foresters is entitled to summary judgment on Count I of the Complaint for breach of contract because it is moot. Article III of the United States Constitution requires courts to decide only cases or controversies. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). However, a "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Al Najjar v. Ashcroft, 273 F.3d 1330, 1335-36 (11th Cir. 2001). "Plainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004).

Here, there is no longer a "live" issue as to whether Foresters breached the Certificate, and whether Plaintiff sustained recoverable damages. On April 6, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest. [SOF ¶38.] Therefore, the issue of breach is moot. See Stewart v. Chesapeake Life Ins. Co., No. 5:17-cv-380-Oc-30PRL, 2017 WL 4410097, at *2 (M.D. Fla. Oct. 4, 2017) (dismissing a breach of contract claim brought against a life insurance company because the insurance company "paid the entire death benefit," and therefore "could not have breached the policy."). Additionally, there is no longer a live issue as to whether Plaintiff sustained any recoverable damages because she already received the Death Benefit and interest, and is not entitled to consequential damages as a matter of law. "Consequential damages are '[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act.'" See Kingship Hospitality, Inc. v. Am. Economy Ins. Co., No. 5:18-cv-520-Oc-30PRL, 2018 WL 6427681, at *2 (M.D. Fla. Dec. 5, 2018) (citing Black's Law Dictionary (10th ed. 2014)). Plaintiff claims that she is entitled to consequential damages to compensate her for the alleged delay between her claim and the Check. [Second Am. Compl. ¶17]. However, in Citizens Property, the Florida Supreme Court held that "**extra-contractual, consequential damages are not available in a first-party breach of insurance contract action** because the contractual amount due to the insured is the amount owed pursuant to the express terms and conditions of the insurance policy." Citizens Property, 2021 WL 208455 at *4 (emphasis added). The Court recognized that "the contractual amount due the insured is the amount owed pursuant to the express terms and

conditions of the policy," and extra-contractual damages are only available in a bad faith action pursuant to Section 624.155, which Plaintiff is precluded from pursuing since Foresters cured any violation alleged in the CRN.  Id. at *3 (citing Talat Enterprises, 753 So.2d at 1283.  Here, the Certificate contemplates payment of the Death Benefit and interest.  [Certificate at 12.]  The Certificate's merger clause, which provides that the Certificate and application materials, inter alia, constitute the parties' "entire contract," which could not be modified by anyone.  [Id. at 10.]  The merger clause expressly limits the amount due under the Policy to the Death Benefit and interest.

In addition to paying the Death Benefit, Foresters also paid interest at the rate of 8%, which is more than the 3.92% interest rate required by Fla. Stat. § 627.4615.  See Fla. Stat. § 627.4615 (stating that the interest rate must be at least equal to the Moody's Corporate Bond Yield Average-Monthly Average Corporate as of the day the claim was received, which was 3.92% on January 12, 2017, when Plaintiff filed her claim).  "It is precisely for this delay in the payment of money that additional damages are allowed in the form of prejudgment interest."  Md. Cas. Co. v. Fla. Produce Distribs., Inc., 498 So. 2d 1383, 1384 (Fla. 5th DCA 1986); see also Shideler v. Conn. Gen. Life Ins. Co., 563 So. 2d 1082, 1084 (Fla. 5th DCA 1990) (Prejudgment interest is a legally recognized "means to transfer to the prevailing party the gain the losing party realized, or could have realized, from the use of the money during the relevant time period."); Baxter v. Royal Indem. Co., 285 So. 2d 652, 657 (Fla. 1st DCA 1973)[3] ("The penalty imposed by law on the insurer for its failure to settle [or resolve] the claim of its insured within a reasonable time is the payment of interest at the legal rate.").  "To charge the insurer prejudgment interest on the delayed payment of the money due and also charge it for the loss of use of the damaged property [ie, consequential damages] would be to make the insurer pay twice for essentially the same thing."  Fla. Produce Distribs., Inc., 498 So. 2d at 1384-85; see also Ins. Co. of N. Am. v. Lexow, 937 F.2d 569 (11th Cir. 1991) ("After determination of the amount of damages and defendant's liability, the plaintiff is to be made whole by an award of prejudgment interest from the date of the loss."); see also Gross v. Silverg, No. 11-80210-CIV-MIDDLEBROOKS/VITUNAC, 2012 WL 13129923, at *3 (S.D. Fla. Mar. 16, 2012) (same); Norsul Oil & Min. Co., Ltd. v. Texaco, Inc., 703 F. Supp. 1520 (S.D. Fla. 1988) ("The purpose of awarding interest on damages incurred is to make whole the party owed those damages by compensating him for the loss of the use of h[er] money for the

---

[3] Although Baxter was decided before Florida enacted Fla. Stat. § 624.155, its statement regarding the purpose of prejudgment interest remains viable.

period involved."). Foresters payment of the Death Benefit and interest satisfied its contractual obligations, and Plaintiff is not entitled to consequential damages as a matter of law. See Citizens Property, 2021 WL 208455 at *4. Accordingly, Plaintiff's breach of contract claim is moot, and Foresters is entitled to judgment in its favor.

