UNITED STATES DISTRICT<br>
COURT SOUTHERN DISTRICT OF<br>
FLORIDA<br><br>
MIAMI DIVISION<br><br>
Case No.: 1:18-CV-24100-COOKE/<br>
GOODMAN

DIGNA VINAS,

    Plaintiff,

vs.

THE INDEPENDENT ORDER
OF FORESTERS,

    Defendant.

_____/

# PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Foresters convinces Digna and Rigoberto Vinas to switch life insurance providers by reassuring them not to fear the two-year contestability period.**

1. The late Rigoberto Vinas (Mr. Vinas) needed life insurance and was referred to Foresters. (Ex. A, October 16, 2020 Deposition of Digna Vinas ("Vinas Depo"), at p. 30, lines 2-8). Foresters dispatched sales agent Jazmin Lightbourn to the Vinas home to sell them a policy. (Id. at 29). Foresters' own file materials identify Jazmin Lightbourn as an "agent" in numerous places. (Ex. B, "Production File," at pp. 18,19, 52, 153, 154, 159 and 160).

2. Foresters' entire sales force is composed of independent agents to whom it supplies all sales materials, including the applications to be completed by the proposed insured. (Ex. C, October 13, 2020 Deposition of Doug Parrott ("Parrott Depo"), at 39-40, 92-93). Foresters does not want its customers to know that its "independent agents" are anything other than a representative of Foresters. The "insured is not expected to distinguish between whether that person is technically employed by an intermediate agency," and "that's the way Foresters wants it." (Parrott Depo, Ex. C., at p. 92, l. 13 – p. 93, l. 4).

3. Foresters authorizes its independent agents to make accurate representations about the policy terms. (Id. at 40-41). Mr. and Ms. Vinas asked the sales agent about losing benefits if Mr. Vinas died during the two-year contestability period. (Vinas Depo, Ex. A, at p. 99, lines 8-19).

4. Mr. and Ms. Vinas sat with the sales agent at their table to discuss the policy. (Vinas Depo, Ex. A, at p. 32, l. 16 – p. 33, l. 2). As far as Mrs. Vinas was concerned, "Jazmin was Foresters. As far as we were concerned, when we talked to Jazmin, we were talking to Foresters. . ." (Id. at p. 114, lines 1-3). "As far as we were concerned, she belonged to Foresters. That's it." (Id. at p. 57, lines 7-8).

5. At Foresters, the sales and marketing departments have no actual knowledge of how the claims and underwriting departments address the "best knowledge and belief" requirement in the Application. (Parrott Depo, Ex. C., at p. 35, l. 16 – p. 36, l. 1; p. 63, l. 24 - p. 64, l. 21).

6. Foresters' sales department does not train sales agents on how Foresters applies the best knowledge and belief clause. (Id. at p. 65, lines 1-13) ("not aware" of any such training).

7. Nevertheless, the sales agent reaffirmed that Foresters would not rescind the policy for material misrepresentation "as long as you put the truth . . . . The only thing, you might have to give more documents or they might investigate you deeper." (Vinas Depo, Ex. A, at p. 35, l. 20-25).

8. Mr. and Ms. Vinas came to the joint decision to cancel Mr. Vinas' existing policy and switch to Foresters. (Id., at p. 48, l. 17 – p. 49, l. 3) (explaining that "we got to the decision . . . that we were going to cancel").

9. Mr. and Ms. Vinas completed the application with the sales agent at their home. (Id. at p. 44, l. 19 – p. 45, l. 3 (observing that "the writing had to be Jazmin's" on the application)).

10. Mr. Vinas died of a heart attack on January 11, 2017. (Id., at p. 94, lines 19-22).

11. Foresters automatically contested the certificate because Mr. Vinas died within the contestability period. (March 4-5, 2020 Deposition of David Sullivan ("Sullivan Depo"), Ex. D, at p. 260, lines 6-18).

12. The contestable claim file was assigned to Lisa Buckland. (Id., at p. 172, lines 16-18).

13. Ms. Buckland did not review the claim to determine Mr. Vinas' best knowledge and belief; "it wasn't a question of what [Mr. Vinas] knew or not, it was what the diagnosis was." (March 4, 2020 Deposition of Lisa Buckland ("Buckland Depo"), Ex. E, at p. 56, lines 9-11). It also was not part of the "normal process" to review the file for indications of an insured's best knowledge and belief. (Id. at p. 53, lines 13-24).

