UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No.: 1:18-CV-24100-COOKE/ GOODMAN

DIGNA VINAS,

Plaintiff,

vs.

THE INDEPENDENT ORDER OF FORESTERS,

Defendant.

_______________________________________/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Digna Vinas ("Plaintiff" or "Vinas"), pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, hereby files its Motion for Partial Summary Judgment against Defendant, The Independent Order of Foresters ("Foresters") and incorporated Memorandum of Law:

**Preliminary Statement**

Plaintiff is aware of the body of caselaw holding that issues involving fraud generally raise questions of fact to be resolved by a jury. In fact, Vinas cited many of those cases in her Response to Foresters' initial Motion for Summary Judgment ("MSJ") arguing that questions of fact existed. (D.E. 135). As Vinas was preparing that response, however, it became apparent that the evidence on several distinct issues in the case either raised a question of fact or was actually undisputed in favor of Vinas.[1] The time for filing motions for summary judgment upon which plaintiff could seek affirmative relief, however, had expired.

[1] Vinas made that point several times in her response. (D.E. 135, at 1, 4, 6-7, 11, 15, 17).

Recently though, the Court granted Vinas' Motion for Extension of Time to File Dispositive Motions. (D.E. 146). As such, based upon a review of the depositions, interrogatory answers and other evidence of record, all as applied to Florida law, Vinas is filing the present motion on three discrete issues upon which there is no question of material fact. First, that with respect to Vinas' fraud count, Foresters misrepresented a material fact to the Vinases. Second, that Foresters made the representation without knowledge of its truth or falsity, and the representation as therefore fraudulent under Florida law.[2] Finally, that with respect to Count I (Breach of Contract), under Florida law, while the amount of damages to which Vinas is entitled remains an issue, by Foresters' payment of the policy proceeds (which it has admitted (D.E. 69)), Vinas is entitled to partial summary judgment determining Foresters breached its contract.

**Introduction and Summary of Argument**

By now, the Court is well aware of the facts of this case as they have been detailed in numerous Motions and memos for months. Nonetheless, the accompanying statement of material facts sets forth the relevant undisputed material facts giving rise to this motion:

1. In January 2015, Foresters sold Rigoberto and Digna Vinas a $92,000 life insurance policy on Mr. Vinas' life. (Statement of Material Facts, D.E. 158, at ¶ 8).

2. Foresters sent its sales agent, Jazmin Lightbourn, to explain and sell the policy to the Vinases on its behalf. (Id. at ¶ 1). Foresters only sells its policies through agents like Ms. Lightbourn. (Id. at ¶ 2).

3. As part of its sales presentation, Foresters explained how the contestability clause worked in the event Mr. Vinas were to die within two years of the issue date. (Id. at ¶¶ 3-4). Foresters advised the Vinases that in such a situation, while Foresters would undertake a contestability investigation, as long as Mr. Vinas provided truthful answers to the application questions, i.e., answered the questions to his best knowledge and belief ("BK&B"), Foresters would not deny the claim based upon a misrepresentation. (Id. at ¶ 7). In other words, the standard for what a misrepresentation was, would be Mr. Vinas' BK&B. (Id. at ¶¶ 7,17).

[2] Vinas acknowledges the two remaining issues of causation and the amount of damages/punitive damages remain questions of fact for the jury.

4. Mr. Vinas died on January 11, 2017, just short of the expiration of the two-year incontestability period.

5. Foresters undertook the anticipated contestability investigation, but denied the claim alleging Mr. Vinas lied by not disclosing that he supposedly had diabetes. (Id. at ¶¶ 11, 19). Not only did Foresters assert Mr. Vinas lied on the application, it also alleged his lie was "material", i.e., that Foresters would not have issued the policy had it known about the diabetes. (Id. at ¶ 19).

6. Vinas filed suit against Foresters for breach of contract and proceeded to take the depositions of Foresters' Corporate Representatives ("CR") and employees addressing the breach of contract and reasons for the claim denial.

