UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
FLORIDA

MIAMI DIVISION

Case No.: 1:18-CV-24100-COOKE/
GOODMAN

DIGNA VINAS,

    Plaintiff,

vs.

THE INDEPENDENT ORDER
OF FORESTERS,

    Defendant.
_____/

### PLAINTIFF'S AMENDED[1] MOTION TO PRECLUDE TESTIMONY AND EVIDENCE OF THE REPORT FROM DEFENDANT'S EXPERT, MARC S. FRAGER, M.D.

Plaintiff, Digna Vinas ("Ms. Vinas"), pursuant to Fed. R. Civ. P. 7 and S.D. Fla. L.R. 7.1, files this Daubert Motion to Preclude Testimony from Defendant, the Independent Order of Foresters' ("Foresters") expert, Marc S. Frager, M.D.

### Background, Summary of Argument and the Relevant Issues

Plaintiff, Digna Vinas, is the named beneficiary of a life insurance policy that Foresters sold her husband, Rigoberto Vinas ("Mr. Vinas"). At age seventy-three Mr. Vinas considered switching his present life insurance provider to Foresters. During the sales presentation, Foresters, through its sales agent, explained the contestability process to Mr. Vinas and

---

[1] This motion is substantially similar to the motion Plaintiff filed on December 4, 2020 (D.E. 140). After that first motion was filed, however, the Court extended the deadlines for expert discovery and ordered Defendant to "make its experts available for deposition accordingly." (D.E. 146). Accordingly, in this motion Plaintiff incorporates the evidence adduced at Dr. Frager's January 18, 2021 deposition, which supports Plaintiff's arguments that Dr. Frager's opinions are irrelevant, unhelpful, and unreliable.

advised him that as long as he answered all application questions truthfully, i.e., "to his best knowledge and belief", his policy would not be rescinded, or claim denied because of an innocent mistake in the application. Foresters took the application and issued the policy.

Mr. Vinas died fifteen days before the contestability period expired. Foresters conducted a contestable investigation and denied Mrs. Vinas' claim based on an alleged misrepresentation. Foresters further attempted to rescind Mr. Vinas' policy.

Ms. Vinas filed suit for Count I (Breach of Contract) and Count II (Declaratory Relief). During the deposition of Foresters' employees and Corporate Representative, Plaintiff learned that contrary to Foresters' representation at the time of sale of the policy, during its contestability investigation, Foresters did not, (and does not), even <u>investigate</u> the insured's best knowledge and belief, much less make a determination what that best knowledge and belief was to decide whether to pay the claim. All Foresters does when it conducts a contestable investigation is to look at the diagnoses and medical records. No inquiry is made to determine the insured's best knowledge and belief about the information contained in those records. In other words, the policy was sold to Mr. Vinas fraudulently, based upon a lie.

Shortly after the depositions of Foresters' representatives, Foresters admitted its liability for breach of contract, paid part of the damages it owed to Mrs. Vinas, and acknowledged partial entitlement for Mrs. Vinas' attorney's fees. As such, the liability issue relating to Foresters' breach is no longer a matter of dispute. Mrs. Vinas has filed a motion for summary judgment based on Foresters' confession of judgment. (D.E. 159).

Almost immediately following the Foresters' depositions, Plaintiff moved for, and this Court granted, Plaintiff's Motion for Leave to amend her Complaint to allege Count III (Fraud in the Inducement). Subsequent Foresters' deposition testimony provided additional evidence of fraud and revealed that Foresters' sales department never communicated with the claims department to confirm the representation made at the time of sale to Mr. Vinas, "that the insured only needed to answer questions to his best knowledge and belief" was in fact how the claims department investigated and decided claims. The CR testified that there was no communication during the relevant time period determining the accuracy of this representation. In other words, the representation was made, <u>at best</u>, without knowledge of its truth or falsity; or at worst it was made knowing that it was false. Other evidence in the case established the representation was not true, as Foresters doesn't even inquire about the

2

insured's best knowledge and belief. This is the sole remaining liability issue in this case and the issue upon which Foresters has offered Dr. Frager's testimony.

