UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
FLORIDA

MIAMI DIVISION

Case No.:  1:18-CV-24100-COOKE/
GOODMAN

DIGNA VINAS,

      Plaintiff,

vs.

THE INDEPENDENT ORDER
OF FORESTERS,

      Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH INTERLINEATION

    Plaintiff, Digna Vinas ("Vinas"), by and through her undersigned counsel, hereby responds in opposition to Defendant's ("Foresters") Motion to Dismiss the Second Amended Complaint (With Interlineation) (D.E. 152), and states:

### RESPONSE TO DEFENDANT'S INTRODUCTION

Defendant's motion to dismiss arrives in an unusual posture, with discovery complete and motions for summary judgment currently pending. It is curious that Foresters filed a Rule 12(b)(6) motion at all, given the amount of factual detail from outside the complaint that Defendant incorporates. Fortunately, the Court has already addressed many of Foresters' arguments in the course of granting Vinas' leave to amend and denying Foresters' motion to stay discovery. Unfortunately, Plaintiff cannot allow Defendant's mischaracterization and omission of the facts to go un-responded to. As such, sections throughout this response are simply included to set the proverbial record straight and respond to Foresters' misrepresentations.

First, Foresters' claim that it was "stonewalled at every turn" in discovery is blatantly false and disproven by a simple review of the record. Foresters did literally zero discovery throughout the first sixteen months of this case; not an interrogatory, not a request for production, not a deposition, not a single subpoena. It was not until February 5, 2020, 26 days before the last discovery had to be propounded, that Foresters sent its first discovery to Vinas and two weeks later sent its first subpoena to Dr. Hershman, the sole treating physician supporting its denial of benefits. A dispute arose over the subpoenas, but Foresters escaped a determination of those issues by confessing judgment and paying the death benefits.

More fundamentally, neither Foresters' "stonewalling" fiction, nor its equally false assertion of being provided "new" information from Dr. Hershman in 2020, can hide Foresters' Corporate Representative's ("CR") admission that it wrongfully denied the claim, (D.E. 158, at ¶ 16, 18) and its subsequent payment resulting in a confession of judgment. (Vinas has recently filed a motion for partial summary judgment on this issue. (D.E. 159).

Defendant's suggestion that it rightfully and gratuitously paid Vinas' claim as soon it was provided "a doctor's note" from Dr. Hershman in 2020, and therefore all should be right with the world, is nonsense. By paying the claim only in response to litigation, Foresters entered the functional equivalent of a confession of judgment as to Count I (Breach of Contract). Wollard v. Lloyd's and Cos. Of Lloyd's, 439 So. 2d 217 (Fla. 1983)); Life Changing Ministries, Inc. v. Canopius US Insurance, Inc., No. 5:15-cv-59, 2016 WL 6947341, at *3 (M.D. Fla. Nov. 28, 2016). While Citizens Prop. Ins. Corp. v. Manor House, LLC, --- So. 3d ----, SC19-1394, 2021 WL 208455 (Fla. Jan. 21, 2021), a first party property case, may be

applicable to the issue of consequential damages on the breach of contract count, that issue is not definitive, and those damages remain recoverable under Vinas' fraud count. See *infra* pg. 10-11 and 20.

As for Count III (Fraud in the Inducement), Foresters' motion to dismiss is first and foremost an attempt to convert that Count into a different cause of action that Foresters would prefer to defend.  Rather than addressing the allegations in the complaint, Foresters has, as it has done throughout this litigation, constructed strawman arguments to then deconstruct.  The first strawman is that Vinas has pled a cause of action for statutory bad faith.  Vinas has not!  Vinas does not, anywhere in the complaint, allege a statutory bad faith claim.  In fact, the words "bad faith" or "§624.155" do not appear in the complaint.  What Vinas has alleged is a sustainable cause of action for <u>fraud in the inducement</u>.  Since Foresters cannot obtain dismissal of that Count based upon the allegations as pled (or the evidence adduced), it has created its own cause of action to defend. (D.E. 152, at 11).

The second strawman is Foresters allegations regarding vicarious liability. Vinas has not sued Foresters under any vicarious liability theory.  (<u>Id.</u>, at 12-13, 16-17).  Foresters is not an otherwise innocent party haled into court to answer for the misdeeds of another.    Its liability is active and affirmatively alleged as the acts of Foresters.  It is not merely technical or derivative of another. A separate count of vicarious liability is neither required nor appropriate.

The third and final strawman is Foresters' conflating fraud in the inducement with fraud in the performance. Count III states a claim for fraud in the inducement, independent of Count I and focusing on an entirely different time period.  Count III does <u>not</u> allege fraud in the performance!  (<u>Id.</u> at 14).   Count III is based on tortious conduct that occurred in January 2015, <u>before the policy ever existed</u>.  Foresters' claim conduct and breach of the terms of the contract occurred in January 2017, and forms no part of its liability for Count III.  The independent tort rule does not bar Count III.

In addition to re-casting the causes of action to create its three strawmen, Foresters <u>again,</u> raises the defenses of standing, pleading standards under Rule 9(b), and "shotgun pleading."  The Court has rejected all of Foresters' arguments previously.  Nothing is new here. Additionally, Vinas will be entitled to attorney's fees under Fla. Stat. Section 627.428 if she prevails on Count III.   Finally, she has not abused the privilege of amending her

complaint, or otherwise given cause for the Court to dismiss any of her claims with prejudice. The Court should deny Foresters' motion to dismiss.

## STANDARD OF REVIEW

A motion to dismiss is properly denied if, taking the allegations in the plaintiff's complaint as true, the plaintiff makes out a claim "that is plausible on its face." SmileDirectClub, LLC v. Battle, 969 F.3d 1134, 1140 (11th Cir. 2020) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must be interpreted "in the light most favorable to the plaintiff."   Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 863–64 (11th Cir. 2017).

