UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

       Plaintiff,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

       Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION TO PRECLUDE TESTIMONY AND EVIDENCE OF THE REPORT FROM DEFENDANT'S EXPERT, MARC S. FRAGER, M.D.**

### I.   Introduction

In Plaintiff's Motion to Preclude Dr. Frager ["Motion"; Doc. 160], Plaintiff distorts and mischaracterizes Dr. Marc S. Frager's testimony to craft a meritless argument that Dr. Frager's testimony should be excluded as irrelevant and unreliable. Dr. Frager opines that it is standard protocol for a reasonably prudent physician to discuss all lab results, exam findings, and conditions that a patient is being followed for with that patient. Dr. Frager further opines that based on Mr. Vinas's lab work, and the number of times diabetes and related complications appeared in Mr. Vinas's medical records, one would reasonably determine that Mr. Vinas's treating physician, Dr. Kenneth Hershman, adhered to standard protocol and discussed these conditions with Mr. Vinas. Dr. Frager's opinion is relevant to Plaintiff's fraudulent inducement claim, should it proceed to trial,[1] because it refutes Plaintiff's allegation that Foresters "fraudulently" represented that if the insured died during the first two years of the Certificate's issuance, it would conduct an Incontestability investigation to determine whether the insured answered the questions in his application to his "best knowledge and belief." Dr. Frager's opinion establishes that during Foresters' contestability investigation, it reasonably determined that Mr. Vinas must have known

---

[1] As set forth in detail in Foresters' Motion for Summary Judgment [Doc. 156], the undisputed evidence shows that Foresters is entitled to judgment in its favor as a matter of law, and there is no need for a trial.

and believed that he was being followed for diabetes and secondary complications. Not only is Dr. Frager's opinion regarding the standard of care for physicians with respect to communications about diabetes relevant, but it is reliable because it is based on Dr. Frager's review of all of Mr. Vinas's pertinent records, and his extensive experience as an endocrinology practitioner and professor of medicine in the areas of endocrinology and medical ethics.

## II.     Background[2]

By way of brief summary, in January 2015, Plaintiff's husband, Rigoberto Vinas ("Mr. Vinas") submitted an application to Foresters for a $92,000 life insurance policy. [SOF ¶1; App., Doc. 155-1]. On Mr. Vinas' application and supplemental forms, Mr. Vinas represented that within the last 10 years, he had not been diagnosed with, or treated for, diabetes or complications from diabetes, including kidney or sensory problems. [SOF ¶¶2-3, 8-10; App. at pp. 3-5, 10-11]. Mr. Vinas declared that his statements were true and complete to his "best knowledge and belief." [SOF ¶¶5, 11; App. at pp. 7, 11]. Relying on Mr. Vinas's representations, Foresters issued SMART Universal Life Insurance Certificate No. 8356627 (the "Certificate"), effective January 26, 2015. [SOF ¶16; Certificate, Doc. 147-1]. The Certificate's incontestability clause provides that Foresters would not contest the validity of Certificate after two years, consistent with Fla. Stat. § 627.455. [SOF ¶18; Certificate at 14].

Mr. Vinas died on January 11, 2017. [SOF ¶23]. Thereafter, Plaintiff filed a claim for benefits under the Certificate. [Id.; Statement of Claim, Doc. 155-9]. On February 1, 2017, Plaintiff submitted Mr. Vinas's medical records from his treating physician, Dr. Kenneth Hershman. [SOF ¶25; Hershman R., Doc. 155-11]. These medical records demonstrate that during the time periods asked about in the Application and Diabetes Questionnaire, Dr. Hershman was following Mr. Vinas for diabetes, and attendant kidney and sensory problems. [Id.]. Dr. Hershman's records contained a lab report dated October 14, 2010, which indicated that Mr. Vinas's Hemoglobin A1c level was 6.6, which was consistent with diabetes. [SOF ¶26; Hershman R at 2]. Additionally, under the "assessment" section, Dr. Hershman listed the following conditions:

---

[2] Plaintiff's recitation of this case's factual background is laden with inaccuracies and a complete lack of citations to the record. Foresters cites to its Statement of Material Facts in Support of its Motion for Summary Judgment ["SOF"; Doc. 155] to correct Plaintiff's description and give the Court an accurate understanding of this case's history.

   a. Diabetes mellitus type 2 or unspecified type with renal manifestations on July 30, 2012, and August 19, 2014.
   b. Diabetes mellitus type 2 or unspecified type with neurological manifestation on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.
   c. Neuropathy in diabetes on November 5 and 12, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.
   d. Diabetes mellitus type 2 or unspecified type with peripheral circulatory disorder on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014.
   e. Nephritis and nephropathy on August 19, 2014.

