UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

       Plaintiff,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

       Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, The Independent Order of Foresters ("Foresters"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, submits its Response in Opposition to Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment.[1]

**Foresters convinces Digna and Rigoberto Vinas to switch life insurance providers by reassuring them not to fear the two-year contestability period.[2]**

---

[1] Although Foresters disputes many of Plaintiff's alleged "facts," the evidence in the record unequivocally refutes Plaintiff's contentions, and a reasonable jury could not return a verdict in her favor. Therefore, there are no genuine issues of material fact which preclude entry of summary judgment in Foresters' favor on Count III of the Complaint, and dismissal of Counts I and II on grounds of mootness.

[2] Disputed. Although presented as a "heading," rather than a purported fact, the statement should be disregarded as an improper attempt to "intermingle[ ] legal arguments with [her] statement of purported facts, making it difficult to determine which parts represent undisputed facts, and which parts represent legal arguments." See Gomez v. Target Corp., No. 16-62206-CIV-DIMITROULEAS, 2017 WL 3601806, **1-2 (S.D. Fla. Aug. 2, 2017) (striking a motion for summary judgment due to the movant's intermingling of legal argument and facts in the purported statement of material facts). Further, Plaintiff's inaccurate contention should be disregarded because she does not cite to any evidence, as required by Local Rule 56.1. See Gold Krown Fund, LLC v. Shapiro, No. 16-23525-CIV, 2017 WL 10966649, *2 (S.D. Fla. Dec. 15, 2017) (finding that where a party "fails to direct the Court to the record evidence in support of its asserted facts . . . contained in **each** sentence, the Court will not consider those assertions in deciding the Motion.") (emphasis in original).

1. Disputed. Mr. Vinas did not "need" life insurance, as he already had a life insurance policy with another carrier. [Plf. Tr. 27:17-22, Doc. 155-7]. Foresters also disputes that Mr. Vinas "was referred to Forester," and that "Foresters dispatched" Ms. Lightbourn to Mr. Vinas' home, as this is not supported by admissible evidence. Plaintiff relies solely on her inadmissible deposition testimony, in which she claims that Rushmore Bank told Mr. Vinas to call Foresters, and that when Mr. Vinas allegedly called Foresters, Ms. Lightbourn returned his call. [Id. at 31:15-18; 32:16-25; 33:1-2; 65:15-25; 66:1-10]. This testimony constitutes inadmissible hearsay, as Plaintiff is repeating what Mr. Vinas told her about his "referral" to Foresters and subsequent communications. [Id. at 65:18-25; 66:1-10]. "[H]earsay statements, even if stated in an affidavit or deposition, cannot be considered" in deciding a motion for summary judgment. Futuristic Fences, Inc. v. Illusion Fence Corp., 558 F. Supp. 2d 1270 (S.D. Fla. 2008).

2. Disputed, in part. Undisputed that Foresters' entire sales force is composed of independent brokers. Disputed that Foresters provides those brokers with "all sales materials." The undisputed evidence shows that Foresters did not provide any company materials to Ms. Lightbourn, but instead provided application materials to third party National Marketing Offices ("NMOs") and Brokerage General Agencies ("BGAs"), who employ the brokers. [Parrot Tr. at 48:11-21, Doc. 155-5]. Disputed that Foresters "does not want its customers" to understand its sales agents are independent brokers. Plaintiff cites to a statement made by her attorney during Mr. Parrot's deposition (which is not evidence)—not Mr. Parrot's sworn testimony. Mr. Parrot disagreed with counsel's statement and stated only that Foresters would want its customers to "have knowledge that this person is representing Foresters" in some capacity. [Id. at 92:18-25; 93:1-4].

3. Disputed, in part. Undisputed that Foresters' sales agents are authorized "to make accurate representations about Foresters' products." [Id. at 40:25; 41:1-3]. However, independent brokers, including Ms. Lightbourn, lack the authority to tell an applicant that his claim will be paid after a contestable review because that determination is "a result of the process." [Id. at 57:21-25, 58:1-11]. That is, whether a claim is payable depends on the results of the contestability investigation. [Id. at 57:21-25, 58:1-11]. Disputed that Mr. Vinas inquired about the Incontestability period, as Plaintiff relies solely on her own testimony regarding Mr. Vinas's communications with Ms. Lightbourn, which constitutes inadmissible hearsay.

