UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No.: 1:18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

     Plaintiff,

vs.

THE INDEPENDENT ORDER OF FORESTERS,

     Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Digna Vinas ("Mrs. Vinas"), pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, hereby files her response to the Motion for Summary Judgment (D.E. 156) filed by Defendant, the Independent Order of Foresters ("Foresters"), with and incorporated Memorandum of Law:

## I.    **INTRODUCTION**

Foresters' operative Motion for Summary Judgment ("second Motion for Summary Judgment") (D.E. 156) is the culmination of a series of shotgun style requests for relief.  This "do over" second chance at dispositive briefing (earned by forcing Vinas to obtain a court order to depose its expert Marc Frager), like its prior memos, hopelessly confuses argument/rhetoric with evidence.  In fact, as will be shown, Foresters' counsels' arguments often ignore unrefuted testimony from its own Corporate Representatives ("CR") which directly contradicts its counsel's rhetoric on several key points, and caselaw directly refuting others.  The motion resembles a desperate man buying as many lottery tickets as possible in the hope one of them will "hit". This strategy explains the shifting legal and factual assertions comparing Foresters' first (now withdrawn) Motion for Summary Judgment (D.E. 128) to its present motion. (D.E. 156).

No point exemplifies both these issues better than Foresters' argument relating to its sales agent, Jazmin Lightbourn. Foresters' Motion claims that Ms. Lightbourn was not its agent and was not authorized to explain the terms of the Foresters' products she sold. That is a <u>direct contradiction</u> to the <u>undisputed</u> testimony in this case. Foresters' CR expressly testified that its sales agents are <u>absolutely authorized</u> to sell and explain accurate policy terms; and it is <u>undisputed</u> Ms. Lightbourn's statement to the Vinases (that as long as Mr. Vinas answered questions truthfully, i.e., to his best knowledge and belief ("BK&B"), that his claim would not be denied for making a misrepresentation in the application), was an accurate representation of how the policy <u>was supposed to work</u>. The representation was nonetheless a lie and fraudulent because it is not how the system actually did work, and it is <u>undisputed</u> that Foresters <u>never checked</u> to confirm whether the claim department did or did not look at the insured's BK&B to make a claim decision. In other words, <u>Foresters didn't know whether the representation it was making at the time of sale was true or false</u>. This is fraud under Florida law! There is <u>no record evidence to the contrary</u>. Yet, Foresters' rhetoric stating otherwise abounds.[1] While Vinas believes this is an issue the Court should resolve in Vinas' favor on its own summary judgment, (D.E. 159), at the very least, a question of fact is

---

[1] It is for this reason Vinas plans to file a Motion in Limine to prevent such unsupported argument.

presented. Foresters' other new summary judgment arguments are similarly contradicted by record evidence, are irrelevant to a fraud cause of action, or simply show a lack of understanding of the cause of action being plead and proven.

Finally, Foresters asks the Court to dismiss Count I as moot and to "declare that Foresters is only responsible for reasonable attorney's fees through April 13, 2020." (D.E. 156, at 20). First, it is Vinas who is entitled to judgment on Count I under Florida law because Foresters has confessed judgment. Specifically, Foresters confessed judgment under Florida law by paying death benefits after eighteen months of litigation, but paradoxically at the same time, claims it did not breach the contract, continues to oppose entry of judgment in Vinas' favor, and opposed consequential damages even before Manor House, LLC v. Citizens Property Ins. Corp, SC19-1394, 2021 WL 208455 (Fla. Jan. 21, 2021). The Court should deny Foresters' motion for summary judgment, grant Vinas' Motion on the same issues, and let this case go to trial on damages and punitive damages, reserving jurisdiction on the fee issue.

## II.   RESPONSE IN REBUTTAL TO STATEMENT OF MATERIAL FACTS

Once again Foresters provides a statement of facts that applies to the case Foresters would prefer to defend, rather than Fraud in the Inducement as plead.  The citations are also not supported by the record.  First, Foresters argues the issue of the "reasonableness" of its investigation into Mr. Vinas' BK&B. Reasonableness deals with Foresters' claims behavior. This has nothing to do with the issues in this Fraud in the inducement case, and only matters to Foresters' fictional bad faith case, not to Count III. (D.E. 156, at 2). The relevant inquiry is whether Foresters misrepresented when it told the Vinases that as long as Mr. Vinas answered the application truthfully, i.e., to his best knowledge and belief, the claim would not be denied for misrepresentation. Neither the jury nor the Court will be required to determine whether Foresters made a "reasonable investigation".

Further, as Vinas has pointed out in response to Foresters' numerous motions, there is no legal issue remaining that requires a determination of whether Mr. Vinas had diabetes. That issue relates to the time of claim! The question in this case is whether Foresters lied in 2015 when it sold the policy, not whether its investigation was "reasonable" in 2017.

While the issue of "reasonableness" is completely irrelevant to the present issues, the fact that Foresters' representation at the time of sale was false remains undisputed. The representation was that if Mr. Vinas were to die within the first two years, as long as he told

the truth on his application, i.e., provided answers to his BK&B, Foresters would not deny a claim based on a misrepresentation. Incredibly, Foresters represented to this Court, in contravention of all the evidence, that "Foresters' underwriter <u>determined</u> that Mr. Vinas did not answer the questions in his Application and Diabetes Questionnaire to his best knowledge and belief." (<u>Id</u>.). <u>That is totally and absolutely false!</u>

The testimony on this point came from the actual claim investigator that denied Mr. Vinas' claim. The testimony was shocking for its disregard of the representations made to the Vinases during the sales presentation (reflecting the standard of correctness in the application) that a contestable investigation will look to the insured's BK&B to determine whether there was misrepresentation:

> Q.   <u>Do you make your inquiries</u> [during contestable investigations] <u>trying to determine what the proposed insured's best knowledge and belief was at the time they filled out the application,</u> or do you make your inquiry to determine if the insured left out, for example, a diagnosis <u>that he may or may not have known about</u>?
>
> A.   <u>I look to see if there was anything that was not disclosed on the application.</u>
>
> Q.   <u>So, your focus is not whether the insured **knew** about the thing that was not disclosed,</u> your inquiry is to determine whether or not there was a diagnosis, or a test, or something like that that was not disclosed?
>
> A.   <u>I want to see if there was any **medical information** that was not disclosed on the application</u>
> .

