UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-24100-COOKE/GOODMAN

DIGNA VINAS,

       Plaintiff,

v.

THE INDEPENDENT ORDER
OF FORESTERS,

       Defendant.

_____/

## JOINT SUMMARY OF THE PARTIES' MOTIONS IN *LIMINE*[1]

       Plaintiff, Digna Vinas, and Defendant, The Independent Order of Foresters ("Foresters"), pursuant to the Court's Order Setting Civil Trial Date and Pretrial Deadlines [D.E. 92], file their Joint Summary of the Parties Motions in *Limine*.

Respectfully submitted this 26th day of February, 2021.

| | |
|---|---|
| /s/ Craig M. Greene | /s/ Danielle E. Shure |
| CRAIG M. GREENE, ESQUIRE | KRISTINA B. PETT, ESQUIRE |
| Florida Bar No.: 618421 | Florida Bar No.:  0973688 |
| cgreene@kramergreen.com | Kristina.pett@mhllp.com |
| KRAMER, GREEN, ZUCKERMAN, GREENE | DANIELLE E. SHURE |
| & BUCHSBAUM, P.A. | Florida Bar No. 118911 |
| 4000 Hollywood Blvd., Ste. 485-S | Danielle.shure@mhllp.com |
| Hollywood, FL 33021 | McDOWELL HETHERINGTON, LLP |
| Telephone: (954) 966-2112 | 2385 N.W. Executive Center Drive |
| Facsimile: (954) 981-1605 | Suite 400 |
| *Attorneys for Plaintiff* | Boca Raton, FL 33431 |
| | Telephone: (561) 994-4311 |
| | Facsimile: (561) 982-8985 |
| | *Attorneys for Defendant* |

---

[1]  The parties agree that the following Motions in Limine may change in argument, relief sought, or potentially be totally eliminated, depending upon the Court's rulings on pending dispositive/partially dispositive and Daubert motions.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY a true and correct copy of was filed with the Clerk of this Court via the CM/ECF filing and that a copy has been sent via electronic mail this 26th day of February to Kristina B. Pett, Esq. Kristina.pett@mhllp.com and Danielle Shure, Esq., Danielle.shure@mhllp.com, McDowell, Hetherington, LLP, 2101 N.W. Corporate Blvd., Suite 316, Boca Raton, FL  33431.

KRAMER, GREEN, ZUCKERMAN,
GREENE & BUCHSBAUM, P.A.
Co-Counsel for Plaintiff
4000 Hollywood Blvd., Suite 485-S
Hollywood, FL  33021
(954) 966-2112 – phone
(954) 981-1605 - fax

By:      /s/ Craig M. Greene
         Craig M. Greene, Esq.
         Fla. Bar No. 618421
         cgreene@kramergreen.com

         and

Adrian Neiman Arkin, Esq.
MINTZ, TRUPPMAN, P.A.
Co-Counsel for Plaintiff
1700 Sans Souci Boulevard
North Miami, FL  33181
(305) 893-5506 – phone
adrianarkin@mintztruppman.com

**INDEX**

| | |
|---|---|
| Plaintiff's First Motion in Limine to Preclude Argument, Testimony or Other Evidence Claiming That Jazmin Lightbourn Was Not Foresters' Agent Authorized to Speak on its Behalf | **Page 6** |
| Defendant's Response to Plaintiff's First Motion in Limine | **Page 7** |
| Plaintiff's Second Motion in Limine to Preclude Any Argument or Evidence Regarding Vicarious Liability | **Page 8** |
| Defendant's Response to Plaintiff's Second Motion in Limine | **Page 9** |
| Plaintiff's Third Motion in Limine to Preclude Any Argument or Evidence that Jazmin Lightbourn Also Sold Policies for Other Insurers | **Page 10** |
| Defendant's Response to Plaintiff's Third Motion in Limine | **Page 11** |
| Plaintiff's Fourth Motion in Limine to Preclude Any Argument or Evidence that Jazmin Lightbourn Received Applications or Other Materials From NMO/BGA Sources | **Page 12** |
| Defendant's Response to Plaintiff's Fourth Motion in Limine | **Page 13** |
| Plaintiff's Fifth Motion in Limine to Preclude the Defendant From Offering Any Testimony, Argument or Evidence Suggesting That Mr. Vinas Did Not Answer Application Questions to His Best Knowledge and Belief | **Page 14** |
| Defendant's Response to Plaintiff's Fifth Motion in Limine | **Page 15** |
| Plaintiff's Sixth Motion in Limine to Preclude Any Reference or Suggestion to the Fact that Mr. Vinas Did or Did Not Have Diabetes or Other References to Dr. Hershman's Records | **Page 16** |
| Defendant's Response to Plaintiff's Sixth Motion in Limine | **Page 17** |
| Plaintiff's Seventh Motion in Limine to Preclude Any Argument That Foresters "Reasonably Believed" Mr. Vinas Had Been Diagnosed With Diabetes | **Page 18** |
| Defendant's Response to Plaintiff's Seventh Motion in Limine | **Page 19** |

Plaintiff's Eighth Motion in Limine to Preclude Any Reference to Dr. Hershman's 2020 Letter — **Page 20**

Defendant's Response to Plaintiff's Eighth Motion in Limine — **Page 21**

Plaintiff's Ninth Motion in Limine to Preclude Any Reference to Foresters' Net Worth for the Purpose of Reducing Punitive Damages — **Page 22**

Defendant's Response to Plaintiff's Ninth Motion in Limine — **Page 23**

Plaintiff's Tenth Motion in Limine to Preclude Any Reference to Discovery in This Case — **Page 24**

Defendant's Response to Plaintiff's Tenth Motion in Limine — **Page 25**

Plaintiff's Eleventh Motion in Limine to Preclude Argument, Testimony or Other Evidence Relating to a Claim That Ms. Vinas Does Not Have Standing to Pursue This Action — **Page 26**

Defendant's Response to Plaintiff's Eleventh Motion in Limine — **Page 27**

Plaintiff's Twelfth Motion in Limine to Preclude Any Reference to Any Bad Faith Claim or "Cure" Thereof By Paying Death Benefits With Interest — **Page 28**

Defendant's Response to Plaintiff's Twelfth Motion in Limine — **Page 29**

Plaintiff's Thirteenth Motion in Limine to Preclude Defendant From Offering Testimony or Other Evidence as to the Propriety or Appropriateness of Any Representations Made at the Time of Sale or Any Testimony That is Consistent With the Positions Taken by Foresters' Corporate Representatives During Discovery — **Page 30**

Defendant's Response to Plaintiff's Thirteenth Motion in Limine — **Page 31**

Plaintiff's Fourteenth Motion in Limine to Preclude Argument or Testimony or Other Evidence Relating to Documents or Information Withheld From Production or Otherwise Objected to by Foresters — **Page 32**

Defendant's Response to Plaintiff's Fourteenth Motion in Limine — **Page 33**

Plaintiff's Fifteenth Motion in Limine to Preclude the Testimony of Marc S. Frager, M.D. — **Page 34**

Defendant's Response to Plaintiff's Fifteenth Motion in Limine — **Page 35**

Defendant's Motion in *Limine* to preclude Plaintiff from Arguing that Ms. Lightbourn was Foresters' Agent, and Introducing Evidence of Ms. Lightbourn's Alleged Statements.   **Page 36**

Plaintiff's Response to Defendant's Motion in *Limine* to preclude Plaintiff from Arguing that Jazmin Lightbourn was Foresters' Agent, and from Introducing Evidence of Ms. Lightbourn's Alleged Statements.   **Page 37**

Defendant's Motion in *Limine* to Preclude Plaintiff from Introducing Bad Faith Claims Handling Evidence.   **Page 38**

Plaintiff's Response to Defendant's Motion in *Limine* to Preclude Plaintiff from Introducing Bad Faith Claims Handling Evidence.   **Page 39**

Defendant's Motion in *Limine* to Preclude Plaintiff from Introducing Evidence of, or Seeking, Consequential Damages.   **Page 40**

Plaintiff's Response to Defendant's Motion in *Limine* to Preclude Plaintiff from Introducing Evidence of or Seeking Consequential Damages.   **Page 41**

Defendant's Motion in *Limine* to Preclude Plaintiff from Introducing Evidence of, or Seeking, Punitive Damages.   **Page 42**

Plaintiff's Response Defendant's Motion in *Limine* to Preclude Plaintiff from Introducing Evidence of, or Seeking, Punitive Damages.   **Page 43**

Defendant's Motion in Limine to Preclude Plaintiff From Offering Testimony About Mr. Vinas' Communications with Rushmore Bank and Ms. Lightbourn   **Page 44**

Plaintiff's Response to Defendant's Motion in  Limine to Preclude Plaintiff From Offering Testimony About Mr. Vinas' Communications with Rushmore Bank and Ms. Lightbourn   **Page 45**

<u>**PLAINTIFF'S FIRST MOTION IN LIMINE TO PRECLUDE ARGUMENT, TESTIMONY OR OTHER EVIDENCE CLAIMING THAT JAZMIN LIGHTBOURN WAS NOT FORESTERS' AGENT AUTHORIZED TO SPEAK ON ITS BEHALF**</u>.

The evidence is undisputed that Jazmin Lightbourn was authorized to, and did sell, the present insurance policy on behalf of Foresters. (D.E. 158, at ¶ 2). The evidence is similarly undisputed that Ms. Lightbourn made representations that she was authorized to make by Foresters. (<u>Id.</u>, at ¶¶ 3, 17).

Foresters' Corporate Representative ("CR") agreed that "it's necessary for the independent agent to communicate with the prospective insured about the [Foresters] product that they are looking to sell"; accordingly, "Foresters authorizes these people to make accurate representations about Foresters' products." (Parrott, Depo, D.E. 158-3, p. 39, l. 22-p. 40, l. 7).  There was no question that Lightbourn's statement to the Vinases was accurate:

> Q.   <u>**And the standard for accuracy per Foresters own application**</u> <u>is the insured's best knowledge and belief, whether they are</u> <u>telling the truth or not, right</u>?
> A.   <u>That is correct</u>.