### C. Foresters is Entitled to Summary Judgment on Plaintiff's Claim for Fraudulent Inducement.

Foresters is also entitled to summary judgment in its favor on Plaintiff's claim for fraudulent inducement. Plaintiff alleges that "Foresters falsely and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief" "in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy." [Second Am. Compl. ¶¶36, 37.] Plaintiff also alleges that "Foresters, through its sales agent Jazmin Lightbourn, explained how the contestability period worked and represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully." [Id.¶36a]. Plaintiff seeks punitive damages. [Id., Wherefore Clause ¶f.] Not only is Plaintiff statutorily precluded from asserting this claim, but the undisputed evidence demonstrates that Mr. Vinas was not fraudulently induced to purchase the Certificate, Ms. Lightbourn was not Foresters' agent, and there is no basis for holding Foresters vicariously liable for her alleged conduct.

### 1. Plaintiff's fraudulent inducement claim is a precluded bad faith claim in disguise.

First, Foresters is entitled to judgment in its favor because Plaintiff's claim is an improper attempt to do an end run around Fla. Stat. § 624.155 ("Section 624.155"), which precludes Plaintiff from pursuing a bad faith claim against Foresters and from seeking extra-contractual damages. On February 5, 2020, Plaintiff filed a CRN alleging that Foresters engaged in bad faith conduct based on the same conduct underpinning Plaintiff's fraudulent inducement claim. [SOF ¶35]. Specifically, Plaintiff alleged that Foresters "misrepresent[ed] pertinent facts or insurance policy provisions relating to coverages at issue" in violation of Fla. Stat. 626.9541(1)(i)(3)(b). [CRN at 2]. During the discovery process, Foresters repeatedly attempted to obtain information about Mr. Vinas's medical history and his knowledge of his medical conditions. Plaintiff impeded Foresters'

efforts with unwarranted objections and failed to provide any evidence suggesting that Mr. Vinas's representations were accurate until March 26, 2020—leaving Foresters only **10 days** to potentially "cure" any alleged violation.  [Id.¶36]; see also Section 624.155(5)(c) ("No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.").  Immediately thereafter, on April 3, 2020, Foresters agreed to pay the Death Benefit, plus interest and reasonable attorney's fees and costs, and thereby cured the alleged violations.  [SOF ¶37].  Because Foresters corrected the alleged violations within 60 days of the CRN, Section 624.155 precludes Plaintiff from seeking bad faith damages against Foresters.  See Section 624.155(5)(c).[4]

Here, Plaintiff's attempt to assert a fraudulent inducement claim, in which she seeks extra-contractual punitive damages, is a statutorily precluded bad-faith claim in disguise.  In the Complaint, Plaintiff improperly couched a claim under Section 624.155 as a fraud in the inducement claim based on identical allegations as the CRN.  Because Foresters cured the violation, Section 624.155 precludes Plaintiff from asserting a bad faith claim under Fla. Stat. 626.9541(1)(i)(3)(b).

In Citizens Property, 2021 WL 208455, the circuit court granted the insurance company's motion to dismiss Plaintiff's common law fraud claim because it violated the independent tort doctrine, which Foresters addresses below, and because it was "interpreted as a cause of action for extracontractual damages or bad faith."  [Doc.152-4 at p. 3-7; Doc. 152-5].  Additionally, in Geico General Ins. Co. v. Hoy, 927 So.2d 122 (Fla. 2d DCA 2006), the court recognized that an insured's fraud claims were bad faith claims in disguise under Fla. Stat. § 624.155.  Id. at 123-26.  The plaintiff asserted claims against GEICO for "fraudulent misrepresentation" and "fraudulently inducing her" to sign a release.  Id. at 123.  The court held that the plaintiff was not entitled to her claim file because "[w]hen a litigant files claims for both coverage and bad faith in the same action, the insurer's claim file is not discoverable until the issue of coverage has been resolved."  Id. at 125.[5]  Further underscoring this point, in Hogan v. Provident Life & Accident Ins. Co., 665 F. Supp.2d 1273 (M.D. Fla. 2009), the court recognized that a plaintiff could not recover under a

---

[4] Notably, "it is not necessary that extra-contractual damages be paid by an insurer to avoid bad faith litigation."  Franklin v. Minnesota Mut. Life Ins. Co., 97 F. Supp.2d 1324, 1329 (S.D. Fla. 2000) (citing Talat Enterprises, 753 So.2d at 1283).

[5] The issue of whether the fraud claims were ripe was not before the court.

common law claim for fraud **and** a statutory claim under Fla. Stat. § 624.155, because this would constitute a double recovery based on the same alleged harm. Therefore, Foresters is entitled to judgment in its favor on Plaintiff's fraud in the inducement claim because it is precluded under Section 624.155.

Even if the Court finds that Plaintiff's fraudulent inducement is not a bad faith claim in disguise, Plaintiff is precluded from seeking extra-contractual damages as a result of the alleged fraud. In Citizens Property, Florida's Supreme Court made clear that extra-contractual damages are only available in a bad faith action under Section 624.155. Citizens Property, 2021 WL 208455 at *4. The court held that the plaintiff could not seek extra-contractual damages against the insurance company because the insurer was immune from suit under Section 624.155. Id. at **2-4. Similarly, Plaintiff may not seek extra-contractual damages against Foresters because it is now statutorily immune from suit under Section 624.155 as a result of its CRN cure. Because Plaintiff has already paid the Death Benefit, plus interest, Plaintiff's fraud in the inducement claim is moot.