14. Similarly, Foresters does not call its insured's doctors in order to determine the insured's best knowledge and belief. (Sullivan Depo, Ex. D, at p. 290, lines 1-7).

15. Ms. Buckland admitted she would write a letter recommending recission of an insured's policy ("do up a recission letter") any time an answer to an application question seemed incorrect, without first making a "determination whether the insured knew of the condition." (Buckland Depo., Ex. E, at p. 20, lines 17-25).

16. CR David Sullivan provided testified that based upon facts already in Foresters' file in 2017, Mr. Vinas' best knowledge and belief ("BK&B") was that he did not have diabetes and that the claim should not have been denied. (Sullivan Depo, Ex. D, at p. 122, l. 25 – p. 23, l. 20; p. 140, l.22 – p. 144, l. 25; p. 197, lines 17-22; p. 299 l. 7 – p. 300, l.3; p. 345, lines 20-23).

17. CR Doug Parrot testified that if he were to discover that the claims department had not tried to determine Mr. Vinas' best knowledge and belief, he would "have a problem with that," because Foresters' "standard for accuracy" during the contestability claim is "the insured's best knowledge and belief, whether they are telling the truth or not." (Parrott Depo, Ex. C, at p. 85, l. 5 – p. 86, l. 23). Processing claims under different terms than the policy was sold would be selling the policy "under, let's say, false pretenses or with a representation that wasn't true … [it] would not be in line with who we are" as a company. (Id., at p. 86, lines 2-23).

18. Foresters would later admit that the contested claims specialist was wrong, and that benefits should have been paid because, even if Foresters had evaluated his medical history during the underwriting period, the underwriting guidelines directed that the certificate should issue anyway. (Sullivan Depo, Ex. D, at p. 390, l. 24 – p. 405, l. 15).

19. On April 5, 2017, Foresters issued a denial letter. Foresters took the position that "Mr. Vinas had been diagnosed as having Diabetes at the time the application was taken," and that "his then-present diagnosis of Diabetes should have been disclosed at the time the application and questionnaire was completed." (Ex. F, "Denial Letter,"). Foresters did not purport to have investigated or determined Mr. Vinas' best knowledge and belief. (Id.). Foresters also incorrectly claimed that "[h]ad accurate and complete information regarding Mr. Vinas' health and medical treatment been disclosed at the time the application and questionnaire was completed, the certificate would not have been issued as applied for." (Id.).

20. Foresters CR Doug Parrott testified that, between 2014 and 2018, employees in the sales and marketing departments did not "make any inquiry, check, confirm, or otherwise determine whether the claims department," during the contested claims process, "was, in fact, or wasn't, in fact, making inquiry to determine the insureds' best knowledge and belief." (Parrott Depo, Ex. C, at p. 63, l. 24-p. 64, l. 24).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of was filed with the Clerk of this Court via the CM/ECF filing and that a copy has been sent via electronic mail this 5th day of February 2021 to Kristina B. Pett, Esq. Kristina.pett@mhllp.com and Danielle Shure, Esq., Danielle.shure@mhllp.com, McDowell, Hetherington, LLP, 2101 N.W. Corporate Blvd., Suite 316, Boca Raton, FL 33431.

KRAMER, GREEN, ZUCKERMAN,
GREENE & BUCHSBAUM, P.A.
Co-Counsel for Plaintiff
4000 Hollywood Blvd., Suite 485-S
Hollywood, FL 33021
(954) 966-2112 – phone
(954) 981-1605 - fax

By:  /s/ Craig M. Greene
Craig M. Greene, Esq.
Fla. Bar No. 618421
cgreene@kramergreen.com

and

Adrian Neiman Arkin, Esq.
MINTZ, TRUPPMAN, P.A.
Co-Counsel for Plaintiff
1700 Sans Souci Boulevard
North Miami, FL  33181
(305) 893-5506 – phone
adrianarkin@mintztruppman.com