7. In deposition, Foresters' CR seriously undermined Foresters' basis for denial when the CR admitted the documents in Foresters' file showed Mr. Vinas' BK&B at the time of completing the application was that he **did not** have diabetes, and therefore the claim should not have been denied. (Id., at ¶ 16 (Emphasis supplied); see also Buckland Depo, D.E. 158-5, at p. 54, l. 18-24).

8. The CR further eliminated Foresters' second defense and testified that nothing in Mr. Vinas' medical records was material to Foresters' issuance of the policy. In other words, even if Mr. Vinas had lied about his diabetes, (he didn't), under Foresters' underwriting guidelines, it still would have issued the policy even if it had known about the diabetes. (Id. at ¶ 19). Shortly after the deposition, Foresters agreed to pay the full policy proceeds with interest (D.E. 152, at 4), confessing judgment under Florida law.

9. In addition, and particularly relevant to the present matter before the Court, both of Foresters' witnesses provided testimony that gave rise to the present fraud in the inducement case. Specifically, despite Foresters' representation at the time of sale of the policy that it would base a contestability claim decision on Mr. Vinas' BK&B, Foresters admitted that its claim representatives do not even attempt to determine an insured's BK&B when performing contestability investigations, and that denial letters consistent with this practice are approved by senior management. Instead, they make contestability decisions based only upon the medical records and the doctor's diagnosis. (D.E. 158, at ¶¶ 13-14; Sullivan Depo, D.E. 158-4, at p. 172, l. 10 – 173, l. 22; l. 25 – p. 285, l.17). In other words, when Foresters sold the policy to Mr. Vinas, it could not have intended to pay a contestable

claim based upon Mr. Vinas' BK&B, because Foresters' claim department did not investigate what the insured's BK&B was! (Id.).

10. Vinas sought, and over strong objection, obtained leave of Court to amend her Complaint to state a claim for fraud in the inducement. Vinas then deposed another of Foresters' CRs, Doug Parrot on the issues of Foresters' knowledge of the falsity of its representation. Mr. Parrot admitted several key and undisputed facts that are material to this motion. First, Mr. Parrot testified that the representations made by Foresters through its sales agent that Foresters would make its contestability decisions based upon the insured's BK&B, were absolutely authorized by the company. (D.E. 158, at ¶ 3).

11. Second, Mr. Parrot admitted, that despite the promise that a contestability determination would be made based Mr. Vinas' BK&B, the sales and marketing department at Foresters (i) never inquired of the claims department what factors it considered in making these determinations and (ii) had absolutely no idea whether the claims department did or would look at the insured's BK&B when performing its contestability investigations. (Id. at ¶¶ 5-6). In other words, Foresters did not know whether its representation to the Vinases was true or not true at the time it was made. That is fraud under Florida law!

12. Based upon the undisputed admissions of Foresters' own representatives on these two issues, Mrs. Vinas now seeks summary judgment on two elements of Count III (Fraud in the Inducement): (1) that Foresters made a misrepresentation of a material fact (2) it did so without knowledge of its truth or falsity.

13. The final issue that is appropriate for summary judgment is with respect to Count I, Breach of Contract. Under Florida law, while the amount of damages to which Vinas is entitled remains an issue, Foresters' undisputed payment of the policy proceeds, (D.E. 73), after Vinas was required to file suit to recover those proceeds, is as a matter of law, a confession of judgment. As such, Vinas is entitled to partial summary judgment on liability, determining Foresters breached its contract.

## LEGAL STANDARD

14. A party may move for summary judgment on a claim or defense, or on a part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The Court may "enter an order stating any

material fact – including an item of damages or other relief – that is not genuinely in dispute and treating that fact as established in the case." Fed. R. Civ. P. 56(g).