The elements to establish a case for fraud in the inducement are misrepresentation, knowledge or constructive knowledge of its falsity, intent to induce reliance, and justifiable reliance resulting in injury. In support of its case, Foresters has submitted an expert report from Dr. Marc S. Frager. (Ex. A). None of the opinions offered in Dr. Frager's report even arguably address any of the elements of fraud in the inducement. Instead, Foresters asked Dr. Frager to opine about the propriety of Dr. Hershman's care and what Dr, Hershman should have done. The witness then took it upon himself to incredibly opine what "Mr. Vinas must have been aware" of. In sum, Dr. Frager's deposition (Ex. B) conclusively confirmed that he has nothing to say about the relevant issue of Foresters' intent in January 2015 when the contract was formed, and that the opinions he does have are both irrelevant and admittedly (by the witness) "speculation".

## LEGAL STANDARD

Expert testimony under Federal Rule of Evidence 702 must pass the Daubert "gatekeeping" analysis. See Kuhmo Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). To pass through Daubert's gates the expert must be qualified, and the opinion must be reliable and helpful to the trier of fact. See, e.g., Rink v. Cheminova, Inc., 400 F.3d 1286, 1291-92 (11th Cir. 2005). The gatekeeping function ensures "'that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" Id. at 1291 (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir.2002) "The party offering the expert testimony has the burden of demonstrating that the testimony is 'relevant to the task at hand' and 'logically advances a material aspect' of its case." Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1232 (11th Cir. 2009) (quoting Daubert, 509 U.S. at 597). Umana-Fowler v. NCL (Bahamas) Ltd., 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014).

An expert opinion is not admissible unless it "assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." United States v. Delva, 922 F.3d 1228, 1251 (11th Cir. 2019) (emphasis added). An expert's opinion is properly excluded as unreliable when "the leap

3

from data to opinion" is too great.  Hughes v. Kia Motors Corp., 766 F.3d 1317, 1331 (11th Cir. 2014); see Rider v. Sandoz Pharm. Corp., 295 F.3d 1194, 1202 (11th Cir. 2002) (affirming exclusion of expert whose opinion on causality included "several scientifically unsupported 'leaps of faith' in the causal chain").

### Dr. Frager's Proposed Expert Opinions are Irrelevant, Unreliable, And Will Not Be Helpful to The Jury.

"The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value."  Allison v. McGhan Med. Corp., 184 F.3d 1300, 1311–12 (11th Cir. 1999).  Simply put, Dr. Frager offers nothing relevant or helpful in this case.

Relevance is determined by the elements of the sole remaining Fraud in the Inducement count.  Florida law recognizes four elements to a cause of action for fraudulent inducement:

(1) A misrepresentation of a material fact [by the representor];

(2) That the representor knew or should have known that the statement was false;

(3) The representor's intent to induce another to rely and act upon the misrepresentation; and,

(4) A resulting injury to the party acting in justifiable reliance.

Moro-Romero v. Prudential-Bache Sec., Inc., 89-1821-CIV-DAVIS, 1991 WL 494175, at *6 (S.D. Fla. Aug. 26, 1991) (citing Royal Typewriter Co. v. Xerographic Supplies, 719 F.2d 1092, 1103 (11th Cir.1983) (Emphasis supplied); Lou Bachrodt Chevrolet, Inc., v. Savage, 570 So.2d 306, 308 (Fla. 4th DCA 1990)); see also Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734, 742 (11th Cir. 1995).  Significantly, the elements of fraud focus on the intent and state of knowledge of the representor.

With this in mind, consider Dr. Frager's report wherein all of his proposed opinions relate not to Foresters' state of mind as the "representor," but instead to the alleged state of mind of Mr. Vinas or his doctor, Dr. Hershman:

- "[I]t would be reasonable to assume that Mr. Vinas was being followed for diabetes and secondary complications."
- "A reasonably prudent physician would discuss all conditions with that patient."

- "It is standard protocol for a physician to discuss all lab results and exam findings."
- "Anyone reviewing these records would reasonably determine that Dr. Hershman adhered to standard protocol …"
- "Mr. Vinas must have been aware of these conditions."