The Court necessarily already applied this standard to evaluate the arguments Foresters raises against Count III (Fraud in the Inducement) in its responses opposing Vinas' motions for leave to file the Second Amended Complaint (D.E. 72) and to Amend it by Interlineation (D.E. 121), where Foresters argued the amendment would be futile.

## ARGUMENT AND MEMORANDUM OF LAW

### Having Confessed Judgment Under Florida Law, Foresters Cannot Escape Liability by Claiming Mootness

Foresters' claim that Count I (Breach of Contract) is moot by virtue of its paying a part of Vinas' damages by paying the amount under the policy is wrong for several reasons. First, as the Court knows, the standard for deciding a motion to dismiss is based upon the allegations in the four corners of the complaint and attachments. Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009). There is nothing in the complaint or the attachment that references payment by Foresters.  Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (permitting attachments to motion to dismiss "where the plaintiff refers to certain documents in the complaint").  Instead, Foresters is asking the Court to simply accept its own argument and attachments outside the four corners to resolve an issue that is properly pled and remains disputed as to damages!  (D.E. 152, at 6). Further, Foresters' request is inconsistent with its own position on the issue. Specifically, at the same time Foresters paid the policy benefit thereby confessing judgment, Foresters continues, right up to the present, to deny it breached the contract!!! (D.E. 152, at 6).  Foresters can't have it both ways.

Even if the Court is willing to consider evidence outside the four corners of the

complaint, the Court should deny the motion to dismiss because the amount of damages remains at issue. Whether Foresters has satisfied all or a part of the damages legally allowable under Florida law is a matter of evidence and may be addressed either at the motion for summary judgment stage or at trial.  Tellingly, Foresters' arguments are redundant of the same arguments raised in Foresters' motion for summary judgment, which can and does refer to the negotiated check and interest computations as evidence.  (D.E. 156, at, e.g., 3).

With respect to the consequential damages portion of the claim, Foresters relies heavily on Citizens Prop. Ins. Corp. v. Manor House, LLC, --- So. 3d ----, SC19-1394, 2021 WL 208455 (Fla. Jan. 21, 2021), a property damage case whose holding may or may not apply to a life insurance policy.[1]  Again, whether Foresters has paid the full amount of damages to which Ms. Vinas is entitled is more appropriately addressed in the context of trial or motions for summary judgment, which offers Foresters' identical briefing on the issue. (Compare D.E. 156, at 6-8 with D.E. 152, at 9-11).   In any case, given the allegations in the operative complaint, the motion to dismiss should be denied.

Finally, on this issue, Foresters' Motion seeking dismissal of Count I is particularly puzzling because, under Florida law, Foresters has now confessed judgment by paying the benefits owed after a year and a half of litigation. As more fully set forth in Plaintiff's motion for summary judgment, (D.E. 159, at ¶ 30-31), it is Vinas that is entitled to entry of judgment in her favor on the breach of contract count.

> When the insurance company has agreed to settle a disputed case, it has, in effect, declined to defend its position in the pending suit. Thus, the payment of the claim is, indeed, the functional equivalent of a confession of judgment or a verdict in favor of the insured.

Wollard v. Lloyd's & Comp. of Lloyd's, 439 So. 2d 217, 218 (Fla. 1983).  (Emph. supp)

Foresters' motion runs afoul of the reality under Florida law that Vinas is entitled to judgment in her favor, and requests exactly that in her own motion for summary judgment. (D.E. 159, at ¶ 30-31). See Life Changing Ministries, Inc. v. Canopius US Ins., Inc., 5:15-CV-59-OC-30PRL, 2016 WL 6947341, at *3 (M.D. Fla. Nov. 28, 2016); Saewitz v. Lexington Ins. Co., 02-23248CIV, 2003 WL 25740732, at *2 (S.D. Fla. Oct. 16, 2003), aff'd, 133 Fed.

---

[1] Manor House also is not final yet. A motion for rehearing was filed Friday, February 5, 2020.

Appx. 695 (11th Cir. 2005) ("Defendant's payment constitutes a confession that the damages for which it paid $240,055.81 were covered under the policy and were caused by the refrigerator leak").  How much of that judgment may have been satisfied by Foresters' partial payment, is an issue of evidence for another day.  For now, however, Foresters' Motion to Dismiss should be denied.

Contrary to Foresters' argument, there is no support for the contention that an insurer who "paid the entire death benefit" after litigation ensued "could not have breached the policy" for that reason alone. (D.E. 152, at 6 (citing <u>Stewart v. Chesapeake Life Ins. Co.</u>, No. 5:17-cv-380-Oc-30PRL, 2017 WL 4410097, at *2 (M.D. Fla. Oct. 4, 2017))). Stewart is distinguishable.  In <u>Stewart</u>, the entire lawsuit revolved around whether Chesapeake Life owed <u>only the $46,632 it paid</u>, or the full $100,000 the plaintiff demanded.  After deciding that the plaintiff was due only the $46,632 already received, the court found in favor of the defendant.  Here, Foresters forced Vinas to litigate for more than a year before paying damages, and then continued to dispute <u>both</u> the amount and type of damages, and partial entitlement to attorney fees due.  Incredibly, Foresters is still questioning whether it had breached the contract at all. (D.E. 152, at 8).  The cases are not analogous.

Foresters' lengthy memo and reliance on its payment of prejudgment interest is curious. The interest Foresters paid simply represents the time value of the unpaid death benefits. <u>Wiand v. Lee</u>, 753 F.3d 1194, 1205 (11th Cir. 2014) ("[P]rejudgment interest should not be thought of as a windfall in any event; it is simply an ingredient of full compensation that corrects <u>judgments for the time value of money</u>.") (citations omitted; modification in original, emphasis supplied).[2]  As of today, Foresters has not paid a penny more than it owed under the insurance policy, adjusted to reflect wrongful delay of payment.  The Court should deny Foresters' motion to dismiss Count I.