[SOF ¶27; Hershman R at 47, 49, 51-52, 57 60]. Based on the number of times diabetes and secondary conditions appeared on Mr. Vinas's records, and Mr. Vinas's labwork, Foresters' underwriting department determined that Mr. Vinas must have been aware that he was diagnosed with, treated for, or monitored for, diabetes and secondary complications. [SOF ¶¶28-29; UW Opinion, Doc. 155-12; Buckland Tr. at 17:5-7, 21:10-13, Doc. 155-13; Sullivan Tr. at 138:5-9, Doc. 155-13]. Accordingly, by letter dated April 5, 2017, Foresters denied Plaintiff's claim for benefits, rescinded the Certificate, and refunded all premiums. [SOF ¶30; 4.5.17 Letter, Doc. 155-15]. Foresters advised: "If you have any medical or other information that you think would show that the conclusions arrived at . . . are incorrect or incomplete, we ask that you provide us with all such information so we may conduct a further review." [Id. at 3].

On October 4, 2018, Plaintiff initiated this action, asserting claims for breach of contract and declaratory relief, and seeking the death benefit under the Certificate and a declaration that Foresters improperly rescinded the Certificate. [Doc. 1]. On September 9, 2019, Plaintiff filed an Amended Complaint in which she added a request for consequential damages to her breach of contract claim. [Doc. 33].[3]

On February 5, 2020, Plaintiff served Foresters with a Civil Remedy Notice ("CRN"), claiming that Foresters denied Plaintiff's claim in bad faith. [SOF ¶35; CRN, Doc. 152-3]. On March 26, 2020, Plaintiff provided Foresters with a letter from Dr. Hershman stating that he did

---

[3] Since that time, Plaintiff has acknowledged that her claim for declaratory relief is moot, and the Florida Supreme Court determined that an insured may not seek consequential damages outside of a bad faith action as a matter of law. See Citizens Property Ins. Corp. v. Manor House, LLC, ---So.3d---, No. SC19-1394, 2021 WL 208455 (Fla. 2021).

not diagnose Mr. Vinas with diabetes or any complications from diabetes, and did not tell Mr. Vinas that he had diabetes or secondary complications.  [SOF ¶36; 3.2.6.20 Letter, Doc. 155-16]. Based on Dr. Hershman's letter, Foresters immediately paid the Death Benefit, plus 8% interest to compensate Plaintiff for any damages she may have experienced between her loss and the payment of the claim, as well as reasonable attorney's fees and taxable costs.  [SOF ¶37; CRN Response, Doc. 152-4].  Foresters also agreed to pay reasonable attorneys' fees and costs through the date of payment.  [Id.].[4]

Plaintiff filed the Second Amended Complaint [Doc. 94], in which she asserted a new claim for fraudulent inducement.  Plaintiff claims that "Foresters falsely and fraudulently represented, through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to the best of his knowledge and belief" "in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters" and "pay premiums for the policy."  [Doc. 94 ¶¶36-37].  After reviewing Foresters' Motion to Dismiss [Doc. 95], and realizing that her claim failed as a matter of law because she did not allege anything more than "fraudulent performance" in violation of Florida's independent tort rule, Plaintiff sought leave to file the Second Amended Complaint with Interlineation. [Doc. 147].  In the Second Amended Complaint with Interlineation, Plaintiff alleges that "prior to the sale of the policy, Foresters, through its sales agent Jazmin Lightbourn, explained how the contestability period worked and represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully, i.e., to his best knowledge and belief."  [Doc. 147 ¶36a].[5]

Foresters' expert, Dr. Frager, reviewed Mr. Vinas's medical records, as well as other pertinent documents, and concluded that based on the reasonable standard of communication between a physician and his patient, it was reasonable for Foresters to believe that Dr. Hershman had advised Mr. Vinas that he was being treated and followed for diabetes and secondary

---

[4] As set forth in detail in Foresters' Motion for Summary Judgment and Motion to Dismiss [Doc. 152], Plaintiff's breach of contract claim is moot because there is no longer a live issue as to breach, damages, or attorney's fees. Accordingly, the Court lacks jurisdiction to enter judgment on the merits.