4. Disputed as to factual accuracy and materiality. Disputed that Plaintiff's contention that Ms. Lightbourn sat "at the table" is material to the issues in this action. Disputed that Plaintiff believed that Ms. Lightbourn "belonged to Foresters." The undisputed evidence shows that Plaintiff was made aware of the limitations of Ms. Lightbourn's authority, and that she was an independent broker. On the Application, which Plaintiff claims she read, Ms. Lightbourn identified herself as an agent/producer, and provided her identification numbers. [App. at p. 8, Doc. 155-1; Plf. Tr. at 44:14-22]. Further, on the Application, Ms. Lightbourn certified that she did not make any "promise(s) regarding the benefit(s) or future performance of the product(s) applied for, other than as specifically written in the specific product(s) applied for in this Application." [Id.]. Additionally, on the Application, Mr. Vinas declared that he understood and agreed that "[n]o agent/producer . . . or any other person, except Foresters Executive Secretary or successor position, has power on behalf of Foresters to make, modify or discharge an insurance contract." [App. at p. 7]. Further, the Certificate states that "[n]o one, including the producer who provided you with this certificate, can make a promise or representation about the entire contract other than what is described in the entire contract." [Certificate at 10, Doc. 147-1].

5. Disputed, in part. Undisputed that Foresters' sales and marketing departments do not have knowledge how Foresters determines an insured's best knowledge and belief. However, Foresters' independent sales brokers are aware of the Incontestability provision of the Certificate, which describes the "knowledge and belief" requirement. [Id. at 14]

6. Disputed. Mr. Parrot testified that he lacked knowledge regarding the training of sales agents. [Parrot Tr. at 64:25; 65:1-13].

7. Disputed as phrased. Plaintiff testified that Ms. Lightbourn represented that "as long as you answer all the questions truthfully, you will be paid." [Plf. Tr. at 55:6-17]. As stated in response to Statement No. 3, Ms. Lightbourn was not authorized to tell Mr. Vinas whether his claim would be paid after a contestable review because that determination is "a result of the process." [Parrot Tr. at 57:21-25, 58:1-11].

8. Disputed. Plaintiff did not own Mr. Vinas's life insurance policy with American General, and did not own the Certificate. [Plf. Tr. at 27:20-23; Certificate]. Therefore, she had no authority to cancel or purchase either policy.

9. Disputed as to materiality.

10. Undisputed.

11. Undisputed.

12. Undisputed

13. Disputed as to accuracy and materiality.  Ms. Buckland considered Mr. Vinas's "knowledge and belief" regarding his application answers. [Buckland Tr. at 17:5-7, 21:10-13, Doc. 155-13].  Based on the number of times diabetes and related conditions appeared in Dr. Hershman's medical records, she determined that Mr. Vinas must have known, and believed, that he was being followed for diabetes.  [Id.].  Further, Foresters' "normal procedures" are not material to this action, as this type of pattern and practice information would only be relevant to a bad faith claim under Fla. Stat. §624.155, which Plaintiff is precluded from asserting as a result of Foresters' cure of the purported violations alleged in the CRN.  [Docs. 152-3 and 152-4].  Further, this statement is false, as Foresters considers the insured's knowledge and belief during contestability investigations. [Buckland Tr. at 17:5-7, 21:10-13; Sullivan Tr. at 85:12-25; 86:1-5; 138:5-9, Doc. 155-14].

14. Disputed as to materiality.  Whether Foresters, as a general practice, calls physicians during its contestability reviews is not material to this action.  Foresters' claims handling practices would only be relevant to a bad faith claim under Fla. Stat. §624.155, which Plaintiff is precluded from asserting as a result of Foresters' cure of the purported violations alleged in the CRN.  [Docs. 152-3 and 152-4].