(Buckland Depo., D.E. 172-6 p. 14, l. 10-p. 15, l. 5) (Emphasis Supplied).

.   .   .

> Q.   Is there a reason you wouldn't call or make a written inquiry of the doctor to find out if he, if the patient was aware of his medical condition?
>
> A.   There's no reason.
>
> Q.   Okay. You could do it?
>
> A.   I could go back to the doctors; correct.

(<u>Id</u>., p. 21, lines 15-22).                        .   .   .

> Q.    Your way doesn't tell you the actual answer [what the insured's best knowledge and belief is]; does it?
>
> A.    No.

(Id. at p. 23, lines 7-9)                .        .        .

> Q.    Do you then rescind the policy, **even though you have not made a determination whether the insured knew of the condition**?
>
> A.    At that point I would do up a rescission letter and send it to management for review.

(Id., p. 20, lines 17-25) (Emphasis supplied). In short, despite its promise to the Vinases that Foresters would make its contestability determinations based upon Mr. Vinas' BK&B, Foresters openly admitted it never even undertook to determine what Mr. Vinas' best knowledge and belief was. Hence, the evidence is undisputed that the representation Foresters would decide the contestability claim based on Mr. Vinas' BK&B was false as was Foresters' claim in its present motion that it made such a determination. There is no contrary evidence.

Next, Vinas would be remiss if she did not once again rebut Foresters' complete fabrication that during discovery, Foresters "repeatedly attempted to obtain information about Mr. Vinas' medical history and his knowledge of his medical conditions" and somehow Plaintiff impeded those efforts. (D.E 156 pg. 6-7). Foresters waited literally 16 months before propounding its first discovery requests. This was less than a month before discovery would have had to be propounded before discovery cutoff. Specifically, on February 5, 2020, the same day the CRN was filed, Foresters served its first interrogatories, requests for production and admissions. (D.E. 161). Then, two weeks later, on February 19, 2020, Foresters issued its first notice of non-party subpoenas for Dr. Hershman's records. (D.E. 61-3, at ¶ 3). Vinas appropriately objected to the scope of the subpoena given the issues in the case, and a discovery hearing was set. That is the sum total of Foresters' "repeated attempts" and "numerous discovery requests." (D.E. 156, at 3). In the meantime, Foresters had medical record disclosure authorizations, along with a written invitation from Dr. Hershman to contact him to discuss Mr. Vinas' medical condition. (Sullivan Depo, D.E. 172-3, p. 38 lines 4-22; p. 115 l. 2-9; D.E. 172-9). None were used!  Foresters' attempt to blame Vinas for its own lack of discovery is shameful at least … a misrepresentation to this Court at worst.

Finally, Foresters has included a misstatement of <u>law</u> in its statement of <u>facts</u>! Foresters argues Vinas amended her complaint to plead consequential damages "which are precluded as a matter of law." <u>Id.</u> at 2-3. Until the date the Florida Supreme Court issued the new <u>Manor House</u> decision and reversed Florida law several weeks ago, SC19-1394, 2021 WL 208455 (Fla. Jan. 21, 2021) consequential damages were unquestionably authorized "… based squarely on breach of contract claims requiring no allegation or proof" of bad faith. <u>Manor House, LLC v. Citizens Prop. Ins. Corp.</u>, 277 So. 3d 658, 662 (Fla. 5th DCA 2019), <u>decision quashed,</u> 2021 WL at 208455. Foresters uses the benefit of hindsight to shore up its forthcoming arguments on attorney fees by obscuring the fact that, when it finally tendered the death benefits, Vinas was <u>clearly</u> entitled to whatever consequential damages she was able to prove. Other misstatements are rebutted as they arise.

### III.   <u>ARGUMENT AND MEMORANDUM OF LAW</u>
#### <u>Summary Judgment Standard</u>.

As the movant, Foresters must shoulder the burden to "'demonstrate the absence of a genuine issue of material fact.'" <u>Balthazar Mgmt. v. Beale St. Blues Co., Inc.</u>, 17-CV-81214, 2018 WL 8221675, at *3 (S.D. Fla. Oct. 17, 2018) (quoting <u>Shiver v. Chertoff</u>, 549 F.3d 1342, 1343 (11th Cir. 2008)). A mere conclusory statement that the nonmovant cannot meet the burden of presenting evidence of issues of material fact at trial is insufficient. <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). The facts should be construed in favor of the nonmoving party, who receives the benefit of every reasonable inference. <u>Bradley v. Franklin Collection Serv., Inc.</u>, 739 F.3d 606, 608 (11th Cir. 2014).

As regards fraud specifically, the Eleventh Circuit has recognized that where facts are disputed, summary judgments in fraud cases are usually improper, "as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." <u>Glob. Quest, LLC v. Hor. Yachts, Inc.</u>, 849 F.3d 1022, 1029 (11th Cir. 2017). Indeed, the elements of fraud, "particularly including intent and knowledge" of the defendant, often cannot be proven by direct evidence. <u>Id.</u> at 1030.

#### <u>The Evidence is Undisputed that Jazmin Lightbourn Was Foresters' Agent Authorized to Make Representations on Behalf of Foresters</u>.

Despite Foresters' arguments and rhetoric to the contrary, the undisputed evidence is that Ms. Lightbourn was, as Foresters' described her in its own internal documents, a "sales

agent" authorized to make representations on its behalf. (D.E. 147, at ¶ 36a; Add'l Facts, at ¶ 6). Vinas was not required to allege in greater detail the "type" of agent Ms. Lightbourn was "in order to satisfy notice-pleading requirements." Platypus Wear, Inc. v. Clarke Modet & Co., S.L., 06-20976-CIV, 2008 WL 2557503, at *2 (S.D. Fla. June 23, 2008), adopted in relevant part, 06-20976-CIV, 2008 WL 2761300 (S.D. Fla. July 15, 2008). Further, at this summary judgment posture, Foresters cannot credibly claim it lacks notice of this issue!