(Parrott, Depo, D.E. 158-3, p. 86, lines 13-23).  (Emphasis Supplied).   If the CR discovered the claims department[2] applied a different standard, he would "have a problem with that," because Foresters' "standard for accuracy" is "the insured's best knowledge and belief, whether they are telling the truth or not." (<u>Id.</u>, at p. 85, l. 5 – p. 86, l. 23).

Any claim, assertion, evidence or argument that Ms. Lightbourn was not Foresters' agent authorized to sell the policy and make representations on its behalf would contradict the undisputed evidence in the record. In fact, Foresters' relationship with Ms. Lightbourn was revealed when Foresters provided contact information for Ms. Lightbourne that was <u>only</u> <u>through Foresters' counsel's office</u>. (D.E. 37-42). There is no basis to permit Foresters to attempt to disavow Ms. Lightbourn at trial when Foresters has admitted its relationship with her during litigation. With no evidence to present, any argument that Ms. Lightbourn was <u>not</u> acting as an authorized agent, would only impermissibly confuse the jury under Rule 403.

---

[2] Mr. Parrot is Foresters' Chief Underwriting Officer.  (D.E. 158-3, at 6).  Foresters refused to re-designate the VP of its claims department for a second deposition.  (D.E. 109).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST MOTION IN *LIMINE*[3]**

Plaintiff argues that Foresters should not be able to present evidence showing that Ms. Lightbourn was not its agent solely because, according to Plaintiff, "the evidence is undisputed that" she was Foresters' agent.  First, Plaintiff is wrong.  As stated in Foresters' MSJ, Ms. Lightbourn was neither Foresters' captive, actual or apparent agent, and she did not have any authority to represent that a contestable claim was payable because, as Mr. Parrot testified, that determination is "a result of the [contestability] process."  [Parrot Tr. at 57:21-25, 58:1-11, Doc. 155-5].  Plaintiff's claim that Foresters "admitted" Ms. Lightbourn was its agent during this litigation is also wrong.  Since Plaintiff inserted agency in this action, Foresters consistently denied her status as an agent under all three theories.

Second, if the Court disagrees with Foresters, the appropriate outcome would be to submit the issue of agency to the jury.  As this Court recognized, although the question of agency "can be resolved by summary judgment . . . where the evidence is capable of but one determination and there is no evidentiary question for the jury to resolve," the issue of agency is ordinarily "one for the jury to decide."  Johnson v. Unique Vacations, Inc., No. 1:10-CV-24217-COOKE/MCALILEY, 2011 WL 13175537, at *2 n.4 (S.D. Fla. Nov. 30, 2011) (J., Cooke) (granting summary judgment in favor of the defendant because there was no dispute that the elements necessary to establish agency were not satisfied).  Should the Court find that there is an issue of fact regarding Ms. Lightbourn's status as an agent, Plaintiff fails to explain why this Court should deviate from the usual procedure of submitting this question to the jury.[4]

---

[3] Plaintiff, through her 15 Motions in *Limine*, seeks to entirely preclude Foresters from introducing any evidence to refute the elements of her fraudulent inducement claim and put on a defense.  Although each Motion is meritless for the reasons stated, the Motions, collectively, are an inappropriate effort to completely prevent Foresters from defending against her allegations. Further, Foresters has a pending Motion to Dismiss [Doc. 152], and therefore the time to file a responsive pleading has been tolled, which makes Plaintiff's contention that the evidence he seeks to preclude is irrelevant all the more inappropriate.

[4] Not only is Plaintiff's contention that "Foresters refused to re-designate the VP of its claims department for a second deposition" inappropriate and irrelevant, but is, once again, a distortion of reality.  As Judge Goodman explained to Plaintiff's counsel at length at a discovery hearing, Plaintiff "cannot tell us who the corporate rep should be," and in any event, Mr. Sullivan was "not even an underwriter," and therefore would not have knowledge on the designated topics.  [Hearing Tr. at 23:4-6, Doc. 167].

<u>**PLAINTIFF'S SECOND MOTION IN LIMINE TO PRECLUDE ANY ARGUMENT**</u>
<u>**OR EVIDENCE REGARDING VICARIOUS LIABILITY**</u>

Foresters has repeatedly tried to inject the issue of vicarious liability in this case. (E.G., D.E. 156, at 14). There is no vicarious liability count.  In Count III (Fraud in the Inducement), Vinas raises a direct liability claim against Foresters.  Foresters' liability is not vicarious, derivative, or merely technical. Foresters' attempts to dilute its direct responsibility for the misrepresentations have no place at trial.  Any argument or evidence on vicarious liability would be irrelevant under Rule 401, as well as unfairly prejudicial, needlessly confusing, and time-consuming under Rule 403.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND MOTION IN *LIMINE*</u>**

Plaintiff argues that Foresters should not be permitted to argue that it cannot be held vicariously liable for Ms. Lightbourn's alleged fraudulent misrepresentation because it is "irrelevant." Plaintiff refuses to acknowledge that when she amended her pleading by interlineation, she introduced agency and vicarious liability into this action. Plaintiff alleges that "Foresters, through its sales agent [Ms.] Lightbourn, explained how the contestability period worked and represented that Foresters would not deny a claim or rescind the policy for inaccuracies in the Application so long as Mr. Vinas answered the Application questions truthfully, i.e., to his best knowledge and belief." [Doc. 147 ¶36a].[5] Plaintiff claims that "vicarious liability" is irrelevant because she seeks to hold Foresters directly liable for the representation. Even if Ms. Lightbourn was Foresters' agent, which she was not, Plaintiff does not cite any authority supporting that Foresters can be held "directly" liable for her conduct.

In any event, Plaintiff does not plead "direct liability," and therefore cannot proceed on that theory. In <u>Platypus Wear, Inc. v. Clarke Modet & Co., S.L.</u>, 2008 WL 2557503 (S.D. Fla. June 23, 2008), the plaintiff asserted that one of the defendants, Clarke, was liable for a number of torts, and that a second defendant, Santucci "was and is an agent and/or employee and/or partner of Clarke." <u>Id.</u> at *1. This Court noted that there was "no distinct claim for vicarious liability," but "[b]y framing the pleading in such a manner," the plaintiff was "proceeding on a theory of direct liability against Clarke Spain, **and also on a theory of indirect or vicarious liability stemming from the purported principal/agent relationship between Clarke Spain and Santucci**." <u>Id.</u> (emphasis added). Similarly, Plaintiff does not plead a "distinct claim for vicarious liability," and in a single count, improperly proceeds on a theory of direct liability against Foresters based on the representations in the Certificate, "and also on a theory of indirect or vicarious liability stemming from the purported principal/agent relationship between" Foresters and Ms. Lightbourn. Plaintiff's contention that vicarious liability is not an issue in this case is belied by Florida law and her allegations. Plaintiff fails to provide any legitimate basis to preclude Foresters from arguing that it cannot be held vicariously liable for Ms. Lightbourn's alleged conduct.

---

[5] Foresters disputes Plaintiff's contention that "truthfully" is the equivalent of "knowledge and belief."

<u>**PLAINTIFF'S THIRD MOTION IN LIMINE TO PRECLUDE ANY ARGUMENT
OR EVIDENCE THAT JAZMIN LIGHTBOURN ALSO SOLD POLICIES FOR
OTHER INSURERS**</u>

Foresters has also argued that Jazmin Lightbourn is an independent broker, for whose representations it can bear no responsibility.  (D.E. 156, at 15). The undisputed evidence in this case, directly from Foresters' corporate representatives, is that its "independent agents" are actually authorized to do precisely what Ms. Lightbourn did:  explain the incontestability provision and tell the Vinases that the standard for accuracy in the complaint was Mr. Vinas' best knowledge and belief. (D.E. 158, at ¶¶ 2-3, 17).

In light of this evidence, it is irrelevant whether she also sold policies for other insurance companies, as Ms. Lightbourn can be an agent for both Foresters and its prospective customers. <u>Almerico v. RLI Ins. Co.</u>, 716 So. 2d 774, 776–77 (Fla. 1998) (explaining that it is "well settled that the insurance broker may act in the dual capacity of broker for the insured and agent of the insurer. . . .  Accordingly, a determination that a particular agent is an insurance broker may not conclude the issue of agency relationship.").  The evidence and argument risks creating jury confusion, needless wasting of time, and unfair prejudice by obscuring the true relationship between Foresters and Ms. Lightbourn.  The Court should exclude the evidence under Rule 401 and Rule 403.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRD MOTION IN *LIMINE***

Plaintiff's argument that Foresters should be precluded from arguing that Ms. Lightbourn sold policies for other insurance companies lacks merit. Under Florida law, an insurance company can be held vicariously liable for the conduct of its captive agents, but not for independent brokers, absent actual or apparent agency. Essex Ins. Co. v. Zota, 958 So. 2d 1036, 1046 (Fla. 2008). One of the hallmarks of a "captive agent" is that they are "contractually obligated to work for and solicit insurance on behalf of a specific insurance company," unlike brokers, who are "not bound by contract to work for or solicit insurance for any particular insurance company." Amstar Ins. Co. v. Cadet, 862 So. 2d 736, 739 (Fla. 5th DCA 2003); see also Kemberling v. MetLife Life & Annuity Co., 368 F. App'x 63, 67-68 (11th Cir.2010) (affirming the district court's ruling that there was insufficient evidence of an agency relationship because the purported agent "was not bound by contract to work for or solicit insurance for MetLife only"). Therefore, to refute Plaintiff's allegation that Ms. Lightbourn is a captive agent of Foresters, Foresters intends to present evidence supporting that she sold policies on behalf of several insurance companies. Foresters' corporate representative, Mr. Parrot, testified that Foresters "does not have a captive sales force, that is to say a sales force or salaried agents paid for by the company." [Parrot Tr. at 15-17]. Unlike a captive sales force, they "can write business for many companies." [Id. at 17-21].