**2. Plaintiff lacks standing to assert a fraudulent inducement claim.**

Additionally, Foresters is entitled to judgment in its favor because Plaintiff lacks standing. To establish standing for a fraudulent inducement claim based on a misrepresentation, "Plaintiff must demonstrate either (1) that the Defendant['s] misrepresentation was directly made to [her] and Plaintiff relied on the misrepresentation to [her] detriment; or (2) that Plaintiff was properly assigned the rights to pursue this claim by the original party to whom the misrepresentation was made and detrimentally relied upon." Branch Banking & Trust Co. v. Appraisalfirst, Inc., No. 10-21141-CIV-GOLD/MCALILEY, 2010 WL 11596299, at *4 (S.D. Fla July 7, 2010)(citing Connecticut v. Health Net, Inc., 383 F.3d 1258, 1261 (11th Cir. 2004)).

For example, in Prater v. Wackenhut Corr. Corp., 44 F. App'x 654, No. 01-50792, 2002 WL 1397163 (5th Cir. 2002), the court recognized that "[w]hile an intended third party beneficiary may have standing to sue for breach of contract," he does not have "standing to assert a fraud claim when no misrepresentation as made to him or made with intention of reaching him and when he did not act upon any representation." Id. at *1; see also Erwin v. Tx Health Choice, L.C., 187 F. Supp. 2d 661, 667 (N.D. Tex. 2002) (holding that a third-party beneficiary to a health care contract between his employer and health care provider lacked standing to pursue a fraudulent inducement claim); Maddux v. Philadelphia Life Ins. Co., 77 F. Supp. 2d 1123, 1132 (S.D. Cal. 1999) (finding wife lacked standing to pursue fraud claims because no misrepresentations were directed to the

wife and the wife did not rely on such misrepresentations).  Here, too, Plaintiff lacks standing because the undisputed evidence shows that Foresters did not fraudulently induce **her** to purchase the Certificate, as Mr. Vinas was the owner, and there is not even a scintilla of evidence suggesting that Mr. Vinas assigned his right to Plaintiff to pursue a fraudulent inducement claim.  Therefore, Plaintiff's claim fails as a matter of law.

### 3.  The fraudulent inducement claim fails as a matter of law because it violates the Independent Tort rule.

Plaintiff claims that Foresters' committed fraud because it did not intend to comply with the terms of the Certificate and timely pay her claim.  Specifically, Plaintiff alleges that "the Policy provisions constituted specific representations to o [sic] by Foresters in the form of contractual promises and/or statements of present intention." [Second Am. Compl. ¶32].  "Foresters false and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answers Application questions to his best knowledge and belief."  [Id. ¶36].  Plaintiff alleges that this "representation was made to induce [Mr.] Vinas to pay premiums for the policy despite the fact that Foresters knew it had no intention to ever pay benefits if [Mr.] Vinas were to die during the first two years following issuance of the Policy even if Application answers were provided to Mr. Vinas's best knowledge and belief.  This statement was a false statement of material fact by Foresters to Rigoberto Vinas **contained within the Policy language** and incorporated Florida law." [Id. ¶37(emphasis added)].

Plaintiff's claim fails as a matter of law because it violates Florida's Independent Tort Rule.  Under this doctrine, "a plaintiff may not pursue a tort theory of relief where a contract created the duty to act, performance is measured against the contractual obligations, and the contract provides the remedy for defective performance."  Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Protection LP, No. 19-14050-CIV-ROSENBERG/MAYNARD, 2019 WL 3428552, at *2 (S.D. Fla. Apr. 18, 2019).  "In practical effect it bars a plaintiff from raising a tort cause of action that restates a breach of contract cause of action.  For a tort claim to stand, it must be independent of the breach of contract claim."  Id. (emphasis in original).  "In assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract."  Kaye v. Ingenio, Filale De

Loto-Quebec, Inc., No. 13-61687-CIV, 2014 WL 2215770, at *5 (S.D. Fla. May 29, 2014). Plaintiff's attempt to rely on an allegedly pre-contractual misrepresentation by Ms. Lightbourn that "Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully" does not salvage her claim. [Second Am. Compl. ¶36a].  Not only does Plaintiff fail to allege, and the undisputed evidence refutes, that Ms. Lightbourn was Foresters' agent, as will be discussed, but Ms. Lightbourn's alleged misrepresentation was embodied in the Certificate's Incontestability provision.  Under Florida law, "statements or misrepresentations made to induce an individual to enter a contract, **if later contained within the terms of the actual contract**, cannot constitute a basis on which to bring the fraud claim."  Ben-Yishay v. Mastercraft Dev., LLC, 553 F. Supp.2d 1360, 1370 (S.D. Fla. 2008) (emphasis added).