## ARGUMENT

## It is Undisputed That Foresters Knowingly Misrepresented That as Long as Mr. Vinas Answered Application Questions to His Best Knowledge and Belief, if Mr. Vinas Were to Die During the Two-Year Contestability Period, Foresters Would Not Deny His Claim or Rescind His Policy Based Upon Misrepresentation.

### Foresters Made a Misrepresentation

15. An action for fraud is properly predicated on promises of future action if "the person promising future action does so with no intention of performing, or with a positive intention not to perform …." See, e.g., Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001).

16. Foresters' misrepresentation in this case, was made to Mr. and Mrs. Vinas at the time of sale of the policy. The policy was sold by Foresters to the Vinases through its sales agent Jazmin Lightbourn. It is undisputed that Jazmin Lightbourn was Foresters sales agent authorized to discuss, sell, and explain its products to proposed insureds including Mr. Vinas. In fact, Foresters does not expect its potential insured to distinguish whether its agents are employees. (D.E. 158, at ¶ 2).

17. Mrs. Vinas testified that during Foresters' sales presentation, Foresters told Mr. and Mrs. Vinas that as long as Mr. Vinas told the truth in answering his application questions, i.e., answered the questions to his best knowledge and belief, Foresters would not deny his claim or attempt to rescind his policy based upon an alleged misrepresentation. (Id., at ¶ 7).

18. In other words, Foresters established the standard for what a "misrepresentation" would be in the event Mr. Vinas were to die within two years and Foresters undertook a contestability investigation. Specifically, as long as Mr. Vinas provided truthful answers to his BK&B, Foresters would not consider such statement to be a "misrepresentation." Thus, Foresters would not deny the claim on that basis.

19. Not coincidently, Foresters' representation to the Vinases is consistent with both how Foresters sales and claims departments are supposed to work (Id., at ¶ 17), as well as with Florida law. Green v. Life & Health of Am., 704 So. 2d 1386, 1387–88 (Fla. 1998) ("[A]n insured's truthful answers on an insurance application according to the best of the

insured's 'knowledge and belief,' are not misstatements within the meaning of section 627.409, Florida Statutes, and cannot provide the grounds for the insurer's rescission of the insurance policy.").

20. First, Foresters' representation regarding the best knowledge and belief standard and how the contestability clause is supposed to work was an authorized representation by Foresters through its sales agent Jazmin Lightbourn.

> Q. … you agree with me that it's necessary for the independent agent to communicate with the prospective insured about the product that they are looking to sell, does that seem reasonable?
>
> A. That's reasonable, yes.
>
> Q. And you agree with me that Foresters authorizes these people to make accurate representations about Foresters' products, correct?
>
> A. Correct.
>
> Q. And that includes the process of going through selling the product and the application process, et cetera; correct?
>
> A. Correct.
>
> . . .
>
> Q. And if I understand correctly, you all give your applications and your promotional materials to these, a group of what you call independent agents, and they go out and they sell your policies. …
>
> A. Correct. Once they are contracted and appointed with us then they have access to this information.
>
> Q. Okay. And the applications that they give are provided by Foresters; correct?
>
> A. Correct.
>
> . . .
>
> Q. Are you familiar with the portion of the application that the insured has to sign where they represent that the medical

information they provided, among other information, life, health, age, things like that, is true and correct to the insured's best knowledge and belief?

A. Correct. It's in disclosures above this section.

. . .

Q. **And the standard for accuracy per Foresters own application** is the insured's best knowledge and belief, whether they are telling the truth or not, right?

A. That is correct.

(Parrott Depo, D.E. 158-3, p. 39, l. 22-p. 40 l. 7, p. 40, l. 13-p. 41, l.7, p. 43, lines 15-23, p. 86, lines 13-23). (Emphasis Supplied).

21. Based upon the above, the evidence is undisputed that Foresters represented that if the insured were to die within the first two years of the policy being issued, Foresters would make a decision about whether the insured made a misrepresentation in the application with "misrepresentation" being measured by the insureds BK&B at the time of filling out the application.