(Ex. A, at 3 (Emphasis supplied)). Respectfully … so what? The elements of fraudulent inducement do not have anything to do with, or depend in any way on, Mr. Vinas' state of mind or what Dr. Hershman did or should have done or known. Such "opinions" would have been relevant, if ever, to the Breach of Contract action, as Foresters recognizes. (D.E. 133, at 2 (arguing Dr. Frager's opinion "is relevant to Plaintiff's breach of contract claim because it shows that Foresters [sic] decision to deny Plaintiff's claim for the Death Benefit in April of 2017 was correct based on the information available to Foresters at that time.")).

Foresters has already admitted liability for Count I. That issue is over, and Vinas has filed a motion for summary judgment based on Foresters' confession of judgment. (D.E. 159). The only remaining issue is what Foresters knew or should have known about the truth of its representation when it sold the policy to Mr. Vinas. Obviously, none of Dr. Frager's statements address that issue.

In a desperate attempt to make Dr. Frager's testimony somehow relevant, Foresters argued "Dr. Frager's opinion is relevant . . . because it refutes Plaintiff's allegation that Foresters had the fraudulent intent to deny her claim without consideration of Mr. Vinas' knowledge and belief of the representations in his application." (D.E. 133, at 1-2) (Emphasis supplied). How Dr. Frager's testimony does that is a mystery to both Plaintiff and to the witness himself, who had a completely different understanding of his role; an understanding which completely belies Foresters' relevancy argument. Specifically, Foresters asked Dr. Frager to opine on the extent of Mr. Vinas' diabetes, and to "comment on Dr. Hershman's management" of Vinas' health.

> Q.    … [T]ell me in your own records what you understood Foresters was asking you to do.
>
> A.    They asked me to give my opinion about management of his diabetes and the extent and duration of his diabetes.
>
> Q.    … The management of Mr. Vinas' diabetes, right?

5

> A. Yes.
>
> Q. The extent of his diabetes?
>
> A. Yes.
>
> Q. Okay. Were you asked to render an opinion on anything else other than the management of his diabetes and the extent of his diabetes?
>
> A. I may have been asked comments regarding -- Dr. Hershman made regarding his management.
>
> Q. I don't understand. What were you asked to do?
>
> A. Comment on Dr. Hershman's management.

(Ex. B, p. 17, l. 11 – p. 18, l. 4).

Not surprisingly, even Dr. Frager agreed, that contrary to Foresters assertion of the basis for relevancy, there was nothing in his review that "reflects upon what Foresters knew or didn't know in 2015". (Ex. B, p. 81, lines 2-5). He also acknowledged there was similarly nothing that "reflects upon Foresters' intent [was] and what they intended in 2015." (Ex. B, p. 81, lines 6-8).

Further, when questioned on the key representation in the case that Foresters' would not deny the claim or rescind the policy as long as Mr. Vinas answered questions to his "best knowledge and belief" (Foresters' standard for accuracy), Dr. Frager similarly had nothing to offer:

> Q. I will tell you that there is evidence in this case that Foresters represented to Mr. Vinas and Mrs. Vinas that if Mr. Vinas told the truth in his questions in answering the application . . . that is gave his best knowledge and belief, that Foresters would not deny the claim or rescind the policy based upon a claim that he misrepresented because the standard was his best knowledge and belief.
>
> . . .
>
> Q. Is there anything about your opinions in any way, shape, manner or form that makes that statement by Foresters more or less true?
> A. No.

> Q. Did you intend your opinions in any way, shape, manner or form to reflect that Foresters told the truth when they made that representation to Mr. Vinas or didn't tell the truth?
>
> A. My opinion is, they had nothing to do with Foresters.

(Ex. B, p. 82, l. 10 – p. 83, l. 10). In short, the purported expert himself, acknowledged his opinions did not "in any way, shape, manner or form reflect that Foresters told the truth." (Ex. B, p. 82, l. 10- p. 83, l. 10).