---

[2] Foresters suggests that it somehow arrived at the 8% figure out of generosity.  (D.E. 152, at 7-8).  In fact, while Section 627.4615 provides for interest based on Moody's Corporate Bond Yield average, it also provides in the alternative that "If the method of calculating such index is substantially changed from the method of calculation in use on January 1, 1993, the rate must not be less than 8 percent." After misleading the Vinases in the sale of the policy and then wrongfully denying Mr. Vinas' claim for years, Foresters can hardly be heard today to be altruistically giving away money.

**<u>Foresters' Confession of Judgment and Concession That the Insurance Policy Was In Full Force And Effect Precludes Entry of Judgment for Foresters on Count II</u>**

Consistent with its post-suit payment of benefits, with interest, Foresters now concedes that the policy was "valid and in full force and effect" when Mr. Vinas died. (D.E. 152, at 8-9). This obviates any need for a declaration that "Foresters' attempted recission of the policy was incorrect." (D.E. 147, at ¶ 24). Vinas agrees Count II has become moot. However, the logical consequence of mootness is an absence of jurisdiction, which deprives the Court of power to enter a merits "judgment [in] Foresters' favor" as it requests. (D.E. 156, at 3 n.2); <u>see</u>, <u>e.g.</u>, <u>Adler v. Duval County Sch. Bd.</u>, 112 F.3d 1475, 1477 (11th Cir. 1997) ("Any decision on the merits of a moot case would be an impermissible advisory opinion."). Foresters is not entitled to a judgment in its favor by reason of its confession of judgment that it wrongfully denied Vinas' benefits!

**<u>Fraud in the Inducement is Not a Bad Faith §624.155 Claim in Disguise.</u>**

Foresters, again unable to frame its arguments in accordance with Rule 12(b)(6)'s four corners requirement, goes outside the complaint, first to fabricate stories about discovery, and then to blame its admitted breach of contract and confession of judgment on Vinas. (D.E. 152, at 9-10). Again, with the disclaimer that this issue is completely irrelevant to fraud in the inducement, the only remaining <u>liability</u> issue in this case, the following presents the facts rather than Foresters' fiction.

Foresters <u>cannot</u> credibly maintain that "[d]uring the discovery process, Foresters repeatedly attempted to obtain information about Mr. Vinas' medical history and his knowledge of his medical conditions." (D.E. 152, at 9). It is not rhetoric or exaggeration to say that is an outright misrepresentation to this Court. Foresters waited <u>literally 16 months</u> before propounding its <u>first</u> and <u>only</u> discovery requests. Specifically, on February 5, 2020, <u>the same day the CRN was filed</u> Foresters served <u>its first</u> interrogatories and requests for production and admissions. (D.E. 161, Notice of Filing). Then, <u>two weeks later</u>, on February 19, 2020, (almost 17 months into the case), Foresters issued its <u>first</u> notice of non-party subpoenas for Dr. Hershman's records. (D.E. 61-3, at ¶ 3). Vinas appropriately objected to the scope of the subpoena given the issues in the case, and a discovery hearing was set. <u>That is the sum total of Foresters "**repeated attempts**" at discovery and Vinas' "**stonewalling**"</u>. Such unsupported rhetoric should not be tolerated!

In any case, before the Magistrate ruled on the discovery issue, but following the damaging depositions of Foresters' Corporate Representatives just a few weeks before, Foresters confessed judgment and agreed to pay the policy proceeds, a portion of Vinas' damages.  (D.E. 152, at 6).  Those are the undisputed facts based on the verifiable citations above.   While Foresters' procrastination is truly amazing given that Dr. Hershman provided the sole basis for Foresters' denial of benefits, (Sullivan Depo, D.E. 158-4, at p. 144, lines 4-7), what is even stranger is that Foresters would try to shift the responsibility for its delay to Vinas on an issue that really doesn't matter at this point in the litigation. Foresters paid the insurance benefits portion of the damages after forcing Vinas to file suit. It confessed judgment under Florida law. That issue should be over.

On the issue of the supposedly "new" information Foresters emptily complains about, it is undisputed that, Foresters had that information **since 2015**. (D.E. 152, at 2; D.E. 155, at 14). Further, Foresters could have deposed Dr. Hershman, propounded discovery upon, or taken any number of steps to "obtain information about Mr. Vinas' medical history" any time following Mr. Vinas' death when it received medical authorization forms for Mr. Vinas records permitting it access to almost everything it wanted.   While Foresters was not motivated to act until its own Corporate Representatives buried its case in a sea of devastating admissions, and its conduct rightfully deserves the title "shameful", its own apparently purposeful delay does not make this an issue to be resolved under Rule 12(b)(6)!

Foresters' recitation of extraneous and improper detail is not limited to its misleading attempt to imply misconduct during litigation.  Foresters' "bad faith" strawman also goes outside the four corners of the complaint on the merits as well.  Foresters tries to introduce civil remedy notices ("CRN"s) Vinas filed against it, which are totally irrelevant to Count I, Count II, or Count III.  (D.E. 152, at ¶ 9).  The Complaint raises no statutory bad faith claim, so of course the CRN notices are not referenced in it, rendering Forester's attempted "loophole" unavailable.  Brooks, 116 F. 3d at 1369.  Next, in the it's not relevant category, Forester relies on its tender of death benefits with interest, as evidenced by the negotiated check, for the argument that it is now "statutorily immune from suit. . . as a result of its CRN cure." (D.E. 152, at ¶ 11).  As discussed in connection with Count I, at page 4 of this motion, not only is the check is not appropriately considered here, bad faith and CRNs have nothing to do with Vinas' fraud in the inducement count, Foresters' relentless yet unsupported rhetoric

to the contrary.

### Florida Law is Clear That Fraud in the Inducement and Breach of Contract are Separate Independent Causes of Action That Can and Do Co-Exist

The irrelevant evidentiary issues should not distract from the fact that Foresters' arguments lack any legal merit.  Fraud in the inducement does absolutely co-exist with a breach of contract action under Florida law.  See e.g., HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996) (explaining that "the actions of fraudulent inducement into a contract and breach of that contract are not mutually exclusive").  "A right of action on a contract and for fraud in inducing plaintiff to enter into such contract may exist at the same time, and a recovery on one of the causes will not bar a subsequent action on the other."  Id.  The causes are entirely distinct.