[5] As set forth in detail in Foresters' pending Motion to Dismiss and Motion for Summary Judgment, Plaintiff's amended does not salvage her claim, as it still fails as a matter of law.

4

complications, based on the number of times these conditions were recorded in Mr. Vinas's records and Mr. Vinas's lab results. [Frager Report at 3, **Ex. A**]. Specifically, Dr. Frager offered the following opinion:

> Based on my review of these documents, and the number of times diabetes and related complications appeared in Mr. Vinas's records, it would be reasonable to assume that Mr. Vinas was being followed for diabetes and secondary complications. **A reasonably prudent physician would discuss all conditions with that patient. It is standard protocol for a physician to discuss all lab results and exam findings.** This is especially important in Mr. Vinas's case because he had an HgbA1c level of 6.6 in 2010, which is diagnostic of diabetes. Additionally, the records contain evidence of diminished sensation on neurologic examination, which supports diabetic nephropathy and neuropathy, and protein in his urine. Once a patient has diabetes, they are always a "diabetic," as the condition remains dormant in his system. The records show that Dr. Hershman was actively monitoring Mr. Vinas for diabetes and secondary complications. **Anyone reviewing these records would reasonably determine that Dr. Hershman adhered to standard protocol and discussed diabetes and secondary complications with Mr. Vinas, including nephropathy and neuropathy.** Based on these records, Mr. Vinas must have been aware of these conditions.

[Id. (emphasis added)].

In the Motion, Plaintiff claims, without basis, that Dr. Frager's opinion should be precluded because it is not relevant to her fraudulent inducement claim. Plaintiff is wrong. Dr. Frager's opinion is relevant to nearly every element of Plaintiff's fraudulent inducement claim. Dr. Frager's opinion that Foresters reasonably determined that Dr. Hershman must have discussed diabetes and secondary complications with Mr. Vinas based on the standard of communication between a patient and physician shows that Foresters did not make any misrepresentations regarding the contestability investigation, and that Foresters lacked the fraudulent intent not to consider Mr. Vinas's knowledge and belief. Further, Dr. Frager's opinion is reliable, as it is based on Dr. Frager's review of all of Mr. Vinas's pertinent records, and his extensive experience as an endocrinology practitioner and professor of medicine in the areas of endocrinology and medical ethics.

### III. Standard of Review

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. See Fed. R. Evid. 702. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court established three requirements to satisfy Rule 702, which the Eleventh Circuit

refers to as the "qualifications," "reliability" and "helpfulness" prongs. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). Specifically, the Court must consider whether:

> (1) The expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1107 (11th Cir. 2005) (citation omitted) (emphasis added). "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." Frazier, 387 F.3d at 1260. "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Cook, 402 F.3d at 1111. Plaintiff does not dispute that Dr. Frager is qualified under the first prong.

## IV. Argument

### A. Dr. Frager's Expert Opinion is Relevant and Helpful to the Trier of Fact.

Plaintiff's argument that Dr. Frager's opinion is irrelevant is nonsensical, as it bears directly on the elements of Plaintiff's fraudulent inducement claim. Under Florida law, the elements of fraudulent inducement are: "(1) a false statement of material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808-09 (11th Cir. 2010). In the Second Amended Complaint, in an attempt to satisfy these elements, Plaintiff alleges that:

> At all times material hereto, **Foresters falsely and fraudulently represented** through language in the Policy and incorporated Florida law, that in the event Mr. Vinas were to die from a non-excluded cause within the first two years following issuance of the Policy, **Foresters would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief**.
>
> Furthermore, at all times material hereto, and prior to the sale of the policy, Foresters, through its sales agent Jazmin Lightbourn, explained how the contestability period worked and represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr.