15. Disputed.  Ms. Buckland testified that if she determined that an insured omitted a medical condition on his application, and she determined that he must have been aware of the condition "based on the amount of times it was noted in the medical records," she would draft a rescission letter "and send it to management" for further review.  [Buckland Tr. at 20:4-25; 21:1-13].

16. Disputed.  Foresters determined that Plaintiff's claim was payable based on a letter from Dr Hershman, dated March 26, 2020, which stated that he did not diagnose Mr. Vinas with diabetes or any complications from diabetes, and did not tell Mr. Vinas that he had diabetes. [3.26.20 Letter, Doc. 127-13].  Mr. Sullivan was deposed on March 4, 2020 and did not testify that Mr. Vinas believed that he "did not have diabetes" or "that the claim should not have been denied," as Foresters had not received Dr. Hershman's March 26, 2020 letter at that time.  Contrary to Plaintiff's contention, Mr. Sullivan testified that at the underwriting

4

stage, Foresters relied on Mr. Vinas's representation that he did not have diabetes or secondary conditions. [Sullivan Tr. at 121:22-25; 122:1-17]. Mr. Sullivan further testified that after Plaintiff filed her claim for the Death Benefit, Foresters believed that Mr. Vinas knew he was being followed for diabetes and secondary complications based on the number of times Dr. Hershman identified "diabetes" as one of Mr. Vinas's "assessments," as well as Mr. Vinas's lab results, which were positive for diabetes. [Sullivan Tr. at 85:12-25; 86:1-5; 138:5-9].

17. Disputed in part. Undisputed that Mr. Parrot would find it problematic if Foresters failed to consider an insured's "best knowledge and belief" during its Incontestability investigations, because that "would not be line with who" Foresters is as a company. [Parrot Tr. at 85:12-25; 86:1- 5]. Disputed that Mr. Parrot testified if Foresters failed to consider the insured's best knowledge and belief the "policy would have been sold under . . . false pretenses." [Id. at 86:6-18]. Once again, Plaintiff quotes a statement made by her counsel during Mr. Parrot's deposition, and not Mr. Parrot's testimony. The statement constitutes argument of counsel, and is not a "fact" that may be considered for purposes of summary judgment.

18. Disputed. Mr. Sullivan testified that several of the conditions identified in Mr. Vinas's medical records, which Mr. Vinas omitted on his Application, were material to Foresters' decision to rescind the Certificate, including type 2 diabetes, neuropathy, nephropathy, elevated glucose levels, and "unspecified" neurological issues. [Sullivan Tr. at 376:8-25; 377:1-2; 382:19-25; 383:1-10; 395:3-7]. To the extent that Plaintiff relies on Foresters' underwriting guidelines, or testimony detailing the information contained in those guidelines, the Court must disregard her contention because Plaintiff does not cite to the specific portion of the underwriting guidelines, as required by the Local Rules, nor could she, as these guidelines are not part of the record. Plaintiff filed a Motion to Withdraw the Underwriting Guidelines from the record because they were produced under a Confidentiality Agreement. [Doc. 137].

19. Disputed in part. Undisputed that Foresters denied Plaintiff's claim by letter dated April 5, 2017. Disputed to the extent that Plaintiff claims that Foresters did not "purport to have investigated or determined Mr. Vinas' best knowledge and belief." In the letter, Foresters states that based on the information contained in Mr. Vinas's medical records, it determined that he should have represented on the Diabetes Questionnaire that he had kidney and

5

sensory problems secondary to diabetes. [3.17.20 Letter, Doc. 155-15]. Foresters' statement that the "Certificate would not have been issued as applied for" was correct based on information available to Foresters when it denied Plaintiff's claim. Plaintiff waited until March 26, 2020 to provide Foresters with a letter from Dr. Hershman stating that he did not tell Mr. Vinas he had diabetes or secondary complications. [3.26.20 Letter].

20. Disputed as phrased. Mr. Parrott testified that to his "direct knowledge," the independent sales brokers did not speak with the claims department about Incontestability investigations, and that he was unaware as to whether they received training in this regard. [Parrot Tr. 63:24-15; 64:1-7, 25; 65:1-13].