Under Florida law, when facts are disputed, the question of agency is generally reserved to the trier of fact. Borg-Warner Leasing, et. al v. Doyle Elec. Co., Inc., 733 F.2d 833, 836 (11th Cir. 1984). In this case, however, given the undisputed evidence, summary judgment should be entered for Vinas on this issue and certainly not for Foresters. Foresters' CR Doug Parrott expressly addressed the issue of whether Ms. Lightbourn was authorized to make the representations at issue and explain how the contestability clause worked. (Vinas quotes extensively to emphasize that despite Foresters' rhetoric, the evidence is truly undisputed):

Q: When a sales representative is going to a prospective insured's home, is it fair for that sales representative to advise the insured that they are there on behalf of Foresters? Is that fair?

A: That is correct.

Q: From the perspective insured's position, the prospective insured is not expected to distinguish between whether that person is technically employed by an intermediate agency but only selling on behalf of Foresters or not, would that be true?

A: I wouldn't think so. They would have knowledge that this person is representing Foresters.

Q: And that's the way Foresters wants it, right?

A: Correct.

(Parrott Depo, D.E. 172-7, at p. 92, l. 13–p. 93, l. 4) (emphasis supplied). Mr. Parrott discussed more than appearances. He explicitly stated **Foresters' sales agents are authorized to explain the Foresters products they sell**:

Q: … you agree with me that its necessary for the independent agent to communicate with the prospective insured about the product that they are looking to sell, does that sound reasonable?

A That's reasonable, yes.

7

> Q:     And you agree with me that Foresters authorizes these people to make accurate representations about Foresters products, correct?
>
> A:     Correct. …
>
> Q:     And all of those representations are authorized by Foresters as long as they are accurate representations; correct?
>
> A:     That is correct.

(Id., p. 40, l. 20 – p. 41, l. 11) (Emph. Supp.). The CR went on to admit that the representations Lightbourn made were accurate and reflected the standards Foresters purported to apply:

> Q.     If you were to find, as the head honcho of underwriting, that the folks that looked at and investigated Mr. Vinas' claim expressly did not look into what his best knowledge and belief was, in fact, said that they weren't investigating that, that all they were looking at was whether or not he had diabetes. If you were to learn that and assuming it was true, would you take any action from the underwriting perspective?
>
> A.     I would have a problem with that just as an officer of the company.
>
> Q.     And why would you have a problem with that as an officer of the company?
>
> A.     As an officer of the company I have a bigger responsibility than the area in which I am responsible for. So that in terms of the practice would not be in line with who we are.
>
> Q.     Because if that's true, and I understand everything you just said, because if what I said is true, then the policy would have been sold under, let's say, false pretenses or with a representation that wasn't true, fair? …
>
> A.     That's the intent or that's the goal of the contestable review to make sure that what we learned at the front end when the case was issued is indeed accurate on the back end. If it's accurate to what we knew on the front end a claim would be paid.
>
> Q.     And the standard for accuracy per Foresters own application is the insured's best knowledge and belief, whether they are telling the truth or not, right?
>
> A.     That is correct.

(Id., p. 85, l. 5-p. 86, l. 23.) (Emp. Supp.). Not coincidently, Mrs. Vinas provided testimony completely consistent with Mr. Parrot that Ms. Lightbourn was Foresters' authorized agent to speak on this issue:

Q:      …what are you specifically claiming was falsely represented?

A:      That as long as we answered all the questions correctly and we said the truth – and I know that we said the truth, because she mentioned that a lot – and because it would still be paid. If not – if it wasn't going to be paid, we would never have left the other insurance. … It was more reputable. Foresters would pay even though it would be within the first two years, which we thought it would never happen. …

Q:      <u>When you say "she" do you mean Jazmin Lightbourn</u>?

A:      Jazmin and Foresters because Jazmin was Foresters. As far as we were concerned, when we talked to Jazmin, we were talking to Foresters.

Q:      We'll get through that quickly, but just answer the question. Was there anyone, other than Jazmin Lightbourn, that you contend made representations to you concerning the policy?

A:      <u>As far as we were concerned, Jazmin</u> … Because I called Foresters – we called Foresters. Foresters gave Jazmin the number. When we talked to Jazmin, she only said "Foresters this, Foresters that. Foresters will pay. Foresters is a better company than American General. When I say "Jazmin," I'm saying "Foresters".

(Vinas Depo, D.E. 172-1, p. 112, l. 8 – p. 114, l. 24 (Emphasis supplied)).

It is therefore undisputed by Foresters' own CR that its representation made to the Vinases, through Ms. Lightbourn, was an accurate statement of how the process is supposed to work. There is no question of fact that Ms. Lightbourn was approved to tell Mr. and Mrs. Vinas "that as long as they tell the truth, 100 percent the truth as they know it, that Foresters will not rescind the policy based upon a contestable claims procedure." (Parrott Depo, D.E. 172-7, at p. 55 l. 7 – p. 56 l. 17). That is **the** misrepresentation in this case.[2]

Significantly, if Ms. Lightbourn's statement was not authorized, or was not an accurate representation of how Foresters' contestability investigation is supposed to work, where was the cross examination? Where is there any evidence that simply says: "What Ms. Lightbourn said was wrong. She went off the rails. She wasn't authorized to make such a statement." The simple answer is: THERE IS NONE, because Ms. Lightbourn's representation <u>was</u>

---

[2] Foresters argument that Count III is a claim for vicarious liability is a fiction. As explained in Vinas' Response to Foresters' Motion to Dismiss (D.E. 162, at 11-12), Count III is a direct fraud count against Foresters for its intentional fraud. There is nothing vicarious, or technical about it.

9

authorized and was <u>exactly</u> how the process was supposed to work, Foresters' lawyers' unsupported argument notwithstanding. Vinas is entitled to partial summary judgment on this issue. Foresters' motion should be denied.

Next, Florida law does not allow Foresters to escape liability by conclusorily characterizing Ms. Lightbourn as a "broker" or not a "captive agent". First, apart from being completely contrary to evidence, Vinas never claimed Lightbourn was a "captive agent." Hence, Foresters' argument that she wasn't, is simply another strawman. Next, whether Lightbourn was a "broker" is irrelevant. Florida law is clear that an individual can be both a broker and insurer's agent as well. <u>Almerico v. RLI Ins. Co.</u>, 716 So. 2d 774, 776–77 (Fla. 1998) ("well settled" rule "that the insurance broker may act in the dual capacity of broker for the insured and agent of the insurer."). Given the undisputed CR testimony above, Foresters cannot be heard to credibly argue Ms. Lightbourn was not its sales agent authorized to say exactly what she said.