Plaintiff's citation to Almerico v. RLI Ins. Co., 716 So.2d 774 (Fla. 1998) does not support her Motion position. Almerico simply recognizes that there are three ways to establish agency: statutory (ie, a captive agent) actual and apparent. As set forth in detail in Foresters' Motion for Summary Judgment, the undisputed evidence shows that Ms. Lightbourn does not satisfy the criteria for any of these agency relationships. Further, contrary to Plaintiff's contention, Ms. Lightbourn did not have any authority to make representations about whether a contestable claim was payable because, as Mr. Parrot testified, that determination is "a result of the [contestability] process." [Parrot Tr. at 57:21-25, 58:1-11]. However, if the Court finds that there is an issue of fact regarding agency, Plaintiff does not provide any legitimate basis for precluding Foresters from refuting that Ms. Lightbourn was a statutory agent through evidence that she sold policies for multiple carriers.

**PLAINTIFF'S FOURTH MOTION IN LIMINE TO PRECLUDE ANY ARGUMENT OR EVIDENCE THAT JAZMIN LIGHTBOURN RECEIVED APPLICATIONS OR OTHER MATERIALS FROM NMO/BGA SOURCES**

Foresters sold the product through Lightbourn.  The application has her signature on it.  (D.E. 155-1, at 8; 155-6, at 2).  Foresters collected the policy premiums on the policy its sales agent sold for 23 months.  As Foresters admits, no one else ever talked to the Vinases. (D.E. 155, at ¶ 22). If Jazmin Lightbourn was not "Foresters" for the Vinases, who was?

Nevertheless, Foresters has argued that it can disclaim responsibility for Ms. Lightbourn because she received materials from other sources, rather than directly from Foresters.  (D.E. 156, at 16). Foresters, however, offers no legal authority to suggest that this makes any difference, especially since its corporate representative testified that she was authorized to make the representations that she made!  (D.E. 158-3, at ¶¶ 2-3, 17).

There is no dispute that here, at the very least, the death benefits claim forms that Ms. Lightbourn gave Vinas came directly from Foresters, which was not unusual.  (D.E. 158-4, at p. 41 l. 25 – p. 44, l. 20).  Moreover, Foresters has, to put it charitably, broadly interpreted Mr. Parrott's deposition, which states only that "information and training materials" were provided to National Marketing Office ("NMO") and Brokerage General Agency ("BGA") sources. (D.E. 158-3, at p. 48, lines 11-21).  The record cannot support its characterizations. The reason it cannot do better is that any suggestion that Jazmin Lightbourn did not have the right, authority, power, and agency to sell Foresters' products is without factual support and insulting to this Court and to the judicial process. It is absurd to use this issue to try to directly contradict its CR, who explicitly stated Ms. Lightbourn was authorized to explain that "best knowledge and belief" means what it says.  No one has ever suggested Ms. Lightbourn ever did anything unauthorized or wrong!

It would serve no purpose, and unfairly prejudice Vinas, to allow Foresters to suggest some other party was legally responsible for the manner in which Foresters sells and administers its products. The Court should exclude any evidence pertaining to as irrelevant under Rule 401 and as confusing, time-wasting, and prejudicial under Rule 403.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FOURTH MOTION IN *LIMINE***

Plaintiff argues, without basis, that Foresters should be precluded from showing that it provided company materials to third party National Marketing Offices ("NMOs") and Brokerage General Agencies ("BGAs"), who retained Ms. Lightbourn as a producer for various carriers. This evidence supports that Ms. Lightbourn was not Foresters' captive agent, and that Foresters therefore cannot be held liable for her alleged conduct.

Under Florida law, an insurance company can be held vicariously liable for the conduct of its captive agents, but not for independent brokers, absent apparent or actual agency. Essex Ins. Co. v. Zota, 958 So. 2d 1036, 1046 (Fla. 2008). The fact that Ms. Lightbourn was not employed by Foresters, but by NMOs and BGAs, and that Foresters did not provide company materials to Ms. Lightbourn, supports that she was not Foresters' agent. First, Fla. Stat. § 626.342 provides that an insurance broker may become a statutory agent if the insurance company "furnishes to the broker company materials, such as blank forms, applications, stationary," "unless the insured knew or was put on notice of" the limitations placed on the broker's authority. Amstar Ins. Co. v. Cadet, 862 So. 2d 736, 740-41 (Fla. 5th DCA 2003). Therefore, the fact that Foresters provided its materials to third parties, and not to Ms. Lightbourn, refutes any argument that she became a statutory agent. This also supports that Ms. Lightbourn was not Foresters' actual or apparent agent, as it underscores the separation between Foresters and Ms. Lightbourn, Foresters lack of control over Ms. Lightbourn, and Foresters lack of involvement in her training. Further, contrary to Plaintiff's contention, Ms. Lightbourn did not have any authority to make representations about whether a contestable claim was payable because, as Mr. Parrot testified, that determination is "a result of the [contestability] process." [Parrot Tr. at 57:21-25, 58:1-11]. However, if the Court finds that there is an issue of fact regarding agency, Plaintiff does not provide any legitimate basis for precluding Foresters from refuting that Ms. Lightbourn was a statutory agent by showing that it only dealt with NMOs and BGAs, who interacted with Ms. Lightbourn.

**<u>PLAINTIFF'S FIFTH MOTION IN LIMINE TO PRECLUDE THE DEFENDANT
FROM OFFERING ANY TESTIMONY, ARGUMENT OR EVIDENCE
SUGGESTING THAT MR. VINAS DID NOT ANSWER APPLICATION
QUESTIONS TO HIS BEST KNOWLEDGE AND BELIEF.</u>**

Now that Foresters has paid the policy benefit and thereby confessed judgment to Count I (Breach of Contract), the sole liability issue remaining in this case is under Fraud in the Inducement, Count III.  This count involves Foresters' misrepresentations that occurred before the life insurance contract was even formed.  The Court should exclude all accusations, evidence or argument by Foresters raising its initial (and wrong) <u>breach of contract</u> defense (from Count I) that Mr. Vinas did not provide his best knowledge and belief ("BK&B") during the application process.  Mr. Vinas' BK&B is totally irrelevant under Rule 401, because it does not tend to make any fact "of consequence in determining the [Fraud in the Inducement] action . . . more or less probable than it would be without the evidence."  Fed. R. Evid. 401. It is therefore inadmissible.  Fed. R. Evid. 402.

Moreover, admitting evidence to show Mr. Vinas' BK&B will confuse the jury as to whose "representations" it is evaluating in the present fraud case.  Here, it is Foresters, not Mr. Vinas, whose conduct is on trial, and admitting evidence of Mr. Vinas' best knowledge and belief would confuse the jury and/or invite them to misuse the evidence.  <u>See</u> <u>United States v. McCall</u>, 649 Fed. Appx. 945, 947 (11th Cir. 2016) (affirming exclusion of recording alleging misconduct by sheriff where "The Sheriff's conduct was not at issue in this case" and the recording was also improper character evidence). The result could only be unfair prejudice under Rule 403, limiting instructions to the jury notwithstanding.  <u>Green v. Croft</u>, 347 F. Supp. 3d 1156, 1161–62 (S.D. Fla. 2018) (explaining, in excessive force case, that it would be "almost impossible" for jury to go through "mental gymnastics" required to use prior convictions stemming from encounter for Rule 609 impeachment purposes only and not for any improper purposes).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIFTH MOTION IN *LIMINE***

Plaintiff asks the Court to preclude Foresters from refuting that its alleged fraudulent misrepresentation is false and that it had fraudulent intent.[6]  Plaintiff alleges that Foresters' fraudulently represented that it "would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief." [Doc. 147 ¶36].  Under Florida law, the elements of fraudulent inducement are:  "(1) a false statement of material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808-09 (11th Cir. 2010).  To refute that the alleged representation was false and that it had fraudulent intent, Foresters intends to show that it denied Plaintiff's claim after it determined that Mr. Vinas knew and believed he was being followed for diabetes and secondary complications, and omitted this information from his application.  Foresters considered, and did not intend to disregard, Mr. Vinas's knowledge and belief, as Plaintiff alleges.  Foresters' decision was reasonable based on the information available at that time.  Plaintiff did not provide a letter from Dr. Hershman supporting that her claim was payable until March 26, 2020, at which point Foresters immediately paid the Death Benefit and interest.  This evidence is necessary to refute the elements of Plaintiff's claim.

Plaintiff's contention that Mr. Vinas's "representations" are "not on trial" is simply wrong.  Plaintiff claims that Foresters had no intention of evaluating Mr. Vinas's application representations when it issued the Certificate.  Therefore, Mr. Vinas's representations, and Foresters' investigation of those representations, is directly at issue.  Plaintiff's cases are not applicable, as none involve a fraudulent inducement claim based on the alleged failure to investigate the veracity of representations.  United States v. McCall, 649 F. App'x 945 (11th Cir. 2016) involved a civil conspiracy claim, and the court excluded evidence that related only to credibility.  Here, Foresters' investigation of Mr. Vinas's representations bears directly on the elements of Plaintiff's claim.  Green v. Croft, 347 F. Supp. 3d 1156 (S.D. Fla. 2018) is an excessive force case in which the court excluded evidence of a prior conviction, as it was required to do under Fed. R. Evid. 410 and 803(22).

---

[6] The issue of whether Foresters' payment constitutes a confession of judgment is moot.

**PLAINTIFF'S SIXTH MOTION IN LIMINE TO PRECLUDE ANY REFERENCE OR SUGGESTION TO THE FACT THAT MR. VINAS DID OR DID NOT HAVE DIABETES OR OTHER REFERENCES TO DR. HERSHMAN'S RECORDS.**

Count I (Breach of Contract) is finished as to liability.  As far as Count III (Fraud in the Inducement) is concerned, Foresters' excuse for nonpayment is irrelevant.  Foresters' justification for breaching the contract was its claim of allegedly undisclosed diabetes. Whether Mr. Vinas completed the application to his best knowledge and belief is no longer an issue. Evidence relating to Mr. Vinas' medical condition, including records from Dr. Hershman (including laboratory results and billing codes) does not tend to make any fact "of consequence in determining the action [relating to Foresters' fraud in the inducement] . . . more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Therefore, the Court should exclude all evidence and argument that Mr. Vinas did or did not actually carry a diagnosis of diabetes mellitus. Fed. R. Evid. 402.