Ultimately, Plaintiff claims that Foresters fraudulently failed to comply with its promise to pay the Death Benefit if Mr. Vinas answered the Application questions to his best knowledge and belief, which Plaintiff acknowledges is embodied in the Certificate.  Plaintiff's claim is for "fraud in the performance," not "fraud in the inducement," which "is not actionable alongside a breach of contract claim because the misrepresentations are interwoven and distinct from the heart of the contractual agreement."  Cutler v. Voya Financial, Inc., No. 18-20723-Civ-WILLIAMS/TORRES, 2018 WL 4410202, at *8 (S.D. Fla. Aug. 23, 2018) (internal quotation and citation omitted) (dismissing a fraudulent inducement claim).[6]  Plaintiff's fraud claim is "inextricably intertwined with Plaintiff's breach of contract claim," and fails as a matter of law.  See Lookout Mountain Wild Animal Park, Inc. v. Stearns Zoological Rescue & Rehab Ctr., Inc., 553 F. App'x 864, 865 (11th Cir. 2014) (affirming the district court's order dismissing various tort claims, including fraudulent inducement, because the "plaintiff ha[d] not identified any tortious acts that [we]re sufficiently independent of the alleged breach of contract to render the tort claims viable."); Perez v. Scottsdale Ins. Co., No. 19-22761-Civ-Scola, 2019 WL 5457746, at *4 (S.D. Fla. Oct. 24, 2019)(dismissing a fraudulent inducement claim because "the misrepresentations alleged [were] in the performance of the contract."); Kaye, 2014 WL 2215770 at *5 (dismissing a fraudulent

---

[6] A reading of Plaintiff's allegations makes clear that he is alleging nothing more than that a "fraudulent" breach of contract, which is encompassed within Count I, and which has been rendered moot.  [Second Am. Compl. ¶¶32, 36-39, 40, 45].

inducement claim because "[w]hile the initial promise may have been fraudulent, the terms of the purported fraud were memorialized in the License Agreement," and therefore, "any failure to comply with those terms results in an action for breach of contract." ).

Plaintiff acknowledges that "fraud cannot be predicated upon a mere promise not performed." Noack v. Blue Cross & Blue Shield of Fla., Inc., 742 So. 2d 433, 434 (Fla. 1st DCA 1999); Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) ("An action for fraud generally may not be predicated on . . . promises of future action, but rather must be based on a statement concerning a past or existing fact."). However, Plaintiff attempts to rely on a limited exception to this rule which allows a plaintiff to pursue a fraud in the inducement claim "where it can be shown that the promisor had a **specific intent** not to perform the promise **at the time the promise was made**, and the other elements of fraud are established." Noack, 742 So. 2d (emphasis added); Mejia v. Jurich, 781 So. 2d at 1177. However, even under this exception, the misrepresentation, or fraudulent statement itself, must be extraneous to the contract, and separate from the breach. Florida's Supreme Court recognizes that fraudulent inducement "normally occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1996). Here, Plaintiff claims that Foresters' alleged breach of the Incontestability provision means that it must not have intended to perform under the Certificate. Plaintiff does not point to a single statement which is not embodied in the Certificate to support her fraud in the inducement claim. A reading of Plaintiff's allegations makes clear that she is alleging nothing more than that a "fraudulent" breach of contract, which is encompassed within Count I, and which has been rendered moot. [Second Am. Compl. ¶¶32, 36-39, 40, 45.] Accordingly, the undisputed evidence establishes that Foresters did not make a fraudulent statement, and Plaintiff's fraud in the inducement claim fails as a matter of law.

### 4. The undisputed evidence demonstrates that Foresters did not fraudulently induce the purchase of the Certificate.

Foresters is also entitled to judgment in its favor because there is no genuine dispute that Foresters did not fraudulently induce the purchase of the Certificate. Under Florida law, the elements of fraudulent inducement are: "(1) a false statement of material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." PVC Windoors, Inc.

v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808-09 (11th Cir. 2010).  The undisputed evidence shows that Foresters did not intentionally make a false statement of material fact to induce Mr. Vinas's reliance.

There is no genuine dispute that Foresters did not intentionally make any false statements of material fact to induce Mr. Vinas to purchase the Certificate.  The undisputed evidence shows that Foresters meaningfully considered whether Mr. Vinas's representations in the Application and Diabetes questionnaire were true to his best knowledge and belief.  Although Foresters requested all relevant medical documents, Plaintiff did not provide Foresters with a letter from Dr. Hershman indicating that Mr. Vinas did not have diabetes until **March 26, 2020**—over three years after filing a claim for the Death Benefit.  During its contestability investigation, Foresters relied on Dr. Hershman's medical records, which repeatedly referenced diabetes and diabetic-related conditions.  Specifically, under the "assessment" section, Dr. Hershman listed the following conditions:

  a.  Diabetes mellitus type 2 or unspecified type with renal manifestations on July 30, 2012, and August 19, 2014.  [Id. at 49, 60].

  b.  Diabetes mellitus type 2 or unspecified type with neurological manifestation on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014. [Id. at 47, 51-52, 57].

  c.  Neuropathy in diabetes on November 5 and 12, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.  [Id. at 47, 51-52, 54, 57].

  d.  Diabetes mellitus type 2 or unspecified type with peripheral circulatory disorder on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.  [Id. at 47, 51-52, 57].

  e.  Nephritis and nephropathy on August 19, 2014.  [Id. at 49].