**The Representation Was False**

22. The evidence is similarly undisputed that the representation was false. The testimony on this point came from the actual claim investigator that denied Mr. Vinas' claim. The testimony was shocking for its disregard of the representations made to the Vinases as part of the sales process (reflecting the standard of correctness in the application) that a contestable investigation will look to the insured's BK&B to determine whether there was misrepresentation:

Q. Do you make your inquiries [during contestable investigations] trying to determine what the proposed insured's best knowledge and belief was at the time they filled out the application, or do you make your inquiry to determine if the insured left out, for example, a diagnosis that he may or may not have known about?

A. I look to see if there was anything that was not disclosed on the application.

Q. So, your focus is not whether the insured **knew** about the thing that was not disclosed, your inquiry is to determine whether or

          not there was a diagnosis, or a test, or something like that that was not disclosed?

A. I want to see if there was any medical information that was not disclosed on the application.

(Buckland Depo., D.E. 158-5, p. 14, l. 10-p. 15, l. 5) (Emphasis Supplied).

. . .

Q. Is there a reason you wouldn't call or make a written inquiry of the doctor to find out if he, if the patient was aware of his medical condition?

A. There's no reason.

Q. Okay. You could do it?

A. I could go back to the doctors; correct.

(Id., p. 21, lines 15-22).

. . .

Q. Your way doesn't tell you the actual answer [what the insured's best knowledge and belief is]; does it?

A. No.

(Id. at p. 23, lines 7-9)

. . .

Q. Do you then rescind the policy, **even though you have not made a determination whether the insured knew of the condition**?

A. At that point I would do up a rescission letter and send it to management for review.

(Id., p. 20, lines 17-25) (Emphasis supplied). In short, despite its promise to the Vinases that Foresters would make its contestability determinations based upon Mr. Vinas' BK&B, Foresters openly admitted it never even undertook to determine what Mr. Vinas' best knowledge and belief was. Hence, the evidence is undisputed that the representation that Foresters would decide the contestability claim based on Mr. Vinas' BK&B was false. There is no contrary evidence.

**The Representation Was Material**

23. The evidence of materiality is similarly undisputed. Mr. Vinas has provided undisputed testimony that she and her husband jointly relied on Foresters' representations, including Foresters' representation as to how the incontestability clause worked, not only in deciding to purchase this policy, but also in deciding to cancel another life insurance policy. (D.E. 158, at ¶¶ 7-8; Vinas Depo, D.E. 158-1, p. 55, lines 7-17, p. 99, l. 8-p. 100, l. 13).

24. While Mrs. Vinas' unrefuted testimony is sufficient in and of itself, in addition, Foresters' own CR admitted the misrepresentation was material, expressing his professional dismay if he were to learn the actual facts of this case … that Foresters did not, in fact, make contestability decisions based upon the insured's BK&B.

25. Specifically, Mr. Parrot, who had not been given Ms. Buckland's or Mr. Sullivan's deposition to read, (and was therefore unaware of the above testimony that Foresters does not determine an insured's BK&B despite promising to do so)[3], testified he would "have a problem" with Foresters' admitted misrepresentation and failure to investigate Mr. Vinas' BK&B because that "would not be in line with who we are". Consider the complete exchange:

> Q. If you were to find, as the head honcho of underwriting, that the folks that looked at and investigated Mr. Vinas' claim expressly did not look into what his best knowledge and belief was, in fact, said that they weren't investigating that, that all they were looking at was whether or not he had diabetes. If you were to learn that and assuming it was true, would you take any action from the underwriting perspective?
>
> A. I would have a problem with that just as an officer of the company.
>
> Q. And why would you have a problem with that as an officer of the company?
>
> A. As an officer of the company I have a bigger responsibility than the area in which I am responsible for. So that in terms of the practice would not be in line with who we are.
>
> Q. Because if that's true, and I understand everything you just said, because if what I said is true, then the policy would have been sold under, let's say, false pretenses or with a representation that wasn't true, fair? **…**

[3] Parrott Depo, D.E. 158-3, p. 69, l. 9-p. 70, l. 8

A. That's the intent or that's the goal of the contestable review to make sure that what we learned at the front end when the case was issued is indeed accurate on the back end. If it's accurate to what we knew on the front end a claim would be paid.