Dr. Frager's understanding of the limitations on his own opinions is consistent with the actual limitations of his expertise. Indeed, Dr. Frager himself understood that if he had offered any opinion as to Foresters' intent, he would have been well outside of his expertise. Consider that Dr. Frager has never worked in the insurance field, and does not "know the thought processes that are supposed to go through an insurance salesperson's head when he or she is selling a policy." (Ex. B, p. 7, l. 22 – p. 8, l. 15). Thus, again contrary to Foresters' assertions otherwise, Dr. Frager admitted he had "no idea what the Foresters representative meant or intended when [she] told Mr. Vinas when she sold the policy to him that in the event of a contestability investigation, Foresters would investigate Mr. Vinas' best knowledge and belief." (Ex. B, p. 50, lines 13-25).

In sum, it is indeed incredible that Foresters would offer Dr. Frager to render opinions to this Court with the representation that the opinion "is relevant . . . because it refutes Plaintiff's allegation that Foresters had the fraudulent intent to deny [Vinas'] claim … " (D.E. 133, at 1-2) when the witness himself didn't offer such an opinion and recognized an such opinion would be outside his area of expertise! Dr. Frager should not be permitted to testify.

### Dr. Frager's Opinion is Pure Speculation and Not the Product of a Reliable Chain of Reasoning or Underlying Facts.

In addition to being completely irrelevant, Dr. Frager's statements about <u>what Mr. Vinas knew or didn't know</u> are complete and total speculation. The law is clear that "subjective speculation that masquerades as scientific knowledge does not provide good grounds for the admissibility of expert opinions." <u>McClain v. Metabolife Intern., Inc.</u>, 401 F.3d 1233, 1245 (11th Cir. 2005) (citation omitted). That is exactly what Foresters is trying to accomplish here. Underlying his attempt at an impressive-sounding proclamation that Mr. Vinas "must have been aware," is pure speculation about what Dr. Hershman did, knew

7

and/or told Mr. Vinas based on what Dr. Frager believes Dr. Hershman "should have" done. This does not make for a reliable opinion. King v. Cessna Aircraft Co., 03-20482-CIV, 2010 WL 1980861, at *4 (S.D. Fla. May 18, 2010) (explaining that "to allow an expert to give a subjective opinion merely because he is an expert and experienced in the field would eliminate the requirement of reliability").

Dr. Frager openly admitted that he has "**no idea**" from reviewing the medical records and other documents as to what Mr. Vinas' best knowledge and belief was about his medical condition. (Ex. B., p. 70, l. 21 – p. 71, l. 2). Dr. Frager admitted he was purely "speculating" (Dr. Frager's own words) when he wrote in his report that "Based on these records, Mr. Vinas must have been aware of these conditions":

> Q. Okay. Based upon what we've gone through here today, you agree with me that <u>you have no idea whether Mr. Vinas did or did not know whether he had diabetes, correct</u>?
>
> A. <u>Correct.</u>
>
> . . .
>
> Q. So how can you say, "Based on these records, Mr. Vinas must have been aware of these conditions"?
>
> A. You asked me if I knew what Mr. Vinas knew. <u>I don't know what he knew,</u> **but I can speculate** <u>that in my opinion, he should have been aware of these conditions</u>.
>
> Q. Okay. So, let's just say -- let's break down what you just said. <u>Your statement that he must have been aware is speculation, correct</u>?
>
> A. <u>It's my opinion, correct</u>.
>
> Q. <u>It is speculation. That's your words, not mine. Right</u>?
>
> A. <u>Yes</u>.

(Ex. B, p. 77, l. 21 – p. 79, l. 2). (Emphasis supplied). Further, like Foresters itself, Dr. Frager had <u>no evidence</u> in the record upon which to base his admitted speculation that Mr. Vinas knew he had diabetes:

8

> Q. Okay. Did you ever ask Dr. Hershman or determine in any other way from Dr. Hershman if he told Mr. Vinas ever that he had diabetes?
>
> A. <u>I've had no contact with Dr. Hershman</u>. I only looked at the records.
>
> Q. … When you make your medical entries, do you put little notes that say, "Discussed with patient"? I know that a lot of my client doctors do that.
>
> A. Yes, I do.
>
> Q. Okay. <u>Did you notice in any of Dr. Hershman's records any note that said, "Discussed with patient diabetes"</u>?
>
> A. <u>No</u>.
>
> Q. Was there <u>any evidence in any of Dr. Hershman's medical records, any at all, that he had conveyed to Mr. Vinas that he had diabetes</u>?
>
> A. <u>No</u>.
>
> Q. <u>Was there any indication in the medical records that Mr. Vinas believed he had diabetes</u>?
>
> A. <u>No</u>.
>
> Q. <u>So sitting here today, is it fair to say you don't know one way or the other whether Mr. Vinas did or did not believe he had diabetes, correct</u>?
>
> A. <u>I don't know what Mr. Vinas thought</u>.