Breach of contract and the bad faith remedy associated with it, provides a remedy for failure to perform a promise.  On the other hand, "the interest protected by fraud is society's need for true factual statements in important human relationships, primarily commercial or business relationships." Id. at 1240 (quoting Woodson v. Martin, 663 So. 2d 1327, 1330 (Fla. 2d DCA 1995) (Alternbernd, J., dissenting)).  "More specifically, the interest protected by fraud is a plaintiff's right to justifiably rely on the truth of a defendant's factual representation in a situation where an intentional lie would result in loss to the plaintiff."  Id.  Thus, regardless of whether there is an accompanying claim for breach of contract, "[i]f a fraud is perpetrated which induces someone to enter into a contract, there is a cause of action for fraud and the remedies attendant to that particular tort are available." La Pesca Grande Charters, Inc. v. Moran, 704 So. 2d 710, 712 (Fla. 5th DCA 1998).

Despite Foresters' attempt to comingle and conflate bad faith and fraud, fraud in the inducement has nothing to do with Florida's statutory bad faith cause of action! Section 624.155 claims relate to claim handling practices, such as adjusting and settling claims. Macola v. Gov't Employees Ins. Co., 953 So. 2d 451, 457 (Fla. 2006) ("a first-party bad faith cause of action arises when an insurer fails to act in good faith in the processing of the insured's own first-party claim") (Emph. Supp.).  Fraudulent inducement, on the other hand, focuses on conduct before the contract was created.  GlobeTec Const., LLC v. Custom Screening & Crushing, Inc., 77 So. 3d 802, 803 (Fla. 3d DCA 2011) ("the plaintiff must show that the fraudulent act induced the formation of contract between the parties.").

In the present case, the fraud alleged in Vinas' operative complaint <u>occurred in 2015</u> before the contract was even formed. This was over two years before Foresters' actions (and any bad faith claims conduct) leading to the breach in 2017. Foresters' attempt to conflate the two causes of action and erect its "bad faith strawman" must be rejected.

In addition, the language in Florida's bad faith statute itself makes it clear that the civil remedy in §624.155 "does not replace or preempt any other remedy or cause of action provided for . . . pursuant to the common law of this state." §624.155(8), Fla. Stat. Thus, despite Foresters' citing to the statute 15 times in its motion to dismiss, as well as using the phrase "bad faith" 17 times, Foresters cannot convert a fraud claim into a bad faith claim. Vinas was not required to frame Count III as a statutory claim, because the bad faith statute has nothing to do with the fraud count!

Foresters' cited authority is completely distinguishable. (D.E. 152, at 10-11). In <u>Geico General Ins. Co. v. Hoy</u>, the Second District merely applied the well-established principle that "When a litigant files claims for both coverage and bad faith in the same action, the insurer's claim file is not discoverable until the issue of coverage is resolved." 927 So. 2d 122, 125 (Fla. 2d DCA 2006). What has that got to do with this issue? The <u>Hoy</u> court most certainly did not hold that Ms. Hoy's fraud claims were "bad faith claims in disguise," (D.E. 152, at 10), subject to Section 624.155's procedural requirements. It is particularly puzzling for Foresters to cite to <u>Hogan v. Provident Life & Accident Ins. Co.</u>, 665 F. Supp. 2d 1273 (M.D. Fla. 2009). Faced with a complaint alleging both statutory bad faith and common-law fraud and negligence, the <u>Hogan</u> court rejected Provident's arguments and explicitly held that a plaintiff can "plead both common law and statutory claims" for bad faith. Concerns about "double recovery" come only if the plaintiff tries to recover the same elements of damage on overlapping claims. <u>Id.</u> at 1288. Again, how does that help Foresters' case?

Foresters also gives the newly-decided <u>Manor House</u> decision a broad construction which it cannot bear, one that would insulate Foresters from punitive and consequential damages in tort as well as contract. (D.E. 152, at 11). As discussed above, that factual question of whether <u>Manor House</u> may affect whether defendant's payment of death benefits has fully or partially satisfied the confession of judgment to Count I (Breach of Contract), is well beyond the borders of this motion to dismiss and has been

briefed extensively in Foresters' motion for summary judgment.

For the purposes of the pending motion, there is nothing in <u>Manor House</u> that overrules prior Florida precedent clearly permitting fraudulent inducement in the present context, negates the anti-preemption clause or effects Vinas' entitlement to punitive damages if Plaintiff can prove fraud.  § 624.155(8), Fla. Stat.; <u>HTP, Ltd.</u>, 685 So. 2d at 1239; <u>La Pesca Grande Charters, Inc.</u>, 704 So. 2d at 712.  The key distinction could not be clearer. The Court should deny Foresters' motion to dismiss.

**<u>Vinas Has Not Alleged Vicarious Liability Against Foresters.</u>**
**<u>Count III (Fraud In The Inducement) Is A Direct Fraud Tort</u>**
**<u>Cause of Action Against Foresters.</u>**

Foresters returns to its strawman construction when it argues that Vinas "does not state a basis to hold Foresters vicariously liable" for Jazmin Lightbourn's conduct. (D.E. 152, at 16).  Under Florida law, "vicarious liability *always* involves liability without fault." <u>Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.</u>, 908 So. 2d 459, 470 (Fla. 2005) (emphasis in original). The most common examples are an owner of a vehicle being held liable for the negligence of the driver or an employer being held liable for the acts of an employee. <u>Univ. of Miami v. Ruiz ex rel. Ruiz</u>, 164 So. 3d 758, 766 (Fla. 3d DCA 2015) (employee); <u>Roman v. Bogle</u>, 113 So. 3d 1011, 1012 (Fla. 5th DCA 2013) (driver).