6

> Vinas answered the Application questions truthfully, i.e., to his best knowledge and belief.
>
> At all times material hereto, **this representation by Foresters was false and Foresters knew it to be false** when it was made to Rigoberto Vinas in order to induce Rigoberto Vinas to enter into the Policy of Insurance with Foresters. The representation was made to induce Rigoberto Vinas to pay premiums for the policy despite the fact that **Foresters knew it had no intention to ever pay benefits if Rigoberto Vinas were to die during the first two years following issuance of the Policy even if application answers were provided to Mr. Vinas's best knowledge and belief.** This statement was a false statement of material fact by Foresters to Rigoberto Vinas contained within the Policy language and incorporated Florida law.
>
> At all times material hereto, **Foresters knew or should have known this promise was false when made** as Foresters intended, at the time of sale of the policy, to improperly ignore Mr. Vinas' "best knowledge and belief" in the Application and instead deny a claim based upon Foresters' interpretation of the medical accuracy of the information without regard to Rigoberto Vinas's best knowledge and belief.

[Doc. 147 ¶¶36-38 (emphasis added)].[6]

Dr. Frager's opinion is helpful to the trier of fact because it refutes Plaintiff's allegations and establishes that Foresters did not fraudulently induce Mr. Vinas to purchase the Certificate based on an alleged misrepresentation regarding the contestability investigation. Dr. Frager opines that "[a] reasonably prudent physician would discuss all conditions with that patient. It is standard protocol for a physician to discuss all lab results and exam findings." [Frager R. at 3]. Dr. Frager further opines that based on "the number of times diabetes and related complications appeared in Mr. Vinas's records, it would be reasonable to assume that Mr. Vinas was being followed for diabetes and secondary complications." [Id.]. Further, "[a]nyone reviewing these records would reasonably determine that Dr. Hershman adhered to standard protocol and discussed diabetes and secondary complications with Mr. Vinas, including nephropathy and neuropathy." [Id.]. Therefore, "Mr. Vinas must have been aware of these conditions." [Id.].

---

[6] As Foresters states in its pending Motion to Dismiss and Motion for Summary Judgment, these allegations amount to nothing more than an improper claim for fraudulent performance in violation of Florida's independent tort rule. Plaintiff does not state a proper claim for fraud in the inducement, and this claim fails as a matter of law.

Dr. Frager's opinion supports the undisputed record evidence in this case which shows that Foresters meaningfully considered whether Mr. Vinas's representations in his application and supplemental materials were true to his best knowledge and belief. Specifically, Foresters' claims adjuster, Lisa Buckland, testified that in Mr. Vinas's medical file, diabetes "was documented so many times that [she] would think that he was aware of his condition." [Buckland Tr. at 17:5-7, 21:10-13]. David Sullivan, Foresters' Assistance Vice President of Claims, also testified that "[i]n [Foresters'] review of the records, it would seem, with the number of assessments for the diabetes condition, and the complications, that a reasonable person would expect that physician to tell their patient of those conditions." [Sullivan Tr. at 138:5-9]. Dr. Frager's opinion supports that Foresters performed a good faith contestability investigation and acted reasonably in relying on the standard of communication between a patient and physician to evaluate whether Mr. Vinas knew and believed that he was being followed for diabetes and secondary complications. This shows that Foresters did not "misrepresent" that it would perform an Incontestability investigation, and that Foresters did not have the fraudulent intent to deny Plaintiff's claim regardless of Mr. Vinas's knowledge and belief. Therefore, Plaintiff's contention that Dr. Frager's opinion is irrelevant is patently wrong.

### B. Dr. Frager's Opinion is Reliable.

Plaintiff claims, without basis, that Dr. Frager's opinion is unreliable. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular testimony is reliable." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999)). "To be sure, there are instances in which a district court may determine the reliability prong under Daubert based primarily upon an expert's **experience and general knowledge** in the field." Kilpatrick v. Breg, 613 F.3d 1329, 1336 (11th Cir. 201) (citing United States v. Brown, 415 F.3d 1257 (11th Cir. 2005) (emphasis added)). "The type of opinion at issue here—essentially a failure to adhere to a certain standard of care—is precisely the type of opinion where experience may be appropriately relied upon." Anderson v. Techtronic Industries N. Am., Inc., No. 6:13-cv-1571-Orl-41TBS, 2015 WL 12843836, at *4 (M.D. Fla. Apr. 14, 2015); see also Mann v. Taser Int'l, Inc., No. 4:05-CV-0273-HLM, 2007 WL 9712075, at *7 (N.D. Ga. Dec. 27, 2007) (finding that expert testimony regarding the "standard of care for paramedics and EMTs" "does not require scientific study or scientific methodology, but may be based on "knowledge and experience.").