**Foresters Statement of Additional Material Facts**

21. On the Application, Mr. Vinas declared and agreed that "No agent/producer, medical examiner or any other person, except Foresters Executive Secretary or successor position, has power on behalf of Foresters to make, modify, or discharge an insurance contract." [App. at 7, Doc. 155-1].

22. Ms. Lightbourn, Mr. Vinas' insurance broker, certified that she "**made no misrepresentation(s)** about Foresters product(s) applied for in th[e] Application," and "**no promise(s) regarding the benefit(s) or future performance of the product(s)** applied for, other than as specifically written in the specific product(s) applied for." [Id. at 8 (emphasis added)].

23. Shortly after Foresters received Mr. Vinas' Application, it received an MIB alert indicating that Mr. Vinas had been diagnosed with diabetes mellitus. Accordingly, Foresters required Mr. Vinas to complete a Diabetes Questionnaire. [Id. at 10-11].

24. By letter dated January 16, 2016, Foresters requested a copy of Mr. Vinas's MIB Consumer File and asked for details about any information not disclosed. [1.16.15 Letter, Doc. 155-3]. Foresters also advised that if the MIB file was inaccurate, Mr. Vinas could request that Foresters defer underwriting until it was corrected. [Id.].

25. In response, Ms. Lightbourn provided a letter from Mr. Vinas's treating physician, Dr. Kenneth Hershman, dated January 22, 2015, which stated that Mr. Vinas was "in good health and [wa]s not taking any medication for diabetes or on a diabetic diet. He ha[d] been advised to diet and exercise on a regular basis." [1.22.15 Letter, Doc. 155-4].

26. Foresters forwarded Mr. Vinas's application materials to underwriting for review. Foresters relied on Mr. Vinas's representations on the Application and Diabetes Questionnaire, and Dr. Hershman's letter without determining whether those representations were true to Mr. Vinas's best knowledge and belief. [Parrot Tr. at 56:18-25, 57:1-3; Fla. Stat. § 627.404(3)("An insurer shall be entitled to rely upon all statements, declarations, and representations made by an applicant for insurance.")].

27. Foresters approved the Application and issued the Certificate. Mr. Vinas owned the Certificate. [Id. at 1]. Plaintiff was the primary beneficiary. [Overflow Form, Doc. 155-6].

28. The Certificate contains a Merger Clause, which provides that that the Certificate and application materials, <u>inter alia</u>, constitute the parties' "entire contract," which could not be modified by anyone. [<u>Id.</u> at 10].

29. The Certificate further provides that "[n]o one, including the producer who provided you with this Certificate can make a promise or representation about the entire contract other than what is described in the entire contract." [<u>Id.</u>]

30. Mr. Vinas had 14 days to examine the Certificate and notify Foresters that he was not satisfied. [<u>Id.</u> at 1]. Upon request, Foresters would have voided the Certificate and refunded all premiums. [<u>Id.</u>]

31. During the underwriting process, neither Plaintiff nor Mr. Vinas spoke with anyone other than Ms. Lightbourn about the Certificate [Plf. Tr. at 64:15-21].

32. After Mr. Vinas died on January 11, 2017, Plaintiff filed a claim for the Death Benefit. [Doc. 155-9]. In response to Foresters' request, Plaintiff provided medical records from Dr. Hershman. [Hershman R., Doc. 155-11].

33. Dr. Hershman's records contained a lab report dated October 14, 2010, which indicated that Mr. Vinas's Hemoglobin A1c level was 6.6, which was consistent with diabetes. [<u>Id.</u> at 2].

34. Additionally, under the "assessment" section of Dr. Hershman's office visit notes, he identified the following conditions:

    a. Diabetes mellitus type 2 or unspecified type with renal manifestations on July 30, 2012, and August 19, 2014. [<u>Id.</u> at 49, 60].

    b. Diabetes mellitus type 2 or unspecified type with neurological manifestation on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014. [<u>Id</u>. at 47, 51-52, 57].

    c. Neuropathy in diabetes on November 5 and 12, 2013, March 10, 2014, August 13, 2014, and December 15, 2014. [<u>Id.</u> at 47, 51-52, 54, 57].

    d. Diabetes mellitus type 2 or unspecified type with peripheral circulatory disorder on November 5, 2013, March 10, 2014, August 13, 2014, and December 15, 2014. [<u>Id.</u> at 47, 51-52, 57].

    e. Nephritis and nephropathy on August 19, 2014. [<u>Id.</u> at 49].