Foresters next raises the specter of lack of authority on statutory agency, actual agency, and apparent agency. First, the argument is irrelevant given the undisputed evidence of actual agency above. Given Mr. Parrott's acknowledgment Ms. Lightbourn was authorized to, and provided an accurate explanation of the policy, Foresters' three agency strawmen are legally and factually empty. For the fifth time, the evidence is <u>undisputed</u> that Ms. Lightbourn was Foresters' agent, authorized to make representations on its behalf. Foresters offers no evidence in rebuttal.

Strictly so as not to leave the three strawmen argument unresponded to, Foresters admits that under §626.342(2), unless Lightbourn's representations were inconsistent with policy language, Lightbourn <u>would be</u> a statutory agent. (D.E. 156, at 16). Here, the undisputed evidence is that Ms. Lightbourn <u>accurately</u> described the what the BK&B standard should be, and therefore <u>never made any representation "other than the terms of the Certificate</u>." (*Supra* pp. 4-5, 7-11). Foresters has offered <u>nothing</u> to suggest otherwise. Foresters' next statement that it didn't provide the application to Ms. Lightbourn is a misrepresentation again refuted by its CR's express testimony. (D.E. 156, at 16).

> Q.    And if I understand correctly, <u>you all give your applications and your promotional materials to these, a group of what you call independent agents, and they go out and they sell your policies</u>. They could … sell other people's but they sell yours as well.

10

A.     Correct. Once they are contracted and appointed with us then they have access to this information.

Q.     Okay. <u>And the applications that they give are provided by Foresters; correct</u>?

A.     Correct.

(Parrott Depo, D.E. 172-7, p. 39 l. 22 – p. 40 l. 7, emph. supp.).  Foresters' argument is so factually and legally empty it is unable to cite <u>any</u> authority or <u>any</u> evidence for the proposition. The Court should deny Foresters' motion for summary judgment.

Foresters next incorrectly suggests actual agency requires some explicit contract. That is not the law! In Florida agency can be proven by "circumstances . . . such as the relation of the parties to each other and their conduct with reference to the subject matter . . . ." <u>Watkins v. Sims</u>, 88 So. 764, 765 (Fla. 1921). Given the CR testimony above, Foresters cannot credibly suggest that, under <u>these circumstances</u>, Lightbourn was not authorized to act for it as a salesperson. If Ms. Lightbourn was not Foresters' actual agent, then how was the policy sold? Foresters collected premiums from the Vinases <u>for almost two years</u> as a result of the policy <u>it sold through Ms. Lightbourn</u>. Now that Foresters has been caught in fraud by authorizing its agents to make representations it didn't know were true or false, Foresters is willing to cut Ms. Lightbourn loose and argue she never had that authority. Foresters is required to produce evidence to support its contention. Here, they offer NONE. Ms. Lightbourn's status as Foresters' agent has not been challenged by any <u>evidence</u> in this case. Vinas' motion for partial summary judgment should be granted, and Foresters' denied.

Foresters next makes a desperate attempt to arbitrarily narrow Lightbourn's authority to state only that "a death in the first two years will have a contestable review." (D.E. 156, at 17). Like so many of Foresters' other arguments, this one is directly contradicted by its CR testimony. Mr. Parrott expressly stated that Foresters' sales agents are authorized to make representations about the policy <u>as long as they are accurate</u>. <u>See</u> Supra pgs. 4-5, 7-10. Mr. Parrott said **nothing** about limiting the presentation to a single quote suggested by counsel.

Foresters' cited caselaw is totally inapplicable and relates to whether a driver was an employee or an independent contractor for the purposes of, *inter alia*, entitlement to overtime pay and reimbursement of expenses. <u>Carlson v. FedEx Pack. Sys., Inc.</u>, 787 F.3d 1313, 1316–19 (11th Cir. 2015). The undisputed evidence in this case establishes without question that Lightbourn was Foresters' actual agent for the purposes Count III (Fraud in the Inducement).

11

Similarly, Foresters' apparent agency argument, focuses entirely on explicit representations, which are not necessary for a principal to make a "manifestation" of authority. (D.E. 156, at 17-18). Florida law is clear that a principal can create the appearance of an agent's authority by "knowingly permit[ting] [an] agent to act in a certain manner as if he were authorized . . . or by silently acting in a manner which creates a reasonable appearance of an agent's authority." Ja Dan, Inc. v. L-J, Inc., 898 F. Supp. 894, 900 (S.D. Fla. 1995) (citations omitted). A manifestation can also be demonstrated through insurer-supplied "*indicia* of agency," such as "any blank forms, applications, stationery, or other supplies to be used in soliciting, negotiating, or effecting contracts of insurance." Almerico v. RLI Ins. Co., 716 So. 2d 774, 777 (Fla. 1998) (emphasis in original) (quoting Fla. Stat. § 626.342).

Here, Foresters sent Ms. Lightbourn in response to a call from the Vinases. (D.E. 172, ¶¶ 3-4). She arrived with a Foresters application, provided by Foresters as well as Foresters' authorization to explain the policy to the Vinases. (Id., at ¶ 7; D.E. 172-12 (application)). Indeed, when Foresters issued the policy, the Vinases had never spoken to anyone at Foresters other than Ms. Lightbourn! (D.E. 156, at 18). This is no accident; as its CR agreed, Vinas was "not expected to distinguish between whether that person is technically employed by an intermediate agency," and "that's the way Foresters wants it." (D.E. 172, at ¶ 2).

In literal defiance of all the above undisputed testimony, Foresters paints Ms. Lightbourn as a rogue interloper who committed some unspecified misconduct and now has tried to "ingeniously create an appearance of authority by [her] own acts." (D.E. 156, at 18). Foresters would have the Court believe Ms. Lightbourn was a mustache-twirling villain, out to tie Foresters to the metaphorical railroad track with her wrongdoing. Absurd! The evidence is undisputed that Lightbourn was authorized to sell and explain the terms of Foresters' products. (*Supra* pp. 4-5, 7-10). Foresters hasn't offered any evidence to the contrary.