Even if there were some relevance to the evidence of Mr. Vinas' medical condition (there is not), exclusion nevertheless should follow under Rule 403.  It is enough to ask a jury to evaluate Foresters' knowledge and intent, without interjecting evidence that Mr. Vinas had diabetes, or should have been diagnosed with diabetes, that could be used for untold numbers of improper reasons including distracting from Foresters' intent, insinuating a sinister motive on the part of Mr. Vinas, etc.  In short, the jury's focus should be on Foresters' actions and intent, not Mr. Vinas'.  Admitting this distracting medical condition evidence would create a risk of confusing the issues and misleading the jury, additional grounds for exclusion under Rule 403.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SIXTH MOTION IN *LIMINE***

In her Sixth Motion, Plaintiff, once again, asks the Court to preclude Foresters from refuting that the alleged fraudulent misrepresentation is false and that Foresters had the had fraudulent intent to induce Mr. Vinas to purchase the Certificate.  Plaintiff alleges that Foresters' fraudulently induced Mr. Vinas to purchase the Certificate because it falsely represented that it "would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief." [Doc. 147 ¶36].  Under Florida law, the elements of fraudulent inducement are:  "(1) a false statement of material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance."  PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808-09 (11th Cir. 2010). Foresters intends to refute these elements by showing that its alleged misrepresentation was not false, and that it intended to, and did, consider Mr. Vinas's "knowledge and belief" regarding diabetes when it sold the Certificate.  Foresters denied Plaintiff's claim after it determined that Mr. Vinas knew and believed he was being followed for diabetes and secondary complications based on information in Mr. Vinas's medical records showing that he tested positive for diabetes in 2010 and was monitored for diabetes, and Mr. Vinas omitted this information from his application.  Based on the information available to Foresters at the time of the denial, namely, the very medical records Plaintiff seeks to exclude, the decision to deny Plaintiff's claim was reasonable.  Plaintiff did not provide a letter from Dr. Hershman supporting that her claim was payable until March 26, 2020.  This evidence is critical to refute the elements of Plaintiff's claim.

Plaintiff's claim that the Court should exclude evidence bearing on Mr. Vinas's medical history because it could lead the jury to believe that Mr. Vinas had a "sinister motive" is nonsensical.   In any event, the probative value of the Mr. Vinas's medical records substantially outweighs this purported "danger," and therefore exclusion under Rule 403 is not appropriate.

**<u>PLAINTIFF'S SEVENTH MOTION IN LIMINE TO PRECLUDE ANY ARGUMENT THAT FORESTERS "REASONABLY BELIEVED" MR. VINAS HAD BEEN DIAGNOSED WITH DIABETES.</u>**

Foresters has argued that it "reasonably believed" that Mr. Vinas had been diagnosed with diabetes. (D.E. 156, at 12). Again, the reasons that Foresters refused to pay the benefit initially, or changed its mind later, are not relevant. The issues in this case all pertain to Foresters' representations before the contract was formed, not its failure to pay benefits when due or its claims handling practices.

Foresters' purported excuse for breaching the contract is also susceptible to misuse as evidence of good character. The Court should exclude the evidence as irrelevant under Rule 401 and as confusing, time-consuming, and unfairly prejudicial under Rule 403.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SEVENTH MOTION IN *LIMINE***

In Plaintiff's Seventh Motion, she attempts to preclude Foresters from refuting her allegations by precluding evidence of its "reasonable belief" regarding Mr. Vinas's knowledge and beliefs about his representations on the Application.   Plaintiff alleges that Foresters' fraudulently induced Mr. Vinas to purchase the Certificate because it falsely represented that it "would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief."  [Doc. 147 ¶36].  Under Florida law, the elements of fraudulent inducement are:  "(1) a false statement of material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance."   PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808-09 (11th Cir. 2010).   In the Complaint, Plaintiff alleges that his "circumstantial evidence of the falsity" of this alleged representation is that "Foresters never even made inquiry into Rigoberto Vinas' best knowledge and belief." [Doc. 147 ¶39].  Thus, Plaintiff's claim that evidence supporting that Foresters did consider Mr. Vinas's "best knowledge and belief," and reasonably believed that he made a material misrepresentation on his application, is disingenuous at best.   Foresters' good faith investigation refutes the scienter element of Plaintiff's claim.  See United States v. Guaracino, No. 10-60194-CR, 2011 WL 666102, *1 (S.D. Fla. Feb. 14, 2011) (denying a motion to exclude evidence of good faith intent because "[t]his evidence would serve to negate a specific intent to defraud and establish a good faith defense.").

Plaintiff claims, without any support, that evidence of Foresters' good faith investigation and reasonable belief that Mr. Vinas omitted material information from his insurance application is "susceptible to misuse as evidence of good character," and therefore "unfairly prejudicial."  Plaintiff fails to recognize that evidence of Foresters' good faith is not evidence of good character, any more than Plaintiff's purported evidence of fraudulent intent is evidence of bad character.  This evidence is simply necessary to negate the elements of her claim.  The probative value of this evidence, disproving scienter, substantially outweighs any alleged danger of unfair prejudice, and should not be excluded under Rule 403.

19

## <u>PLAINTIFF'S EIGHTH MOTION IN LIMINE TO PRECLUDE ANY REFERENCE TO DR. HERSHMAN'S 2020 LETTER.</u>

The Court should also preclude Foresters from referring to Dr. Hershman's 2020 letter at all.  (D.E. 155-16). The reasons that Foresters refused to pay the benefit initially, or changed its mind later, are not relevant; the issues for the jury to resolve relate to events that occurred before the contract was formed.  More importantly, Dr. Hershman's 2020 letter would distract the jury by putting the focus on Foresters' claims handling practices, which are not relevant because this is not a bad faith claim.  The Court should exclude the evidence under Rules 401 and 403.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S EIGTH MOTION IN *LIMINE***

In Plaintiff's Eighth Motion, she seeks to preclude any mention of Dr. Hershman's March 26, 2020 letter. This evidence is necessary, as it negates the elements of Plaintiff's fraudulent inducement claim. Under Florida law, the elements of fraudulent inducement are: "(1) a false statement of material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808-09 (11th Cir. 2010). Plaintiff alleges that Foresters' fraudulently induced Mr. Vinas to purchase the Certificate because it falsely represented that it "would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief," but denied Plaintiff's claim without consideration of Mr. Vinas's best knowledge and belief and "ignored evidence in its own claim file." [Doc. 147 ¶¶36, 39-40]. Foresters intends to refute that the alleged representation was false, and that it had fraudulent intent, by showing that it reasonably believed that Mr. Vinas made a material omission in his application based on Dr. Hershman's medical records. As soon as Dr. Hershman provided a letter stating that Mr. Vinas was not told he had diabetes on March 26, 2020, Foresters immediately paid Plaintiff's claim. The absence of this letter in the claim file when Foresters denied Plaintiff's claim, and the fact that Foresters paid Plaintiff's claim as soon as it received this letter, refutes the scienter element of Plaintiff's claim. Plaintiff's argument that this letter serves as evidence of "Foresters' claims handling practices," which is not relevant, is simply wrong. Plaintiff intends to rely on our lack of an investigation to support her claim, but somehow claims that Foresters' evidence that it conducted a good faith investigation is an inconsistent, nonsensical position, and simply wrong.

## PLAINTIFF'S NINTH MOTION IN LIMINE TO PRECLUDE ANY REFERENCE TO FORESTERS' NET WORTH FOR THE PURPOSE OF REDUCING PUNITIVE DAMAGES.

Florida law offers Foresters the chance to interpose its financial health as a defense to the uncapped punitive damages it faces. <u>Rinaldi v. Aaron</u>, 314 So. 2d 762, 765 (Fla. 1975). Foresters, however, has not disclosed any fact or expert witnesses on this issue, and the deadlines to do so are long past. (D.E. 92).   For Foresters' failure to make timely disclosure as the Scheduling Order required, Rule 16(f)(1)(C) authorizes the Court to prohibit Foresters from "introducing designated matters in evidence."   Fed. R. Civ. P. 37(b)(2)(A)(ii). Additionally, by failing to supplement the Rule 26 disclosures to indicate any such witness, the evidence is excludable under Rule 37(c)(1)(C).  The Court should preclude Foresters from introducing any previously undisclosed evidence of its net worth, or any similar evidence for the purpose or reducing or tending to show that a lesser award of punitive damages is warranted.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S NINTH MOTION IN *LIMINE***

Plaintiff argues that Foresters should not be permitted to present testimony regarding its financial health as a defense to her request for punitive damages because Foresters has not disclosed a witness on this issue, and designating a witness at this time would be "untimely." Plaintiff fails to recognize that Foresters has a pending Motion to Dismiss [Doc. 152], and therefore has not filed an answer or asserted any affirmative defenses. "Under the Federal Rules, a timely filed motion to dismiss tolls the responsive pleading deadline until the motion is decided." Mullane v. Barclays Bank De., Inc., No. 1:18-CV-20596-MORENO/LOUS, 2018 WL 1835933, *1 (S.D. Fla. April 9, 2018). "Specifically, Rule 12(a)(4) states that 'if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action.'" Id. (quoting Fed. R. Civ. P. 12(a)(4)(A). In the event the Court denies Foresters' Motion to Dismiss, it will timely file a responsive pleading, assert affirmative defenses, and amend its Rule 26 disclosures. Rule 26 provides that "a party must make its initial disclosures **based on the information then reasonably available to it**." Fed. R. Civ. P. 26(a)(1)(E). Rule 26 further provides that in addition to these initial disclosures, "a party must provide the name, and if not previously provided, the address and telephone number of each witnesses." Fed. R. Civ. P. 26(a)(3). Clearly, there are circumstances, such as the instant case, where a party may include a witness not identified on the initial disclosures, or pretrial disclosures would be unnecessary. Further, the Rules permit a party to supplement its disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

Notably, Plaintiff first added her meritless request for punitive damages when she filed the Second Amended Complaint on August 4, 2020. [Doc. 94]. To date, Plaintiff has failed to amend her initial disclosures to provide a damage calculation. Plaintiff's suggestion that Foresters, whose answer is not yet due, should be precluded from amending its disclosures to identify a witness to rebut a **still unknown damage calculation** is an inappropriate and disingenuous double standard, which the law does not endorse.