[SOF ¶27].  Additionally, a lab report dated October 14, 2010 indicated that Mr. Vinas had a hemoglobin A1c level of 6.6, which was consistent with diabetes.  [Id. ¶26].  Based on Dr. Hershman's records, Foresters reasonably believed that Mr. Vinas was being monitored for diabetes and secondary complications.  Foresters' claims adjuster, Lisa Buckland, testified that in Mr. Vinas's medical file, diabetes "was documented so many times that [she] would think that he was aware of his condition."  [Buckland Tr. at 17:5-7, 21:10-13].  David Sullivan, Foresters' Assistance Vice President of Claims, also testified that "[i]n [Foresters'] review of the records, it

would seem, with the number of assessments for the diabetes condition, and the complications, that a reasonable person would expect that physician to tell their patient of those conditions." [Sullivan Tr. at 138:5-9]. Plaintiff's reliance on Dr. Hershman's letter, prepared three years after Foresters' investigation, which demonstrated that Mr. Vinas did not misrepresent his health on the Application, does not establish fraud. On the contrary, the undisputed evidence shows that Foresters intended to, and did, perform a good faith contestability investigation. As soon as Foresters received Dr. Hershman's March 26, 2020 letter, it paid the Death Benefit plus interest.

Further, the undisputed evidence establishes that Foresters could not have intended to induce "Plaintiff's" reliance, and Plaintiff did not "act" in reliance, because she did not purchase the Certificate. There is no dispute that Mr. Vinas, not Plaintiff, purchased and owned the Certificate. Plaintiff's claim that she was fraudulently induced to purchase a **Certificate which never purchased** defies logic, precludes her from establishing the elements of fraudulent inducement, and establishes that her claim fails as a matter of law.

Additionally, the alleged representations regarding the contestability period could not have been **material** to Mr. Vinas' decision to purchase the Certificate as a matter of law, because Fla. Stat. § 627.455 provides that "[e]**very insurance contract** shall provide that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue . . ." Fla. Stat. § 627.455. Because language in the Incontestability provision is included in any every life insurance policy issued in Florida, this representation could not have been "material" to Mr. Vinas' decision to purchase the Certificate, in particular. That is, the fact that Foresters would conduct a contestability investigation if Mr. Vinas died within two years of the Certificate's effective date, and would not rescind the Certificate unless it found a material misrepresentation in the Application, could not have "made a difference" in Mr. Vinas's decision to purchase the Certificate because this representation is statutorily required in every life insurance contract. Gilchrist Timber co. v. ITT Rayonier, Inc., 127 F.3d 1390 (11th Cir. 1997). Therefore, Foresters is entitled to judgment in its favor. See Durden v. Citicorp Trust bank, FSB, No. 3:07-cv-974-J-34JRK, 2009 WL 6499365, at *10 (M.D. Fla. Aug. 21, 2009) (finding as a matter of law that an alleged fraudulent "omission was not 'material' so as to sustain a claim of fraud" and granting summary judgment in favor of the defendant).

Further, Plaintiff's own testimony refutes any suggestion that the Incontestability provision was material to Mr. Vinas's decision to purchase the Certificate. Plaintiff testified that Mr. Vinas

13

cancelled his prior life insurance coverage and purchased the Certificate because the premium was fixed. [Plf. Tr. At 28:22-25; 29:1-8; 33:16-25; 34:1 ("[W]e cancelled our American General life insurance because Jazmin said that Foresters would not raise our premium when he became 80. . . So, of course, we went to Foresters and that was never going to raise our premium, as far as Jazmin was concerned."].

5. **The undisputed evidence demonstrates that there is no basis to hold Foresters liable for Ms. Lightbourn's alleged representations.**

To the extent that Plaintiff attempts to rely on Ms. Lightbourn's alleged representations regarding the contestability period, Plaintiff's claim still fails as a matter of law. As set forth in detail in Foresters' Motion to Dismiss, in a single count, Plaintiff seeks to hold Foresters directly liable for the representations in the Certificate, and vicariously liable for Ms. Lightbourn's alleged representations, which were also embodied in the Certificate. Plaintiff states in a conclusory fashion that "prior to the sale of the policy, Foresters, through its sales agent Jazmin Lightbourn . . . represented that Foresters would not deny a claim or rescind the policy" if Mr. Vinas answered the Application questions to his best knowledge and belief. [Second Am. Compl. ¶36a]. This conclusory allegation is insufficient because Plaintiff does not plead facts from which the Court could infer the elements of an agency relationship, and does not state the type of agency relationship on which she purports to rely—statutory, actual, or apparent. Mesa v. Am. Express Educational Assurance Co., No. 16-CV-24447-HUCK, 2017 WL 2210271, at *3 (S.D. Fla. May 18, 2017) (dismissing a claim for failure to plead the existence of an agency relationship in more than a conclusory fashion); Rojas v. Carnival Corp., d/b/a Carnival Cruise Lines, 93 F. Supp. 3d 1305, 133 (S.D. Fla. 2015) (same). Additionally, Plaintiff's claim fails because it is an "unacceptable" shotgun pleading in which she seeks to hold Foresters' directly and vicariously liable in a single count. Cramer v. State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997) (noting that shotgun pleadings are "altogether unacceptable."); Noon v. Carnival Corp., No. 18-23181-Civ-Williams/Torres, 2019 WL 2254924, at *6 (S.D. Fla. Feb. 1, 2019), adopted, 2019 WL 3886543 (S.D. Fla. Feb. 20, 2019) (dismissing a shotgun complaint because the plaintiff "conflate[d] two different theories of liability—direct negligence and vicarious liability," and "commingling direct and vicarious liability is an improper pleading practice.").