Q. And the standard for accuracy per Foresters own application is the insured's best knowledge and belief, whether they are telling the truth or not, right?

A. That is correct.

(Parrott Depo, D.E. 158-3, p. 85, l. 5-p. 86, l. 23.) (Emphasis supplied). As to this element, there is no contrary testimony refuting the materiality of the representation. Summary judgment should be granted on this issue.

**It Is Undisputed Foresters' Statement Was Made Without Knowledge of Its Truth or Falsity.**

26. Scienter is the second element of fraud. It is well settled under Florida law, that this element can be satisfied by proving either: (1) That the representation was made with actual knowledge of its falsity; or (2) was made without knowledge either of its truth or falsity; or (3) under circumstances in which the person making it ought to have known, if he did not know, of its falsity. See e.g., Parker v. State of Florida Bd. of Regents ex rel. Florida State Univ., 724 So. 2d 163, 168 (Fla. 1st DCA 1998).

27. While evidence as to "actual knowledge" is often circumstantial in nature and therefore raises a question of fact by its very nature, Glob. Quest, LLC v. Horizon Yachts, Inc., 849 F.3d 1022, 1030 (11th Cir. 2017), evidence addressing the second method of proving intent is more empirical in that whether a person knew or didn't know a fact may be objectively provable. That is especially true here, where Foresters has admitted the fact on two separate occasion.

28. Specifically, Foresters has admitted that it did not know the truth or falsity of the statement made to the Vinases because Foresters' sales department never bothered to inquire about the truth or falsity of those statements from Foresters' claims department. The first admission was via testimony from Foresters' CR offered to address that exact issue.[4]

[4] Foresters CR was ordered to appear, *inter alia*, with specific knowledge of "[w]hether Foresters' employees involved in the sales, marketing, or underwriting of life insurance policies in 2014-2018 knew that the claims department was not going to assess the 'knowledge

Q. [D]id any of the folks in the marketing or sales department ever make any inquiry, check, confirm, or otherwise determine whether the claims department was, in fact looking to determine, looking to find out what the insureds best knowledge and belief was during contestable claims?

A. Not to my direct knowledge and based on the information we received from Matt and Veronique, [two Foresters employees the witness checked with to fulfill his 30(b)(6) obligations] no.

Q. So, the sales department, the marketing department never confirmed that the claims department was, in fact, or wasn't, in fact, making inquiry to determine the insureds best knowledge and belief?

A. No.

Q. What I said is right? You had a double negative, you said no.

A. I'm sorry, then reask it again.

Q. Can you read the question back please.

(Thereupon, the above-referred to question was read back by the court reporter.)

A. They don't make those inquiries.

Q. And, to your knowledge, they never did make any such inquiries at least, we will use the time period that the Court has limited us to, between 2014 and 2018, right?

A. That is correct, they never did.

(Parrott Depo, D.E. 158-3, p. 63, l. 24-p. 64, l. 24; see D.E. 158, at ¶ 5). Indeed, this testimony makes perfect sense given the facts in the present case that Foresters did not make its contestability decision based upon the insured's best knowledge and belief. (D.E. 158, at ¶¶ 13-14).

29. The second place Foresters admitted that it made the statement without knowledge of its truth or falsity was in its recently filed Reply in Support of Its Own MSJ. Therein, Foresters admitted:

---

and belief' of the life insurance applicants for claims submitted during the two-year contestability period; [and] if so, what did they know, how did they learn it, and what training did they receive." (D.E.109, at 2).

> … [N]one of the individuals involved in sales or marketing of Foresters' products, and none of Foresters' independent producers, had any awareness or knowledge of the claims or underwriting process and an applicant's knowledge and belief. [Citation to Parrot depo omitted].