(Ex. B, p. 49, l. 11 – p. 50, l. 12). Thus, Dr. Frager repeatedly admitted that he had "no idea . . . what Dr. Hershman did or didn't tell" Mr. Vinas, or what Mr. Vinas thought. (Ex. B, p. 52, lines 12- 23). Any opinion on such an issue should be precluded as both admitted speculation and irrelevant.

Finally, Dr. Frager cannot reliably contribute on the also-irrelevant issue of whether Foresters' denial of Vinas' claim was reasonable. Dr. Frager was questioned on his conclusion that "it would be reasonable to assume that Mr. Vinas was being followed for diabetes and secondary complications." (<u>Id</u>., p. 45, l. 9). He admitted that he had done no studies or

9

analysis, had not referred to the literature, and had not spoken to any psychologist about what conclusion would be reasonable; it was just "Marc Frager's thought about what's reasonable" for "anyone in the world" to conclude. (Id., p. 45, l. 10 – p. 46, l. 9). He had no evidence to rely on, and no relevant expertise or education in the area to draw upon, that qualified him to speak on the matter in this case:

> Q:   Are you able to cite any portion of the medical records that directly addresses that Mr. Vinas must have been aware of his condition?
>
> A.   I am not.
>
> Q.   Are you able to cite any authoritative source for the proposition, your speculation, that Mr. Vinas must have been aware of his medical condition?
>
> A.   No.

(Id., p. 79, lines 15–22; see also id., p. 80, lines 8-17). Thus, in addition to lacking anything relevant to contribute, Dr. Frager has nothing reliable at all to present to the jury. The Court should exclude his opinions.

## CONCLUSION

Experts carry weight with lay jurors; to guard against prejudice from such "talismanic significance . . . the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." United States v. Frazier, 387 F.3d 1244, 1263 (11th Cir. 2004). First, neither Mr. Vinas' state of mind, nor Dr. Hershman's quality of practice is relevant to Plaintiff's Fraud in the Inducement count. Second, by his own admission Dr. Frager's opinions regarding what Mr. Vinas knew or didn't know is nothing but pure speculation. The opinion/witness should be stricken.

Based on the foregoing argument and cited authority, Ms. Vinas requests that this Court enter an order excluding all testimony and reports from Defendant's proposed expert Dr. Marc Frager.

## S.D. Fla. L.R. 7.1(a)(3) Certificate

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that counsel for the Plaintiff has been contacted and objects to the relief requested herein.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY a true and correct copy of the foregoing has been electronically filed with the Court and a copy has been served on February 5, 2021 on: Kristina B. Pett, Esq. Kristina.pett@mhllp.com and Danielle Shure, Esq., Danielle.shure@mhllp.com, McDowell, Hetherington, LLP, 2101 N.W. Corporate Blvd., Suite 316, Boca Raton, FL 33431.

KRAMER, GREEN, ZUCKERMAN,
GREENE & BUCHSBAUM, P.A.
Co-Counsel for Plaintiff
4000 Hollywood Blvd., Suite 485-S
Hollywood, FL  33021
(954) 966-2112 – phone
(954) 981-1605 - fax

By:    /s/ Craig M. Greene
       Craig M. Greene, Esq.
       Fla. Bar No. 618421
       cgreene@kramergreen.com

and

Adrian Neiman Arkin, Esq.
MINTZ, TRUPPMAN, P.A.
Co-Counsel for Plaintiff
1700 Sans Souci Boulevard
North Miami, FL  33181
(305) 893-5506 – phone
adrianarkin@mintztruppman.com