To be clear, Vinas has not pled or tried to plead a vicarious liability claim against Foresters. Only Foresters has raised the issue of vicarious liability. The fraud cause of action against Foresters is a <u>direct tort claim</u> against it for fraud committed <u>by Foresters</u>. Vinas does not allege, argue or claim that Foresters is "free of legal fault" and only liable "based solely on the legal imputation of responsibility for another party's tortious acts." <u>Am. Home Assur. Co.</u>, 908 So. 2d at 467–68. Vinas has sued Foresters for its <u>direct fraud</u>.  There is nothing vicarious about it!

Again, the procedural posture of the case vis à vis this motion is unique as discovery is long completed.   However, in addition to the clearly pled allegations in Plaintiff's complaint, (D.E. 147, at ¶ 36a), Foresters own CR <u>completely acknowledged</u> the representation by Foresters through its sales agent Jazmine Lightbourn was <u>absolutely authorized</u> and appropriate! (D.E. 159, at ¶ 20; D.E. 158, at ¶¶ 1-3).

As discussed more fully in the motion for summary judgment and statement of

material facts, (D.E. 159, at ¶ 20; D.E. 158, at ¶¶ 1-3), Foresters authorized its agents to make representations consistent with the policy. Here, the relevant representation <u>as alleged</u> was that "Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully, i.e., to his best knowledge and belief". (D.E. 147, p¶ 36a) Because there is no derivative liability allegation in the complaint, the Court should deny Foresters' Motion to Dismiss on this ground.

### <u>Count III (Fraud in The Inducement) is<br>An Independent Tort Separate from Any Breach of Contract.</u>

In the same way Foresters tried to re-write Vinas' complaint to allege statutory bad faith and vicarious liability, it has also tried to rewrite the Complaint to allege Fraud in the <u>Performance</u>. Again, to be clear … Count III of Plaintiff's complaint is for fraud in the <u>inducement</u>. In case it is not clear to Foresters after almost a year, the operative allegations of Count III allege a fraudulent representation <u>prior to</u> the time of entering into the contract; not in the performance of the contract. (D.E. 147, at ¶¶ 36(a)-38). The <u>fraud</u> occurred during the sale of the policy. It was then that Foresters reassured Mr. Vinas that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions to his best knowledge and belief. This was a representation Foresters did not know was true or false when it was made. This is fraud under Florida law. The <u>breach</u> of contract occurred two years later when Foresters denied the claim. This is as it is expressly alleged in Plaintiff's Complaint. Plaintiff can't say it any clearer.

Foresters' next argument is directed at expressing its disproval and disagreement with Florida law clearly establishing and recognizing that fraudulent inducement "is an independent tort … separate and distinct from the breach of contract." <u>HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.</u>, 685 So. 2d 1238, 1239 (Fla. 1996). It is separate and distinct exactly because it "requires proof of facts" that are different than those required for breach of contract. <u>Id.</u>; <u>see also</u> <u>Maxted v. SATO Glob. Sols., Inc.</u>, 17-61769-CIV, 2018 WL 3109628, at *6 (S.D. Fla. Mar. 9, 2018) (applying <u>HTP</u> to hold that a fraudulent inducement claim was not "impermissibly duplicative" of a claim of breach of oral employment contract). It is also well-established that a promise of future performance can serve as a predicate for a claim of fraud when the promisor either "does so with <u>no intention of performing</u> or with a <u>positive</u>

12

intention not to perform." <u>Mejia v. Jurich</u>, 781 So. 2d 1175, 1177–78 (Fla. 3d DCA 2001); <u>see also</u> <u>Noack v. Blue Cross & Blue Shield of Florida, Inc.</u>, 742 So. 2d 433, 434 (Fla. 1st DCA 1999) (fraud lies where "the promise was made with the present intention not to comply.").

The Fifth District Court of Appeal has offered an excellent example of the independence of fraud in the inducement:

> Suppose someone offers to sell you a particular emerald for $5,000 and, in order to induce you to buy it, represents to you that it is "top quality" and that it has not been filled. You buy it based on the factual representation that the stone is unfilled but later you learn that it, in fact, had been filled. If the seller knew the emerald had been filled but lied in order to trick you into agreeing to buy it, you have a cause of action for fraud with all its attendant remedies. You may also have an action for breach of contract.

<u>La Pesca Grande Charters, Inc. v. Moran</u>, 704 So. 2d 710, 713 (Fla. 5th DCA 1998). "The fact that the same measure of damages (the difference in value between a filled emerald and an unfilled emerald) may be available under both the tort and the breach of contract does not cause the tort to disappear." <u>Id.</u> "Nor does the inclusion of the fraudulent representation as an express warranty in the contract preclude the tort remedy." <u>Id.</u> "The notion that a knowing fraud perpetrated to induce someone to enter into a contract can be extinguished by the simple expedience of including the fraudulent representation in the contract makes no sense." <u>Id.</u> at 712.

In the present case, Count III of Vinas' operative complaint alleges the circumstances and specific representations between the Vinases and Foresters that occurred in January 2015, when the fraudulent representations were made.  Contrary to Foresters' uncited and unsupported contentions, and ignoring the actual allegations, the "fraudulent conduct" did not consist of "failing to adhere to the representations in the Certificate." The fraud was complete when Foresters made the misrepresentation and had no idea whether its representation was true or not. <u>Parker v. State of Florida Bd. of Regents ex rel. Florida State Univ.</u>, 724 So. 2d 163, 168 (Fla. 1st DCA 1998).  This was <u>before</u> the parties even entered into the contract, and long before Foresters breached it in January 2017.

The actual allegations notwithstanding, and ignoring paragraph after paragraph of

specifically pled facts <u>directed at the formation of the contract</u>, (D.E. 147, at ¶¶ 32-45), Foresters again conclusorily asserts Vinas alleged facts that only prove breach. (D.E. 152, at 15). Foresters is clearly ignoring the express allegations in the Second Amended Complaint that Foresters committed an independent tort <u>at the time it entered the contract</u>, because it had no intention of honoring the "best knowledge and belief" language at formation. (D.E. 147, at ¶¶ 36-42).