8

Here, Dr. Frager's opinion on the standard of care regarding communications about diabetes is reliable. With respect to the standard of communication between a patient and physician, the information that ought to be conveyed to a patient depends on the circumstances of each patient's condition and course of treatment, and expert testimony is required to establish what information must be conveyed to the patient under the circumstances of each case. See Public Health Trust of Dade Cnty. v. Valcin, 507 So.2d 596, 598 (Fla. 1987) (remanding and requiring the plaintiff to "establish through expert testimony the information which should have been conveyed to her under the circumstances" in the context of a medical negligence case.). Under Florida law, "[t]he prevailing professional standard of care for a given health care providers shall be that level of care . . . which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent **similar** health care providers." See Fla. Stat. § 766.102(1).

Dr. Frager's opinion is reliable because he reviewed all of Mr. Vinas's relevant medical records and lab reports, and applied "h[is] extensive, relevant experience" to conclude that based on the standard of care and communication between a patient and physician, anyone reviewing Mr. Vinas's records would reasonably assume that Dr. Hershman advised Mr. Vinas that he was being followed for diabetes and secondary complications, including nephropathy and neuropathy. See Adams v. Laboratory Corp. of Am., 760 F.3d 1322, 1330 (11th Cir. 2014) (finding the opinion of a medical expert was reliable based on her "extensive experience."). Dr. Frager is a Board Certified Internist and Endocrinologist who has been practicing internal medicine since 1978, and focusing on endocrinology since 1985. [Frager R. at 4-5]. An endocrinologist is an "internist who concentrates of disorders of the internal (endocrine) glands . . . and deals with disorders such as diabetes."[7] Dr. Frager also served as the Medical Director of the Diabetes Center at Boca Raton Community Hospital from 1999 to 2003, and regularly lectures on diabetes and secondary complications. [Id. at 6, 9]. Additionally, Dr. Frager served as the Lab Director of various endocrinology and diabetes institutions from 1986 through the present. [Id. at 5]. For the past twenty years Dr. Frager has served as an Associate professor of medicine, where he continues to teach courses in endocrinology. [Id. at 6; FAU Staff Directory at 4, **Ex. B**]. Dr. Frager lectures

---

[7] Endocrinology, Diabetes & Metabolism Specialty Description, AM. MED ASS'N, available at https://www.ama-assn.org/specialty/endocrinology-diabetes-and-metabolism-specialty-description (last accessed Dec. 9, 2020).

on professionalism, professional responsibilities, and adherence to ethical principles. [Endocrinology Course Curriculum at 3, 10, **Ex. C**].

Dr. Frager's extensive endocrinology experience, which includes both clinical work and lecturing medical students about the standard of care, provided him with a reliable basis on which to review Mr. Vinas's medical records and opine that anyone reviewing the records would reasonably believe that Dr. Hershman told Mr. Vinas he was being monitored for diabetes and attendant complications. For example, in Pages-Ramirez-Gonzalez, 605 F.3d 109 (1st Cir. 2010), the First Court held that a district court abused its discretion in precluding Dr. Carolyn Crawford from opining on whether the defendant, an OBGYN, departed from the standards of care in the field. Id. at 116-17. The court noted that Dr. Crawford's knowledge rested on a reliable foundation, including "her medical education and many years of experience in the field," and her testimony was "relevant to the task at hand." Id. at 116.

Plaintiff claims that Dr. Frager's opinion that one would reasonably determine that Mr. Vinas must have been aware that he was being followed for diabetes based on the standard of communication between a reasonably prudent physician and his patient is speculative. Plaintiff relies solely on the following exchange during Dr. Frager's deposition, which she takes out of context:

```
11      Q    So with respect to just this line, "Based on
12   these records" ending in "these conditions," that's an
13   inaccurate statement, correct?
14      A    No.
15      Q    So how can you say, "Based on these records,
16   Mr. Vinas must have been aware of these conditions"?
17      A    You asked me if I knew what Mr. Vinas knew.  I
18   don't know with he knew, but I can speculate that in my
19   opinion, he should have been aware of these conditions.
```

[Plf. Tr. at 78:11-19, Doc. 160-2].