35. On February 28, 2017, Foresters' underwriting department reviewed Mr. Vinas's medical records. [UW Opinion, Doc. 155-12]. Based on the number of times the diabetes and related conditions appeared in the records, the underwriter determined that Mr. Vinas knew he was

8

being followed for diabetes and secondary complications, including nephritis, nephropathy, and renal complications. [Buckland Tr. at 17:5-7, 21:10-13; Sullivan Tr. at 138:5-9].

36. The underwriter determined that Mr. Vinas did not accurately answer Questions 7 and 11 of the Diabetes Questionnaire. [UW Opinion at 2]. The underwriter found that "[h]ad [Foresters] been aware of the Applicant's history of diabetes complicated by disorders of the circulatory system and the kidneys, [Foresters] would have declined to issue coverage." [Id. at 2].

37. By letter dated April 5, 2017, Foresters denied Plaintiff's claim, rescinded the Certificate, and tendered a check in the amount of $11,448.00 representing all premiums paid for the Certificate. [4.5.17 Letter]. Foresters advised: "If you have any medical or other information that you think would show that the conclusions arrived at . . . are incorrect or incomplete, **we ask that you provide us with all such information so we may conduct a further review**." [Id. at 3 (emphasis added)].

38. Plaintiff did not request a further review and did provide any additional information until after she initiated this action.

39. On February 5, 2020, Plaintiff served Foresters with a Civil Remedy Notice ("CRN"), alleging, without basis, that Foresters denied Plaintiff's claim in bad faith. [CRN, Doc. 152-3]. Under Florida law, Foresters had 60 days to investigate and "cure" Plaintiff's alleged violations. [Fla. Stat. § 624.155].

40. Plaintiff waited until March 26, 2020—50 days after filing the CRN, and with only 10 days left in the 60 day CRN response time—to provide a letter from Dr. Hershman stating that despite the notations in his records indicating that Mr. Vinas had diabetes and secondary complications, he did not diagnose Mr. Vinas with diabetes or any complications from diabetes, and did not tell Mr. Vinas that he had diabetes. [3.26.20 Letter].

41. Based on Dr. Hershman's letter, Foresters immediately agreed to pay the Death Benefit, plus interest to compensate Plaintiff for any damages she may have experienced between her loss and the settlement, as well as reasonable attorney's fees and taxable costs through the date of payment. [CRN Response, Doc. 152-4].

42. On April 6, 2020, Foresters issued a check to Plaintiff in the amount of $118,220.74, which included the $92,000.00 Death Benefit and $26,220.74 in interest. [Check, Doc. 152-2].

43. Foresters' CRN cure precludes Plaintiff from pursuing a bad faith claim against Foresters. [Fla. Stat. § 624.155].

Dated: February 19, 2021

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax


By: __s/Kristina B. Pett_____
    KRISTINA B. PETT
    Fla. Bar No. 0973688
    kristina.pett@mhllp.com
    DANIELLE E. SHURE
    Fla Bar No. 118911
    danielle.shure@mhllp.com

**CERTIFICATE OF SERVICE**

      I certify that on February 19, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Craig M. Greene, Esq.
>Kramer Green Zuckerman Greene & Buchsbaum, P.A.
>4000 Hollywood Blvd.
>Suite 485-S
>Hollywood, FL 33021
>cgreene@kramergreen.com
>*Counsel for Plaintiff*
>
>Adrian Neiman Arkin, Esq.
>Mintz Truppman, P.A.
>1700 Sans Souci Blvd.
>North Miami, FL 33181
>adrian@mintztruppman.com
>*Co-Counsel for Plaintiff*
>
>    s/Kristina B. Pett
>    Kristina B. Pett