### The Undisputed Facts Clearly Establish Foresters Made a Fraudulent Misstatement to The Vinases

Foresters claims there is no evidence to dispute its position that it "did not intentionally make a false statement of material fact." This couldn't be more false. First, Foresters has not set forth ANY evidence that it "did not intentionally make a false statement of material fact." None of Foresters' witnesses that have testified has asserted that position. As such, and as has

12

become a familiar refrain with all Foresters' memos, Foresters is basing its request for relief on the <u>argument</u> of counsel without <u>evidentiary</u> support.

The assertion is <u>legally</u> unsupported as well with <u>evidence</u> establishing exactly to opposite … that Foresters did commit fraud under Florida law. As Vinas has set forth in her own Mot. for Prtl Summ. Jdgmnt, (D.E. 159, at 10-12), under Florida law, a plaintiff can prove the falsity of a representation in one of several ways. Fraud can be proven by showing the defendant made the representation without knowledge as to its truth or falsity. <u>Parker v. State of Florida Bd. of Regents ex rel. Florida State Univ</u>.,724 So. 2d 163, 168 (Fla. 1st DCA 1998) and cases cited therein. Plaintiff can also show that Foresters made a misrepresentation in violation of its "duty to know as to the truth or falsity of the representation made." <u>Wheeler v. Baars</u>, 15 So. 584, 588 (Fla. 1894). The third way Mrs. Vinas can prove fraud is the paradigmatic fraud claim: a knowing lie, made with "actual knowledge of its falsity." <u>Id</u>.

While only one method is necessary, Vinas has cited the Court to undisputed evidence as to the first and second methods through Foresters' own admissions, and circumstantial evidence of the third. Specifically, Foresters <u>admits</u> <u>it never inquired</u> whether the promise made to the Vinases that Foresters would determine whether a statement was a misrepresentation by looking at Mr. Vinas' BK&B was true or not, because they never checked! (D.E. 172, at ¶¶ 24-32; D.E. 159, at ¶ 28-29). Further, Foresters undisputedly had a special relationship of trust with the Vinases wherein they owed them a duty to determine and tell them the truth!! (D.E. 172-17 (Stein expert affidavit)). Evidence to support the third method (as well as evidence supporting a higher level of punitive damages), comes from the circumstantial, and heinous evidence that Foresters <u>expressly ignored</u> direct evidence showing Mr. Vinas' BK&B <u>was that he did not have diabetes</u>. Instead, Foresters based its decision about paying the claim on a critique of his doctor's standard of care for patient reporting. (Sullivan Depo, D.E 172-3, at p. 138 lines 10-18). This combination of evidence establishes Foresters never intended to pay a contestable claim from the moment it entered into the contract. As to <u>Foresters' Motion for Summary Judgment</u>, clearly Foresters has failed to carry its burden to disprove any of these theories, much less all of them. Vinas, however, has produced unrefuted evidence as to two theories. Vinas' Motion for Summary Judgment should be granted.

13

Foresters next requests a summary determination that "Foresters meaningfully considered whether Mr. Vinas' representations in the Application and Diabetes questionnaire were true to his best knowledge and belief." (D.E. 156, at 12-13) (emphasis supplied). First, as Vinas has repeatedly explained, this is an irrelevant question. The issues before the Court are Foresters' actions and intent in **2015**, not its **2017** claim handling, "meaningful" or not. Thus, summary judgment should first be denied because this issue is irrelevant.

Some of the evidence of on this matter is however, relevant to prove Foresters never intended to determine Mr. Vinas' best knowledge and belief as the Vinases were promised. For example, despite its claim to contrary, Foresters knew, as early as 2015, that Mr. Vinas was told by his doctor that he didn't have diabetes. As such Vinas' statement that he didn't have diabetes, was his BK&B. Consider Foresters' CR testimony on the issue:

> Q.    And presumably there was at least some conversation so that he [Mr. Vinas] could convey what his concern [diabetes] was; fair enough?
>
> A.    One would hope.          .        .        .
>
> Q.    And it [notes from Forester's claim file] say: "And after doing additional testing, Dr. Hershman concluded the proposed insured did not have diabetes"; right?
>
> A.     That is what it says.
>
> Q.    **And that is the last information that Foresters had in terms of actual communication between Dr. Hershman and the insured with respect to whether he had diabetes [before denying Mr. Vinas' claim]**?
>                    .        .        .
> Q.    **True**?
>
> A.    **I believe that is true**.

(D.E. 172-3, at p. 144 lines 2-25 (emph. supp). Claims adjudicator Lisa Buckland acknowledged the notes as well. (D.E. 172-6, Buckland depo, p. 54, l. 18 – 24). Further, she did not even attempt to determine Mr. Vinas' best knowledge and belief.  The exact questions and answers that demonstrate this undisputed fact are quoted on pages 4-5, *supra*.

Accordingly, the undisputed evidence shows that Foresters lied to the Vinases when it promised that an incontestability determination would be based on Mr. Vinas' BK&B. The undisputed evidence from Foresters' own files and lips shows not only that Mr. Vinas' BK&B

was that he did <u>not</u> have diabetes, but that Foresters didn't even look to make that determination. "Reasonableness" is not only irrelevant, it is unsupported. As to this element, either a question of fact is created, or the issue should be determined in favor of Vinas.

Foresters' next argument that Mrs. Vinas cannot prove reliance on its misrepresentations is meritless and nothing more than a repackaged standing argument. (D.E. 156, at 13; <u>see</u> D.E. 152, at 11-12, D.E. 162, at 15; <u>see</u> pp. 17-18, *infra*). The problem for Foresters is that the evidence is undisputed from Mrs. Vinas herself that she and her husband made the joint decision to change policies in mutual reliance on Foresters' misrepresentations. They <u>both</u> sat with Foresters' sales agent and talked through the decision with her. After Foresters assured them the standard for accuracy to determine a misrepresentation was Vinas' BK&B, they jointly decided to cancel their existing policy and subject themselves to a new two-year contestability period. (D.E. 172, at ¶¶ 8-13). Mrs. Vinas' testimony is unrebutted, and she is entitled to Summary Judgment on this issue.