**PLAINTIFF'S TENTH MOTION IN LIMINE TO PRECLUDE ANY REFERENCE TO DISCOVERY IN THIS CASE**

Foresters has repeatedly insinuated that it was "stonewalled at every turn" in discovery and would have paid Vinas' claim if only Mrs. Vinas had provided a doctor's note sooner. (E.g., D.E. 155, at ¶ 34). Vinas' responses to discovery are irrelevant to this issue, because they do not relate to any element of Count III (Fraud in the Inducement).  The Court should preclude Foresters from making this argument to the jury under Rule 401 and Rule 403. Rheinfrank v. Abbott Labs., Inc., 1:13-CV-144, 2015 WL 5258858, at *7 (S.D. Ohio Sept. 10, 2015) (holding that "evidence or argument about discovery disputes would be irrelevant and unfairly prejudicial").

**DEFENDANT'S RESPONSE TO PLAINTIFF'S TENTH MOTION IN *LIMINE***

Plaintiff broadly asks this Court to preclude Foresters from making "any reference to discovery in this case" as irrelevant. Plaintiff alleges that Foresters' fraudulently induced Mr. Vinas to purchase the Certificate because it falsely represented that it "would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief," but denied Plaintiff's claim without consideration of Mr. Vinas's best knowledge and belief and "ignored evidence in its own claim file." [Doc. 147 ¶¶36, 39-40]. As such, the evidence in Foresters' file at the time it denied the claim, and the date on which it obtained evidence supporting that Plaintiff's claim was payable, are necessary to refute Plaintiff's allegation.

Under Florida law, the elements of fraudulent inducement are: "(1) a false statement of material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808-09 (11th Cir. 2010). Foresters intends to show that its alleged misrepresentation was not false, and that it lacked fraudulent intent, because based on the evidence in its file, it reasonably believed that Mr. Vinas omitted material information on his application. The fact that Foresters did not receive a letter from Dr. Hershman supporting that Plaintiff's claim was payable until March 26, 2020, refutes Plaintiff's allegation that Foresters fraudulently denied Plaintiff's claim. Plaintiff's reliance on Rheinfrank v. Abbott Labs., Inc., 1:13-CV-144, 2015 WL 5258858, at *7 (S.D. Ohio Sept. 10, 2015), a non-binding unpublished opinion issued by the Southern District of Ohio, is misplaced. There, the court excluded evidence of a discovery dispute because it was irrelevant to the pending claims. Here, however, the date Foresters obtained evidence supporting Plaintiff's claim, and its subsequent payment, is essential to refute the elements of Plaintiff's claim.

## PLAINTIFF'S ELEVENTH MOTION IN LIMINE TO PRECLUDE ARGUMENT, TESTIMONY OR OTHER EVIDENCE RELATING TO A CLAIM THAT MS. VINAS DOES NOT HAVE STANDING TO PURSUE THIS ACTION.

Foresters has contended several times throughout this litigation, with no precedential support, that Mrs. Vinas does not have standing to prosecute this action on behalf of her deceased husband, even though she is the named beneficiary to his policy. Vinas has pointed out the absurdity and cruelty of this result, which would leave the cause of action to die with the insured and create a perverse incentive to commit fraud. The Court's Orders granting leave to amend her complaint suggests Foresters' legal arguments have not persuaded the Court, although the Court has not ruled on the matter in a dispositive motion yet.  In any event, the issue of whether a widow has standing to sue her husband's life insurance provider for fraud is for the Court, not the jury, to decide.  Moreover, the elements of fraud in the inducement are satisfied with respect to Vinas as well as her husband, because Foresters made misrepresentations to them both, which both relied on in the course of making a joint marital decision.  Therefore, any argument or evidence challenging standing is irrelevant under Rule 401.  Rule 403 also applies, because arguing that Mrs. Vinas has no legal right to seek recovery would be highly prejudicial and confusing to the Plaintiff under Rule 403.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S ELEVENTH MOTION IN *LIMINE*

Without basis, or citation to any authority, Plaintiff asks the Court to preclude Foresters from demonstrating that she lacks standing. Plaintiff's contention that standing is "irrelevant" is simply wrong. "The Constitution limits the power of the judiciary to 'Cases' and 'Controversies.' To satisfy the case-or-controversy requirement, a plaintiff must have standing to sue." Debernardis v. IQ Formulations, LLC, 942 F.3d 1076, 1083 (11th Cir. 2019). As such, standing is a "threshold jurisdictional requirement," and Plaintiff bears the burden of proving that she has standing in order to pursue her claim. Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 923 (11th Cir. 2020); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Therefore, it is clearly "relevant" to this action.

Contrary to Plaintiff's contention, a third-party beneficiary lacks standing to pursue a fraudulent inducement claim. See Prater v. Wackenhut Corr. Corp., 44 F. App'x 654, No. 01-50792, 2002 WL 1397163, *1 (5th Cir. 2002) ("[w]hile an intended third party beneficiary may have standing to sue for breach of contract," he does not have "standing to assert a fraud claim when no misrepresentation as made to him or made with intention of reaching him and when he did not act upon any representation."); Branch Banking & Trust Co. v. Appraisalfirst, Inc., No. 10-21141-CIV-GOLD/MCALILEY, 2010 WL 11596299, at *4 (S.D. Fla July 7, 2010); Erwin v. Tx Health Choice, L.C., 187 F. Supp. 2d 661, 667 (N.D. Tex. 2002); Maddux v. Philadelphia Life Ins. Co., 77 F. Supp. 2d 1123, 1132 (S.D. Cal. 1999). Plaintiff's assertion that this result would "leave the cause of action to die with the insured" is a distortion of Florida law, which gives third-party beneficiaries standing to pursue claims for breach of contract, and bad faith, which Plaintiff is precluded from asserting here under Fla. Stat. § 624.155, and the estate standing to sue on behalf of the insured[7]

Although standing is generally a question of law for the Court to resolve, in the event the Court determines that there are factual issues which the jury needs to be resolved in order to determine standing, Plaintiff fails to provide any authority supporting that Foresters should be precluded from introducing evidence on such facts and explaining the relevance of the issues to the jury.

---

[7] Plaintiff's inability to establish standing also precludes her from satisfying the elements of fraudulent inducement, as she could not have been fraudulently induced to purchase a Certificate she does not own.

**<u>PLAINTIFF'S TWELFTH MOTION IN LIMINE TO PRECLUDE ANY REFERENCE TO ANY BAD FAITH CLAIM OR "CURE" THEREOF BY PAYING DEATH BENEFITS WITH INTEREST.</u>**

Foresters has argued repeatedly that it has "cured" its violation of Florida's bad faith statute, Section 624.155, by paying the death benefits to which Vinas was entitled with interest from the date of his death.  This purely legal argument (which is wrong because Vinas raises no bad faith claim) is irrelevant to the jury's task, and inadmissible under Rules 401 and 402.  Under Rule 403, the risk of jury confusion and unfair prejudice by any argument Foresters "cured" its violations or that Vinas has been "made whole" warrants exclusion.

Moreover, although Foresters voluntarily paid the 8% interest provided for by statute, it has repeatedly insinuated that it should have paid only 3.92% interest under Section 627.4615, Florida Statutes.  (See, e.g., D.E. 156, at 5).  The time to argue about which statutory interest rate applies was before Foresters confessed judgment on Count I (Breach of Contract).  Evidence of the interest rate is irrelevant to Count III (Fraud in the Inducement) and could distract from the relevant issues by implying that Vinas has already received some unearned benefit. Under Rule 401 and Rule 403, the Court should exclude any evidence or argument on the issue Foresters declined to litigate:  the amount of interest it "should" have paid to "cure" its breach of contract.

28

**DEFENDANT'S RESPONSE TO PLAINTIFF'S TWELFTH MOTION IN *LIMINE***

In the Twelfth Motion, Plaintiff argues that Foresters should be precluded from informing the jury that it approved Plaintiff's claim, plus 8% interest, as soon as it obtained evidence supporting that her claim was payable, and that Plaintiff is thereby precluded from pursuing a bad faith claim.  Contrary to Plaintiff's contention, this evidence directly refutes Plaintiff's allegation that Foresters' fraudulently induced Mr. Vinas to purchase the Certificate because it falsely represented that it "would pay benefits under the Policy as long as Mr. Vinas answered the Application questions to his best knowledge and belief," but denied Plaintiff's claim without consideration of Mr. Vinas's best knowledge and belief and "ignored evidence in its own claim file."  [Doc. 147 ¶¶36, 39-40].  Foresters intends to show that its alleged misrepresentation was not false, and that it lacked fraudulent intent, because based on the evidence in its file, it reasonably believed that Mr. Vinas omitted material information on his application.  Critically, Plaintiff did not provide a letter from Dr. Hershman until after she filed a CRN alleging that Foresters acted in bad faith.  As soon as Foresters received the letter it paid Plaintiff's claim, which refutes Plaintiff's allegations of fraudulent intent.

Additionally, the fact that Foresters cured the purported violations in the CRN is relevant because it shows that Plaintiff is precluded from asserting a fraudulent inducement claim, which is a bad faith claim in disguise.  Foresters intends to show that in the Second Amended Complaint, Plaintiff relies on the same conduct to support her fraudulent inducement claim that she used to support her bad faith CRN allegations.  Plaintiff's fraudulent inducement claim is nothing more than a statutorily precluded bad faith claim in disguise.  Plaintiff has received all that she is entitled to with respect to the alleged misrepresentations.