Plaintiff's failure to properly plead agency precludes her from arguing that Ms. Lightbourn was Foresters' agent at the summary judgment stage. In Gilmour v. Gates, McDonald & Co., 382

F.3d 1312, 1315 (11th Cir. 2004), the court recognized that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." The Eleventh Circuit "does not hesitate to apply the Gilmour rule by affirming summary judgment orders in favor of a defendant when a plaintiff tries to assert a new claim for the first time in a memorandum of law opposing a summary judgment motion." Dawsey v. Carnival Corp., No. 16-23939-CIV-GOODMAN, 2018 WL 5251850, at *13 (S.D. Fla. Oct. 22, 2018) (collecting Eleventh Circuit cases). "Similarly, Florida district courts are not reluctant to rely on Gilmour." Id. (collecting cases). "Given this procedural background, [Plaintiff] cannot now assert new claims for actual/apparent agency and therefore cannot rely on those doctrines to avoid summary judgment in favor of [Foresters]." Id. Even if the Court considers this theory, Foresters would still be entitled to judgment in its favor because the undisputed evidence demonstrates that Ms. Lightbourn was not Foresters' agent—statutory, actual, or apparent—and did not make any fraudulent representations.

There is no genuine dispute that Ms. Lightbourn was Mr. Vinas's insurance broker and not Foresters' captive agent, and therefore Foresters cannot be held vicariously liable for her conduct. Under Florida law, while acts of an agent are imputable to the insurer, acts of a broker are imputable to the insured. Essex Ins. Co. v. Zota, 958 So. 2d 1036, 1046 (Fla. 2008). An "insurance broker is one who solicits insurance orders from the general public and is not bound by contract to work for or solicit insurance for any particular insurance company." Amstar Ins. Co. v. Cadet, 862 So. 2d 736, 739 (Fla. 5th DCA 2003). A broker is free to generally act as a conduit or middleman between the insured and one of many insurers chosen by the broker or the insured to issue the policy. Id. As a general rule, an insurance broker acts as the agent of the insured. Id. at 7240. An insurance agent, on the other hand, is "contractually obligated to work for and solicit insurance on behalf of a specific insurance company." Id. The nature of the relationship between the agent and insurer is generally ongoing and continuous, whereas a broker is usually employed by the insured for the specific purpose of procuring a policy of insurance. Id. Here, Mr. Parrot's undisputed testimony establishes that Foresters' "entire company is independent producers." [Parrot Tr. at 39:14-15]. Foresters "does not have a captive sales force, that is to say a sales force or salaried agents paid for by the company." [Id. at 15-17]. Unlike a captive sales force who would only be able to write business for Foresters, Foresters' "distribution can write business for many companies." [Id. at 17-21]; see also Kemberling v. MetLife Life & Annuity

Co., 368 F. App'x 63, 67-68 (11th Cir.2010) (affirming the district court's ruling that there was insufficient evidence of an agency relationship because the purported agent "was not bound by contract to work for or solicit insurance for MetLife only"). Thus, there is no dispute that Ms. Lightbourn was an independent insurance broker and Foresters cannot be held liable for her alleged misrepresentation as a matter of law.

The undisputed evidence also shows that Ms. Lightbourn did not become a "statutory agent" of Foresters pursuant to Fla. Stat. § 626.342(2). Section 626.342 provides that an insurance broker can become an agent of the insurance company if the insurance company furnishes to the broker company materials, such as blank forms, applications, stationary, or other supplies, used in soliciting or negotiating insurance contracts, and the insurance company subsequently accepts business from the broker, **unless the insured knew or was put on notice of the limitations of the broker's actual authority**. Amstar, 862 So. 2d at 740-41. The undisputed evidence confirms that Foresters did not provide company materials to Ms. Lightbourn, but instead provided such materials to third party National Marketing Offices ("NMOs") and Brokerage General Agencies ("BGAs"), who retained Ms. Lightbourn as a producer for various insurance companies. [Parrot Tr. at 48:11-21]. Further, there is no dispute that Mr. Vinas knew that Ms. Lightbourn was not authorized to make any representations about the Certificate beyond what was also contained in the contract. Foresters provided Mr. Vinas with 14 days to review the Certificate before the sale became final. [Certificate at 1]. The Certificate states that **"[n]o one, including the producer who provided you with this certificate, can make a promise or representation about the entire contract other than what is described in the entire contract**," and thereby put Mr. Vinas on notice that Ms. Lightbourn did not have the authority to make any additional representations. [Id. at 10]. Additionally, on the Application, Mr. Vinas declared that he understood and agreed that "[n]o agent/producer . . . or any other person, except Foresters Executive Secretary or successor position, has power on behalf of Foresters to make, modify or discharge an insurance contract." [App. at 7]. Thus, the evidence shows that Mr. Vinas knew the limitations of Ms. Lightbourne's authority and that she was not authorized to make representations other than the terms of the Certificate. See Citizens Prop. Ins. Corp. v. European Woodcraft & Mica Design, Inc., 49 So.3d 774, 777 (Fla. 4th DCA 2010) (finding that an application provision stating that effective coverage is contingent on underwriting approval "clearly provides actual notice on the limitations" of a broker to bind the insurer).