(DE 141 at p. 9). Under Florida law the undisputed testimony and admission in its legal brief, establishes without dispute, that Foresters did not have knowledge of the truth or falsity of the representation made to the Vinases at the time the representation was made, (because it never bothered checking). Under Florida law, this is fraud. Parker, 724 So. 2d at 168. Vinas is entitled to partial summary judgment on this issue.

**Foresters' Payment of the Policy Benefits Was the Functional Equivalent of a Confession of Judgment Entitling Vinas to Entry of Summary Judgment on the Issue of Liability for Breach of Contract**

30. Finally, Vinas is entitled to entry of partial summary judgment establishing that Foresters has confessed judgment with respect to the breach of contract case. It is black letter law in Florida that:

> [an insurer's] payment of a previously denied claim following the initiation of an action for recovery, but prior to the issuance of a final judgment constitutes the functional equivalent of a confession of judgment.

Wollard v. Lloyd's and Cos. Of Lloyd's, 439 So. 2d 217 (Fla. 1983)); See also Life Changing Ministries, Inc. v. Canopius US Insurance, Inc., No. 5:15-cv-59, 2016 WL 6947341, at *3 (M.D. Fla. Nov. 28, 2016) (granting motion for summary judgment where defendant confessed judgment by paying benefits).

31. In the present case, it is undisputed that Defendant denied Vinas' life insurance claim, (D.E. 158, at ¶ 19), that Vinas filed suit, (D.E. 1), and that within one month of its corporate representatives' depositions, Foresters agreed to pay the amount under the policy but continued to deny that it breached the contract (D.E. 95, at 6-7; D.E. 152, at 8), the amount of damages owed (D.E. 95, at 7-10; D.E. 128, at 6-12; D.E. 152, at 6-8); and partial entitlement to attorney's fees (D.E. 96, at 2 n.1). Thus, as simple as the analysis is, Plaintiff has satisfied all of the elements required for this Court to enter partial summary judgment against Foresters as a confession of judgment on liability determining that it breached its contract. The issue of what damages flow from that breach, including what portion of the

judgment may have already been satisfied by Forester's payment under the policy, is a separate issue Plaintiff fully expects will be addressed through Foresters' own motion for summary judgment or at trial.[5]

**CONCLUSION**

Based on the foregoing argument authority cited above, an Order entering partial summary judgment in favor of Plaintiff should be entered as requested herein and award any and all further relief this Court deems just and proper.

**S.D. Fla. L.R. 7.1(a)(3) Certificate**

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that counsel for the Plaintiff has been contacted and objects to the relief requested herein.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY a true and correct copy of the foregoing has been electronically filed with the Court and a copy has been served on February 5, 2021 on: Kristina B. Pett, Esq. Kristina.pett@mhllp.com and Danielle Shure, Esq., Danielle.shure@mhllp.com, McDowell, Hetherington, LLP, 2101 N.W. Corporate Blvd., Suite 316, Boca Raton, FL 33431.

KRAMER, GREEN, ZUCKERMAN,
GREENE & BUCHSBAUM, P.A.
Co-Counsel for Plaintiff
4000 Hollywood Blvd., Suite 485-S
Hollywood, FL 33021
(954) 966-2112 – phone
(954) 981-1605 - fax

By: /s/ Craig M. Greene
Craig M. Greene, Esq.
Fla. Bar No. 618421
cgreene@kramergreen.com

and

[5] Similarly, the issue of the amount of attorney fees due remains, as Foresters continues to dispute its responsibility for fees. for the Court to determine.

                                                        Adrian Neiman Arkin, Esq.
                                                        MINTZ, TRUPPMAN, P.A.
                                                        Co-Counsel for Plaintiff
                                                        1700 Sans Souci Boulevard
                                                        North Miami, FL  33181
                                                        (305) 893-5506 – phone
                                                        adrianarkin@mintztruppman.com