 While the Court is likely familiar with the allegations by now, Vinas' Second Amended Complaint (With Interlineation) specifically alleges that <u>Foresters' sales agent Jazmin Lightbourn</u> "represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully, i.e., to his best knowledge and belief". (<u>Id.</u> at ¶ 36a). This was Foresters explaining the contestability process to the Vinases and that the standard for a misrepresentation was for Mr. Vinas to provide "answers that were 'full, complete, and true to the best of [his] knowledge and belief.'" (<u>Id.</u> at ¶ 33).

 But Defendant had "no intention to pay Mr. Vinas during the first two years following issuance of the Policy," as it didn't even know if its representations were true or not. Instead, as expressly alleged, it intended to use "its willful blindness to the information available to it as a false defense" regardless of Mr. Vinas' best knowledge and belief. (<u>Id.</u>, at ¶41). The representation that the application need be completed only to his best of his knowledge "was made to induce Rigoberto Vinas to pay premiums for the policy despite the fact that Foresters knew it had no intention to ever pay benefits if [he] were to die during" the contestability period, "even if Application answers were provided to Mr. Vinas' best knowledge and belief." (<u>Id.</u>, at ¶ 37). Mr. Vinas relied on the validity of the representations in the contract and made premiums as required. (<u>Id</u>, at ¶ 41).

 All of these allegations that are <u>expressly pled</u> and <u>expressly ignored</u> by Foresters address the time of <u>formation</u> of the policy in 2015, separate and distinct from the breach that occurred approximately two years later when Foresters refused payment of benefits in 2017. The Court should deny the motion to dismiss because Count III (Fraud in the Inducement) is independent of Count I (Breach of Contract).

### Vinas Has Standing to Pursue Fraud in the Inducement
### Based on Her Husband's Life Insurance Policy.

Defendant's arguments are a virtual "cut and paste" of the arguments already rejected by this Court when, over Defendants' assertions of futility, it granted Plaintiff leave to amend her Complaint (D.E. 90, 144) and denied Defendant's Motion to Stay Discovery (D.E. 100). Foresters' argument that Vinas does not have standing to pursue this matter (D.E. 95, at 14; see also D.E. 72, at 11 (pressing same line of argument in opposition to Motion for Leave to File a Second Amended Complaint)) is as unsupported now as it was the first time the Court rejected it.

As Vinas pointed out in opposition to Foresters' first bite at this particular apple, she has, as a direct beneficiary of the policy "a basis upon which . . . [she] may . . . invoke the benefits of a contract to which [she] is not a party." (D.E. 79, at 10 (citing Medimport S.R.L. v. Cabreja, 929 F. Supp. 2d 1302, 1315 (S.D. Fla. 2013))). Additionally, limiting standing under the present facts to the party whose death occasioned the payment obligation creates a hugely perverse incentive to cheat:

> Foresters' argument should be denied for its lack of practical applicability. Specifically, to accept Foresters' standing argument would be to eliminate from jurisprudence any claim for fraud with respect to all life insurance policies, as the named insured in the majority of such policies is usually deceased. Thus, according to Foresters, no beneficiary would ever be able to sue for breach of contract or fraud. Perhaps this is why Foresters could not find a single case to cite even suggesting that a beneficiary of a life insurance policy does not have standing to sue for fraud in the inducement.

(D.E. 79, at 10) (emphasis added). It is not surprising that Foresters marshals no new authority, and still cannot find a case even suggesting that a beneficiary of a life insurance policy does not have standing to sue for fraud in the inducement. Clearly, such lawsuits have been filed. E.g., JMIC Life Ins. Co. v. Henry, 922 So. 2d 998, 1000 (Fla. 5th DCA 2005). It would be remarkable, although highly unlikely indeed, if Foresters were correct on the law, but no other insurance company had ever succeeded on the same point.

Additionally, Foresters' misrepresentation was made to both Mr. and Mrs. Vinas at the time of sale of the policy, and the couple jointly made the decision to switch to a Foresters' policy in reliance. (D.E. 159, at ¶ 23). The Court should again reject Foresters' standing

argument.

### Vinas has Appropriately and Sufficiently Pled All Elements of Fraud Including Jazmin Lightbourn's Status as Foresters' Sales Agent

The Court has addressed this argument before.  Contrary to Foresters' latest motion, (D.E. 152, at 13), Rule 9(b) does not impose an inflexible requirement that plaintiffs allege the circumstances of fraud with the detail argued by the defendant.  <u>Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.</u>, 814 F. Supp. 1084, 1092–93 (S.D. Fla. 1992) (finding "fair notice" where plaintiff "did not allege specific times, dates, or places for all the alleged predicate acts").  The allegations of the fraud in this case are expressly pled for Foresters to read.  Vinas makes it clear what the representation was (D.E. 147, at ¶¶ 36-36a), who made it (<u>id</u>), to whom it was made, (<u>id</u>.), when, (<u>id</u>.), along with the other legal requirements of fraud such as reliance (<u>id</u>. at ¶ 43), scienter (<u>id</u>. at ¶37-38), and injury.  (<u>Id</u>. at 45).   The fraud in this case is not complicated.  It doesn't require combing through stacks of accounting records or tax returns to find inconsistencies that may not be clear to the defendant.  This was a single lie told to an elderly married couple to induce them to switch insurance policies.  The pleadings make it very clear what is alleged, and against whom.

In addition, it is difficult for Foresters to feign ignorance of the allegations against it. The law is clear that in addition to pleadings, a defendant can glean sufficient notice of the claims against it through alternative means such as summary judgment evidence, which is equally suitable.  <u>Durham v. Bus. Mgmt. Associates</u>, 847 F.2d 1505, 1511–12 (11th Cir. 1988). Here, the record is too developed from Foresters' own CR testimony, for Foresters to pretend any lack of fair notice.