The Eleventh Circuit recognizes that the term "speculative" is a "widely used **term of art** in Florida law." HGI Assocs., Inc. v. Wetmore Printing Co., 427 F.3d 867, 878 n.8 (11th Cir. 2005). Dr. Frager is a full time endocrinologist and has only served as an expert witness in three cases, including this action. [Plf. Tr. at 9:23-45]. It is clear from the remainder of his testimony

that Dr. Frager's intention was not to imply that his opinion was based on "guesswork," as Plaintiff suggests. Plaintiff completely ignores Dr. Frager's other testimony, in which he explains that by "speculating," he meant that he did not have personal knowledge of Mr. Vinas's knowledge and beliefs about his medical condition, but offered an opinion to a reasonable degree of medical certainty based on his review of Dr. Hershman's records.

```
20      Q    Okay.  So let's just say -- let's break down
21   what you just said.
22           Your statement that he must have been aware is
23   speculation, correct?
24      A    It's my opinion, correct.
25      Q    It is speculation.  That's your words, not

 1   mine.  Right?
 2      A    Yes.
 3      Q    Your opinion, your speculation, is not based
 4   upon anything grounded in medicine, correct?
 5      A    Well, it's based on review of the records.
```

[Id. at 78:22-25; 79:1-5]. Dr. Frager later confirmed that his opinion was not "guesswork," as Plaintiff suggests. [Id. at 84:15-16]. Dr. Frager testified that Mr. Vinas's 2010 lab report showed that he was positive for diabetes, and Dr. Hershman mentions "in every progress note" that diabetes is "the reason he's seeing the patient." [Id. at 51:12-14]; 58:25; 59:1-4]. Dr. Frager noted that a physician typically identifies a condition as an "assessment" because its "something the patient has or something" the doctor is "watching to develop." [Id. at 86:12-18]. It is clear, based on a review of Dr. Frager's testimony, that his conclusions are based on his expertise in endocrinology, the standard of communication between a patient and physician, and Mr. Vinas's medical records.

Further, in the Motion, Plaintiff mistakenly argues that Dr. Frager's failure to offer legal opinions renders his report inadmissible. As this Court recognizes, "[a]n expert 'cannot testify to the legal implications of conduct [because[ the court must be the jury's only source of law.'" Coquina Investments v. Rothstein, No. 10-60786-Civ, 2011 WL 4949191, at *5 (S.D. Fla. Oct. 18, 2011) (J. Cooke) (quoting Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990)). Plaintiff argues that Dr. Frager should be precluded from testifying because he did opine

11

on what Foresters "knew or didn't know in 2015," "what they intended in 2015," and whether Foresters' representation that it would apply the "best knowledge and belief" standard was false. [Motion at 5-6]. However, Dr. Frager did not, and could not, opine on whether Foresters' conduct satisfies, or does not satisfy, the elements of Plaintiff's claim, as those would be improper conclusions of law. "An expert may not . . . merely tell the jury what result to reach" and offer testimony regarding the legal implications of conduct. Montgomery, 898 F.2d at 1541. Dr. Frager's appropriately limited opinion is that based on the standard of communication between a reasonably prudent physician and his patient, it would be reasonable to determine that Dr. Hershman discussed diabetes and secondary complications with Mr. Vinas, based on the number of times it appeared as an "assessment" in Dr. Hershman's records.

## V.  Conclusion

For the reasons stated above, Dr. Frager is a qualified expert and his opinions are helpful to the trier of fact and reliable. Accordingly, this Court should deny the Motion.

Dated: February 19, 2021

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant/Counter Plaintiff
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax


By: ___s/Kristina B. Pett
    KRISTINA B. PETT
    Fla. Bar No. 0973688
    kristina.pett@mhllp.com
    DANIELLE E. SHURE
    Fla Bar No. 118911
    danielle.shure@mhllp.com

**CERTIFICATE OF SERVICE**

I certify that on February 19, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Craig M. Greene, Esq.
>Kramer Green Zuckerman Greene & Buchsbaum, P.A.
>4000 Hollywood Blvd.
>Suite 485-S
>Hollywood, FL 33021
>cgreene@kramergreen.com
>*Counsel for Plaintiff/Counter Defendant*
>
>Adrian Neiman Arkin, Esq.
>Mintz Truppman, P.A.
>1700 Sans Souci Blvd.
>North Miami, FL 33181
>adrian@mintztruppman.com
>*Co-Counsel for Plaintiff/Counter Defendant*

>>s/Kristina B. Pett
>>Kristina B. Pett