Foresters' third argument claiming immateriality because "the same or similar language is found in every life insurance policy sold in Florida" is respectfully absurd, and without legal basis. (D.E. 156, at 13). Foresters' own authority[3] provides that, in Florida, a fact is material so long as it "**made a difference** in [a] plaintiffs' decision to enter the contract"! <u>Gilchrist Timber Co. v. ITT Rayonier, Inc.</u>, 127 F.3d 1390, 1394 (11th Cir. 1997) (emphasis added). Here, Mr. Vinas was not comparing different policies in search of one with no contestability period. Mrs. Vinas undisputedly testified they were deciding <u>whether</u> to replace an existing policy <u>at all</u>. There is no evidence there was a choice <u>between</u> different companies. (Vinas Depo, D.E. 172-1, p. 29, lines 17-23). Applying this law, it is clear that "but for" the "alleged misrepresentation [the Vinases] would not have entered [the] contract." <u>Id.</u> (citing <u>Revitz v. Terrell</u>, 572 So.2d 996 (Fla. 3d D.C.A.1990)). The Court should deny summary judgment.

Finally, Foresters' fourth argument that because the Vinases switched to Foresters to save on premiums after age 80, it somehow makes its misrepresentation "not material" is the

---

[3] The other new case Foresters cites merely holds that a plaintiff could not establish materiality after denying exactly that in deposition. <u>Durden v. Citicorp Tr. Bank, FSB</u>, 3:07-CV-974-J-34JRK, 2009 WL 6499365, at *10 (M.D. Fla. Aug. 21, 2009).

ultimate example of desperation. (D.E. 156, at 14). <u>Of course,</u> the Vinases had another reason to switch policies aside from Foresters' misrepresentation! Who would switch policies for the sole purpose of enduring an unnecessary contestability period, even if it were applied as promised?! That's not the reliance here. Vinas has presented evidence of reliance because the Vinases cancelled an active policy that was already incontestable and paid a premium for almost two years. Mrs. Vinas testified they would not have switched to Foresters <u>without</u> its false assurance that a contestability determination would be based on Mr. Vinas' best knowledge and belief. The Court should deny the motion for summary judgment.

### Fraud in The Inducement Is Not "Bad Faith" in Disguise.

Foresters raised this argument in its motion to dismiss, (D.E. 152, at 9-11), and Vinas addressed it in her response. (D.E. 162, at p. 9-11). To reiterate: The difference between bad faith and fraud in the inducement is simple. §624.155 claims relate to <u>claim handling practices</u>, such as adjusting and settling claims. <u>Macola v. Gov't Employees Ins. Co.</u>, 953 So. 2d 451, 457 (Fla. 2006) ("a first-party bad faith cause of action arises when an insurer fails to act in good faith <u>in the processing of the insured's own first-party claim</u>") (emphasis supplied). Fraudulent inducement, on the other hand, focuses on conduct <u>before the contract was created</u>. <u>GlobeTec Const., LLC v. Custom Screening & Crushing, Inc.</u>, 77 So. 3d 802, 803 (Fla. 3d DCA 2011) ("the plaintiff must show that the fraudulent act induced the formation of contract between the parties.").

While Foresters' claim conduct certainly could justify a bad faith claim, Count III (Fraud in the Inducement) does not raise any such cause of action. While there could conceivably be some evidence that overlaps, the law is clear that just because evidence is relevant to a hypothetical bad faith claim "it does not ineluctably follow, however, that this evidence also is irrelevant to claims which are properly entertained." <u>T.D.S. Inc. v. Shelby Mut. Ins. Co.</u>, 760 F.2d 1520, 1527 (11th Cir. 1985). Count III of Vinas' complaint is for fraud in the inducement based on a false representation <u>made before the contract existed</u>; Foresters' stubborn, repetitive, and incorrect conflation with bad faith, notwithstanding.

In addition, the language in Florida's bad faith statute itself makes it clear that the civil remedy in §624.155 "does not replace or preempt any other remedy or cause of action provided for . . . pursuant to the common law of this state." §624.155(8), Fla. Stat. Thus,

despite Foresters' citing the statute 16 times in its motion for summary judgment, and using the phrase "bad faith" 17 times, Foresters cannot turn fraud in the inducement into bad faith.

Foresters' cited authority, including <u>Manor House</u>, is completely distinguishable on this point. As explained in Vinas' Response to the Motion to Dismiss (D.E. 162, at 10), unlike Vinas' claim in Count III, the <u>Manor House</u> plaintiff sought damages <u>in contract</u> for "alleged failure to <u>timely adjust</u> the lost, wrongful <u>denial of the claim</u>, and delay and failure to timely <u>pay the claim</u>."  2021 WL 208455, at *3. There is nothing in <u>Manor House</u>, that eliminates the separate tort of fraud in the inducement or the compensatory and punitive damages that flow from the fraud cause of action. Indeed, punitive damages are available under Count III without any further showing other than liability. <u>See</u> <u>Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.</u>, 181 F. Supp. 3d 957, 971 (M.D. Fla. 2016) ("[T]he rule now seems clear in Florida that a claim of fraud sufficient to justify compensatory damages is also sufficient to support an award of punitive damages.") (quoting <u>Cruise v. Graham</u>, 622 So. 2d 37, 41 (Fla. 4th DCA 1993)). The Court should deny Foresters' motion.

### Vinas Can Raise Count III in Her Own Name as a Party with Standing.

The Court has already addressed and rejected this argument when it granted Mrs. Vinas' Motions to Amend (D.E. 90, 144) to pursue and interlineate Count III over Foresters' fierce objections (D.E. 72, at 11; D.E. 121, at 16-17) and its Motion to Stay Discovery. (D.E. 96, at 13). None of Foresters' new cases offer any reason to revisit the matter.