The fact that Foresters paid 8% interest is also entirely relevant, as the Certificate requires Foresters to pay interest on the death benefit for payable clams.  Thus, Foresters needs to show that it paid the Death Benefit, plus interest, to show that it satisfied all of its contractual obligations as soon as it received evidence supporting Plaintiff's claim.

**PLAINTIFF'S THIRTEENTH MOTION IN LIMINE TO PRECLUDE DEFENDANT FROM OFFERING TESTIMONY OR OTHER EVIDENCE AS TO THE PROPRIETY OR APPROPRIATENESS OF ANY REPRESENTATIONS MADE AT THE TIME OF SALE OR ANY TESTIMONY THAT IS INCONSISTENT WITH THE POSITIONS TAKEN BY FORESTERS' CORPORATE REPRESENTATIVES DURING DISCOVERY.**

Parties to litigation rely on the discovery process to prepare their case. It is clear under Federal Rules of Civil Procedure that if material is not disclosed in discovery, it cannot be used at trial. Fed. R. Civ. P. 37(c)(1) ("if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at trial"); Debose v. University of South Florida Board of Trustees, 218 WL 8919980 at *1 (M.D. Fla. August 31, 2018); Touzot v. America Best Care Rental KF Corp., 2017 WL 2541225 at *2 (S.D. Fla. June 12, 2017) (noting also that "trial is not a game of 'gotcha'"). Discovery would be meaningless if a party were allowed to introduce evidence or testimony at trial that is different from the evidence or testimony revealed during the discovery process. It follows that a party cannot be permitted at trial to change testimony from what was provided during the discovery period.

Here, where the fraud in the inducement claim hinges on the jury's evaluation of Foresters' intent as a corporate entity, Vinas would be unduly prejudiced by any 11th-hour reversals of position. Allowing "Foresters" to contradict itself invites unnecessary jury confusion on which witness really speaks for it.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRTEENTH MOTION IN *LIMINE***

In Plaintiff's Thirteenth Motion, she appears to ask the Court to preclude Foresters from introducing evidence at trial that was not disclosed during discovery.  First, this Motion is a waste of everyone's time, as Foresters does not intend to "change testimony from what was provided during the discovery period," as Plaintiff seems to fear.  As ridiculous as this Motion is, it should be denied due to Plaintiff's failure to specifically identify "the evidence sought to be excluded," in violation of this Court's Order [Doc. 21 at p.2].  See Burkhart v. R.J. Reynolds Tobacco Co., No. 3:09-cv-10727-WGY-HTS, 2014 WL 12617550, at *12 (M.D. Fla. Apr. 30, 2014) (denying a motion in *limine* because the movant "does not identify any particular evidence or argumentation to exclude.").

**PLAINTIFF'S FOURTEENTH MOTION IN LIMINE TO PRECLUDE ARGUMENT OR TESTIMONY OR OTHER EVIDENCE RELATING TO DOCUMENTS OR INFORMATION WITHHELD FROM PRODUCTION OR OTHERWISE OBJECTED TO BY FORESTERS.**

Foresters must be precluded from attempting to introduce any document, testimony, or other evidence or reference to the areas of inquiry contained within Plaintiff's discovery requests to which Defendant objected and withheld information.  When it decides to use the material at trial, a party intentionally waives any work product protection that cloaked the material.  Hairston v. ED Nelson Transport, No. 3:13-cv-1457, 2015 WL 12843869, at *3 (M.D. Fla. Sept. 25, 2015); Kallas v. Carnival Corp., No. 06-cv-20115, 2008 WL 2222152, at *4-5 (S.D. Fla. May 27, 2008).  A privilege cannot be used as both a sword and shield.  Under the sword and shield doctrine, a party whose proofs rely on a privileged communication invoke the privilege as a shield. GAB Business Services, Inc. v. Syndicate 627, 809 F.2d 755, 762 (11th Cir. 1987). The Insurance Company should be prohibited from using any defense, testimony, evidence, or document that relate in any way to the subject matter addressed in the documents not produced, whether on the basis of an asserted privilege, a claim of irrelevance, or because of confidentiality.  Carles Const., Inc. v. Travelers Cas. & Sur. Co. of America, 56 F. Supp. 3d 1259, 1273 (S.D. Fla. 2014) (citing Savino v. Luciano, 92 So. 2d 817 (Fla. 1957)).

The corollary to the sword and shield doctrine is that if a party makes a claim of privilege for purposes of discovery, that party cannot then introduce, discuss, or refer to the privileged documents at trial.  See Fed. R. Civ. P. 37(c)(1); see also International Tel. & Tel. Corp. v. United Tel. Co. of Florida, 66 F.R.D. 177, 185 (M.D. Fla. 1973) ("[P]rivilege was intended as a shield, not a sword.  Consequently, a party may not insist upon the protection of the privilege for damaging communications while disclosing other selected communications because they are self-serving."); Kallas, supra, at *5.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FOURTEENH MOTION IN *LIMINE***

In her Fourteenth Motion, which is strikingly similar to the Thirteenth Motion, Plaintiff asks the Court to preclude Foresters from introducing evidence that it "withheld from production." Foresters objects to the implication that it improperly withheld documents from production. Throughout this litigation, Foresters appropriately withheld privileged materials and provided a description of such documents, as it was required to do under Fed. R. Civ. P. 26(b)(5). Foresters also produced confidential underwriting materials pursuant to a Confidentiality Agreement, under which both parties agreed that the materials would not be used, "except by written agreement of all parties, as ordered by the Court, or as necessary for pursuit of the case." Foresters has no intention of sharing its privileged materials or confidential underwriting guidelines with the jury. Nevertheless, Plaintiff's broad Motion should be denied due to Plaintiff's failure to specifically identify "the evidence sought to be excluded," in violation of this Court's Order [Doc. 21 at p.2]. See Burkhart v. R.J. Reynolds Tobacco Co., No. 3:09-cv-10727-WGY-HTS, 2014 WL 12617550, at *12 (M.D. Fla. Apr. 30, 2014) (denying a motion in *limine* because the movant "does not identify any particular evidence or argumentation to exclude.").

## <u>PLAINTIFF'S FIFTEENTH MOTION IN LIMINE TO PRECLUDE THE<br>TESTIMONY OF MARC S. FRAGER, M.D.</u>

By Dr. Frager's own admission, his own testimony regarding the issues Foresters proposes to offer him on, is both speculation and beyond the area of his expertise. His testimony will therefore not make any issue in dispute regarding fraud more or less relevant and should therefore be excluded under Fla. R. Evid. 401. Furthermore, even if Foresters is able to find some basis for arguing Dr. Frager's testimony should be admitted, such admission would be highly prejudicial, wherein the prejudice would substantially outweigh any potential relevance. Fed. R. Evid. 403.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIFTEENTH MOTION IN *LIMINE*

Plaintiff's Fifteenth Motion is an inappropriate attempt to file a second <u>Daubert</u> motion to exclude Foresters' expert, the deadline for which passed on February 5, 2021. As Foresters' set forth in detail in its Response to Plaintiff's Amended Motion to Preclude Dr. Frager, Dr. Frager is a qualified expert, whose opinions are relevant, reliable, and helpful to the trier of fact. Dr. Frager opines that it is standard protocol for a reasonably prudent physician to discuss all lab results, exam findings, and conditions that a patient is being followed for with that patient. Dr. Frager further opines that based on Mr. Vinas's lab work, and the number of times diabetes and related complications appeared in Mr. Vinas's medical records, one would reasonably determine that Mr. Vinas's treating physician, Dr. Kenneth Hershman, adhered to standard protocol and discussed these conditions with Mr. Vinas. Dr. Frager's opinion is relevant to Plaintiff's fraudulent inducement claim, should it proceed to trial, because it refutes Plaintiff's allegation that Foresters "fraudulently" represented that if the insured died during the first two years of the Certificate's issuance, it would conduct an Incontestability investigation to determine whether the insured answered the questions in his application to his "best knowledge and belief." Dr. Frager's opinion establishes that during Foresters' contestability investigation, it reasonably determined that Mr. Vinas must have known and believed that he was being followed for diabetes and secondary complications. Further, Dr. Frager's opinion is reliable because it is based on Dr. Frager's review of all of Mr. Vinas's pertinent records, and his extensive experience as an endocrinology practitioner and professor of medicine in the areas of endocrinology and medical ethics. Contrary to Plaintiff's unsupported contention that Dr. Frager's opinion is "speculation," it is based on his medical expertise to a reasonable degree of certainty.

**Defendant's Motion in *Limine* to Preclude Plaintiff from Arguing that Ms. Lightbourn**
**was Foresters' Agent and Introducing Evidence of Ms. Lightbourn's Alleged Statements**

Plaintiff should be precluded from arguing that Jazmin Lightbourn was Foresters' agent, and from introducing any evidence regarding Ms. Lightbourn's alleged representations because such evidence is not relevant. As set forth in detail in Foresters' Motion to Dismiss, Plaintiff failed to sufficiently allege that Ms. Lightbourn was Foresters' agent, and should therefore be precluded from presenting this argument at trial. Plaintiff alleges that "prior to the sale of the policy, Foresters, through its sales agent Jazmin Lightbourn . . . represented that Foresters would not deny a claim or rescind the policy" if Mr. Vinas answered the Application questions to his best knowledge and belief. [Second Am. Compl. ¶36a]. This conclusory allegation is insufficient because Plaintiff does not plead facts from which the Court could infer the elements of a statutory, apparent, or actual agency relationship. Mesa v. Am. Express Educational Assurance Co., No. 16-CV-24447-HUCK, 2017 WL 2210271, at *3 (S.D. Fla. May 18, 2017) (dismissing a claim for failure to plead the existence of an agency relationship in more than a conclusory fashion); Rojas v. Carnival Corp., d/b/a Carnival Cruise Lines, 93 F. Supp. 3d 1305, 133 (S.D. Fla. 2015) (same). A plaintiff may not assert a theory which was not sufficiently plead at trial. See Castellanos v. Portfolio Recovery Associates, LLC, No. 1:17-cv-20593-UU, 2017 WL 7796303, at *2 (S.D. Fla. Oct. 31, 2017) (granting a motion in limine to preclude the plaintiff from "referring to, discussing, or introducing any evidence concerning statutory violations" that were not alleged).