Additionally, there is no evidence supporting that Ms. Lightbourne was Foresters' actual agent. The elements of actual agency are: "(1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) the principal's right to control the actions of the agent." Johnston v. Maserati N. Am., Inc., No. 08-20898-CIV-HUCK/O'SULLIVAN, 2008 WL 11417405, at *2 (S.D. Fla. July 16, 2008). Here, there is no evidence supporting that Foresters' "acknowledged" that Ms. Lightbourn would act as its agent, and certainly not with respect to the alleged misrepresentation. Carlson v. FedEx Ground Package, Sys, Inc., 787 F.3d 1313, 1319 (11th Cir. 2015) ("Courts should initially look to the agreement between the parties, if there is one, and honor that agreement, unless other provisions of the agreement, or the parties' actual practice, demonstrate that this is not a valid indicator of status."). As discussed, the Certificate states that a producer may not make any representations beyond what is contained within the contract. [Certificate at 10]. Further, Mr. Parrot testified that neither the producer, nor any executive at Foresters, has the authority to tell an applicant that his claim will be paid after a contestable review because that determination is "a result of the process." [Parrot Tr. at 57:21-25, 58:1-11]. That is, Ms. Lightbourn did not have the authority to tell Plaintiff whether or not a claim would be paid, as this depends on the results of the contestability investigation. [Id. at 57:21-25, 58:1-11]. Ms. Lightbourn's only authority was to say that "a death within the first two years will have a contestable review," as stated in the Incontestability provision of the Certificate, and which cannot underpin a fraudulent inducement claim pursuant to the Independent Tort rule. [Id. at 58:4-6]. The record unequivocally shows that Ms. Lightbourn was not Foresters' actual agent, particularly with respect to representations regarding whether a claim would be paid after a contestability investigation. Additionally, the evidence refutes that Ms. Lightbourn accepted any alleged authority to make representations about whether Plaintiff's claim would be paid after a contestability investigation. On the contrary, Ms. Lightbourn certified that she "**made no misrepresentation(s) about Foresters product(s) applied for in this Application**" and "**made no promise[s] regarding the benefit(s) or future performance of the product(s) applied for**, other than as specifically written in the specific product(s) applied for in th[e] Application." [App. at 8 (emphasis added)]. Accordingly, there is no dispute that Ms. Lightbourn was not Foresters' actual agent.

Finally, the undisputed evidence shows that Ms. Lightbourn was not Foresters' apparent agent. The elements of apparent agency are: "1) the alleged principal makes some sort of

17

manifestation causing the third party to believe that the alleged agent had authority to act for the benefit of the principal; 2) that such belief was reasonable; and 3) that the claimant reasonably acted on such belief to his or her detriment." Thompson v. Carnival Corp., 174 F. Supp. 3d 1327, 1342 (S.D. Fla. 2016). "In applying this principal, 'it is the manifestation by [the principal] to the third party that is controlling.'" Wolf v. Celebrity Cruises, Inc.,101 F. Supp. 3d 1298, 1309 (S.D. Fla. 2015)(citation omitted). Apparent agency "cannot 'arise from the subjective understanding of the person dealing with the purported agent.'" Whetstone Candy Co., Inc. v. Kraft Foods, Inc., 351 F.3d 1067, 1078 (11th Cir. 2003) (quoting Ja Dan, Inc. v. L-J Inc., 898 F. Supp. 894, 900 (S.D. Fla. 1995)). Plaintiff's pleading deficiency has made it difficult to discern whether she is relying on apparent agency and her purported basis for doing so. However, at Plaintiff's deposition, she testified that she believed Ms. Lightbourn was Foresters' agent because Ms. Lightbourn returned Mr. Vinas's initial call to Foresters. [Plf Tr. at 29:16-20]. This cannot establish apparent agency as a matter of law.

First, there is not even a scintilla of evidence in the record supporting that Foresters made a "manifestation" which caused Plaintiff to believe Ms. Lightbourn was its agent. The fact that Ms. Lightbourn returned Mr. Vinas's call does not establish apparent agency. "The reliance of a third party on the apparent authority of the principal's agent must . . . rest in the actions of or appearances created by the principal . . . and not by the agents who often ingeniously create an appearance of authority by their own acts." Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc., 686 F. Supp. 2d 1318 (S.D. Fla. 2010) (finding that elements needed to establish an apparent agency relationship were not present), aff'd, 433 F. App'x 842 (11th Cir. 2011). As such, Ms. Lightbourn's action, ie, returning Mr. Vinas's call, cannot create apparent agency. Notably, prior to filing a claim for the Death Benefit, Plaintiff never interacted with Foresters. [Id. at 64:15-23 (Ms. Lightbourn is "the only one we ever talked to."); 65:1-21]. Therefore, there is no genuine dispute that Foresters did not make any manifestation which reasonably caused Plaintiff to believe she was its agent.