Despite the hours of attorney time already expended in developing the record and even filing <u>two</u> motions for summary judgment, Foresters claims that it lacks fair notice of the fraudulent misrepresentation. Really?!  Incredibly, Foresters pretends not to know that Ms. Lightbourn, in the course of selling the policy at issue, sat in the Vinas home and told them that the incontestability period was nothing to worry about, as long as Mr. Vinas answered the application questions honestly, to his best knowledge and belief.  (D.E. 158, at ¶4, 7). Foresters pretends not to know that its own CR testified that this representation was truthful and appropriate and that he would "have a problem" if he found out that it wasn't true!! (D.E. 158, at ¶ 17). Fortunately, Rule 9(b) imposes no duty to amend the complaint to allege what

16

Foresters already knows and what was expressly testified to by its own witnesses and corporate representatives.

In true "shotgun form," Foresters also re-raises an aspect of its standing argument here, i.e. whether Rule 9(b) requires Mrs. Vinas to allege that each element is satisfied by her individually. Mrs. Vinas has standing to raise Count III as set forth above. Moreover, Vinas has presented evidence that she was present along with her husband when Foresters made its fraudulent representation to both of them, and that she and her husband made the decision to switch to Foresters jointly, in reliance on that representation. (D.E 158, at 8). The Court should deny the motion to dismiss.

As to Ms. Lightbourn, Vinas has expressly pled that "Foresters, through its sales agent Jazmin Lightbourn . . . represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully, i.e., to his best knowledge and belief." (D.E. 147, at ¶ 36a). Indeed, Rule 9(b)'s heightened pleading standard is present to be certain the defendant is put on notice of the fraudulent conduct alleged, but it "must not abrogate the concept of notice pleading." Durham v. Bus. Management Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988).

In this case, there is no doubt Plaintiff has sufficiently advised the Defendant of the fraudulent statement as well as all the circumstances surrounding it. (See p. 16, supra). No doubt, Foresters would have liked Vinas to have pled the color of Ms. Lightbourn's lipstick through which the fraudulent words were spoken but Rule 9(b) does not extend to that level of specificity or to the technical basis for the sales agent's agency with Foresters. Sun Life Assurance Co. of Canada (U.S.) v. Imperial Holdings, Inc., 13-80385-CIV, 2014 WL 12452450, at *3 (S.D. Fla. June 26, 2014). Vinas expressly alleged Ms. Lightbourn was Foresters' sale agent. (D.E. 147, at ¶ 36). In addition, Foresters' CR acknowledged that Foresters only sells its policies through these agents, and that the agents are authorized to discuss and explain policies to prospective insureds. (D.E. 158, at ¶¶ 2-3, Parrott Depo., D.E. 158-3, p. 39, l. 22-p. 40, l. 7). Foresters is well aware of all these facts, as it was sitting at the same depositions as Plaintiff, uncomfortable in their seats as Foresters' CR's testimony filled in the elements to satisfy the requirements of fraud under Florida law. Mrs. Vinas need not make a further separate allegation of "agency in order to satisfy notice-pleading requirements" that Foresters openly acknowledged. (D.E. 159, at ¶ 20) Platypus Wear, Inc. v. Clarke Modet

& Co., S.L., 06-20976-CIV, 2008 WL 2557503, at *2 n.5 (S.D. Fla. June 23, 2008), adopted in relevant part, 06-20976-CIV, 2008 WL 2761300 (S.D. Fla. July 15, 2008).

The Court should deny Foresters' motion to dismiss because Vinas has both sufficiently alleged, and developed a factual record that, Ms. Lightbourn was Foresters' sales agent authorized to accurately explain the policy terms and "represent that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully, i.e., to his best knowledge and belief"); (D.E. 147, at ¶ 24; D.E. 159, at ¶ 20).

### There Is No Shotgun Pleading Because Vinas
### Does Not Commingle Separate Counts

In yet another example of irony, having repeatedly used every page and line of every motion to raise and re-raise every conceivable point in "shotgun fashion," Foresters now uses the "shotgun pleading" doctrine to turn one simple point into five. As discussed above, Mrs. Vinas raises no vicarious liability claim.

Here, Foresters argues that the vicarious liability claim (which Vinas does not raise) should form the basis for a separate count. Yet another strawman. Again, Vinas does not allege that Foresters' is vicariously liable for the wrongs of another. Foresters' liability is not merely technical or derivative. Count III is directed squarely at Foresters. Vinas cannot commit the "sin of not separating into a different count each cause of action or claim for relief" when she raises only one claim. (D.E. 152, at 12 (quoting Weiland v. Palm Beach Cty. Sheriff's Office, 792 F. 3d 1313, 1323 (11th Cir. 2015)). The Court should deny Foresters' motion to dismiss.

### Section 627.428 Mandates an Award of Attorney's Fees
### Upon Entry of Judgment for Count III (Fraud in The Inducement)

Section 627.428 provides:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary **under a policy or contract executed by the insurer**, the trial court . . . shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Fla. Stat §627.428(1) (emphasis added). Significantly, Foresters fails to cite a single case

holding that attorney's fees are not available for a plaintiff who successfully establishes that an insurance company fraudulently induced an insured to enter into the contract of insurance. This is understandable since a fraudulent inducement cause of action, based upon inducing a Plaintiff into entering into a contract, satisfies all the elements of §627.428.

Similarly, the allegations in the present complaint satisfy every statutory element for prevailing party attorney fees. Mr. Vinas was the named insured, and Mrs. Vinas is a named beneficiary under the policy. Fraud in the Inducement, while independent and separate from Count I (Breach of Contract), nevertheless features the issuance of the policy as a critical element of the claim. Without the issuance of the policy, there would have been no fraudulent inducement. The fact that Foresters induced Mr. Vinas into entering into the policy, fraudulently, does not eliminate the contractual tie to the transaction. Thus, Vinas' claim arises "under a policy or contract executed by the insurer." §627.428(1), Fla. Stat.