In the non-precedential table opinion in <u>Prater v. Wackenhut Corp.</u>, 44 Fed. Appx. 654 (5th Cir. 2002), a Texas inmate was assaulted by other inmates and sued a private corrections contractor for fraud. The Fifth Circuit characterized the *pro se* argument as "a patchwork of carefully selected phrases from contracts and negligent misrepresentation cases that does not withstand scrutiny." <u>Id.</u> at *2. Unlike <u>Prater</u>, where "no misrepresentation was made to [plaintiff] … ," <u>Id.</u> at *1, Foresters made its misrepresentations to both the Vinases together at their home.[4] Similarly, in <u>Erwin v. Texas Health Choice, L.C.</u>, the district court held that an employee did not have third-party beneficiary standing to sue an HMO for fraud in the

---

[4] Mrs. Vinas testified Mr. and Mrs. Vinas were together at their kitchen table when Foresters' sales agent promised that Foresters would apply the BK&B standard of accuracy to any contestability investigation. (D.E. 158-1, Vinas Depo, at 32-33). The final decision to switch to Foresters was made jointly. <u>Id.</u> at 48 ("<u>we</u> got to the decision . . . that <u>we</u> were going to cancel [their old policy and buy Foresters']…") (Emphasis supplied).

inducement under Texas law. 187 F. Supp. 2d 661, 667 (N.D. Tex. 2002). This is vastly different than the present case where Vinas is an expressly named beneficiary of her deceased husband's individual life insurance policy. As Vinas has previously stated, accepting Foresters' argument would eliminate fraudulent inducement from all jurisprudence as regards life insurance policies because the usual owner of the policy is almost always deceased! This certainly explains why Foresters is left with only Texas HMO fraud cases to try to analogize.

Maddux v. Philadelphia Life Ins Comp, while at least a life insurance case, is completely distinguishable in that it focused on the rights of a former wife of the decedent. 77 F. Supp. 2d 1123, 1125 (S.D. Cal. 1999). The law provided some unique guidelines with respect to ex-spouses that have nothing to do with the facts of this case where Mrs. Vinas is both the present wife and named beneficiary under the policy. Id. at 1127-28. Moreover, as with Prater, the former wife failed to produce any "evidence that [defendant]'s alleged assurances were ever communicated directly to [the former wife], or that [she] directly relied on the statements or terms contained in the life insurance policy." Id. at 1132. In this case, it is undisputed that Foresters assurances were communicated directly to Vinas, and the Vinases relied on them in jointly deciding to cancel his existing policy and switch to Foresters.

The more analogous case is Vinas' citations (D.E. 102, at 8-9; D.E. 162, at 15) to JMIC Life Ins. Co. v. Henry, 922 So. 2d 998, 1000 (Fla. 5th DCA 2005), a Florida fraudulent inducement case by a widowed beneficiary like Vinas. Vinas also cites McBride v. Life Ins. Co. of Virginia, 190 F. Supp. 2d 1366, 1368 (M.D. Ga. 2002) (holding "a beneficiary of a life insurance policy has standing to maintain suit" for fraudulently inducing the purchase of a policy by misrepresenting that premiums would not increase). Foresters offers the Court nothing of substance in rebuttal. The Court should reaffirm Mrs. Vinas' standing to pursue Count III.

**The Present Case is the Classic Example of an "Independent Tort"**

Given Foresters made the same arguments in its Motion to Dismiss (D.E. 152, at 14-16), in the interest of space Vinas stands on its responses made in opposition thereto and adopts the same herein. (D.E. 162, at 9-11). Foresters' only new argument relies on the Manor House complaint, attached to its Motion to Dismiss. (D.E. 152-5, at 10). In fact, the Manor House complaint is an absolutely perfect illustration of the distinction between Count III (Fraud in the Inducement) and the "fraud in the performance" strawman Foresters would

18

prefer to address! Every relevant allegation in <u>Manor House</u>'s fraud count ran to wrongful conduct "<u>during the adjustment of this claim.</u>" (D.E. 152-5, at ¶ 71) (Emphasis supplied). The representations all occurred <u>during the claims</u> process, (<u>id.</u> at ¶ 72) and related to false information "<u>concerning the claim</u>" that had been made. (<u>Id.</u> at ¶ 77). The harm that followed was delayed payment and a reduced net recovery, classic contractual and consequential damages. (<u>Id.</u> at ¶ 79).

Thus, in the <u>Manor House</u> fraud claim, unlike the present case, not a single allegation of relevant fact pertained to conduct relating to inducement before the contract was formed. This explains the Fifth District's statement that it "essentially alleged a fraudulent breach of contract, which would not amount to an independent tort." <u>Manor House, LLC v. Citizens Prop. Ins. Corp.</u>, 277 So. 3d 658, 662 (Fla. 5th DCA 2019), <u>decision quashed,</u> SC19-1394, 2021 WL 208455 (Fla. Jan. 21, 2021). That case bears no resemblance to the present case.

Foresters' other new case was similarly not a fraud in the inducement case: "Plaintiff does not allege a fraud in the inducement claim because the fraud occurred *after* Plaintiff purchased his Policy." <u>Cutler v. Voya Fin., Inc.</u>, 18-20723-CIV, 2018 WL 4410202, at *8 (S.D. Fla. Aug. 23, 2018) (emphasis in original). Here, the fraud alleged by Vinas <u>occurred in 2015</u>, during the sale of the Certificate, before the contract was formed. This was over two years before Foresters' actions (including claims conduct) breached the contract in 2017. Foresters' attempt to cast Count III into its "fraud in the performance" strawman must be rejected.

### <u>§ 627.428 Attorney's Fees are Recoverable Under Both Count I and Count III</u>

Vinas' status is a named beneficiary whose claim arises "under a policy or contract executed by the insurer." §627.428(1). This is the same policy Foresters fraudulently induced the Vinases into purchasing <u>giving rise to this cause of action</u>. (D.E. 162, at 18-20). As such, when Vinas obtains a "judgment or decree" in her favor, she will satisfy the statutory elements for a fee award. (<u>See</u> <u>also</u> D.E. 162, at 18-20 (Vinas' Response to Motion to Dismiss)).

Foresters fails to cite a single case holding that attorney's fees are not available for a plaintiff who successfully establishes that an insurance company fraudulently induced an insured to enter into the contract of insurance. <u>United Gen. Life Ins. Co. v. Koske</u>, 519 So. 2d 71, 72 (Fla. 5th DCA 1988), is not applicable because the court's ruling that the statute did not apply was based upon a finding that "no policy of insurance was ever issued or executed by the insurer covering Mr. Koske as an insured." (D.E. 95, at 20). Therefore, the claim could

19

not have arisen "under a policy or contract executed by the insurer." § 627.428(1).  In the present case, there is no question the policy was issued (albeit fraudulently so), to Mr. Vinas.