Additionally, as set forth in detail in Foresters' Motion for Summary Judgment, the undisputed evidence demonstrates that Ms. Lightbourn was not Foresters' agent, and therefore evidence of agency is not relevant. Douglas Parrot, Foresters' Chief Underwriting Officer, testified that Foresters' "entire company is independent producers, independent advisors." [Parrot Tr. at 39:14-15, Doc. 127-5]. Foresters "does not have a captive sales force, that is to say a sales force or salaried agents paid for by the company." [Id. at 15-17]. Unlike a captive sales force who would only be able to write business for Foresters, Foresters' "distribution can write business for many companies." [Id. at 17-21]; see also Kemberling v. MetLife Life & Annuity Co., 368 F. App'x 63, 67-68 (11th Cir.2010) (finding insufficient evidence of an agency relationship because the purported agent "was not bound by contract to work for or solicit insurance for MetLife only").

**PLAINTIFF'S RESPONSE TO MOTION IN *LIMINE* TO PRECLUDE PLAINTIFF**
**FROM ARGUING THAT JAZMIN LIGHTBOURN WAS FORESTERS' AGENT ...**

Foresters' arguments are not a motion in limine at all, but is rather, an untimely dispositive motion. The motion should be denied on that basis. Castillo v. Cessna Aircraft Co., 08-21850-CIV, 2010 WL 11505792, at *1 (S.D. Fla. July 26, 2010). At this motion in limine stage, Foresters duplicates the arguments made in its motion to dismiss (D.E. 152, at 16-17) totally ignoring the undisputed evidence that Jazmin Lightbourn's statements were authorized and made as Foresters' sales agent. (D.E. 173, at 6-12). While in that capacity, the evidence is undisputed that Foresters, through Lightbourn, made the misrepresentation at issue with Foresters' authorization, its application and its blessing. (Parrott Depo, D.E. 172-3, at p. 67, lines 11-18). Foresters' reliance on alleged pleading deficiencies at this stage of litigation truly reflects the lack of merit in Foresters' argument. Even addressing that argument, under federal pleading standards, Vinas' pleading of Lightbourn as Foresters' "sales agent" under the facts alleged was more than sufficient in order to satisfy notice-pleading requirements." Platypus Wear, Inc. v. Clarke Modet & Co., S.L., 06-20976-CIV, 2008 WL 2557503, at *2 (S.D. Fla. June 23, 2008), adopted in relevant part, 06-20976-CIV, 2008 WL 2761300 (S.D. Fla. July 15, 2008). Further, given the undisputed evidence of Lightbourn's sales agent status, Foresters has no basis to claim it lacks "fair notice" of the allegations against it. Colonial Penn Ins. Co. v. Value Rent-A-Car Inc., 814 F. Supp. 1084, 1092–93 (S.D. Fla. 1992). See also cases at (D.E. 162 at 16-18).

Foresters' second argument was addressed in Vinas' Response to Foresters' motion for summary judgment. (D.E. 173, at 10-12). Under Florida law, Lightbourn did not need to be a "captive agent" to be Foresters' sales agent authorized to make representations on its behalf. Almerico v. RLI Ins. Co., 716 So. 2d 774, 776–77 (Fla. 1998) ("an insurance broker may act in the dual capacity of broker for the insured and agent of the insurer."). Furthermore, the evidence is undisputed, that Lightbourn was authorized to advise the Vinases that Foresters would be basing its contestable claim decision on the insured's best knowledge and belief. (Parrot depo, p. 67, lines 11-18 and p. 88, lines 5-19). That was a lie. Foresters also made Lightbourn a statutory agent under §626.342, Fla. Stat. by providing the application for the present policy. The evidence is undisputed that Ms. Lightbourn was authorized to sell and accurately describe the terms of Foresters' products, which is precisely what she did here.

**Defendant's Motion in *Limine* to Preclude Plaintiff from Introducing**
**<u>Bad Faith Claims Handling Evidence</u>**

Bad faith evidence of Foresters' general claims handling practices is not admissible because it is irrelevant to Plaintiff's breach of contract and fraudulent inducement claims.  During the depositions of Foresters' Corporate Representatives, Lisa Buckland, and Dr. Frager, Plaintiff asked a series of questions regarding Foresters' claims handling practices.  This testimony, and any argument regarding how Foresters' handles claims, is inadmissible.  While this evidence might be relevant to a claim for bad faith under Fla. Stat. § 624.155, which challenges the integrity of an investigation, it has no place in this action because Plaintiff is precluded from pursuing a bad faith claim as a result of Foresters' timely cure of the violations alleged in Plaintiff's Civil Remedy Notice.  See <u>Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.</u>, 745 F. Supp.2d 1380 1381 (S.D. Fla. 2010) ("[E]vidence of an insurance company's claims handling procedures . . . are only relevant to a claim of bad faith.")

Foresters has already paid the Death Benefit, plus interest, and therefore the only issue with respect to Plaintiff's breach of contract claim is damages, which is not relevant to Foresters' claim handling practices.  Additionally, evidence of Foresters' claims handling practices is not relevant to Plaintiff's fraud claim.  The elements of fraudulent inducement are:  "(1) a false statement of material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance."  <u>PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.</u>, 598 F.3d 802 (11th Cir. 2010). Evidence of Foresters' claim practices has no bearing on whether Mr. Vinas was fraudulently induced to purchase the Certificate in 2015.

Even if the Court finds that this bad faith evidence is relevant, it should be excluded under Rule 403 because its probative value would be substantially out weighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and it would cause undue delay and waste time.  Fed. R. Evid. 403.  Introduction of bad faith claims handling evidence would cloud the real issues – Plaintiff's entitlement to damages and whether Mr. Vinas was fraudulently induced to purchase the Certificate in 2015.    In <u>Mendez v. Unitrin Direct Prop. & Cas. Ins. Co.</u>, 622 F. Supp.2d 1233 (M.D. Fla. 2007), the court ordered a new trial because, in part, it found that the admission of claims handling evidence substantially prejudiced the insurance company.  <u>Id.</u> at 1239-40.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN *LIMINE* TO PRECLUDE PLAINTIFF FROM INTRODUCING CLAIMS HANDLING EVIDENCE

Foresters forces Vinas and the Court to guess what it means by "[b]ad faith evidence of general claims handling practices," which is apparently found somewhere in the 737 pages of the four depositions Foresters references. Foresters cannot, however, similarly force Ms. Vinas' case into its bad faith strawman and exclude all evidence on that basis.

Vinas will, and is entitled to introduce evidence relevant to Foresters' fraud, i.e. that Foresters never intended to apply the best knowledge and belief standard to its contestability investigations because, it never even inquires as to the best knowledge and belief after expressly promising to do so. Foresters cannot exclude this evidence simply by labeling it "claims conduct." The Eleventh Circuit has clearly held that just because evidence might be relevant to a bad faith claim not being pursued, that same evidence is still admissible for other purposes. See T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1527 (11th Cir. 1985). In this case, both the claims examiner, Lisa Buckland, and Foresters' Corporate Representative ("CR"), David Sullivan, expressly acknowledged that not investigating the insured's best knowledge and belief, was normal because "it wasn't a question of what he knew or not... ." (Buckland Depo, D.E. 172-6 at p. 53, l. 13 – p. 56, l. 11). David Sullivan confirmed this fraud and testified that not only did Foresters not determine Mr. Vinas' BK&B, no one in the contestable claims department ever raised a question about its refusal to do so! (Sullivan Depo, D.E. 172-3, p. 300, lines 5-10). In addition, the evidence is undisputed that Foresters ignored its own records expressly stating that Mr. Vinas did not know he had diabetes (Id. at p. 142 l. 1 – p. 144 l. 25). These uncontested facts, together with similarly uncontroverted evidence that Foresters' sales arm never determined the truth or falsity of its promise to make a contestable determination based upon best knowledge and belief, is certainly relevant both for the jury to determine any remaining issues of liability and the amount of punitive damages.

Next, evidence that Foresters refused to address Mr. Vinas' BK&B in 2017 is evidence both that Foresters' representation to the contrary was a lie and that it had no intent to do so in 2015. E.g., Democratic Republic of the Congo v. Air Capital Group, LLC, 2013 WL 3223686, at *5 (S.D. Fla. June 24, 2013).

Finally, the evidence relating to Foresters' fraudulent intent to not pay a contestable claim is certainly relevant and not unfairly prejudicial.

**Defendant's Motion in *Limine* to Preclude Plaintiff from Introducing Evidence of, or
Seeking, Consequential Damages**

In Count I of the Complaint, Plaintiff asserts a claim for breach of contract based on "Foresters' failure to timely pay the death benefit to Vinas." [Second Am. Compl. ¶18.] Even though Foresters already paid the full $92,000.00 Death Benefit, plus $26,220.74 in interest, for a total amount of $118,220.74, and agreed to pay reasonable attorney's fees through the date of payment, Plaintiff seeks consequential damages as a result of the allegedly untimely payment. However, in Citizens Property Ins. Corp. v. Manor House, LLC, No. SC19-1294 (Fla. 2021), the Florida Supreme Court squarely held that "**extra-contractual, consequential damages are not available in a first-party breach of insurance contract action** because the contractual amount due to the insured is the amount owed pursuant to the express terms and conditions of the insurance policy." Citizens Property at 6, 9 (emphasis added) [**Ex. A**]. The Court recognized that "the contractual amount due the insured is the amount owed pursuant to the express terms and conditions of the policy." Id. at 6 (citing Talat Enterprises, 753 So.2d at 1283).