Even assuming arguendo that Foresters did make a manifestation suggesting that Ms. Lightbourn was its agent, the undisputed evidence shows that Plaintiff did not reasonably rely to her detriment. As stated, Mr. Vinas, not Plaintiff, purchased the Certificate, and therefore Plaintiff could not have been fraudulently induced to purchase the Certificate based on Ms. Lightbourn's alleged statements, and her alleged belief that Ms. Lightbourn was Foresters' agent. Further, any

reliance would not be reasonable in light of the materials Ms. Lightbourn provided which expressly set forth the limitations of her authority.  As discussed, the Certificate, which Ms. Lightbourn provided before the sale was finalized, states that **"[n]o one, including the producer who provided you with this certificate, can make a promise or representation about the entire contract other than what is described in the entire contract**."  [Id. at 10].  Additionally, on the Application, Mr. Vinas declared that he understood and agreed that "[n]o agent/producer . . . or any other person, except Foresters Executive Secretary or successor position, has power on behalf of Foresters to make, modify or discharge an insurance contract."  [App. at 7].

Not only does the evidence establish that Ms. Lightbourn was not Foresters' agent, but the evidence also shows that Ms. Lightbourn did not make any fraudulent misrepresentations.  As stated, Ms. Lightbourn certified that she "made no misrepresentation(s) about Foresters product(s) applied for in th[e] Application," and "**no promise(s) regarding the benefit(s) or future performance of the product(s)** applied for, other than as specifically written in the specific product(s) applied for."  [Id. at 8 (emphasis added)].  To the extent that Ms. Lightbourn simply advised that a contestability investigation would be performed if Mr. Vinas died within two years to determine whether Mr. Vinas answered the Application questions to his best knowledge and belief, the representation was not false, as Foresters performed a good faith investigation. Foresters determination that Mr. Vinas knew, and failed to disclose, that he had diabetes, was reasonably supported by Dr. Hershman's medical records.  Dr. Hershman's letter to the contrary was not prepared until March 26, 2020—three years after Plaintiff filed her claim.

Accordingly, for the reasons stated, Plaintiff's fraudulent inducement claim fails as a matter of law and Foresters is entitled to judgment in its favor.

### 6. Plaintiff's request for attorney's fees related to her fraudulent inducement claim should be stricken.

Plaintiff's request for attorney's fees under Fla. Stat. § 627.428 should be stricken with respect to the fraudulent inducement claim.  Section 627.428 provides that upon entry of judgment against an insurer "**under a policy** or contract executed by the insurer," the court shall award reasonable attorney's fees.  "[R]ecovery for attorney's fees under Section 627.428 requires an incorrect denial of benefits by the insurance company . . ." Johnson v. Omega Ins. Co., 200 So.3d

1207, 1219 (Fla. 2016) (emphasis added).[7]  Plaintiff's fraud claim does not arise "under a policy or contract executed by the insurer" and does not seek benefits under a policy.  Indeed, "one of the circumstances in which attorney's fees consistently are <u>not</u> authorized under the statute is in actions in which an insured has prevailed against an insurer on a tort claim." <u>Hilson v. Geico Gen. Ins. Co.</u>, No. 8:11-cv-13-MSS-MAP, 2016 WL 3211474, at *6 (M.D. Fla. Mar. 31, 2016) (collecting cases); <u>see also</u> <u>United Gen. Life Ins. Co. v. Koske</u>, 519 So.2d 71, 72 (Fla. 5th DCA 1988) ("Claimants in negligence actions are not entitled to attorney's fees under this statute.").  Plaintiffs' fraudulent inducement claim is a tort claim, and fees for its successful prosecution are not compensable under Fla. Stat. § 627.428.  Therefore, this request should be stricken.

Plaintiff's request for attorney's fees should also be stricken with respect to Plaintiff's request for consequential damages, which are precluded as a matter of law.  An insured is not entitled to fees under Fla. Stat. § 627.428 for pursuit of an unsuccessful claim.

### IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court should enter summary judgment in Foresters' favor, declare that Foresters is only responsible for reasonable attorney's fees through April 13, 2020, dismiss Plaintiff's claims with prejudice, and award Foresters all other relief to which it may be legally and justly entitled.

Dated: February 5, 2021

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax


By:  _s/Kristina B. Pett_____
     KRISTINA B. PETT
     Fla. Bar No. 0973688
     kristina.pett@mhllp.com
     DANIELLE E. SHURE
     Fla Bar No. 118911
     danielle.shure@mhllp.com

---

[7] Foresters agreed to pay Plaintiff reasonable attorney's fees and costs incurred through the date of payment with respect to Count I only.

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on February 5, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

       Craig M. Greene, Esq.
       Kramer Green Zuckerman Greene & Buchsbaum, P.A.
       4000 Hollywood Blvd.
       Suite 485-S
       Hollywood, FL 33021
       cgreene@kramergreen.com
       *Counsel for Plaintiff/Counter Defendant*

       Adrian Neiman Arkin, Esq.
       Mintz Truppman, P.A.
       1700 Sans Souci Blvd.
       North Miami, FL 33181
       adrian@mintztruppman.com
       *Co-Counsel for Plaintiff/Counter Defendant*

        s/Kristina B. Pett
        Kristina B. Pett