Foresters' cases are totally distinguishable from the present case. (D.E. 152, at 17). In United Gen. Life Ins. Co. v. Koske, 519 So. 2d 71, 72 (Fla. 5th DCA 1988), the Court held, the statute did not apply because "no policy of insurance was ever issued or executed by the insurer covering Mr. Koske as an insured." (D.E. 95, at 20). Therefore, the claim could not have arisen "under a policy or contract executed by the insurer." § 627.428(1), Fla. Stat. In the present case, there is no question the policy was issued (albeit fraudulently so), to Mr. Vinas.

In Hilson v. GEICO Gen. Ins. Co., the professional malpractice of one of GEICO's staff attorneys was determined not to arise "under" the policy Geico had issued to the Plaintiff. 8:11-CV-13-MSS-MAP, 2016 WL 3211474, at *3 (M.D. Fla. Mar. 31, 2016) (finding no fee entitlement where "the negligence of GEICO's staff attorney caused GEICO not to settle for the policy limits and resulted in an excess judgment"). The plaintiffs in Hilson, however, made it clear during litigation that they were asserting a tort claim unrelated to GEICO's contract with the insured. (Id. at 3). Instead, they argued that GEICO was "vicariously liable for [the attorneys'] professional malpractice under the principle of respondeat superior." (Id.). The Hilson plaintiffs thus alleged a claim that had nothing at all to do with the policy. Here, however, the fraudulent misrepresentations occurred in the policy itself, and further caused Mr. Vinas to enter into that contract with Foresters. The contractual nexus that was entirely lacking in Hilson is certainly present here.

19

As for <u>Johnson v. Omega Insurance Company</u>, the Supreme Court merely clarified that "in the context of Section 627.428, a denial of benefits simply means an incorrect denial," with no requirement of "bad faith or maliciousness" as well. 200 So. 3d 1207, 1214 (Fla. 2016). Foresters fails to explain why <u>Johnson</u>, a sinkhole case, has anything to add to the analysis of the Count III (Fraud in the Inducement).

In sum, if Vinas prevails, the "judgment or decree" in her favor will be rendered because Foresters fraudulently provided coverage to Vinas under a policy or contract executed by the insurer, because the policy itself (via the application) contains the fraudulent statement. §627.428(a), Fla. Stat. Moreover, the claim alleged is fraud in the inducement to contract, which is alleged to have resulted in the creation of the policy. The Court should recognize Vinas' entitlement to attorney fees under the Second Amended Complaint.

<b><u>Vinas Has Not Abused the Privilege of Amending</u></b>

If Foresters prevails on some aspect of its motion, whether to dismiss with prejudice is a matter left to the Court's discretion. Vinas must, however, address Foresters' accusations that she is on a "fishing expedition" and that any further leave to amend should be denied. (D.E. 152, at 17).

As to the first amendment, Foresters did not even object where Vinas added a claim for consequential damages. (D.E. 31). This is understandable given the well settled nature of Florida law at the time. <u>E.g.</u>, <u>Manor House, LLC v. Citizens Prop. Ins. Corp.</u>, 277 So. 3d 658, 661 (Fla. 5th DCA 2019), (explaining that "when an insurer breaches an insurance contract, the insured "is entitled to recover more than the pecuniary loss involved in the balance of the payments due under the policy in consequential damages, provided the damages were in contemplation of the parties at the inception of the contract") (citation omitted).

Vinas requested leave to file her second amended complaint to add Count III (Fraud in the Inducement) on March 16, 2020, <u>less than two weeks</u> after she took the depositions of Foresters' CR and claim handler whose testimony put Vinas on notice of Foresters' fraud. Foresters' opposition to the amendment included a sur-reply, leaving the motion to amend pending until the Court granted it on July 23, 2020. (D.E. 90).

A single interlineated paragraph (D.E. 147, ¶ 36a) was added after the October 13, 2020 deposition of a different CR established that Foresters authorized Ms.

20

Lightbourn to explain the policy and make representations consistent with its terms. (D.E.159, at ¶ 20).  It was Foresters' pending motion to dismiss, which argued for dismissal on the ground that the only representation was contained in the contract itself, that drove Vinas' decision to update the Court as to the still-developing record.  (D.E. 95, at 17 (arguing independent tort rule); see D.E. 120 (setting out circumstances in Plaintiff's Motion to Amend the Second Amended Complaint by Interlineation to Conform to Evidence).

If the Court decides that any claim in the operative complaint are due for dismissal, it will determine how best to proceed.  Vinas does not believe she has abused the privilege of amendment and asks the Court to exercise its discretion to permit additional amendment if appropriate.

## CONCLUSION

Most of Foresters' motion to dismiss is directed to claims Vinas does not raise: bad faith, vicarious liability, and fraud in the performance.  None of those arguments are relevant to Count III (Fraud in the Inducement).  Foresters' remaining arguments merely lack merit. The Court should deny Foresters Motion to Dismiss. (D.E. 152).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing has been electronically filed with the Court and a copy has been served on February 8, 2021 on:  Kristina B. Pett, Esq. Kristina.pett@mhllp.com and Danielle Shure, Esq., Danielle.shure@mhllp.com, McDowell, Hetherington, LLP, 2101 N.W. Corporate Blvd., Suite 316, Boca Raton, FL 33431.

KRAMER, GREEN, ZUCKERMAN,
GREENE & BUCHSBAUM, P.A.
Co-Counsel for Plaintiff
4000 Hollywood Blvd., Suite 485-S
Hollywood, FL  33021
(954)966-2112–phone; (954)981-1605-fax

By:    /s/ Craig M. Greene
Craig M. Greene, Esq.
Fla. Bar No. 618421
cgreene@kramergreen.com

and

Adrian Neiman Arkin, Esq.
MINTZ, TRUPPMAN, P.A.
Co-Counsel for Plaintiff
1700 Sans Souci Boulevard
North Miami, FL  33181
(305) 893-5506 – phone
adrianarkin@mintztruppman.com