Hilson v. GEICO Gen. Ins. Co., is similarly inapplicable the professional malpractice of one of GEICO's staff attorneys did not arise "under" the Geico policy. 8:11-CV-13-MSS-MAP, 2016 WL 3211474, at *3 (M.D. Fla. Mar. 31, 2016). The plaintiffs in Hilson were asserting a tort claim unrelated to GEICO's contract with the insured and expressly argued that GEICO was "vicariously liable for [the attorneys'] professional malpractice …." (Id.at 3). The Hilson plaintiffs themselves thus alleged a claim that had nothing at all to do with the policy. In the present case, however, the fraudulent misrepresentations occurred as a result of the insurer's fraudulent sale and explanation of the policy language itself. Without the policy, there could be no fraudulent inducement to enter in the policy. The contractual nexus that was entirely lacking in Hilson is certainly present here.  In Johnson v. Omega Ins. Company, the Supreme Court merely clarified that "in the context of §627.428, a denial of benefits simply means an incorrect denial," with no requirement of "bad faith or maliciousness" as well. 200 So. 3d 1207, 1214 (Fla. 2016). Foresters fails to explain why Johnson, a sinkhole case, has anything to add to the analysis of the Count III (Fraud in the Inducement).

In sum, if Vinas prevails, the "judgment or decree" in her favor will be rendered because Foresters fraudulently provided coverage to Vinas under a policy or contract executed by the insurer, because the policy itself (via the application) contains the fraudulent statement. §627.428(a), Fla. Stat. Moreover, the claim alleged is fraud in the inducement to contract, which is alleged to have resulted in the creation of the policy. The Court should recognize Vinas' entitlement to attorney fees under the Second Amended Complaint.

Even more egregious, Foresters' asks the Court to "declare that Foresters is only responsible for reasonable attorney's fees through April 13, 2020." (D.E. 156, at 20). Because Foresters has continuously denied its liability for breach of contract, and forced Vinas to litigate the claim, she does not concede that Foresters is responsible only for "reasonable attorney's fees and costs incurred through the date of payment with respect to Count I only." (Id. n.7). Foresters is still waging a battle on the merits of several fronts including opposing entry of judgment in Vinas' favor, which keeps the fee "clock" running.

Additionally, under Florida law, Foresters' payment of benefits cannot stop its responsibility for ongoing fees because Foresters neither paid, nor offered to pay, "all damages

. . . which would be included in a final judgment if the final judgment was entered on the date" of its confession of judgment. <u>Danis Industries Corp. v. Ground Improvement Techniques, Inc.</u>, 645 So. 2d 420, 421-22 (Fla.1994).  Applying the Court's decision in <u>Danis</u>, Foresters "cannot avoid attorney fees by making a belated offer of its insurance coverage or any amount which would be less than the insured or beneficiary could recover in a final judgment **as of the date of the offer**." <u>Id</u>. (Emph. Supp.) Under Florida law, at the time of its offer in April 2020, "all damages" included consequential damages.  277 So. 3d at 661. Clearly, consequential damages were recoverable in this case until the <u>Manor House</u> Supreme Court decision reversed the law on entitlement to those damages under first party insurance policies. If the law has changed on that issue, it did not occur until several weeks ago. In the meantime, Foresters kept its options open and refused to concede liability for the full amount of damages recoverable as of the date of its confession of judgment. The Court should not limit attorney's fees on Count I to those incurred before April 13, 2020.

### Foresters Is Not Entitled to Summary Judgment for Breach of Contract.

Three years after denial of benefits, and 18 months after forcing Vinas to file suit to recover those benefits, and then only in response to devastating admissions made by its Corporate Representatives and employees during their depositions, Foresters was ultimately forced to pay Vinas' death benefit. Under Florida law, Foresters' payment was the functional equivalent of confessing judgment against it. <u>Wollard v. Lloyd's & Cos. of Lloyd's</u>, 439 So. 2d 217, 218 (Fla. 1983) (voluntary payment of insurance proceeds after litigation begins "is, indeed, the functional equivalent of a confession of judgment or verdict in favor of the insured."). Foresters has refused to admit it breached the contract, or that it was liable for any additional damage authorized under Florida law at the time. Indeed, it continues to maintain that it has "satisfied its contractual obligations" (D.E. 156, at 6) and asks the Court to dismiss the claim, instead of entering judgment for Vinas as required by Florida law. <u>Life Changing Ministries, Inc. v. Canopius US Insurance, Inc.</u>, No. 5:15-cv-59, 2016 WL 6947341, at *3 (M.D. Fla. Nov. 28, 2016) (granting motion for summary judgment where defendant confessed judgment by paying benefits).  Moreover, Foresters continued fight against an entry of judgment for Vinas precludes a finding of mootness! <u>Wolff v. Royal Am. Mgmt., Inc.</u>, 545 Fed. Appx. 791, 794 (11th Cir. 2013). The Court should grant Vinas' Motion for Partial Summary Judgment and deny Foresters' on this issue. (D.E. 159).

## CONCLUSION

After consideration of Vinas' Motion for Partial Summary Judgment, the remaining issues should be disposed of at trial. Based on the foregoing argument and authority cited, the Court should deny Foresters' Motion for Summary Judgment (D.E. 152).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of was filed with the Clerk of this Court via the CM/ECF filing and that a copy has been sent via electronic mail this 19th day of February 2021 to Kristina B. Pett, Esq. Kristina.pett@mhllp.com and Danielle Shure, Esq., Danielle.shure@mhllp.com, McDowell, Hetherington, LLP, 2101 N.W. Corporate Blvd., Suite 316, Boca Raton, FL 33431.

KRAMER, GREEN, ZUCKERMAN,
GREENE & BUCHSBAUM, P.A.
Co-Counsel for Plaintiff
4000 Hollywood Blvd., Suite 485-S
Hollywood, FL 33021
(954) 966-2112 – phone
(954) 981-1605 - fax

By:      /s/ Craig M. Greene
Craig M. Greene, Esq.
Fla. Bar No. 618421
cgreene@kramergreen.com

and

Adrian Neiman Arkin, Esq.
MINTZ, TRUPPMAN, P.A.
Co-Counsel for Plaintiff
1700 Sans Souci Boulevard
North Miami, FL 33181
(305) 893-5506 – phone
adrianarkin@mintztruppman.com