Here, the Certificate contemplates payment of the Death Benefit and interest, which Foresters already paid. [Certificate at 12.] The Certificate's merger clause, which provides that the Certificate and application materials, inter alia, constitute the parties' "entire contract," which could not be modified by anyone. [Id. at 10.] The merger clause expressly limits the amount due under the Policy to the Death Benefit and interest. Therefore, Foresters fulfilled its contractual obligations, and Plaintiff is not entitled to extra-contractual consequential damages as a matter of law as a result of Foresters' alleged breach of the Certificate. Accordingly, Plaintiff should be precluded from introducing evidence of, and seeking, extra-contractual consequential damages.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN *LIMINE* TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE OF, OR SEEKING, CONSEQUENTIAL DAMAGES**

As Vinas addresses fully in her responses to the pending motions, (D.E. 162, at 10-11; D.E. 173, at 16-17), the <u>Manor House</u> decision did not affect damages in tort suits.  In the event the Manor House decision becomes final, Vinas may not pursue consequential damages for Foresters confession of judgment for breach of contract; however, Vinas will still be able to recover the same damages as tort damages under Count III.   Foresters argument is overreaching and unsupported by law in seeking to prevent Mrs. from presenting evidence of how Foresters' misrepresentation put her in a position to have to sell her jewelry to pay for her husband's headstone and repay loans from family and friends until Foresters final confessed judgment and paid the amount due under the contract.

Foresters' argument completely ignores the legal and factual basis of Count III (Fraud in the Inducement).  Count III is not "**a first party breach of insurance contract action."**  It is well-established that in Florida, a plaintiff may recover these "consequential damages" if either naturally or proximately caused by fraud.  <u>Tampa Union Terminal Co. v. Richards</u>, 146 So. 591, 596 (Fla. 1933) (explaining that tortfeasor is liable for damages that are "natural or proximate" consequences); <u>see</u> <u>also</u> <u>Tew v. Chase Manhattan Bank, N.A.</u>, 728 F. Supp. 1551, 1568 (S.D. Fla. 1990), <u>opinion amended on reconsideration,</u> 741 F. Supp. 220 (S.D. Fla. 1990) ("in tort, if there is proximate cause, there is no requirement that the particular type of damages be foreseeable").

**Defendant's Motion in *Limine* to Preclude Plaintiff from Introducing Evidence of, <u>or Seeking, Punitive Damages</u>**

In Count III of the Complaint, Plaintiff asserts a claim for fraudulent inducement and seeks extra-contractual punitive damages. However, in <u>Citizens Property Ins. Corp. v. Manor House, LLC</u>, No. SC19-1294 (Fla. 2021), Florida's Supreme Court held that extra-contractual damages are only available in a bad faith action under Section 624.155. <u>Citizens Manor</u> at 6. The court held that the plaintiff could not seek extra-contractual damages against the insurance company because the insurer was immune from suit under Section 624.155. <u>Id.</u>

Similarly, Plaintiff may not seek extra-contractual damages against Foresters because it is statutorily immune from suit under Section 624.155, as it timely cured the violations alleged in Plaintiff's Civil Remedy Notice ("CRN"). Specifically, on February 5, 2020, Plaintiff filed a CRN alleging that Foresters engaged in bad faith conduct based on the same conduct underpinning Plaintiff's fraudulent inducement claim. Plaintiff impeded Foresters' efforts to obtain information about the allegations, and did not provide evidence that her claim was payable until March 26, 2020—leaving Foresters only **10 days** to potentially "cure" any alleged violation. <u>See</u> Fla. Stat. § 624.155(5)(c) ("No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected."). Immediately thereafter, Foresters paid the full Death Benefit, plus interest, and agreed to pay reasonable attorney's fees and costs, and thereby cured the alleged violations. Because Foresters corrected the alleged violations within 60 days of the CRN, it is statutorily immune from suit under Section 624.155. <u>See</u> Fla. Stat. § 624.155(5)(c)

Plaintiff's request for punitive damages is an improper attempt to do an end run around Fla. Stat. § 624.155. Plaintiff may not seek punitive, extra-contractual damages against Foresters outside of Fla. Stat. § 624.155. Therefore, Plaintiff should be precluded from introducing evidence of, or seeking, punitive damages in this action.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN *LIMINE* TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE OF, OR SEEKING, PUNITIVE DAMAGES

As discussed more fully in Vinas' responses to the pending dispositive motions (D.E. 162, at 10-11; D.E. 173, at 17), Foresters has no legal basis for arguing that punitive and consequential damages are not available for Count III (Fraud in the Inducement). In Manor House, the Florida Supreme Court held only "that extra-contractual, consequential damages are not available in a first-party **breach of insurance contract action**." Citizens Prop. Ins. Corp. v. Manor House, LLC, SC19-1394, 2021 WL 208455, at *2 (Fla. Jan. 21, 2021). Whatever else it did, Manor House did not *sub silencio* overrule years of precedent holding that extra-contractual and punitive damages are available for a separate independent tort such as is alleged and proven here. Similarly, Manor House did not construe, much less strike down, the anti-preemption clause in Florida's bad faith statute. § 624.155(8), Fla. Stat. (providing that statutory cause of action "does not replace or preempt any other remedy or cause of action provided for . . . pursuant to the common law of this state."). Because Vinas did not pursue or plead a bad faith claim, there was nothing for Foresters to "cure" by finally paying the death benefit three years after denying it.

Not only are punitive damages available for Count III (Fraud in the Inducement), they are available without an additional showing beyond what is required for Vinas to establish liability. See Flying Fish Bikes, Inc. v. Giant Bicycle, Inc., 181 F. Supp. 3d 957, 971 (M.D. Fla. 2016) ("[T]he rule now seems clear in Florida that a claim of fraud sufficient to justify compensatory damages is also sufficient to support an award of punitive damages.") (quoting Cruise v. Graham, 622 So.2d 37, 41 (Fla. 4th DCA 1993)). The Court should deny Foresters' motion in limine because punitive damages are legally available upon a finding of fraud liability, and therefore evidence relevant to punitive damages is admissible under Rule 401.

**Defendant's Motion in *Limine* to Preclude Plaintiff from Offering Testimony about Mr. Vinas' Communications with Rushmore Bank and Ms. Lightbourn**

During Plaintiff's deposition, she testified that:  (1) Rushmore Bank encouraged Mr. Vinas to purchase a life insurance policy to ensure that his mortgage would be paid in the event of his death; (2) Rushmore Bank provided Mr. Vinas with a list of companies, including Foresters; (3) Mr. Vinas called Foresters and Ms. Lightbourn returned Mr. Vinas' call; and (4) Mr. Vinas communicated with Ms. Lightbourn during her alleged visit to his home to discuss life insurance:  [Plf. Tr. at 31:15-18; 32:16-25; 33:1-2; 35:13-15; 48:5-15; 55:6-17; 58:2-7; 65:15-25; 66:1-10].  Plaintiff is attempting to rely on this testimony for its truth to support her theory that Foresters lead Mr. Vinas to believe that Ms. Lightbourn was its agent, and that Mr. Vinas inquired about the Incontestability period to support her claim that information about the Incontestability period was material to his decision to purchase the Certificate.  However, Plaintiff's testimony about what Rushmore Bank told Mr. Vinas, and the conversations between Mr. Vinas and Ms. Lightbourn, constitutes inadmissible hearsay.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  This Court recognizes that "admission of this hearsay evidence would undermine the rules of evidence because it 'impermissibly permits the testifying [witness] to bolster [her] opinion[] and creates the danger that the testifying [witness] will in fact serve as conduits for the opinions of others who are not subject to cross examination.'"  Royale Green Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co., No. 07-CIV-21404, 2009 WL 2208166, *2 (S.D. Fla. July 24, 2009) (J., Cooke).  Accordingly, Plaintiff should be precluded from offering testimony regarding the communications between Rushmore Bank and Mr. Vinas, and between Mr. Vinas and Ms. Lightbourn for the truth of the matter asserted, because it is inadmissible hearsay and therefore precluded under the Federal Rules of Evidence.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM OFFERING TESTIMONY ABOUT MR. VINAS' COMMUNICATIONS WITH RUSHMORE BANK AND MS. LIGHTBOURN**

Foresters lumps together many different statements, without offering individualized argument as to why each is inadmissible. The Court should deny the motion for this reason alone. Duval v. Law Office of Andreu, 09-22636-CIV, 2010 WL 11505552, at *2 (S.D. Fla. July 1, 2010). Additionally, the statements are admissible for three reasons:

1)    The undisputed evidence clearly and unequivocally shows that Lightbourn was authorized to make the statements regarding the policy at issue. (D.E. 173, at 6-12 (Response to Foresters' Motion for Summary Judgment)). Her statements are therefore not hearsay. Fed. R. Evid. 801(d)(3)(C). Furthermore, Lightbourn was an agent authorized to speak about how the policy's "best knowledge and belief" standard would be applied if contested. Parrot depo pgs. 67 and 88. Her statements therefore are not hearsay under Rule 801(d)(2)(D) as well.

2)    Many of the statements Foresters lumps together are not hearsay under Rule 801(c)(2) because they are not offered to prove the truth of the matter asserted. For example, Vinas describes Lightbourn's statement that any contestability investigation would rely on the BK&B standard. Vinas seeks only to prove that that the statements were made, not that they were true. Gonzalez v. Sec'y of Dept. of Homeland Sec., 678 F.3d 254, 262 (3d Cir. 2012) (citing Anderson v. U.S., 417 U.S. 211, 219–20 (1974)). Similarly, Mr. Vinas' communication with Rushmore Bank is not offered because Vinas' claim depends on its being true, but rather to explain why she subsequently contacted Foresters. United States v. Manati, 697 Fed. Appx. 683, 688 (11th Cir. 2017). The same is true for Lightbourn's request that Mr. Vinas provide a doctor's letter, which merely shows why he provided the 2015 letter from Dr. Hershman. (D.E. 172-1, at p. 65 lines 15-25). These statements are all non-hearsay.

3)    Mr. Vinas is not available to testify, making Vinas' own testimony describing his statements "more probative . . . than any other evidence that [she] can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2). Given that the record as a whole corroborates every statement Foresters identifies, Ms. Vinas' testimony is "supported by sufficient guarantees of trustworthiness" to be admitted under Rule 807. If any hearsay exists, (there is none as indicated above) is sufficiently reliable to admit.